UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE. NO. 11-2552-JG

IN RE SEALED CRIMINAL COMPLAINT
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
Maria K. Medetis
Assistant United States Attorney
Court No. A5501214
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9010
FAX (305) 536-4676
Maria.Medetis@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America )<br>v. )<br>MATTHEW ANDREW CARTER, )<br>a/k/a "William Charles Harcourt," )<br>a/k/a "Bill Carter," )<br>)<br>_____<br>Defendant(s) | Case No. 11-2552-JG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 30, 2003__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2423(b) | The defendant, Matthew Andrew Carter, a/k/a "William Charles Harcourt," a/k/a "Bill Carter," a United States citizen, did travel in foreign commerce from the United States, that is, from Miami International Airport, in Miami, Florida, in the Southern District of Florida, to Haiti for the purpose of engaging in illicit sexual conduct with another person, in violation of Title 18, United States Code, Section 2423(b). |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Alvaro Flores, Special Agent, ICE-HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: May 4 2011 12:25 pm

_____
Judge's signature

City and state: __Miami, Florida__     Jonathan Goodman, U.S. Magistrate Judge
Printed name and title

**FILED UNDER SEAL**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Alvaro Flores, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Department of Homeland Security, ICE - Homeland Security Investigation (HSI) Special Agent currently assigned to the Special Agent In Charge (SAC) Miami Office, Cyber Group. I have approximately nine (9) years of experience as a federal law enforcement agent. Among my responsibilities as a Special Agent, I investigate crimes involving the sexual exploitation of children, including offenses involving travel in foreign commerce and the production and transportation of child pornography. I have received training in the investigation of child exploitation offenses, and I have conducted and assisted in several child exploitation investigations. I also have received advanced training in the area of computer forensics, which involves reviewing and analyzing computer and other storage media. I have executed several search warrants that have led to seizures of child pornography. I am also responsible for enforcing federal criminal statutes involving immigration and customs violations.

2. In the course of my duties as a Special Agent, I participated in the investigation of defendant MATTHEW ANDREW CARTER, a.k.a. "William Charles Harcourt," a.k.a. "Bill Carter" (hereafter "CARTER"). The information in this affidavit is based on my personal knowledge, and information obtained from other witnesses, including law enforcement officers.

3. The information contained in this affidavit is submitted for the sole purpose of establishing probable cause to arrest CARTER for a violation of Title 18, United States Code, Section 2423(b). Because this affidavit is being submitted for the limited purpose of establishing

probable cause, it does not contain all of the information known to me and other law enforcement officers involved in this investigation.

4. Based on the information set forth herein, your Affiant submits that there is probable cause to believe that on or about October 30, 2003, CARTER, a United States citizen, traveled in foreign commerce from the United States, that is, Miami International Airport in Miami, Florida, in the Southern District of Florida, to Haiti for the purpose of engaging in illicit sexual conduct with another person, in violation of Title 18, United States Code, Section 2423(b).

## STATUTORY AUTHORITY

5. Section 2423(b) makes it unlawful for a person to travel in interstate commerce or travel into the United States, or for a United States citizen or an alien admitted for permanent residence in the United States to travel in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person.

6. Section 2423(f) defines "illicit sexual conduct" to include "a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States." The definition of "sexual act" in 18 U.S.C. § 2246 includes "contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus," and "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. §§ 2246(2)(B) and (2)(D).

7. Section 2423(f) defines "illicit sexual conduct" to also include "any commercial sex act (as defined in section 1591) with a person under 18 years of age." Title 18, United States

Code, Section 1591 defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(c)(1) (2000).

## PROBABLE CAUSE

### A. Background

8. CARTER, a United States citizen, was born in Michigan in 1945 as "William Charles Harcourt." In or around 1990, CARTER legally changed his name from "William Charles Harcourt" to "Matthew Andrew Carter." CARTER has also used the name "Bill Carter."

