**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.  11-CR-20350-LENARD/O'SULLIVAN(s)(s)**

**UNITED STATES OF AMERICA**

**v.**

**MATTHEW ANDREW CARTER,**
**a/k/a "William Charles Harcourt,"**
**a/k/a "Bill Carter,"**

                                    **Defendant.**
_____/

### UNITED STATES' MOTION *IN LIMINE* TO INTRODUCE
### OTHER ACTS EVIDENCE PURSUANT TO FED. R. EVID. 413, 414 AND/OR 404(b)

The United States of America files this Motion *in Limine* seeking leave to introduce

evidence of the Defendant's prior acts of sexual assault and child molestation pursuant to Federal

Rules of Evidence 413 and 414, and, alternatively, pursuant to Rule 404(b).  In short, the United

States seeks to admit evidence that the Defendant sexually assaulted and molested multiple

minor victims between in or around 1972 and 2001.

For the reasons explained below, this evidence is admissible under Rules 413 and 414 as

evidence of, *inter alia*, the Defendant's intent, motive, propensity, identity (*modus operandi*),

and plan to commit the conduct charged in the Second Superseding Indictment.  This evidence is

also admissible under Rule 404(b) to prove the Defendant's intent, motive, plan, and identity.

### I.  PROCEDURAL AND FACTUAL BACKGROUND

Defendant Matthew Andrew Carter, a/k/a "William Charles Harcourt," a/k/a "Bill

Carter," (hereinafter, "the Defendant"), a United States citizen, is charged with traveling (Counts

1 through 5) and attempting to travel (Count 6) in foreign commerce from the United States to

Haiti for the purpose of engaging in illicit sexual conduct with minors, in violation of Title 18, United States Code, Section 2423(b), on or about October 2, 2001, October 30, 2003, November 27, 2004, February 27, 2006, September 15, 2009, and May 8, 2011.  [D.E. 71].

At trial the evidence will show that beginning in or around 1995 until his arrest on May 8, 2011, the Defendant operated the Morning Star Center (hereinafter, "the Center"), in the vicinity of Port-au-Prince, Haiti.  The Center was a residential facility that provided shelter, food, money, schooling, and toys to Haitian minors and young adults.[1]  During this same period, the Defendant, as director of the Center, regularly traveled between the United States and Haiti to raise charitable funds to finance the continued operation of the Center.

Between the Center's opening in approximately 1995 and April 7, 2011 (the date of the Defendant's last trip from Haiti to the United States before his arrest), the Defendant consistently engaged in illicit sexual conduct with the Haitian minors in his care and custody at the Center. The illicit sexual conduct generally consisted of the Defendant performing oral sex on the minors, requiring the minors to perform oral sex on the Defendant, requiring the minors to masturbate the Defendant (often with lotion or lubricant), and/or the Defendant masturbating the minors or otherwise touching the minors' nude genitalia.  The Defendant made the minors' participation in illicit sexual conduct with the Defendant necessary in order for the minors to receive money and/or gifts, and/or to continue receiving the shelter, food, and schooling that the Defendant provided through the Center.  The Defendant often engaged in these sexual acts with the minors at the Center in the middle of the night or in the early morning when other Center residents slept.  The Defendant often brought the boys to his bedroom to perform these sex acts

---

[1]    The Center was commonly referred to as an orphanage; however, many of the residents were not orphans. Rather, parents with extremely limited or no means to support their children would send their children to the Center so they could receive the material support and educational opportunities that these families were otherwise unable to provide.

or simply performed these sex acts at the child's bed.  The Defendant's victims during the charging period ranged between the ages of six (6) and seventeen (17) years old.

As direct evidence of the charged offenses, the United States intends to introduce the testimony of victims who resided with the Defendant at the Center between approximately 1995 and April 7, 2011.  In general, these victims will testify about the following:  the Defendant's establishment of the Center in or around 1995; their respective backgrounds, and how they came to live at the Center; the Center's different locations in and around Port-au-Prince, Haiti; the Defendant's operation of the Center, and daily life at the Center; the different standard of living between the Defendant and the Center residents; the Defendant's consistent pattern of engaging in the above-described illicit sexual conduct with minors at the Center; the Defendant's practice of favoring those minor boys at the Center who submitted to the Defendant's sexual abuse; the Defendant's use of threats and/or rewards to persuade, coerce, and/or induce the minors to participate in illicit sexual conduct with the Defendant; the Defendant's use of physical force, and physical and verbal abuse to compel minors to engage in illicit sexual conduct with him; the Defendant's travel between the United States and Haiti; the Defendant's statements and admissions regarding his illicit sexual conduct with minors at the Center; and the Defendant's various efforts to conceal his illicit sexual conduct at the Center.

The evidence will show that from the Center's opening in or around 1995 until the Defendant's arrest in 2011, the Defendant targeted vulnerable and impoverished Haitian minor boys whose families could not afford to care for them, lured these boys into the Center with the promise of a better life, and then systematically abused these boys.  However, the Defendant's sexual predilection for minor boys began well before the period charged in the Second Superseding Indictment (hereinafter "the Indictment").  Decades earlier, the Defendant

committed other acts of sexual assault and child molestation that are virtually identical to the charged conduct.  These other acts are admissible under Rules 413, 414 and/or 404(b).

## II. ADMISSIBILITY OF EVIDENCE UNDER RULES 413 AND 414

### A.    Federal Rules of Evidence 413 and 414

In 1994, as part of the Violent Crime Control and Law Enforcement Act, Congress enacted Rules 413 and 414.  Rule 413 provides:  "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault.  The evidence may be considered on any matter to which it is relevant."  Fed. R. Evid. 413(a).  Rule 414 similarly provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation.  The evidence may be considered on any matter to which it is relevant."  *See* Fed. R. Evid. 414(a).