9. CARTER currently resides at and operates the Morning Star Center (hereafter, "the Center"), which is currently located at Tabarre 23, Rue Jean Paul, Impasse Destine # 29, Port-au-Prince, Haiti. The Center is a residential facility that provides shelter, food, toys, money, and schooling to Haitian minors. Beginning sometime in the mid-1990s, CARTER has operated this facility at various locations in the vicinity of Port-au-Prince, Haiti. On his business card, CARTER is identified as "Matthew 'Bill' Carter" and is described as the Center's "Founder / Director." Although the Center is commonly referred to as an orphanage by those familiar with CARTER and the Center, many of the resident minors are not orphans. Rather, the minors' families have extremely limited means. Accordingly, families send their children to the Center in order for the children to receive the material support and educational opportunities that these families are otherwise unable to provide.

10. As detailed below, CARTER travels between the United States and Haiti frequently. According to CARTER's own statements and witnesses, CARTER travels to the United States in order to raise charitable funds to finance the continued operation of the Center. Also as detailed below, since in or around the mid-1990s through in or around April 2011, CARTER has engaged in illicit sexual conduct with at least eight (8) minor children who have

resided or currently reside at the Center during those periods of time when CARTER was living at the Center with said minors.

B.   **CARTER's Travel Between the United States and Haiti**

11.   U.S. Customs and Border Protection travel records show that between on or about December 5, 1994 and April 7, 2011, CARTER has traveled between Haiti and the United States at least thirty (36) times.  Out of those flights, CARTER arrived into Miami International Airport, in the Southern District of Florida approximately twenty five (25) times, and into Fort Lauderdale International Airport approximately ten (10) times.  From 1997 to the present, CARTER has maintained steady and frequent travel between United States and Port-au-Prince, Haiti, traveling anywhere between two to four times per calendar year between these two countries, except for 2005, 2007, and 2008, when CARTER traveled between the United States and Port-au-Prince, Haiti only once per year.  However, in 2009, CARTER traveled between the United States and Port-au-Prince, Haiti on two (2) occasions.  In 2010, CARTER traveled to and from these countries three (3) times.

12.   Most recently, CARTER entered the United States from Port-au-Prince, Haiti on April 7, 2011.  Travel records indicate that CARTER is scheduled to travel from Detroit, Michigan to Port-au-Prince, Haiti, through Miami International Airport in Miami, Florida on Sunday, May 8, 2011.

13.   When CARTER arrives into the United States, he typically travels through the Southern District of Florida to Michigan, where based on his own statements and subpoenaed bank records, he is believed to reside at 9755 Bitten Drive, Brighton, Michigan 48114.

C. **Illicit Sexual Conduct from Mid-1990s to the Present**

14. Your Affiant has learned that between the Center's opening in the 1990s through in or around April 2011, CARTER engaged in illicit sexual conduct with the minors in his care and custody at the Center on a regular basis. In general, the illicit sexual conduct consists of CARTER performing oral sex on the minors, requiring the minors to perform oral sex on CARTER, requiring the minors to masturbate CARTER, and/or CARTER touching the minors' nude genitalia. According to the minor victims of CARTER's illicit sexual conduct, CARTER made the minors' participation in illicit sexual conduct with CARTER necessary in order for the minors to receive gifts and/or money, and/or to continue receiving the shelter, food, and schooling that CARTER provided and which the minor victims' families otherwise could not provide for the minors.

    *i.*    *1990's to 2000*

15. John Doe #1. "John Doe #1," who is a Haitian National, born in 1984 informed U.S. law enforcement of the following regarding CARTER's illicit sexual conduct with minors at the Center between the mid-1990s and in or around 2000: In the 1990s, while John Doe #1 was still a minor, he moved into the Center after CARTER had asked John Doe #1's mother if John Doe #1 could stay at the CENTER. John Doe #1 stated that his mother was very poor and could not take care of him, so she agreed to let John Doe #1 live with CARTER at the Center. John Doe #1 stated that after being at the Center for approximately one month, CARTER called him to CARTER's room and instructed him to lie down on CARTER's bed. CARTER then took off John Doe #1's pants and performed oral sex on John Doe #1. CARTER then instructed John Doe #1 to take lotion from a white bottle next to CARTER's bed, put the lotion on CARTER's penis, and masturbate CARTER. CARTER then grabbed John Doe #1's hand and placed it on

Page 5 of 13

CARTER's penis. John Doe #1 recalled that after this first instance of sexual contact, CARTER bought pizza and ice cream for John Doe #1. John Doe #1 stated that CARTER would engage in this sexual conduct with John Doe #1 approximately three (3) to four (4) times per week in CARTER's room, and that this sexual conduct continued for approximately six (6) years.