Rule 413 defines "offenses of sexual assault" as, *inter alia*, "contact, without consent, between any part of the defendant's body … and another person's genitals or anus;" and "contact, without consent, between the defendant's genitals or anus and any part of another person's body."  Fed. R. Evid. 413(d)(2) and (d)(3).  Likewise, Rule 414 defines an act of "child molestation" as, *inter alia*, "contact between any part of the defendant's body … and the genitals or anus of a child;" and "contact between the genitals or anus of the defendant and any part of the body of a child."  Fed. R. Evid. 414(d)(2)(C) and (d)(2)(D).  "Child" is defined as "a person below the age of 14."  Fed. R. Evid. 414(d)(1).

In contrast to Rule 404(b), which prohibits the admission of evidence to prove the defendant's criminal propensity to commit the charged offense, in sexual assault and child molestation cases, Rule 413 and 414 evidence that the defendant committed a prior similar

offense "'may be considered for its bearing on any matter to which it is relevant,' including the defendant's propensity to commit such offenses."  *United States v. Hollow Horn*, 523 F.3d 882, 887 (8th Cir. 2008) (quoting Fed. R. Evid. 413, 414) (internal citations omitted).

Relevant evidence of a defendant's other acts of sexual assault or child molestation is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice or by any other factor under Rule 403.  *See United States v. Carino*, 368 Fed. Appx. 929, 930 (11th Cir. 2010); *United States v. Guidry*, 456 F.3d 493, 503 (5th Cir. 2006).[2]

**B.    Summary of Defendant's Other Acts of Sexual Assault and Child Molestation[3]**

On November 22, 2011 and March 13, 2012, the United States filed notices of intent to introduce evidence of other acts of sexual assault and child molestation at trial (hereinafter "Notices").  [D.E. 55, 89].  The United States now moves *in limine* to admit the testimony of S.T., P.M., D.J.M., I.M., J.P.E., David McCrum, W.J.B., J.D.J, and J.F.[4]  This evidence will show that the Defendant sexually assaulted and/or molested minor boys in England and the United States from in or around 1972 to in or around 1979; in Haiti from in or around 1980 to in

---

[2]    Because the language of Rules 413 and 414 are so similar and because they serve the identical function of permitting the use of propensity evidence in sexual abuse cases, courts commonly rely on cases interpreting one rule to interpret the other.  *See, e.g., United States v. Sioux*, 362 F.3d 1241, 1244, n.4 ("Due to the striking similarities between these rules and the fact that they are *in pari materia*, we have followed decisions interpreting each of these rules individually in cases interpreting their companions.").

[3]    Pursuant to the Stipulated Protective Order, dated July 25, 2012, the victims whose testimony is discussed here will be referred to by their initials in order to protect their privacy.  [D.E. 109].  The United States will disclose the full names of the victims discussed herein to the Defendant through his counsel.

[4]    The United States previously filed notice of its intent to introduce the testimony of S.T., P.M., D.J.M., I.M., David McCrum, W.J.B., and J.F.  *See* D.E. 55 and 89.  Through this motion, the United States also seeks to introduce the testimony of J.P.E. and J.D.J., whose testimony was not summarized in the previously filed Notices. This motion serves as formal notice of the United States' intent to introduce the testimony of J.P.E. and J.D.J. pursuant to Rules 413, 414, and/or 404(b).

This motion does not discuss all of the evidence summarized in the United States' previously filed Notices. However, by not including all of the previously noticed evidence in this motion, the United States does not withdraw its intent to introduce that evidence at trial, either in its case-in-chief or in rebuttal.

or around 1982; in Egypt from in or around 1987 to in or around 1991; and at the Morning Star Center beginning in or around 1995 through 2001.[5]

1.      **Evidence of the Defendant's Sexual Abuse of Minors Between 1972 and 1979**

The United States provides a brief summary herein of the evidence it now seeks to admit and incorporates by reference the detailed facts proffered in its earlier Notice regarding the testimony of S.T., P.M., D.J.M., and I.M.  [D.E. 55].

a.      *Testimony of S.T. Pursuant to Rule 414*

At trial, the United States intends to introduce the testimony of S.T., who will testify that the Defendant molested him in England between approximately 1972, when S.T. was about nine (9) years old, and 1974, when S.T. was about eleven (11) years old, by forcing S.T. to masturbate the Defendant's bare penis in the middle of the night and then ejaculating onto S.T., and by fondling and kissing S.T.'s bare penis.  S.T. will also testify that he saw the Defendant take other boys out of their beds in the middle of the night, including S.T.'s brother and another boy who was known as the Defendant's undisputed favorite boy.[6]

b.      *Testimony of P.M. Pursuant to Rule 413*

At trial, the United States intends to introduce the testimony of P.M. who will testify that the Defendant sexually abused P.M. in England from in or around 1976, when P.M. was approximately sixteen (16) years old, until in or around 1977, when P.M. was approximately seventeen (17) years old.  The Defendant sexually assaulted P.M. by forcing P.M. to masturbate

---

[5]        As explained in Section II.B.4, evidence of the Defendant's sexual abuse of the minors at the Morning Star Center between 1995 and 2001 constitutes direct evidence of the charged offenses, or is otherwise intrinsic or inextricably intertwined with the evidence of the charged conduct.  This evidence is alternatively admissible as other acts evidence under Rules 413, 414, and/or 404(b), and is therefore included in the instant motion.

[6]        The United States previously provided notice of this testimony pursuant to Rule 404(b).  *See* D.E. 55 at 20. However, the United States maintains that this evidence is also admissible pursuant to Rules 413 and 414.

the Defendant, by touching P.M.'s bare penis, and, on one occasion, by sodomizing P.M.  P.M. will testify that the Defendant usually abused him at night.