16. According to John Doe #1, the only way for him to continue living at the Center was to do what CARTER wanted. John Doe #1 endured these sexual encounters with CARTER because CARTER provided toys, food, shelter, and schooling, and the alternative was to live in severe poverty. In or about 2000, when John Doe #1 was approximately sixteen (16) years old, he told CARTER that he did not want to do sexual acts anymore. In response, CARTER stopped buying clothing, shoes, and books for John Doe #1.

17. Between 1994 and 2000, the period of time described above by John Doe #1, travel records show that CARTER arrived into Miami, Florida from Port-au-Prince, Haiti thirteen (13) times.

   ii.   *2000 to 2005*

18. John Doe #2. "John Doe #2," who is a Haitian National, born in 1981, informed U.S. law enforcement of the following regarding CARTER's illicit sexual conduct with minors at the Center between 1996 and 2004: In 1996, when John Doe #2 was approximately fourteen (14) or fifteen (15) years old, he moved into the Center because his parents could not provide for him. John Doe #2 stated that within one to two weeks of moving into the CENTER, he asked CARTER for an item. In response, CARTER took John Doe #2 to a room, pulled down his pants, and began to perform oral sex on John Doe #2. John Doe #2 stated that CARTER then gave him money to purchase the item he had requested. John Doe #2 stated that CARTER would remove boys from the CENTER if they refused to engage in sexual acts with CARTER.

John Doe #2 stated that Carter provided food, clothing, shelter, and games to the boys at the Center. John Doe #2 stated that he lived at the CENTER from approximately 1996 to 2004, during which time he witnessed CARTER performing oral sex on other boys.

19. <u>John Doe #3</u>. "John Doe #3," a Haitian National, who was born in 1985, also informed U.S. law enforcement of the following regarding CARTER's illicit sexual conduct at the Center between 1996 and 2004: In 1996, when John Doe #3 was approximately ten (10) years old, he moved into the Center. John Doe #3 stated that CARTER engaged in sexual conduct with him during his first several years at the Center, and CARTER "did gay sex" to the youngest kids. John Doe #3 stated that CARTER provided the children with food and a place to stay. In or about 2004, John Doe #3 moved out of the Center.

20. Between 2000 and 2004, the period of time included in John Doe #2 and #3's accounts of the time at the Center (and after John Doe #1's time at the Center ended), CARTER travelled from the United States to Port-au-Prince Haiti approximately thirteen more times.

21. <u>John Doe #4</u>. "John Doe #4," a Haitian National, born in 1985, informed U.S. law enforcement of the following regarding CARTER's illicit sexual conduct with minors at the Center between 1997 and 2005: In 1997, when John Doe #4 was approximately twelve (12) years old, he moved into the Center. John Doe #4 stated that immediately after he moved in, CARTER asked him to shower with CARTER. John Doe #4 complied and while in the shower, both he and CARTER were naked. John Doe #4 stated that while in the shower, CARTER touched John Doe #4 all over his body and then proceeded to perform oral sex on John Doe #4. John Doe #4 stated that if he or the other boys refused to engage in sexual acts with CARTER, CARTER would threaten to send the boys back to where they came from. John Doe #4 stated that CARTER provided food and shelter to the boys. CARTER also would give money to some

of the boys if they performed sexual acts with CARTER. John Doe #4 recalled that CARTER placed John Doe #4's hand on CARTER's penis. John Doe #4 stayed at the Center until approximately 2005.

22. <u>John Doe #5.</u> "John Doe #5," a Haitian National, who was born in 1986, informed U.S. law enforcement of the following regarding CARTER's illicit sexual conduct with minors at the Center beginning in or around 1997: In or about 1997, when John Doe #5 was approximately eleven (11) years old, he began living with CARTER at the Center. According to John Doe #5, CARTER on several occasions awoke John Doe #5 in the middle of the night by performing oral sex on him. CARTER also made John Doe #5 perform oral sex on CARTER. During this period, CARTER also touched John Doe #5's penis under his clothing. On some occasions, CARTER would put cream in John Doe #5's hand, put John Doe #5's hand on CARTER's penis, and use John Doe #5's hand to masturbate himself. CARTER provided John Doe #5 with schooling, clothes, shelter, and food. John Doe #5 left the Center some time after he became 18 years old.