### c.    Testimony of D.J.M. Pursuant to Rules 413 and 414

At trial, the United States intends to introduce the testimony of P.M.'s younger brother, D.J.M.  D.J.M. will testify that the Defendant sexually abused D.J.M in England and in the United States from in or around 1974 or 1975, when D.J.M. was approximately thirteen (13) years old, through in or around 1978, when D.J.M. was about seventeen (17) years old.  The Defendant molested and sexually assaulted D.J.M. by performing oral sex on D.J.M., forcing D.J.M. to masturbate him (the Defendant), fondling D.J.M.'s nude genitals, and, on one occasion, attempting to sodomize D.J.M.  On this occasion, the Defendant attempted to insert his penis into D.J.M.'s anus; however, D.J.M. recalls straining and clenching his buttocks until the Defendant stopped trying to penetrate D.J.M.  D.J.M. will also testify that the sexual abuse usually occurred at night when D.J.M. was in bed.

### d.    Testimony of I.M. Pursuant to Rules 413 and 414

At trial, the United States intends to introduce the testimony of P.M. and D.J.M.'s younger brother, I.M.  I.M. will testify that the Defendant sexually abused him in England and the United States from in or around 1975, when he was approximately twelve (12) years old, through in or around 1978, when he was about fifteen (15) years old.  The Defendant molested and sexually assaulted I.M. in the same way that he abused P.M. and D.J.M. – by performing oral sex on I.M., forcing I.M. to masturbate him (the Defendant), fondling I.M.'s genitals, and, on two occasions, attempting to sodomize I.M.  In general, the Defendant would sexually abuse I.M. a couple of hours after I.M. went to sleep.

I.M. saw the Defendant again in the early 1980s when the Defendant traveled to London and asked I.M. to meet him (the Defendant).  The Defendant told I.M. that he (the Defendant) was doing missionary work in Haiti.  The Defendant also told I.M. that the Defendant wanted to apologize to I.M. for what he had done.  The Defendant asked I.M. to forgive him (the Defendant) for sexually abusing I.M.  The Defendant told I.M. that he was now a missionary with an evangelic church, and that the church was praying for the Defendant because the church believed that the Defendant's problem (*i.e.*, his sexual desires for children) was demonic and that the Defendant had demons.  However, the Defendant told I.M. that his demons would leave when they were ready and that he (the Defendant) did not need prayer.

**2.    Evidence of the Defendant's Sexual Abuse of Minors Between 1980 and 1982**

> *a.    Testimony of J.P.E. Pursuant to Rule 414*

At trial, the United States intends to introduce the testimony of J.P.E. who will testify that the Defendant sexually abused him when J.P.E. was about seven (7) or eight (8) years old.  J.P.E. was born in Haiti in 1973.  He met the Defendant in Montrouis, Haiti, in approximately 1980 when J.P.E. was seven (7) or eight (8) years old.  At that time, J.P.E. was attending a school run by American missionaries.  J.P.E. recalls visiting the Defendant at his home.  J.P.E. will testify that approximately three (3) months after meeting the Defendant, the Defendant took J.P.E. into the Defendant's bedroom and began to perform oral sex on J.P.E.  J.P.E. pulled away and the Defendant then put baby oil in J.P.E.'s hand and had J.P.E. masturbate the Defendant.

J.P.E. will also testify that he was a member of a singing group with three other boys from Haiti.  J.P.E. and the other members of the singing group traveled to the United States with the Defendant on four separate occasions to sing and raise money at churches throughout the United States.  The first trip to the United States was in or around 1981 when J.P.E. was about

eight (8) or nine (9) years old.  During this trip, J.P.E. recalls meeting a woman whom he

believes was the Defendant's wife or girlfriend and that he and the other boys stayed at the

woman's house for two (2) days.

     **b.**    ***Testimony of David McCrum Pursuant to Rules 413 and 414[7]***

     The United States provides a brief summary of Mr. McCrum's testimony herein, and

incorporates by reference the detailed facts proffered in its earlier Notice regarding his

testimony.  [D.E. 89].  The United States seeks to introduce the testimony of David McCrum

who will testify that on at least two separate occasions, the Defendant admitted to sexually

abusing boys in Haiti.  These admissions were made in or around 1979 or 1980, and again in or

around 1988.

    **3.**    **Evidence of the Defendant's Sexual Abuse of Minors Between 1987 and 1991**

     **a.**    ***Testimony of J.D.J. Pursuant to Rules 413 and 414***

     J.D.J., who resided at the Center from in or around 1996 to in or around 1999, will testify

that on two separate occasions the Defendant admitted to J.D.J. that he (the Defendant) sexually

abused minor boys while he lived in Egypt.

     Between 1996 and 1997, the Defendant first admitted that he sexually abused minor boys

in Egypt.  According to J.D.J., the Defendant returned to the Center one evening and J.D.J.

proceeded to prepare the Defendant's dinner, which was one of J.D.J.'s assigned chores at the

Center.  After J.D.J. prepared the Defendant's meal, the Defendant asked J.D.J. to join him

because he wanted to speak to J.D.J. alone, away from the other boys who were in the apartment

at the time.  J.D.J. will testify that the Defendant explained to J.D.J. that J.D.J. did not really

---

[7]     Because the precise age of the victims during this period is unknown and could range from eight (8) to sixteen (16) years old (based on Mr. McCrum's observations of the children living at the home in Port-au-Prince where he visited the Defendant in the early 1980s), the United States seeks to introduce Mr. McCrum's testimony under Rules 413 and 414.

know him (the Defendant), that he (the Defendant) had sexually abused minor boys in Egypt, that he was continuing to sexually abuse boys at the Center, and that he wanted to stop this behavior because he knew it was wrong.  According to J.D.J., the Defendant was weeping as he made these admissions.  The Defendant informed J.D.J. that he (the Defendant) would fast and pray for forty (40) days because this would help the Defendant stop sexually abusing the minor boys at the Center.  Approximately one week later, J.D.J. saw the Defendant bring a minor boy (approximately 8 to 10 years old) into the Center and take the boy into the shower with him (the Defendant).