23. <u>John Doe #6</u>. "John Doe #6," a Haitian National, who was born in 1988, informed U.S. law enforcement of the following regarding CARTER's illicit sexual conduct with minors at the Center between 1998 and 2004: In 1998, when John Doe #6 was approximately ten (10) years old, he began living with CARTER at the Center, and he lived there on and off until approximately 2004. John Doe #6 stated that the first sexual act with CARTER occurred in 1998. CARTER called John Doe #6 to CARTER's room, took John Doe #6's shorts off, and took his own clothes off. CARTER then put lotion in John Doe #6's hand and made John Doe #6 masturbate CARTER. CARTER also performed oral sex on John Doe #6. John Doe #6 lived at the orphanage because CARTER paid for his schooling and provided food. According to John

Doe #6, CARTER also provided shelter, clothes, trips to the United States, and games to the boys at the Center. John Doe #6 stated that boys would get extra cash or gifts if they went to CARTER's room. John Doe #6 stated that CARTER gave him extra cash and a CD player. CARTER's last sexual contact with John Doe #6 occurred sometime after John Doe returned to the Center in the fall of 2003. On that occasion, CARTER sent John Doe #6 to CARTER's room, and CARTER then joined him there. CARTER put lotion in John Doe #6's hand, put John Doe #6's hand on CARTER's penis, and forced John Doe #6 to masturbate him.

24.     <u>John Doe #7</u>. "John Doe #7," a Haitian National, who was born in 1988, informed U.S. law enforcement of the following regarding CARTER's illicit sexual conduct with minors at the Center between 2000 and 2005. In 2000, when John Doe #7 was approximately twelve (12) years old, he began living with CARTER at the Center because CARTER offered to pay for his schooling, which his parents could not provide. Approximately two days after living at the Center, CARTER asked John Doe #7 to come to his room and CARTER put cream in John Doe #7's hand. CARTER told John Doe #7 to masturbate CARTER and physically placed John Doe #7's hand on CARTER's penis. After this instance of sexual contact, CARTER bought a CD player for John Doe #7. John Doe #7 stated that CARTER would make him perform these sexual acts throughout the five (5) years that he stayed at the Center. John Doe #7 stated that if he refused to perform sexual acts with CARTER, then CARTER would get angry, treat him differently, and not buy him gifts. John Doe #7 recalled a specific instance in which CARTER made John Doe #7 masturbate CARTER in or about January 2004 when John Doe #7 was approximately fifteen (15) years old. When John Doe #7 was approximately sixteen (16) years old, he asked CARTER to stop "molesting" him. CARTER stopped, but he then treated John Doe #7 poorly. John Doe #7 left the Center in approximately 2005.

25. Notably, travel records indicate that CARTER traveled from Miami, Florida to Port-au-Prince, Haiti on October 30, 2003, and did not return to the United States until March 26, 2004. According to John Doe #7, CARTER engaged in sexual illicit conduct with him in or around January 2004. This instance of illicit sexual conduct followed CARTER's October 30, 2003 travel to Haiti from the United States.

### iii.   *2006 to Present*

26. <u>John Doe #8</u>. "John Doe #8," a Haitian National, who was born in 1996, informed U.S. law enforcement of the following regarding CARTER's illicit sexual conduct with minors at the Center between 2006 and 2010. In 2006, when John Doe #8 was ten (10) years old, he began living with CARTER at the Center on the weekends. On one weekend, CARTER called John Doe #8 to CARTER's bedroom. Once in the bedroom, John Doe #8 saw CARTER naked on the bed. CARTER then placed lotion in John Doe #8's hand and directed John Doe #8 to masturbate him (CARTER). John Doe #8 stated that he was nervous and instead applied the lotion on CARTER's stomach. CARTER responded by taking a black stick that extended with the press of a button and striking John Doe #8.