On a second occasion, the Defendant confessed to J.D.J. about sexually abusing minors in Egypt.  This confession occurred sometime between in or around 1997 and 1999, when J.D.J. left the Center.  On this occasion, the Defendant again asked to speak to J.D.J. alone.  Again, the Defendant started to weep and told J.D.J. that he (the Defendant) wanted to stop sexually abusing the boys at the Center because he knew it was wrong.  Again, he told J.D.J. that he had sexually abused minor boys in Egypt, was continuing to do the same thing to the boys at the Center, and that he (the Defendant) really needed to stop his behavior.  The Defendant once again said that he would fast and pray for forty (40) days in order to stop abusing the boys.  J.D.J. will testify that a few days after this conversation, he saw the Defendant spending more time in his bedroom with the minor boys at the Center and bringing boys from outside the Center into his bedroom.

### 4.    Evidence of the Defendant's Sexual Abuse of Minors at the Morning Star Center Before October 2, 2001

The United States seeks to introduce the testimony of three former residents of the Center whom the Defendant sexually abused between in or around 1995, when the Defendant founded the Center and October 2, 2001.  The United States maintains that like the testimony of victims whose sexual abuse at the Center started before the 2001 indictment period and continued

through the charging period, this evidence of the Defendant's sexual abuse of the Center residents between 1995 and 2001 constitutes direct evidence of the Defendant's intent to engage in illicit sexual conduct with minors on the dates of travel charged in Indictment.  That is, the evidence establishes the Defendant's long-standing pattern of engaging in illicit sexual conduct with minors at the Center before October 2, 2001, and, therefore, proves that on October 2, 2001 (Count One) and after, the Defendant traveled with the intent to engage in illicit sexual conduct with minors at the Center.  Simply put, on those travel dates charged in the Indictment, the Defendant intended to continue his unwavering pattern of behavior.

This evidence is alternatively intrinsic to or inextricably intertwined with the charged offenses.  In other words, the Defendant's pre-October 2, 2001, illicit sexual conduct is part of the same series of "transactions" charged in the Indictment, and it illustrates the context and "setup" of the crimes charged.  *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.  And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.") (alteration in original) (internal citations omitted).  This is the case for victims like W.J.B., J.D.J. and J.F., whose abuse occurred before 2001, as well as those victims whose abuse began before 2001 and continued after 2001.

Alternatively, this evidence is admissible under Rules 413, 414, and/or 404(b), as discussed below.[8]

### a.    Testimony of W.J.B. Pursuant to 413 and 414

W.J.B. lived at the Center beginning in or around 1995.  He will testify that in or around 1995, when he was approximately thirteen (13) years old, the Defendant approached W.J.B. at night while W.J.B. was asleep on a couch.  The Defendant was kneeling on the floor beside the couch and the Defendant was trying to take W.J.B.'s penis out of his boxers.  W.J.B. will also testify that in or around 1998, when he was about sixteen (16) years old, the Defendant held W.J.B.'s legs down and performed oral sex on W.J.B.  Afterward, the Defendant took W.J.B. to the market and offered to buy something for W.J.B.

W.J.B. will also testify that while living at the Center, W.J.B. saw minor boys performing oral sex on the Defendant on one occasion.  On a few occasions, W.J.B. saw the Defendant wake minor boys up at night and take them to the Defendant's bedroom.

### b.    Testimony of J.D.J. Pursuant to Rule 413

At trial, the United States intends to introduce the testimony of J.D.J., who lived at the Center from 1996 to 1999.  J.D.J. will testify that the Defendant sexually abused J.D.J. shortly after he moved into the Center in approximately 1996.  J.D.J. will testify that one morning, about two or three months after J.D.J. moved into the Center, he woke up to the Defendant putting peanut butter on his (J.D.J.'s) penis and that the Defendant proceeded to perform oral sex on J.D.J.  J.D.J. was approximately fifteen (15) or sixteen (16) years old when this happened.  J.D.J. will also testify that several weeks later, again, in the early morning hours, he awoke to the Defendant pulling down his (J.D.J.'s) pants.  J.D.J. pushed the Defendant away and struggled to

---

[8]     By including this evidence in the instant motion, the United States does not waive or concede its position that such evidence is direct or intrinsic evidence of the charged offenses.

keep his pants on.  The Defendant then stopped trying to take off J.D.J.'s pants.  J.D.J. will also testify that on a third occasion he was in the Defendant's bedroom watching television and the Defendant asked him to masturbate him (the Defendant).  The Defendant told J.D.J. that if J.D.J. masturbated him, he would give J.D.J. anything he wanted.  J.D.J. refused and the Defendant kicked J.D.J. out of his room.

J.D.J. will also testify that he saw the Defendant regularly bring minor boys into the shower with him and that the Defendant also brought boys into his bedroom and locked the bedroom door.  J.D.J. also saw the Defendant put peanut butter on other boys' penises.  J.D.J. will further testify that he once observed the Defendant put lotion in the hand of one of the minor residents (P.C.) and then had the boy masturbate him (the Defendant).

Further, as discussed *supra*, on two occasions the Defendant told J.D.J. that he (the Defendant) wanted to stop sexually abusing the boys at the Center because he (the Defendant) knew it was wrong.

### c.     *Testimony of J.F. Pursuant to Rules 413 and 414*

J.F. will testify that he moved into the Center in or around 1996 when he was approximately ten (10) or eleven (11) years old.  The Defendant engaged in illicit sexual conduct with J.F. almost daily until J.F. was approximately fourteen (14) or fifteen (15) years old (*i.e.,* in or around 1999 or 2000).  This illicit sexual conduct consisted of the Defendant performing oral sex on J.F. and making J.F. masturbate the Defendant.

The first occasion of sexual abuse occurred a few days after J.F. moved in to the Center.  The Defendant came to J.F.'s bed in the middle of the night and performed oral sex on J.F.  A few days after this first occurred, J.F. brought ice water to the Defendant in the Defendant's bedroom.  The Defendant then made J.F. masturbate the Defendant with lotion.

On other occasions, the Defendant sexually abused J.F. with other minor boys in the room. For example, the Defendant gave cookies to J.F. and another minor resident (P.C.), in exchange for their masturbation of the Defendant. The Defendant would put lotion in their hands and make them masturbate him in his bed. On at least one occasion, the Defendant also performed oral sex on P.C. while J.F. was present. J.F. also saw other minor boys masturbate the Defendant.

## III. DEFENDANT'S OTHER ACTS ARE ADMISSIBLE UNDER RULES 413, 414, AND 403[9]

### A. Rules 413 and 414 Apply Here

When assessing the admissibility of Rule 413 and Rule 414 evidence, the Court must make three threshold determinations before reaching the 403 balancing test: (1) the defendant is accused of an offense of sexual assault or child molestation, *see* Fed. R. Evid. 413(a) and 414(a); (2) the evidence proffered involves the defendant's commission of another sexual assault or child molestation, *id.*; and (3) the proffered evidence is relevant, *see* Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."). *See, e.g., United States v. Sturm*, 673 F.3d 1274, 1282 and 1284 (10th Cir. 2012) (citing *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998)); *United States v. Gabe*, 237 F.3d 954, 959 (8th Cir. 2001).

---

[9] If the Defendant's prior sexual assaults and child molestations constitute evidence of "other sexual behavior" by the victims pursuant to Federal Rule of Evidence 412, the United States notes that this evidence is admissible under Rule 412(b)(1)(B) ("evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct … if offered by the prosecutor" is admissible). Similarly, if the notice, motion, and other procedures set forth in Federal Rule of Evidence 412(c) apply to the Defendant's prior sexual assaults and child molestations, the United States satisfies those requirements via the instant motion, the previously filed notices [D.E. 55 and 89] that specifically describe the evidence (which are incorporated herein by reference), and notice previously provided to victims about the United States' intent to introduce this evidence at trial. However, in an abundance of caution, the United States will file a separate sealed motion *in limine* addressing Rule 412(b)(1)(B) and evidence of the sexual behavior between the Defendant and the victims of his charged and uncharged conduct.

As summarized above, the Defendant has been charged with traveling and attempting to travel in foreign commerce for the purpose of engaging in illicit sexual conduct with minors. *See* 18 U.S.C. § 2423(b).[10]  The victims of the charged offenses ranged in age from six (6) to seventeen (17) years old.  Thus, the "illicit sexual conduct" with which the Defendant is charged falls squarely within the ambit of sexual assault and child molestation conduct defined in Rules 413 and 414.[11]

Similarly, the proffered evidence qualifies as other acts of sexual assault and child molestation.  The proffered evidence involved victims ranging in age from nine (9) to seventeen (17) years of age, and pertained to the Defendant forcing minor boys to masturbate him; the Defendant performing oral sex on minor boys; the Defendant masturbating the minor boys; and/or the Defendant sodomizing or attempting to sodomize the minor boys.

Moreover, the proffered evidence is relevant in at least six different ways, including as proof of the Defendant's intent, motive, plan, and propensity to commit the charged offenses, as well as proof of the Defendant's identity or *modus operandi*, and as a means to bolster the credibility of the victims of the charged offenses.  Propensity to commit the charged crime is a

---

[10]     Title 18, United States Code, Section 2423(f) (2003) defines "illicit sexual conduct" to include "a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States."  The definition of "sexual act" includes "contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus," and "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  18 U.S.C. §§ 2246(2)(B) and (2)(D).

[11]     *See* Fed. R. Evid. 413(d)(1)-(3) (defining "sexual assault" as, *inter alia*, "any conduct prohibited by 18 U.S.C. Chapter 109A"; "contact, without consent, between any part of the defendant's body—or object—and another person's genitals or anus"; or "contact, without consent, between the defendant's genitals or anus and any part of another person's body"); Fed. R. Evid. 414(d)(2)(A), (C) and (D) (defining "child molestation" as, *inter alia*, "any conduct prohibited by 18 U.S.C. Chapter 109A and committed with a child"; "contact between any part of the defendant's body—or object—and a child's genitals or anus"; or "contact between the defendant's genitals or anus and any part of a child's body").  Furthermore, because many of the victims in the charged offenses were under fourteen (14) years old at the time the Defendant molested them, the charged conduct satisfies the definition of "child" under Rule 414.  *See* Fed. R. Evid. 414(d)(1).

basis of admissibility unique to Rules 413 and 414, and is the focus of this section.  Intent, motive, plan, identity, and witness credibility are permissible bases of admissibly under Rules 413/414 and Rule 404(b), and are therefore explored in the Rule 404(b) analysis below.

Rules 413 and 414 "create an exception to the general prohibition against 'propensity evidence found in Federal Rule of Evidence 404(b) … .'  *United States v. Hawpetoss*, 478 F.3d 820, 823 (7th Cir. 2007).  *See also Carino*, 368 Fed.Appx. at 929 (observing that Rule 414 creates an exception in child molestation cases to Rule 404(b)'s bar on propensity evidence).  These rules are "based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes."  *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (citations omitted).[12]  "Congress intended, in passing Rule 413 to provide an exception to Rule 404(b)'s general bar and to permit the trier of fact to draw inferences from propensity evidence."  *United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009).

Evidence of the Defendant's propensity to commit the crimes charged is relevant because such evidence suggests that the Defendant, having sexually abused minor boys before "is more likely to have done the same thing again."  *Rogers*, 587 F.3d at 821.  Thus, the proffered evidence of the Defendant's prior sexual abuse of minors makes a fact of consequence (*e.g.*, whether the Defendant committed the charged crimes) more or less likely.  *Id.* (citing *Old Chief v. United States*, 519 U.S. 172 (1997)).

---

[12]      *See also United States v. McGuire*, 627 F.3d 622, 626-27 (7th Cir. 2010) (under Rules 413 and 414, evidence of sexual assault and child molestation is admissible to demonstrate a propensity to commit such crimes); *United States v. Redlightning*, 624 F.3d 1090, 1119 (9th Cir. 2010) (Rule 413 "provides an exception for admission of propensity evidence when it involves the commission of another sexual assault"); *Batton*, 602 F.3d at1197-98 ("Both Rule 413 and Rule 414 … provide exceptions to Rule 404(a)'s prohibition on the admission of propensity evidence."); *United States v. Hollow Horn*, 523 F.3d 882, 888 (8th Cir. 2008) (same); *United States v. Kelly*, 510 F.3d 433, 436-37 (4th Cir. 2007) (same); *United States v. Larson*, 112 F.3d 600, 604 (2d Cir. 1997) (same).

**B.  The Defendant's Other Acts of Sexual Abuse are Admissible Under Rule 403**

Although the evidence of the Defendant's past acts of sexual assault and child

molestation is admissible under Rules 413 and 414, it is still subject to the Rule 403 balancing

test.  *See, e.g., Carino*, 368 Fed.Appx. 929, 930 ("evidence admissible under Rule 414 must also

meet requirements of other provisions of the Federal Rules of Evidence, including Rule 403");

*Guidry*, 456 F.3d at 503 (applying Rule 403 balancing test to Rule 413 evidence).  However, in

assessing the admissibility of Rule 413/414 evidence under Rule 403, courts should be mindful

that "there is 'strong legislative judgment that evidence of prior sexual offenses should ordinarily

be admissible.'"  *United States v. Medicine Horn*, 447 F.3d 620, 623 (8th Cir. 2006) (quoting

*LeCompte,* 131 F.3d 767, 769 (8th Cir. 1997)).[13]

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence."  Fed. R. Evid. 403.  "Unfair prejudice within [the context of Rule 403]

means an undue tendency to suggest decision on an improper basis, commonly, though not

necessarily, an emotional one."  *Old Chief*, 519 U.S. at 172-73.  Moreover, "Rule 403 is an

extraordinary remedy which the district court should invoke sparingly, and the balance ... should

be struck in favor of admissibility."  *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003)

(quotation marks omitted).  *See also United States v. US Infrastructure*, 576 F.3d 1195, 1211

(11th Cir. 2009) ("Rule 403 is an extraordinary remedy that must be used sparingly because it

results in the exclusion of concededly probative evidence").  The risk of undue prejudice can, for

example, be reduced by a district court's limiting instruction.  *United States v. Ramirez*, 426 F.3d

---

[13]      *See also Larson*, 112 F.3d at 605 (explaining that "[w]ith respect to the Rule 403 balancing, however, the sponsors [of Rule 414] stated that the presumption is that the evidence admissible pursuant to these rules is typically relevant and probative and that its probative value is not outweighed by any risk of prejudice") (citations omitted).

1344, 1354 (11th Cir. 2005).  *See also Hollow Horn*, 523 F.3d at 889 (affirming admission of Rule 414 evidence and holding that district court's use of limiting instruction decreased risk of unfair prejudice); *Batton*, 602 F.3d at 1199 (district court's use of limiting instruction to address prejudicial effect of Rule 413/414 evidence).

In the Rule 413/414 context, "evidence cannot be excluded under Rule 403 simply because it tends to show that the defendant has a propensity to commit a sex offense" as it would be under Rule 404(b).  *United States v. Loughry*, 660 F.3d 965, 970 (7th Cir. 2011) (holding that "although evidence cannot be excluded under Rule 403 simply because it tends to show that the defendant has a propensity to commit a sex offense," Rule 403 continues to apply to Rule 414 evidence, and remanding district court's admission of Rule 414 evidence for further analysis under Rule 403).  In other words, evidence of a defendant's propensity to commit sex offenses may be prejudicial, but it is not necessarily unfairly prejudicial.  The district court must, in the Rule 413/414 context, look further at the probative value of the propensity evidence before outright excluding it.  *See, e.g., Medicine Horn*, 447 F.3d at 623 (holding that "the inflammatory potential inherent in the sexual nature of prior sexual offenses cannot be considered" because "the question is not whether the evidence is prejudicial … but whether the evidence was *unfairly* prejudicial") (emphasis in original).[14]

Here, the evidence of the Defendant's prior acts of sexual abuse is highly probative of his propensity to commit the charged offenses and is not outweighed by a danger of unfair prejudice

---

[14]   This is no different from the 404(b) context, where

> [d]emonstrating that a piece of evidence is prejudicial is not enough to warrant exclusion under Rule 403 by itself since virtually all evidence presented against a criminal defendant can be considered prejudicial.  Rather, exclusion is warranted only when the evidence creates a danger of *unfair* prejudice that substantially outweighs the probative value of the evidence.

*United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009).

to the Defendant for several reasons.[15]  Furthermore, the proffered evidence involves a pattern of conduct that is identical to the charged conduct—in both his prior acts and the charged conduct, the Defendant targeted vulnerable, underprivileged minor boys; established unfettered access to these boys by working in orphanages or children's homes, or otherwise befriended neglected boys from poor families; and used his authority to force his minor victims to engage in illicit sexual conduct, or otherwise coerced these victims to engage in sexual conduct by enticing them with necessities like food, clothing, shelter, and money.  Moreover, the nature of the sexual acts in the Defendant's other acts of sexual abuse and in the charged conduct is identical—the Defendant performed oral sex on minor boys, the Defendant forced minor boys to masturbate him, and the Defendant masturbated minor boys.

The similarity between the Defendant's prior acts and the charged conduct militates strongly in favor of admissibility because it minimizes the risk of unfair prejudice that the proffered evidence may pose.  *See, e.g., Gabe*, 237 F.3d at 960 (affirming district court's admission under Rules 414 and 403 of testimony that the defendant sexually molested the witness 20 years earlier; observing that the similarity between prior abuse and charged acts, including age of victims, defendant's relationship to victims, and nature of sex acts, "would not be so facially inflammatory as to unduly divert attention from issues of the case"); *United States v. Holy Bull*, 613 F.3d 871, 873 (8th Cir. 2010) (affirming district court's admission of prior sexual abuse evidence under Rules 414 and 403 and holding because prior acts and charged conduct were similar, prior acts "would not be so facially inflammatory as to unduly divert attention from the issues of the case"); *United States v. O'Connor*, 650 F.3d 839, 853 (2d Cir. 2011) (holding no abuse of discretion because similarity of Rule 413 evidence and charged

---

[15]     As discussed *infra* the prior acts evidence is also highly probative of the Defendant's intent, motive, plan, and identity, and the credibility of the charged victims.

conduct made probative value of evidence greater than risk of unfair prejudice) (citing *Larson*, 112 F.3d at 605 (finding no abuse of discretion in admission of testimony about acts that occurred 16 to 20 years before trial where "similarity of the events clearly demonstrated…testimony's relevance")); *Batton*, 602 F.3d at 1196-97 (affirming admission of Rule 413 evidence under Rule 403 where "prior sexual assault against a fourteen-year old was strikingly similar to the charged offense and helped the jury determine the validity of the [charged offense] victim's accusations" and explaining that probative value of the prior sexual assault "lies in its ability to show [the defendant] has a propensity for grooming and sexually assaulting teenage boys"); *Benally*, 500 F.3d at 1091-92 (affirming district court's admission of Rule 413/414 evidence observing similarity of prior acts and charged conduct, and finding the need to address challenges to child witnesses' credibility outweighed danger of unfair prejudice under Rule 403); *McGuire*, 627 F.3d at 627 (affirming admission of prior acts of sexual abuse, noting "striking similarities" between prior acts and uncharged conduct and fact that prior acts evidence was material to address the "brutal cross-examination" of victim of charged conduct).

## IV.  THE DEFENDANT'S OTHER ACTS OF SEXUAL ABUSE ARE ADMISSIBLE UNDER RULE 404(b)

The proffered evidence is, alternatively, admissible under Rule 404(b) to prove the Defendant's identity, motive, identity, and plan to commit the charged offenses, as well as to bolster witness credibility.[16]  Rule 404(b) prohibits evidence of a person's character or character trait "to prove that on a particular occasion the person acted in accordance with the character or trait."  However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).

---

[16]    Identity, motive, identity, plan and witness credibility are, as noted *supra*, also permissible bases for admission under Rules 413 and 414.

The Eleventh Circuit applies a three-part test to determine whether extrinsic evidence of prior bad acts is admissible under Rule 404(b): "First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; [and] Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." *United States v. Matthews*, 431 F.3d 1296, 1311-12 (11th Cir. 2005) (internal citations omitted).

As to the first prong, the relevance of the proffered evidence is plain.  First, the proffered evidence is relevant to prove the Defendant's intent to commit the charged offenses.  The Defendant has entered a "not guilty" plea and therefore "makes intent a material issue which imposes a substantial burden on the government to prove intent." *United States v. Zappata*, 139 F.3d 1355, 1358 (11th Cir. 1998) (internal citations omitted).  Moreover, central to the United States' burden in this case is proof of the Defendant's intent or purpose on the travel dates charged in the indictment.[17]  Consistent with the Defendant's post-*Miranda* statements, the United States anticipates that the Defendant's position at trial will be that he never engaged in any illicit sexual conduct with the minors at the Center and that he never traveled with the intent to engage in such conduct.  Evidence of the Defendant's prior illicit sexual conduct is critical to establish his intent to commit the charged offenses.  *See United States v. Barrington*, 648 F.3d 1178, 1186 (11th Cir. 2011) (internal citations omitted) ("[w]here extrinsic act evidence is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses").

---

[17]    *See* Eleventh Circuit Pattern Jury Instruction No. 93.2 (2010) ("The defendant's dominant purpose in … traveling in foreign commerce need not be to engage in illicit sexual conduct.  However, to meet the intent requirement the Government must prove that one of the defendant's motives was to engage in illicit sexual conduct") (internal citations omitted).

Second, the evidence of the Defendant's prior acts of sexual assault and child molestation is also relevant because they bolster the credibility of the victims in this case.  Proof of the Defendant's intent to engage in illicit sexual conduct with these victims is based largely on the testimony of the former Center residents that were sexually abused by the Defendant from 1995 through 2011.  The United States, therefore, anticipates that the victims' credibility will be questioned on cross-examination by defense counsel.  "Congress enacted [Rules 413 and 414] because these types of cases [referring to sexual abuse cases] often raise questions regarding the victim's credibility and a defendant's prior conduct can be especially probative." *Batton*, 602 F.3d at 1196 (alterations added) (citing *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998)).  In *Enjady* the Tenth Circuit explained that evidence of sexual assault under Rule 413 "has the undeniable value in bolstering the credibility of the victim … .  This is considered a purpose for the evidence other than propensity." *Enjady*, 134 F.3d at 1433.  "In passing Rule 413 Congress believed it necessary to lower the obstacles to admission of propensity evidence in a defined class of cases.  Its rationale for sexual assault cases included the assistance it provides in assessing credibility…." *Enjady*, 134 F.3d at 1431.  The proffered evidence is especially relevant in this case where the United States will rely largely on victim testimony to prove the Defendant's illicit sexual conduct, and expects the Defendant to challenge their credibility on cross-examination. *Id.; Benally*, 500 F.3d at 1092-93 (affirming district court's admission of evidence of four prior rapes where defendant was charged with aggravated sexual assault and noting district court's finding that evidence of prior acts were necessary to address challenges to credibility of child witnesses). *See also United States v. Garcia*, 148 Fed.Appx. 594, 595-96 (9th Cir. 2005) (affirming admission of prior acts of sexual abuse under Rule 404(b) to address

credibility challenges raised in cross-examination and as evidence of the defendant's intent, knowledge, and absence of mistake or accident).

Third, the proffered evidence establishes the Defendant's motive to commit the charged conduct by showing that the Defendant has "a taste for engaging in that crime or a compulsion to engage in it." *United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009) (internal citations and quotation marks omitted).  Evidence that the Defendant has sexually abused children previously establishes his sexual interest in children and "thereby serve[s] as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children." *Id.* (quoting *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) (affirming admission of prior acts of sexual molestation under Rule 404(b) as evidence of motive and identity)).

Fourth, the proffered evidence is probative of the Defendant's identity or *modus operandi* and plan.  "When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration.  The physical similarity must be such that it marks the offenses as the handiwork of the accused.  In other words, the evidence must demonstrate a modus operandi." *United States v. Phaknikone*, 605 F.3d 1099, 1108 (11th Cir. 2010).

Here, the Defendant's *modus operandi* is evident from the identical nature of the sexual abuse in the charged acts and the prior conduct.  The Defendant consistently performed oral sex on his minor victims, masturbated the minor boys, and forced the minors to masturbate him. Second, the type of victims the Defendant targeted and the tactics he used to sexually abuse the victims in the prior acts, that is, his *plan*, is identical to the plan the Defendant employed to commit the charged offenses.  As previously explained, in his prior acts and in the charged acts, the Defendant created, or availed himself of, opportunities to prey on neglected or underprivileged minor boys; he used his position of authority to force these boys to participate in

illicit sexual conduct, or otherwise enticed these boys with food, shelter or other necessities. *McGuire*, 627 F.3d at 626-27 (holding that testimony of four victims previously sexually abused by defendant was properly admitted under 404(b) as evidence of defendant's *modus operandi* and under Rule 413 and 414 as evidence of the defendant's propensity to commit the charged crimes where defendant was charged with violation of 18 U.S.C. § 2423(b)).

As to the second prong, the United States intends to establish the proffered evidence via witness testimony.  Such evidence will permit a jury finding that the Defendant committed the extrinsic act.  *See Kapordelis*, 569 F.3d at 1312 (affirming admission of victim's testimony about defendant's prior sexual abuse pursuant to Rules 404(b) and 403); *United States v. Grossman*, 233 Fed Appx. 963, 969 (11th Cir. 2007) (affirming admission of testimony regarding defendant's prior child molestation under Rules 404(b) and 403); *Sebolt*, 460 F.3d at 915 (affirming admission of testimonial evidence of defendant's prior molestation under Rules 404(b) and 403).

As to the third prong, the probative value of the proffered evidence is not substantially outweighed by the risk of unfair prejudice or the other factors set forth in Rule 403.  In this case, the prior acts provide strong evidence of the Defendant's intent, motive, identity or *modus operandi*, and plan.  *United States v. Case*, 367 Fed. Appx. 979 (11th Cir. 2010) (district court did not abuse discretion in admitting evidence under 404(b) of Internet chats in which defendant described molestation of child and images of young girls in sexually provocative poses because evidence was probative of defendant's intent to commit charged offense of using computer to entice a minor to engage in unlawful sexual activity in that both acts tended to show an interest in sex with young girls); *Kapordelis*, 569 F.3d at 1313-14 (defendant charged with producing, receiving, and possessing child pornography; holding that prior acts "[e]vidence that Defendant

traveled abroad to engage in sexual trysts with underage boys in Prague was … admissible under 404(b) as proof of knowledge, identity, or absence mistake or accident" and intent to produce child pornography while traveling abroad with victims; and that probative value was substantial and outweighed the prejudicial effect given that Defendant raised identity and knowledge defenses); *Grossman*, 233 Fed.Appx. at 969 (testimony of minor that defendant sexually molested her was not unfairly prejudicial evidence of defendant's intent under 404(b) where defendant was charged with attempting to entice minor for sexual activity and where defendant put his intent at issue); *United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (defendant charged with transporting minor in foreign commerce with intent to engage in criminal sexual activity under 18 U.S.C. § 2423(a); holding that evidence of an uncharged act of molestation of minor admissible under Fed. R. Evid. 404(b) and 403 to show defendant's state of mind and *modus operandi* and to rebut attack on witness credibility).

The evidence is also highly probative of the credibility of the victims of the charged conduct.  The Defendant's intent is a material fact at issue, which the United States will largely prove via victim witness testimony.  The credibility of the victims of the charged offenses therefore is paramount to the United States' burden of proving the Defendant's intent.  The Defendant will inevitably attempt to challenge the credibility of the victim witnesses during cross-examination.  Testimony of victims who were sexually abused years before the charged conduct, and who would not know the victims of the charged conduct, will effectively address challenges to the credibility of the victims of the Defendant's charged conduct.

Additionally, the similarities between the charged and uncharged acts minimize the risk that a jury would be inflamed by the admission of the proffered evidence and convict the Defendant on improper grounds.  *See, e.g., Sebolt*, 460 F.3d at 917 (holding prior sexual

molestation of young relative to prove defendant's identity and motive to commit charged

offenses, including possession and transportation of child pornography, properly admitted under

Rule 404(b); prior molestation and charges were similar in character and therefore would not

create unfair prejudice); *United States v. Williams*, 816 F.2d 1527, 1531-33 (11th Cir. 1987)

(affirming admission of prior rape under 404(b) where defendant was charged with assault with a

dangerous weapon, and holding that factual similarities between prior acts and charged conduct

made evidence highly probative of intent and not unfairly prejudicial under Rule 403).

## V. Conclusion

For the reasons explained herein, the United States respectfully moves *in limine* to admit

evidence of the Defendant's prior acts of sexual assault and child molestation pursuant to Rules

413, 414 and/or 404(b) of the Federal Rules of Evidence.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY:    *s/Maria K. Medetis*
Maria K. Medetis
Assistant United States Attorney
Court Identification No.:  A5501214
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9010
Fax: (305) 530-7976
Maria.Medetis@usdoj.gov

BY:    *s/Bonnie L. Kane*
Bonnie L. Kane
Trial Attorney
Child Exploitation and Obscenity Section
Criminal Division, U.S. Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20530

26

Tel:  (202) 514-5780
Fax:  (202) 514-1793
Bonnie.Kane@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2012, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to defense counsel Stuart Adelstein, Esq. and Philip Horowitz, Esq.

*/s/ Maria K. Medetis*
Maria K. Medetis

27