27. John Doe #8 stated that in 2008 or 2009, CARTER called John Doe #8 into his room a second time, and again CARTER was naked on the bed. CARTER directed John Doe #8 to "suck his balls." John Doe #8 refused. CARTER then hit John Doe #8 with the black stick. John Doe #8 recalled that shortly before the 2010 earthquake in Haiti, CARTER called John Doe #8 into his bedroom again. CARTER was lying naked in his bed and directed John Doe #8 to masturbate him. Again John Doe #8 refused and again CARTER struck John Doe #8 with the black stick.

28. John Doe #8 further stated that on several occasions during his time at the Center, CARTER made him sit on his (CARTER's) lap while CARTER reached under John Doe #8's shorts and digitally manipulated John Doe #8's genitals. John Doe #8 also recalled that CARTER showed him and the other children at the Center pornographic movies that CARTER kept in his room.

29. John Doe #9. "John Doe #9," a Haitian National, who was born in 1988, made the following statements to U.S. law enforcement regarding CARTER's illicit sexual conduct with minors at the Center between 2001 and the present: John Doe #9 moved into the Center in 2001 when he was approximately thirteen (13) years old. According to John Doe #9, CARTER engaged in sexual conduct with John Doe #9 on the first night that John Doe #9 moved into the Center in 2001.

30. John Doe #9 informed agents that there are currently fourteen minor boys living at the Center, and that an additional three minor boys live at the Center on the weekends. John Doe #9 also stated that CARTER has engaged in sexual conduct with the minors currently living at the Center with CARTER, and that said conduct has occurred as recently as a few days before CARTER left Port-au-Prince, Haiti on April 7, 2011. John Doe #9 stated that the sexual contact between CARTER and the boys consists of CARTER performing oral sex on the boys and/or making the boys masturbate CARTER with lotion (a supply of which CARTER maintains in his bedroom). John Doe #9 further stated that CARTER keeps a .22 caliber gun in a lock box in his bedroom. John Doe #9 has also observed CARTER, on multiple occasions, beating the boys with his hand or with a stick when CARTER is in a "bad mood."

### D. CARTER's Travel to Haiti With the Purpose of Engaging in and Actually Engaging in Illicit Sexual Conduct

31. As previously detailed, CARTER engaged in illicit sexual conduct with the minors living at the Center during the periods of time before his numerous trips to the United States and in the periods of time after his return trips to Haiti from the United States.

32. Specifically, on or about October 7, 2003, CARTER traveled from Port-au-Prince, Haiti to Miami, Florida via an American Airlines flight. On or about October 30, 2003, CARTER returned to Port-au-Prince, Haiti via Miami, Florida on an American Airlines flight. As set forth above, CARTER engaged in illicit sexual conduct with several minors at the Center before this October 7, 2003 travel to the United States and he engaged in illicit sexual conduct with John Doe #7 following his return travel to Haiti on or about October 30, 2003, when in or around January 2004, CARTER engaged in illicit sexual conduct, that is a "commercial sex act" with John Doe #7 by requiring him to masturbate CARTER. Based on John Doe #7's compliance with CARTER's requests, CARTER continued to provide John Doe #7 with food, shelter, schooling and gifts.

33. Based on my training and experience, the accounts of the victims detailed herein, and the pattern of CARTER's travel between the United States and Haiti, CARTER traveled from the United States to Haiti with the purpose of engaging in illicit sexual conduct with John Doe #7 and other minor residents at the Center, and did in fact engage in that illicit sexual conduct with John Doe #7 following his arrival in Haiti.

### CONCLUSION

34. Based on the facts set forth in this affidavit and my training and experience, I submit that there is probable cause to believe that CARTER committed violations of federal law,

specifically, on or about October 30, 2003, MATTHEW ANDREW CARTER, a.k.a. "William Charles Harcourt," a.k.a. "Bill Carter," United States citizen, traveled in foreign commerce from the United States, that is from Miami International Airport in Miami, Florida, in the Southern District of Florida, to Haiti for the purpose of engaging in illicit sexual conduct with John Doe #7, a minor at the time, and other minors in his care and custody at the Center, in violation of Title 18, United States Code, Section 2423(b).

FURTHER AFFIANT SAYETH NAUGHT.

_____
ALVARO FLORES, SPECIAL AGENT
IMMIGRATION AND CUSTOMS
ENFORCEMENT, HOMELAND SECURITY
INVESTIGATIONS

Subscribed and sworn to before me on
this the ____ day of May 2011:

_____
JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE