```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                       MIAMI DIVISION
                 CASE NO. 11-20350-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,        Miami, Florida

 5                 Plaintiff,         February 27, 2013

 6         vs.                        9:18 a.m. to 4:43 p.m.

 7   MATTHEW ANDREW CARTER,

 8                 Defendant.         Pages 1 to 104
     _____

 9

10                           JURY TRIAL
                 BEFORE THE HONORABLE JOAN A. LENARD,
11                  UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14
     FOR THE GOVERNMENT:        MARIA K. MEDETIS, ESQ.
15                              ASSISTANT UNITED STATES ATTORNEY
                                99 Northeast Fourth Street
16                              Miami, Florida 33132
                                        -and-
17                              BONNIE L. KANE, ESQ.
                                UNITED STATES DEPARTMENT OF JUSTICE
18                              1400 New York Avenue, NW
                                Suite 600
19                              Washington, DC 20530

20
     FOR THE DEFENDANT:         STUART ADELSTEIN, ESQ.
21                              ADELSTEIN & MATTERS
                                2929 Southwest Third Avenue
22                              Suite 410
                                Miami, Florida 33129
23                                      -and-
                                PHILIP R. HOROWITZ, ESQ.
24                              9130 South Dadeland Boulevard
                                Suite 1910
25                              Miami, Florida 33156
```

```
 1   REPORTED BY:              LISA EDWARDS, RDR, CRR
                               Official Court Reporter
 2                             400 North Miami Avenue
                               Twelfth Floor
 3                             Miami, Florida 33128
                               (305) 523-5499
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

I N D E X

|                                          | Direct | Cross | Red. |
|------------------------------------------|--------|-------|------|
| WITNESSES FOR THE GOVERNMENT:            |        |       |      |
| Du Tran                                  | 24     | 29    |      |
|                                          |        |       |      |
| REBUTTAL WITNESSES FOR THE GOVERNMENT:   |        |       |      |
| Du Tran                                  | 39     | 54    |      |

| EXHIBITS RECEIVED IN EVIDENCE | PAGE |
|-------------------------------|------|
| Government's Exhibit No. 105   | 47   |

|                     | PAGE |
|---------------------|------|
| Charge Conference   | 58   |

```
 1              THE COURT:  Good morning.  You may be seated.

 2              United States of America versus Matthew Andrew Carter,

 3    Case No. 11-20350.

 4              Good morning.

 5              Counsel, state your appearances, please, for the

 6    record.

 7              MS. MEDETIS:  Good morning, your Honor.

 8              Maria Medetis and Bonnie Kane on behalf of the United

 9    States.

10              With us at counsels' table is Special Agent Matthew

11    Larko.

12              MR. ADELSTEIN:  Good morning, your Honor.

13              Stu Adelstein, Phil Horowitz, on behalf of Mr. Carter,

14    who is present in the courtroom.

15              THE COURT:  Before we begin, I just want to notify the

16    parties that, at 8:00 this morning, my chambers received a call

17    from a Dr. Jane Seifert, who was calling from the Dominican

18    Republic, asking for Bonnie Kane, saying she's a direct witness

19    for this trial.  And Toni Ann gave her Bonnie Kane's name and

20    then she called back a second time.

21              So I just wanted to disclose that to the parties.

22              MS. MEDETIS:  For this trial, your Honor?

23              THE COURT:  For this trial.  Dr. Jane Seifert,

24    S-e-i-f-e-r-t.

25              She specifically referenced this trial, said she's a
```

```
 1   direct witness, wanted Bonnie Kane.  I have the phone number,

 2   if you want it.

 3           MS. MEDETIS:  Ms. Kane is representing that she has no

 4   idea who this person is, for the record.

 5           THE COURT:  Nor do I.

 6           MS. MEDETIS:  Thank you, Judge.

 7           THE COURT:  But she called and was aware of the trial,

 8   was aware it was before me, called chambers wanting to speak to

 9   Bonnie Kane.

10           The courtroom deputy gave her Ms. Kane's number.  She

11   called back and said, "Very important.  I'm a direct witness

12   for this trial."

13           So I just wanted to disclose that to the parties.

14           MS. MEDETIS:  Oh.  I see.  She's a direct witness, not

15   that Ms. Kane is a direct witness.

16           THE COURT:  No.  No.

17           MS. MEDETIS:  I see.

18           THE COURT:  This person who was calling, Dr. Jane

19   Seifert, said that she, Dr. Jane Seifert, is a direct witness

20   for this trial and wanting to reach Bonnie Kane.

21           MS. MEDETIS:  Understood, Judge.  I apologize for the

22   confusion.

23           THE COURT:  So since this was a call received by my

24   chambers for the Government, I'm disclosing it on the record to

25   both sides.
```

1          MS. MEDETIS:  Certainly, Judge.

2          THE COURT:  And we have the phone number, if you want

3    it.

4          All the jurors are here.  So let's bring them in.

5          You're ready with you're rebuttal witness?

6          MS. MEDETIS:  Yes, your Honor.  If I may approach to

7    get the number.

8          But we'd also ask if the Court would be willing to

9    rule on the admissibility of the evidence for our next witness,

10   because it's one document -- two documents, really, a redacted

11   and an unredacted version of a US Embassy cable to the

12   Secretary of State regarding activity of the Defendant in

13   Egypt.

14         We'd ask the Court to rule on the admissibility.  If

15   the Court rules it's admissible, then we would not be calling

16   this witness at all for this one exhibit.

17         THE COURT:  Okay.  Have you shown the exhibit to

18   defense counsel?

19         MS. MEDETIS:  Yes.  And I believe they have an

20   objection to it.

21         MR. HOROWITZ:  Judge, the defense does have an

22   objection.  The exhibit is pure hearsay.

23         THE COURT:  May I see the exhibit?

24         MS. MEDETIS:  Certainly, Judge.

25         THE COURT:  What is your response to the hearsay

1    objection?

2            MS. MEDETIS:  Yes, your Honor.

3            We intend to introduce it as a business record of the

4    State Department.  These cables are kept in the ordinary course

5    of business of the State Department.

6            The witness, who is Du Tran, who has previously

7    testified, can attest that these are held in the regular course

8    of business, these types of cables, and would attest to the

9    procedures and processes of these cables.

10           Your Honor, I'm referring to Government's Exhibit 105.

11   It is the State Department cable dated February, 1990.

12   Government's Exhibit 106 is the unredacted version of 105,

13   which we would be introducing for identification only and not

14   seeking to admit.  We would only be seeking to admit 105, not

15   106.

16           THE COURT:  The redacted version?

17           MS. MEDETIS:  Correct.

18           May I approach, your Honor?

19           THE COURT:  Yes.

20           MS. MEDETIS:  (Tenders documents to the Court.)

21           The purpose of introducing these exhibits would be to

22   impeach the Defendant's testimony that he was not aware of the

23   purpose of his arrest in Egypt when this evidence shows that he

24   squarely was.  And it includes his statements acknowledging his

25   understanding of the reasons for his arrest.

1          THE COURT:  And as far as the information contained in

2    Government's Exhibits 105 and 106, that is, the report of the

3    American citizen arrested, what will the testimony be as far as

4    the reporting of that information?  Is that information done in

5    the normal course of Embassy business?

6          MS. MEDETIS:  Yes, your Honor.

7          The testimony will be -- and Ms. Kane can supplement

8    it if I leave anything out -- that the policies and procedures

9    of the State Department and an Embassy abroad has the policy

10   of, once they determine or hear that a United States citizen

11   has been arrested, they immediately make contact with the US

12   citizen, assure that the US citizen is aware of his arrest.

13         They then have to report that incident to the State

14   Department in DC, to the Secretary of State or to the Secretary

15   of State's office.

16         Their role in terms of policies and procedures is to

17   make sure the US citizen is not being mistreated in custody,

18   make sure the US citizen understands the charges and in any way

19   aid the US citizen in contacting friends or family members, if

20   need and if requested by the US citizen.

21         So there will be testimony regarding the policies and

22   procedures of US Embassy personnel abroad in the context of

23   American citizen arrests and how, as part of these policies and

24   procedures, they are to report these matters step by step to --

25   through cables to the Secretary of State's office in

1   Washington, DC.

2            THE COURT:  What is your response to the Government's

3   statement that this is a business record?

4            MR. HOROWITZ:  Judge, there is no difference between

5   that record that is before this Court and a report of

6   investigation, a 302, any type of law enforcement report.

7            It is not a verbatim transcript of the Defendant's

8   statement.  This witness is not going to testify that he took

9   the statement.

10           It is a summary of -- almost similar to what a law

11  enforcement officer would do to report.  They would consult

12  records and they'd summarize those records within their report.

13           There is nothing within that cable --

14           THE COURT:  So are you objecting to the entire cable?

15           MR. HOROWITZ:  Yes, your Honor.

16           MS. MEDETIS:  Your Honor, our response to this being

17  analogized or compared to a law enforcement report is that this

18  is very different from any other law enforcement report in that

19  this was not prepared in anticipation of any litigation.

20           This was prepared entirely as part of the practices

21  and procedures of the State Department and Embassy personnel

22  and it can't be compared to a law enforcement report, which we

23  would agree, if it was a law enforcement report, that would not

24  necessarily be admissible.

25           But, again, it's not prepared by law enforcement

```
 1   agents nor is it prepared in anticipation of any sort of

 2   litigation.

 3           MR. HOROWITZ:  Judge, it is still chock-full of

 4   hearsay.  We don't have the witness to who this statement was

 5   given to.  We don't have whether Mr. Carter adopted the

 6   statement.  It's clearly not sworn to by Mr. Carter, not given

 7   to the Embassy under oath.

 8           THE COURT:  Well, there's two separate and distinct

 9   portions of the document in Government's Exhibits 105 and 106.

10           One is the report of the American citizen being

11   arrested and the status of whether or not he has an attorney,

12   whether he's met with the consular office.

13           And the second portion is the comments portion, which

14   has reference to statements made by the Defendant and then an

15   assessment of the investigation.

16           MR. HOROWITZ:  To address the first portion, then,

17   your Honor, the first portion of the investigation -- clearly,

18   we don't have an opportunity to see the underlying documents

19   that the State Department official looked at 23 years ago.

20           Secondly, whatever he looked at --

21           THE COURT:  Well, why wouldn't it be a business

22   record?

23           MR. HOROWITZ:  Judge, the same reason it wouldn't be a

24   law enforcement record.  Just because it's not the FBI or

25   Homeland Security Investigations doesn't make the content of
```

1    that record any less hearsay.

2         What a State Department employee did -- if that State

3    Department employee is available to testify as to what he did

4    and to be available for cross-examination, that's another

5    story.

6         But what we have here is, under the guise of a

7    business record, the Government is seeking to introduce

8    unsubstantiated hearsay as to what a State Department employee

9    did, what he viewed and his or her personal opinion as to what

10   he or she saw, read or viewed.

11        THE COURT:  Well, under Rule 805, hearsay within

12   hearsay is not excluded by the rule against hearsay if each

13   part of the combined statement conforms with an exception to

14   the rule.

15        MR. HOROWITZ:  Judge, it would be insufficient to be a

16   business record the same way that every report of law

17   enforcement would be considered a business record.

18        They're kept in the ordinary course of business and

19   they have impressions of an agent and, in this case, a State

20   Department employee.

21        You can analogize that report to a law enforcement

22   report because that's what it is.  It reports law enforcement

23   activity, in this case, supposedly, the law enforcement

24   activity of the Egyptian police and the Egyptian Government.

25        THE COURT:  That's as to both portions of the report?

```
 1              MR. HOROWITZ:  I'm just addressing the first portion.
 2              THE COURT:  The first portion?
 3              MR. HOROWITZ:  The second portion --
 4              THE COURT:  The first portion that includes his
 5    passport number, his last known address, the arrest condition,
 6    the charges.  You are analogizing that to a law enforcement --
 7    an arrest form?
 8              MR. HOROWITZ:  Sure, Judge.  In a law enforcement
 9    report, they will put the Defendant's name -- or subject's
10    name, their age, date of birth, their last known address, what
11    they have been arrested for and the reason why they got
12    arrested.  It's not uncommon in an arrest form to put the
13    identifying information.
14              THE COURT:  Why are arrest forms excluded?
15              MR. HOROWITZ:  They're excluded as hearsay.  In this
16    case, they do not contain any eyewitness-type testimony.  Even
17    if they did, the witness was not available who compiled that
18    report for cross-examination.
19              MS. MEDETIS:  Your Honor, that would go for all
20    business records.
21              MR. HOROWITZ:  This is not a business record, Judge.
22              THE COURT:  Why is it not a business record?
23              MR. HOROWITZ:  Because it's a -- it is a report of
24    someone who is conducting an investigation on behalf of the
25    State Department.
```

```
1              It contains opinion.  It contains records that are not
2     available to us.  We don't have any proof that that is an
3     accurate document.  We just have a report.  It's an interagency
4     report.  That doesn't make it a business record.
5              All police reports are collected in the ordinary
6     course of business, and this would allow every single police
7     report in every single case to come in as a business record.
8              We'd have the jury with an FBI file --
9              THE COURT:  Okay.  This is what we're going to do.
10    I'm going to give both sides an hour to go research this and
11    present authority to me.
12             Tell the jurors to come back at 10:30.
13             We're in recess until 10:30.
14              (Thereupon a recess was taken, after which the
15    following proceedings were had:)
16             THE COURT:  You may be seated.
17             United States of America versus Matthew Andrew Carter,
18    Case No. 11-20350.
19             Counsel, state your appearances, please, for the
20    record.
21             MS. MEDETIS:  Yes.  Good morning, your Honor.
22             Maria Medetis and Bonnie Kane on behalf of the United
23    States.
24             With us at counsels' table, Special Agents Larko and
25    Flores of Homeland Security Investigations.
```

```
1              MR. ADELSTEIN:  And good morning, your Honor.

2              Stu Adelstein, Phil Horowitz on behalf of Mr. Carter,

3    who is present.

4              THE COURT:  So any further argument or citation of

5    authority by either side as to this issue?

6              MS. MEDETIS:  Yes, your Honor.

7              If I may approach with copies of cases that I would

8    like to cite.

9              THE COURT:  Yes.

10             MS. MEDETIS:  (Tenders documents to the Court.)

11             Your Honor, I'm handing up to you two cases, copies of

12   which have been provided to defense counsel.  I've tabbed the

13   relevant pages that the Government intends to cite.

14             The first case, Chavez -- C-h-a-v-e-z -- versus

15   Carranza -- C-a-r-r-a-n-z-a -- that is 559 F.3d 486, a Sixth

16   Circuit opinion from 2009.  I refer your Honor to Page 497 for

17   the proposition regarding the introduction and admissibility of

18   Embassy cables.

19             In that case, as nonhearsay, the basis of those

20   Embassy cables -- the admissibility of those cables was based

21   on the business records exception to hearsay.

22             It is identical to the Government's proposition

23   regarding the admissibility of the cables at issue here from

24   the US Embassy in Cairo.

25             Additionally, your Honor, the second case that we've
```

1   handed up is an unpublished Eleventh Circuit opinion that is

2   *United States versus Allen* -- A-l-l-e-n -- 190 F.Appendix 785,

3   the Westlaw citation, 2006, WL2011762.  That is an Eleventh

4   Circuit opinion from July 19, 2006.

5          The Government, your Honor, would argue in the

6   alternative in order to address defense counsel's proposition

7   regarding the admissibility of law enforcement reports to

8   suggest, your Honor, that it is exaggerated to argue that no

9   law enforcement reports are admissible.

10          If the Court is going to construe the Embassy cable --

11  or is inclined to construe the Embassy capable as a law

12  enforcement report, then we would argue that it is still

13  admissible and cite *Allen* for that proposition under the theory

14  that the cable itself is not necessarily being introduced for

15  the matters asserted therein, but as evidence of the

16  Defendant's state of mind that he did, in fact, understand the

17  charges against him, being child molestation.

18          I'm happy to expound further after the Court's had a

19  moment to review the cases.

20          THE COURT:  Yes, Mr. Adelstein.

21          MR. HOROWITZ:  Judge, the case that we have to cite to

22  the Court that I have been unable to print out is an Eleventh

23  Circuit case, *United Technologies Corporation versus Mazer* --

24  M-a-z-e-r -- which is at 556 F.3d 1260, specifically at

25  Page 1278.

1          It's an Eleventh Circuit case from 2009 that talks

2   about police reports, where it states it's well established

3   that the entries in a police report which result from the

4   officer's own observation and knowledge may be admitted, but

5   the statements made by third persons under no business duty to

6   report may not.

7          In other words, placing otherwise inadmissible hearsay

8   statements by third parties in a Government report does not

9   make the statements admissible.

10         Judge, do I have additional argument when the Court is

11  ready.

12         THE COURT:  Go ahead.

13         MR. HOROWITZ:  The case cited by the Government,

14  *Chavez versus Carranza*, which is at 559 F.3d 486, it -- where

15  the cable was admitted, the cable was corroborated by several

16  witnesses and exhibits at trial, including the testimony of the

17  ambassador and a professor as well as the Truth Commission

18  report and several other cables that were admitted in that

19  trial.

20         In this case, we don't have the corroborating evidence

21  that they had in the *Chavez versus Carranza* case.  We have the

22  Defendant's testimony, and that's it.

23         Because the Court went on to say at Footnote 20 that

24  this exhibit -- even if the exhibit was improperly admitted, it

25  did not unfairly prejudice the Defendant in this case.

```
1              In addition, I'd cite Federal Rule of Evidence 803,

2    Subsection (8), to show that this is not a public -- that it

3    doesn't fall within the public records exception.

4              THE COURT:  Why is that?

5              MR. HOROWITZ:  Because it is not a matter observed by

6    law enforcement in a criminal case under 803(A)(2).

7              THE COURT:  What is the matter observed by law

8    enforcement?

9              MR. HOROWITZ:  In this case, there is no matter

10   observed by law enforcement.  It is a law enforcement --

11             THE COURT:  So how could it be a matter observed by

12   law enforcement if it's not?

13             MR. HOROWITZ:  The law enforcement says he's observing

14   records in this case and he's reading from records.  That's

15   what it appears to be.

16             THE COURT:  Who is law enforcement?

17             MR. HOROWITZ:  It would be the State Department

18   official.

19             THE COURT:  As law enforcement?

20             MR. HOROWITZ:  Not law enforcement.  However, it is in

21   a criminal case, which does require a higher duty.  And,

22   obviously, we don't have -- I'd also object under confrontation

23   clause grounds.

24             We don't have the opportunity to examine the person

25   who reported what is contained in Government's Exhibits 105 and
```

1    106.

2         Judge, in addition, it makes reference to an

3    uncounseled statement given by the Defendant.

4         THE COURT:   Subject to a proffer by the witness, I

5    will admit a redacted portion of Exhibit 106, with additional

6    redactions to those proposed by the Government.

7         The additional redaction would be the comments portion

8    at Paragraph 23 through the end of the document.

9         I cite as authority, subject to the proffer of the

10   witness that establishes the reason and purpose and the process

11   for which this type of cable is sent from an Embassy to the

12   State Department, *United States versus Caraballo* --

13   C-a-r-a-b-a-l-l-o -- 595 F.3d 1214, a 2010 decision by the

14   Eleventh Circuit.

15        In that case, the Eleventh Circuit found that I-213

16   forms were not impermissible hearsay nor did they amount to

17   testimonial hearsay in violation of the Defendant's Sixth

18   Amendment confrontation rights in *Crawford*.

19        The Court found that the forms constituted hearsay.

20   However, they fell squarely within the exception to the hearsay

21   rule, and that would be the public records exception, which I

22   find that this cable would also fall under, subject to the

23   proffer, as a matter observed pursuant to duty imposed by law

24   as to which matters there was a duty to report excluding,

25   however, in criminal cases matters observed by police officers

1    and other law enforcement personnel under 803(8)(B).

2         The portion that would be unredacted, subject to the

3    proffer, contains a routine -- based upon the proffer already

4    given by the Government, but I want to hear it from the witness

5    before it's presented to the jury -- that it contains the

6    routine information that is provided from an Embassy to the

7    United States Department of State when an American citizen is

8    arrested for purposes of providing assistance to that American

9    citizen in a foreign country who has been arrested.

10        And in the *Caraballo* case, at Page 1226, the Eleventh

11   Circuit stated:  Indeed, the portion of the I-213 form offered

12   by the Government and received into evidence by the district

13   court contained only routine biographical information, the

14   entrant's name, date of birth, place of birth, parents' names,

15   height, weight, address, country of citizenship and information

16   concerning whether the entrant had an immigration visa.

17        The form was routinely -- that's the end of the quote.

18        The form was routinely completed by Customs and Border

19   Protection agents in the course of their nonadversarial duties,

20   not in the course of preparing for a criminal prosecution.

21        The Court went on to state at the end of Page 1226 and

22   continuing on to 1227:  Nor did the admission of the I-213

23   forms violate Caraballo's rights under the confrontation

24   clause.

25        The confrontation clause of the Sixth Amendment

1    provides that, quoting from *Crawford*, in all criminal

2    prosecutions, the accused shall enjoy the right to be

3    confronted with the witnesses against him, 541 US 36 at 53 and

4    54.

5         The Eleventh Circuit went on to state that, while the

6    Supreme Court declined to define what a testimonial statement

7    is, it did observe generally that business records are

8    statements that by their nature were not testimonial.

9         It also described testimonial hearsay as being

10   typically, quote:  A solemn declaration or affirmation made for

11   the purpose of establishing or proving some fact and, thus,

12   extrajudicial statements contained in formalized testimonial

13   materials, such as affidavits, depositions, prior testimony or

14   confessions in statements that were made under the

15   circumstances which would lead an objective witness reasonably

16   to believe that the statement would be available for use at a

17   later trial constitute part of the core class of testimony.

18        At 1229, the Eleventh Circuit stated:  The Supreme

19   Court has instructed us to look only at the primary purpose of

20   the law enforcement officers' questioning in determining

21   whether the information as elicited is testimonial.

22        So here, if, as proffered by the Government, the

23   Government can establish that the primary purpose of the

24   redacted cable is to report the arrest of a United States

25   citizen in a foreign country for the purpose of providing

1   assistance and notifying the State Department of the arrest of

2   that person for the purpose of providing assistance and not for

3   the primary purpose of use at a later trial, it would not be a

4   violation -- I find that there would be no violation of the

5   confrontation clause pursuant to *Crawford*.

6          Alternatively, under *Chavez versus Carranza*, 559 F.3d

7   486, I find that this may also be established as a record of a

8   regularly conducted activity.

9          Additionally, I cite *United States versus Brown*,

10  9 F.3d 907, a 1993 decision by the Eleventh Circuit, which

11  revolved around the admission of a property receipt of a

12  weapon.

13         And the Government in that case established before the

14  receipt of the property received into evidence that it was the

15  regular and customary procedure to fill out a property receipt

16  for any type of evidence.

17         And the Eleventh Circuit stated at Pages 911 and

18  912 -- and this was regarding, of course, the police record --

19  many courts, however, have drawn a distinction between police

20  records prepared in a routine nonadversarial setting and those

21  resulting from a more subjective investigation and evaluation

22  of a crime.

23         In the case of documents recording routine objective

24  observations made as part of the everyday function of the

25  preparing official or agency, the factors likely to cloud the

1    perception of an official engaged in the more traditional law

2    enforcement functions of observation and investigation of crime

3    are simply not present.

4           Due to the lack of any motivation on the part of the

5    recording official to do other than mechanically register an

6    unambiguous factual matter, such records are, like other public

7    documents, inherently reliable.

8           *United States versus Augustino Hernandez*, 14 F.3d 42,

9    a 1994 decision by the Eleventh Circuit, in which the Eleventh

10   Circuit held that admission of routinely and mechanically kept

11   INS records such as the I-194 form and warrants of deportation

12   did not violate Rule 803(8)(B); and *United States versus*

13   *Ignasiak* -- I-g-n-a-s-i-a-k -- 667 F.3d 1217, a 2012 decision

14   by the Eleventh Circuit, in which the Eleventh Circuit found

15   that admission of an autopsy report did violate the

16   confrontation clause and there was error in admitting the

17   report.

18          So here, the portion of the cable that is introduced

19   is 1 through 22.  And each number has a section to be filled

20   out.

21          1.  Name:  Harcourt, William.

22          2.  Sex:  Male.

23          3.  DPOB:  27 April 1945, Michigan.

24          4.  Passport number and the passport number.

25          5.  Last known US address.

```
 1              6.  Date and place of arrest.

 2              7.  Arrest condition.

 3              8.  Charges.

 4              9.  Place of detention.

 5              10.  Case status.

 6              11.  Hearing date.

 7              12.  Possible sentence.

 8              13.  Attorney.

 9              14.  Privacy Act waiver.

10              15.  Next of kin.

11              16.  Notification.

12              17.  Access.

13              18.  Other Americans arrested.

14              19.  Mistreatment.

15              20.  Property confiscated.

16              21.  Judicial proceedings.

17         And 22.  EMDA, all of which are indicative of

18    information supplied in a form, context for notification

19    purposes only.

20         But I'd like to hear from the witness.

21         And I think we can tell the jurors to come back at --

22    let's have them come back at 1:30, please.

23         THE COURT SECURITY OFFICER:  Yes, ma'am.

24         THE COURT:  Will you bring him in.

25         MS. MEDETIS:  Would your Honor like us to lay the
```

Tran - DIRECT - By Ms. Kane                    24

1   foundation for the business records exception as well or --

2              THE COURT:  Yes.  Everything.

3              MS. MEDETIS:  Certainly.

4              Your Honor, may we get the Exhibits 105 and 106 back,

5   please?

6              THE COURT:  Oh, yes.

7              You're still under oath, sir.

8              THE WITNESS:  Yes, ma'am.

9              THE COURT:  You may proceed.

10             MS. KANE:  Your Honor, permission to approach?

11             THE COURT:  Yes.

12                        DIRECT EXAMINATION

13  BY MS. KANE:

14  Q.  Mr. Tran, I'm showing you what has been marked for

15  identification as Government's Exhibits 105 and 106.  Just take

16  a look at those.

17      Mr. Tran, can you just remind us again, what is your

18  position and title at the State Department?

19  A.  I'm a foreign service officer serving as a consular officer

20  and the American citizens services unit chief in the consular

21  section of the US Embassy in Port-au-Prince, Haiti.

22  Q.  And as part of your duties as a consular officer, what

23  procedures and protocols are followed when a US citizen is

24  arrested abroad?

25  A.  As a consular officer, we are mandated by US law to go and

Tran - DIRECT - By Ms. Kane                25

1    check on the welfare of the American citizen and to visit them

2    in their place of detention and to ascertain whether or not

3    they've been abused or mistreated and to act in their behalf in

4    terms of making sure that their rights under the host country

5    laws are being granted.

6    Q.   And what information, in general, is collected by a

7    consular officer when a US citizen is arrested?

8    A.   When we make the prison visit, we first of all ascertain

9    the well-being of the prisoner.  We also collect biographical

10   information, such as names, dates and places of birth; contact

11   information for family members; powers of attorney in case

12   financial actions need to be taken on their behalf; Privacy Act

13   waivers in case they want us to communicate with family

14   members, members of Congress, the press, et cetera.

15   Q.   And what information, if any, is collected regarding the

16   basis or the purpose of the arrest?

17   A.   We ascertain from the, I guess, judicial officials and from

18   the American citizen why they were arrested; what charge is

19   being leveled against them, if any, at the time; when the trial

20   is pending or when the date of the trial is set.  These are

21   from a template of information that we collect at the time of

22   the arrest.

23   Q.   And who actually collects this information from the citizen

24   or from the foreign Government?  Is this a consular officer or

25   a law enforcement officer?

Tran - DIRECT - By Ms. Kane                    26

 1   A.   It's a consular officer.

 2   Q.   And, in general, what are the duties of a consular officer?

 3   A.   Consular officers are tasked not only with adjudicating

 4   various types of visas.  They are also under the rubric of

 5   American citizen services, also tasked with performing routine

 6   and special citizen services.

 7        By "routine" I mean issuances of passports or adjudicating

 8   passport applications, issuing consular reports and birth

 9   abroad as well as consular reports of death abroad, et cetera,

10   performing notaries.

11        Under special citizen services, we do anything ranging from

12   providing assistance to victims of crime, ranging from

13   kidnapping, to murders, to rapes, to, you know, robbery,

14   et cetera, to performing welfare and whereabouts visits, to

15   performing arrest visits, that sort of thing.

16   Q.   Mr. Tran, are consular officers law enforcement officers?

17   A.   No, we are not.

18   Q.   And do they receive any law enforcement training?

19   A.   No, we do not.

20   Q.   What does the State Department -- or a consular officer for

21   the State Department do with this information that is collected

22   regarding a US citizen who's arrested abroad?

23   A.   It is communicated back to the State Department via a

24   front-channel cable and it is used to track the case of the

25   citizen.

1          One of the foremost responsibilities of the State

2     Department is the safety and security of US citizens either

3     visiting or residing overseas.  We are mandated by law to look

4     after US citizens.

5          And so, when someone is arrested, it's a major life event

6     for them and we are there, as representatives of their

7     Government, to make sure that they're okay.

8     Q.   Directing your attention to the two exhibits in front of

9     you, Exhibit 106, do you recognize this?

10    A.   Yes.  This is a copy of a cable from a United States post

11    abroad to Washington, to the Department of State.

12    Q.   And is this a diplomatic cable?

13    A.   Yes, it is.

14    Q.   To whom does this diplomatic cable relate?

15    A.   William Harcourt.

16    Q.   And directing your attention to Government's Exhibit 105,

17    do you recognize that?

18    A.   Yes, I do.

19    Q.   How do you recognize that?

20    A.   This is a copy of the same diplomatic cable with certain

21    portions redacted.

22    Q.   And with the exception of certain redacted information, is

23    this exhibit identical to Government's Exhibit 106?

24    A.   Yes, it is.

25    Q.   Was this diplomatic cable written at or near the time of

Tran - DIRECT - By Ms. Kane                      28

1    the events described therein?

2    A.  Yes, it was.

3    Q.  Was this diplomatic cable written by someone with knowledge

4    of those events or --

5    A.  Yes, it was.

6    Q.  -- or from information transmitted --

7            MR. HOROWITZ:  Objection.  Calls for speculation.

8            THE COURT:  Lay your predicate.

9    BY MS. KANE:

10   Q.  Mr. Tran, how do you know that this diplomatic cable was

11   written by someone with knowledge of those events described?

12   A.  Diplomatic cables are written by the officer who made the

13   arrest visit.  They are sent out under the signature of the

14   ambassador or the charge d'affaires in lieu of the ambassador.

15   It's the same practice as how all diplomatic cables emanating

16   from Washington is signed by the Secretary of State.

17   Q.  And is that practice a policy or procedure of the US State

18   Department?

19   A.  Yes, it is.

20   Q.  And was this diplomatic cable kept in the course of the

21   regularly conducted activity of the US State Department?

22   A.  Yes, it was.

23   Q.  Was the writing of this cable a regular practice of the

24   consular activity of the US State Department?

25   A.  Yes.

```
 1            MS. KANE:  Your Honor, at this time I would move to

 2   admit Government's Exhibit 105.

 3            THE COURT:  Do you have any questions for him on the

 4   proffer?

 5            MR. ADELSTEIN:  Yes.  May I see the unredacted one?

 6            MS. MEDETIS:  It's 105.

 7            MR. ADELSTEIN:  Could I approach, your Honor?

 8            MS. MEDETIS:  I'm sorry.  It's 106.

 9            MS. KANE:  This record has not been redacted yet

10   fully --

11            THE COURT:  Right.

12            MS. KANE:  -- the comments section.  This is still the

13   existing --

14            THE COURT:  I understand.

15                      CROSS-EXAMINATION

16   BY MR. ADELSTEIN:

17   Q.  Who prepared this document?

18   A.  It would have been prepared by a handful of people,

19   including the drafter, the clearer, the approver and the

20   information management officer who transmitted the telegram.

21   Q.  I'm sorry.

22        You indicated three different people prepared --

23   participated in the preparation of Exhibit 106?

24   A.  At least in terms of the processing of drafting, clearing

25   and approving and transmitting.
```

Tran - CROSS - By Mr. Adelstein                    30

```
 1    Q.   You listed three people.

 2         One was the approver?

 3    A.   Again --

 4    Q.   I didn't get the other two.

 5    A.   Again, I can't speculate to how many people exactly.  I can

 6    tell you that, by practice, there are at least four actions

 7    that need to be taken when a cable is transmitted.

 8    Q.   When you say "at least four actions," are you referring to

 9    four different people have to do something?

10    A.   Not necessarily.  One person can be more than -- can play

11    more than one role in those four steps.

12    Q.   What are the four steps?

13    A.   Drafting.

14    Q.   Drafting.  Hold on.

15    A.   Clearing.

16    Q.   Clearing.

17    A.   Approving.

18    Q.   Approving.

19    A.   And transmitting.

20    Q.   And transmitting.

21         Can you tell who participated in the drafting of this

22    document?  I'm referring to 106.

23    A.   No.  Not with the information presented here.

24    Q.   Could you tell me who participated in the clearing of that

25    document, again, 106?
```

Tran - CROSS - By Mr. Adelstein                    31

1    A.   No.

2    Q.   And would the same answer be for the approving and

3    transmitting?

4    A.   That's correct.

5    Q.   Now --

6              MR. ADELSTEIN:  Could I see that one more time?

7              THE COURT:  Yes.

8              MR. ADELSTEIN:  I'm sorry.

9    BY MR. ADELSTEIN:

10   Q.   All of these numbers on the top of Page --

11             MR. ADELSTEIN:  I'm sorry.  May I just stay here,

12   since there's no jury?

13   BY MR. ADELSTEIN:

14   Q.   All of the numbers up on Page 1 of 106:  What does that

15   refer to?

16   A.   These are references to various offices that are involved

17   in collecting and disseminating this information.

18   Q.   Could you tell us, for instance, the Office of --

19             THE COURT:  I don't know what numbers you're referring

20   to and what the relevance of that would be.

21             You mean the number of the cable?

22             MR. ADELSTEIN:  No.  Whoever prepared it.  I think he

23   just said that this refers to the number of offices that

24   participated in the preparation of this document --

25             THE WITNESS:  Actually, it was the collection and

```
 1   dissemination of the information.

 2          MR. ADELSTEIN:  -- of this particular document.

 3          THE COURT:  Okay.

 4   BY MR. ADELSTEIN:

 5   Q.  Can you tell us what office collected this information in

 6   106?

 7   A.  It would be the Bureau of Consular Affairs, specifically,

 8   the Office of Overseas Citizens Services.

 9   Q.  And could you tell us the -- how do you know that, first of

10   all?

11   A.  There's an action reference here to OCS.  There's also an

12   info action here to CA, which is an acronym for Consular

13   Affairs, and DS, which is an acronym for Diplomatic Security.

14   Q.  Okay.  And what is -- where -- what is that? -- 016W?

15   A.  I have no idea what that reference is.

16          THE COURT:  1 through 22 in that form in the body of

17   the cable:  Is that information that is normally collected when

18   there is an arrest of an American citizen abroad?

19          THE WITNESS:  Your Honor, what reference are you --

20          THE COURT:  1 through 22, in the body of the cable --

21          THE WITNESS:  Oh, yes.

22          THE COURT:  -- 1:  Name.  Age, date and place of

23   birth, charge, arrest date.

24          Is that information that is normally collected?

25          THE WITNESS:  Yes.  This is basically from a template
```

Tran - CROSS - By Mr. Adelstein                    33

```
 1    that we use.

 2              THE COURT:  Okay.

 3    BY MR. ADELSTEIN:

 4    Q.  Now, does the -- does a consular officer also prepare a

 5    transmission as to the outcome of this particular case?

 6    A.  Yes.  Sometimes we follow a case to its conclusion and

 7    report on that as well.

 8    Q.  And you send a similar cable, do you not, to the Secretary

 9    of State as to the outcome of the case?

10    A.  Yes.

11    Q.  Okay.  Did you review a cable concerning the outcome of

12    this case?

13    A.  I believe so.

14    Q.  Do you know where that cable is?

15    A.  No.

16              MR. ADELSTEIN:  Do you have that?

17              MS. MEDETIS:  You have it in your discovery, Stu --

18    Mr. Adelstein.

19              THE COURT:  Let me ask you a question, sir.

20              THE WITNESS:  Yes, ma'am.

21              THE COURT:  Is this information required to be sent

22    back to the Department of State?

23              THE WITNESS:  Yes.

24              THE COURT:  And that's also mandated by law?

25              THE WITNESS:  Yes.
```

1          MS. MEDETIS:  Your Honor, we would object to the

2    relevance of additional cables that the Government is not

3    seeking to introduce.

4          THE COURT:  What's the relevance?

5          MR. ADELSTEIN:  Under the rule of completeness, if

6    there's a cable that is as to the disposition of this

7    particular matter, I would ask that it be included.

8          MS. MEDETIS:  Well, your Honor, the rule of

9    completeness would imply that this cable is missing pages.  It

10   is not.  And, second, the disposition of the case is not in

11   dispute.

12         THE COURT:  I don't find that the rule of completeness

13   requires the later cable.  If I admit this testimony, you can

14   certainly cross him on that.

15         MR. ADELSTEIN:  Yes, ma'am.

16         Could I have one more moment?

17         THE COURT:  Yes.

18         Is that it, Mr. Adelstein?

19         MR. ADELSTEIN:  One other question.

20   BY MR. ADELSTEIN:

21   Q.  On Question 22, where it says "EMDA," what does that stand

22   for?

23   A.  That's an acronym for "emergency medical and dietary

24   assistance."

25   Q.  Fair enough.

1          MR. ADELSTEIN:  That's it.  I have nothing further.

2          THE COURT:  Anything further in the proffer, Ms. Kane?

3          MS. KANE:  No, your Honor.

4          THE COURT:  Thank you, sir.

5          You may step out.

6           (Thereupon, the witness retired from the courtroom

7   and the following proceedings were had:)

8          THE COURT:  Any further argument?

9          MS. MEDETIS:  None from the Government, your Honor.

10          MR. ADELSTEIN:  No further argument other than what

11   we've already made.

12          THE COURT:  I find, based upon the proffer, that the

13   redacted cable, which is now -- which would be further redacted

14   by the Court as to the comments section -- that the Government

15   has established its admissibility as an exception to the

16   hearsay rule as both the record of a regularly conducted

17   activity and as a public record.  That would be Rule 803(6) and

18   (8).

19          The consular office -- the witness established that

20   what happens once a US citizen is arrested abroad, that

21   information is collected concerning the arrest and that that

22   information is then transmitted -- reviewed and transmitted --

23   drafted, reviewed and approved and transmitted then to the

24   United States Department of State in Washington, DC, and that

25   the primary purpose of collecting this information and

1    transmitting this information is the safety and security of US

2    citizens; that the Department of State and the Embassy and

3    consular office is mandated by law to look after US citizens;

4    and that, after a US citizen is arrested abroad, they are the

5    representatives of the citizen's Government to make sure that

6    they're okay; that the information that was collected is off of

7    a template that is collected in the normal course of affairs;

8    that it was made at or near the time of the events described;

9    that it was written by someone with knowledge; and that the

10   witness is someone who has knowledge of this practice and

11   procedure.

12          He stated that diplomatic cables are written by the

13   officer who made the arrest visit.  They are sent out under the

14   signature of the ambassador or someone in lieu of the

15   ambassador or a person of responsibility in lieu of the

16   ambassador, charge d'affaires, in lieu of the ambassador, and

17   it is the practice and policy and procedure of the US State

18   Department.

19          Therefore, I find -- I did not allow a proffer in

20   regard to the comments section.  But I take it the Government

21   would agree that this witness would not be able to testify as

22   to where that information came from.  The statements were not

23   made to him.  Correct?

24          MS. MEDETIS:  They were not made to him, your Honor.

25   His testimony would be that they were made by whoever from the

1   consular section visited the Defendant.

2        THE COURT:  And they don't know whether it came from

3   the arresting authorities in their forms or from the Defendant.

4   Correct?

5        MS. MEDETIS:  That would probably be correct, your

6   Honor.

7        THE COURT:  And based upon that, I find that that

8   should be excluded and that that portion -- the comment portion

9   may, in fact -- if it came from the arrest form, would be a

10  violation of the confrontation clause and that would be the

11  reason that the Court excluded that.

12       But the rest of the pro forma portion of the form,

13  which is name, date of birth, arrest charge, date of arrest,

14  medical condition -- all of that information is the information

15  made in the normal course of affairs to be collected by both

16  the US Embassy, in this instance in Egypt, and to be

17  transmitted back to the Department of State in Washington, DC,

18  for the purpose of protecting the interests of the US citizen

19  abroad and, therefore, is admissible both under 803(6) and

20  803(8).

21       We're in recess until 1:30.  Thank you.

22        (Thereupon, a luncheon recess was taken, after which

23  the following proceedings were had:)

24       THE COURT:  We're back on United States of America

25  versus Matthew Andrew Carter, Case No. 11-20350.

1          Counsel, state your appearances, please, for the

2    record.

3          MS. MEDETIS:  Yes.  Good afternoon, your Honor.

4          Maria Medetis and Bonnie Kane on behalf of the United

5    States.

6          With us at counsels' table are Special Agents Flores

7    and Larko.

8          MR. ADELSTEIN:  And good afternoon, your Honor.

9          Stu Adelstein, Phil Horowitz on behalf of Mr. Carter,

10   who is present.

11         THE COURT:  Are we ready to proceed?

12         MS. MEDETIS:  Yes, your Honor.

13         We would move to admit Government's Exhibit 106 into

14   evidence at this time -- I'm sorry -- 105, the redacted

15   version, with the further redactions that defense counsel has

16   seen and approved, so Government's Exhibit 105 with the

17   additional redactions the Court is requiring.  I've shown those

18   redactions to counsel as well.

19         MR. HOROWITZ:  Judge, we would renew our previously

20   stated objections.

21         THE COURT:  Based upon my prior ruling and the

22   authority cited by the Court, the objection is overruled.

23         It will be admitted as Government's Exhibit 105.

24         But you're going to lay a proffer with the witness,

25   correct, in front of the jury?

Tran - DIRECT - By Ms. Kane                    39

```
 1              MS. MEDETIS:  Certainly, Judge.

 2              THE COURT:  So you'll want to move it in front of the

 3   jury.  No?

 4              MS. MEDETIS:  Either way is fine with us, your Honor.

 5   We'll do in front of the jury as well.

 6              THE COURT:  Let's bring the jurors in.

 7              (Whereupon, the jury entered the courtroom at

 8   2:02 p.m. and the following proceedings were had:)

 9              THE COURT:  You may be seated.

10              Good afternoon, ladies and gentlemen.

11              THE JURY:  Good afternoon.

12              THE COURT:  I apologize for the morning delay.

13              Call your first witness, please.

14              MS. KANE:  The United States calls Du Tran.

15              THE COURT:  You are still under oath, sir.

16              THE WITNESS:  Yes, ma'am.

17              THE COURT:  You may proceed, Ms. Kane.

18              MS. KANE:  Thank you.

19                          DIRECT EXAMINATION

20   BY MS. KANE:

21   Q.  Good afternoon, Mr. Tran.

22   A.  Hello.

23   Q.  Though you've previously testified, just for a reminder,

24   would you please tell the ladies and gentlemen of the jury

25   where you're employed.
```

 1   A.   I'm a foreign service officer with the US Department of

 2   State.   Currently, I work as a consular officer and chief of

 3   the American citizens services unit at the consular section in

 4   the US Embassy in Port-au-Prince, Haiti.

 5   Q.   How long have you been in that position in Haiti?

 6   A.   I've been working in Haiti since May of 2010.

 7   Q.   Just briefly, could you describe some of the training that

 8   you've had prior to this position.

 9   A.   As a foreign service officer, I went through the Foreign

10   Service Institute training for all new foreign service

11   officers.

12        As a consular coned officer, I have been extensively

13   trained in consular work, ranging from adjudication of visa

14   applications to provision of American citizen services, both

15   routine and specialized.

16        After the consular training and over the years I've worked

17   with the State Department, I've been given advanced consular

18   training as well.

19   Q.   What are your duties and responsibilities in your current

20   position?

21   A.   Currently, I supervise an office that provides routine

22   services, such as processing, you know, applications of US

23   passports, processing applications of consular reports of birth

24   abroad as well as consular reports of death abroad, providing

25   notarial services to American citizens and others in the host

1   country.

2       We also provide specialized citizen services, including

3   checking on the welfare and whereabouts of American citizens as

4   well as providing assistance to American citizens who are

5   victims of crime overseas, including those who have been

6   kidnapped, robbed, murdered, raped, assaulted, et cetera.

7       We also come to the assistance of Americans who become

8   incarcerated overseas.  If you're an American citizen and

9   you're arrested in a foreign country such as Haiti, then it is

10  my responsibility to come and check on your welfare and make

11  sure you're being treated fairly and are afforded all due

12  process under the laws of the host country.

13  Q.   And when an American citizen is arrested abroad, what

14  procedures or protocols are followed by a consular officer at

15  an Embassy regarding that arrest?

16  A.   When we are notified that an American citizen has been

17  arrested, we first determine the nationality and citizenship of

18  the arrestee.

19      Once we've determined that this is, in fact, a US citizen,

20  then we notify the local officials, including prison

21  authorities, law enforcement authorities, et cetera, that we

22  are claiming our access to our citizen.

23      Then we go and we visit them in their place of detention,

24  at which point we first ascertain whether or not they've been

25  harmed or been treated unfairly or mistreated.

1      We then try to get certain information from the arrestee as

2  well as from the judicial officials on what happened in the

3  case.

4      We obtain powers of attorney for the prisoner in order to

5  help him or her deal with whatever issues they need to deal

6  with in terms of getting representation from a local lawyer.

7      We also request a Privacy Act waiver from the individual in

8  order to communicate with his or her family, the host

9  Government or with members of Congress or with the media or

10  with whoever is interested in the case.

11 Q.   In general, why does the United States -- United States

12 State Department provide these services to Americans in this

13 situation?

14 A.   One of the main priorities of the United States Department

15 of State is the protection and welfare of American citizens

16 overseas.

17      If American citizens come into harm's way, we are there

18 to -- as, you know, your Government to provide you with the

19 protection of the US Government.

20 Q.   And during these consular visits, what steps are taken by

21 the United States State Department to ensure that the United

22 States citizen is aware of the charges that are pending against

23 him or her?

24 A.   We ascertain why the person was detained and we inform them

25 of why.   We determine whether or not they've been treated with

1    due process under the host country's laws.

2         If there are allegations of mistreatment, we represent that

3    to the host Government in order to protest this treatment.  If

4    the host Government is alleged to have done something that is

5    outside the bounds of due process, then we also protest that as

6    well on behalf of the prisoner.

7    Q.  And why does the State Department ensure that the US

8    citizen who has been arrested has been advised of the basis for

9    the arrest or the reason why that person has been arrested?

10   A.  It's important for the American citizen prisoner to

11   understand why they have been incarcerated because that will

12   inform whether or not they wish to represent themselves,

13   whether or not they wish to hire an attorney.

14        In most countries, you have to be a citizen of that country

15   to represent someone on a legal basis or to serve as a lawyer

16   for an individual in the host country.

17   Q.  As part of this process providing these consular services

18   to American citizens who are arrested abroad, what information,

19   in general, is collected regarding that arrest?

20   A.  We --

21             MR. ADELSTEIN:  Objection to the form of the question.

22             THE COURT:  Overruled.

23             What's the grounds?

24             MR. ADELSTEIN:  General and relevance.

25             THE COURT:  Overruled.

1           THE WITNESS:  We usually have a template that we

2   follow when we go to interview a prisoner.  It includes

3   biographical information, such as the name, date and place of

4   birth, you know, any particulars about the person's, you know,

5   situation in country.

6           Off the top of my head, I guess we also

7   ascertain where --

8           MR. ADELSTEIN:  Objection.

9           THE COURT:  Overruled.

10          THE WITNESS:  We ascertain, you know, where the place

11  of detention is, we look at the reasons for why they're being

12  detained, we document, you know, whether they requested, you

13  know, financial assistance in procuring legal representation,

14  things along those lines.

15  BY MS. KANE:

16  Q.  What does the State Department then -- excuse me.

17      What does the consular officer at the Embassy then do with

18  this information that has been collected?

19  A.  One of our first priorities, other than dealing with

20  whatever issues arises from the visit and the interview with

21  the prisoner, is that we report this to Washington.  We note

22  all of the details that we collected during the interview and

23  we present it to Washington for their records.

24      Washington is very interested -- and by "Washington" I mean

25  the US Department of State -- is very interested in this

 1    information because sometimes they have to answer inquiries

 2    from the public, from family members, from members of Congress,

 3    pertaining to why this person was incarcerated, if that, you

 4    know, information is needed.

 5    Q.   In what form is this information transmitted to the US

 6    State Department in Washington, DC?

 7    A.   It's through a front-channel cable.  It is a messaging

 8    system where we send diplomatic cables from posts abroad to

 9    Washington and then from Washington to posts abroad.

10              MS. KANE:  Your Honor, permission to approach, please?

11              THE COURT:  You may.

12    BY MS. KANE:

13    Q.   Mr. Tran, I'm showing you what has been previously admitted

14    as Government's Exhibit 105 and what has been marked for

15    identification as Government's Exhibit 106, if you would take a

16    look at those.

17         Directing your attention to Government's Exhibit 106, do

18    you recognize this?

19    A.   Yes, I do.

20    Q.   And how do you recognize this?

21    A.   This is a US diplomatic cable.

22    Q.   And have you reviewed this before?

23    A.   Yes, I have.

24    Q.   To whom does this diplomatic cable relate?

25    A.   William Harcourt.

Tran - DIRECT - By Ms. Kane                46

1   Q.   In what year and month is this cable?

2   A.   This was in the year 1990, in the month of February.

3   Q.   Directing your attention to what has been admitted as

4   Government's Exhibit 105, do you recognize this?

5   A.   Yes, I do.

6   Q.   How do you recognize this?

7   A.   This is another copy of the same cable.

8   Q.   And what is different about this version of the cable?

9   A.   This version of the cable has been redacted.

10  Q.   Other than those redactions, based upon your prior review,

11  is this cable in Government's Exhibit 105 identical to the

12  cable in Government's Exhibit 106?

13  A.   Yes, it is.

14  Q.   And was this diplomatic cable written at or near the time

15  of the events described therein?

16  A.   Yes, it was.

17  Q.   And was this cable written by someone with knowledge of

18  those events or from information transmitted by -- with someone

19  with knowledge of those events?

20  A.   Yes, it was.

21  Q.   Was this diplomatic cable kept in the course of the

22  regularly conducted activity of the US State Department?

23  A.   Yes, it was.

24         THE COURT REPORTER:  Would you repeat that, please.

25         MS. KANE:  I apologize.

1   BY MS. KANE:

2   Q.   Was this diplomatic cable kept in the course of the

3   regularly conducted activity of the US State Department?

4   A.   Yes.

5   Q.   And was the writing of this cable a regular practice of the

6   consular activity of the US State Department?

7   A.   Yes.

8           MS. KANE:   Your Honor, at this time I would move to, I

9   guess, again, admit Government's Exhibit 105 and permission to

10  publish.

11          MR. HOROWITZ:   Renew prior objections, your Honor.

12          THE COURT:   The objection is overruled.

13          It will be admitted as Government's Exhibit 105.

14          (Whereupon, Government's Exhibit No. 105 was entered

15  into evidence.)

16          THE COURT:   You may publish.

17          MS. KANE:   Permission to approach, your Honor?

18          THE COURT:   Yes.

19  BY MS. KANE:

20  Q.   Mr. Tran, I'm showing you Government's Exhibit 105.

21          At the top, can you please tell us what the date of this

22  cable is.

23  A.   February, 1990.

24  Q.   And from where did this cable originate?

25  A.   This was from the United States Embassy in Cairo, Egypt.

Tran - DIRECT - By Ms. Kane                48

 1    Q.    And where was the cable sent to?

 2    A.    To the Secretary of State in Washington, DC.

 3    Q.    What is the subject of this diplomatic cable?

 4    A.    Subject is "Arrest of William Harcourt."

 5    Q.    What is stated regarding the name of this individual?

 6    A.    Paragraph 1 notes the name as Harcourt, William.

 7    Q.    What is his sex listed as?

 8    A.    Male.

 9    Q.    And what does -- under No. 3, what does DPOB mean?

10    A.    That means the date and place of birth.

11    Q.    And what is listed for the date of birth?

12    A.    April 27th, 1945.

13    Q.    And the place of birth?

14    A.    Michigan.

15    Q.    What is stated for his passport number under No. 4?

16    A.    Uh-huh.  Z4418829.

17    Q.    Where was this issued?

18    A.    In London.

19    Q.    On what date?

20    A.    May 5th, 1983.

21          MS. KANE:  Your Honor, permission to publish what has

22    previously been admitted as Government's Exhibit 18-D?

23          THE COURT:  You may.

24    BY MS. KANE:

25    Q.    Mr. Tran, can you tell us what this is.

Tran - DIRECT - By Ms. Kane                    49

1   A.   This is a passport application.

2   Q.   And who is this -- who submitted this passport application?

3   A.   William Charles Harcourt.

4   Q.   On what date?

5   A.   May 5th, 1983.

6   Q.   Was a passport issued in response to this application?

7   A.   Yes, it was.

8   Q.   Directing your attention to the upper right corner, what

9   information is contained regarding that passport?

10   A.   The post that issued it was London, England.  The number of

11   the passport issue was Z4418829.  The date of issuance was

12   May 5th, 1983.  The date of expiration is May 4th, 1993.

13   Q.   And I'm sorry if you've already stated this.

14       From what post was this passport issued?

15   A.   London, England.

16   Q.   Is this or is this not the passport number that is

17   referenced in Government's Exhibit 105 in the diplomatic cable?

18   A.   It is.

19       MS. KANE:  Your Honor, permission to publish again

20   Government's Exhibit 105?

21       THE COURT:  You may.

22   BY MS. KANE:

23   Q.   Directing your attention to No. 5 on Government's

24   Exhibit 105, what is stated regarding his last known US

25   address?

Tran - DIRECT - By Ms. Kane                    50

 1   A.   It is West Palm Beach, Florida.

 2   Q.   What is stated regarding his date and place of arrest?

 3   A.   Date and place of arrest was noted as February 23rd, 1990,

 4   at No. 12 Youssef Mohamed Street, Dokki, Cairo, Egypt.

 5   Q.   What is stated regarding his arrest condition in No. 7?

 6   A.   Noted that Harcourt is a diabetic.

 7   Q.   And in No. 8, what are the charges?

 8   A.   Child molestation.

 9   Q.   In No. 9, what is the place of detention?

10   A.   Giza Governate, state security.

11   Q.   Directing your attention to No. 10 at the bottom, what is

12   stated regarding the case status?

13   A.   First hearing held February 25th, 1990.  More investigation

14   currently being undertaken.

15   Q.   And under No. 11, what is stated regarding the hearing

16   date?

17   A.   February 25th, 1990.

18   Q.   I'm now showing you Page 2 of Government's Exhibit 105.

19        At No. 12, what is stated regarding the possible sentence?

20   A.   Not yet informed.

21   Q.   What is stated regarding his attorney at No. 13?

22   A.   None yet.

23   Q.   And No. 14, what is stated regarding a Privacy Act waiver?

24   A.   Yes.  One has been granted for several friends in Cairo

25   only.

1    Q.   And would you please briefly describe what that means, a

2    Privacy Act waiver.

3    A.   After the Watergate era, the Privacy Act was enacted by

4    Congress to protect US citizens from the unlawful divulging of

5    private information.

6        If, for instance, in this case, you were arrested and I

7    interview you on behalf of the US Government in order to

8    provide you with protection or assistance, I would need your

9    express permission to divulge any information about your case

10   to a third party, including your next of kin, your -- a member

11   of Congress, your family members, the press, anybody.

12       We have a Privacy Act waiver form that we routinely bring

13   to prison visits where we have, you know, these entities listed

14   in terms of members of Congress, media, the general public,

15   your next of kin, your, you know, immediate family, your

16   extended family, et cetera, and you get to check which box you

17   grant us permission to speak to.

18       If you don't grant us permission to speak to them

19   specifically, we are unable to provide that third party with

20   any information at all about you.

21   Q.   Under No. 15, what is stated regarding next of kin?

22   A.   It says none.

23   Q.   And what does that mean when none is indicated next to next

24   of kin?

25   A.   The subject has indicated that he has no next of kin.

Tran - DIRECT - By Ms. Kane                    52

1    Q.   What is stated regarding -- under No. 16 for notification?

2    A.   It says that the person was notified on February 23rd by

3    Harcourt's friend, Miss Tracy Todd.  Embassy then contacted

4    Egyptian authorities to determine his whereabouts.

5    Q.   And what does, in general, this field for notification

6    mean?  What is that referring to?

7    A.   I'm sorry.  Can you repeat that again.

8    Q.   What is notification referring to?

9    A.   Oh.  It's when someone calls the Embassy or the consular

10   section and says, "Hey, we have an American who's been

11   arrested."

12   Q.   So is this how the Embassy became aware of Mr. Harcourt's

13   arrest?

14   A.   Yes.  That's correct.

15   Q.   Under No. 17, what is stated regarding access?

16   A.   It says that the consular officer met with Harcourt on

17   February 25th.

18   Q.   Mr. Tran, have you reviewed other cables related to

19   Mr. Harcourt's arrest?

20   A.   Yes, I have.

21   Q.   Based on those cables, was this the only visit by a

22   consular officer to Mr. Harcourt?

23   A.   No, it wasn't.

24   Q.   Directing your attention to No. 18, what does it state

25   regarding other Americans arrested?

1    A.   It says none.

2    Q.   What is stated regarding mistreatment?

3    A.   Also a none.

4    Q.   What is that referring to?

5    A.   If there is any allegations of abuse, either physical or

6    mental, or not being provided due process under, you know,

7    local host country laws or deprivation of food or water or any

8    sort of treatment like that, we would ask the prisoner to sign

9    an affidavit of mistreatment, which we can then provide as the

10   basis of a protest to the host Government.

11        In this case, the prisoner's noted no mistreatment.

12   Q.   Under No. 20, what does it state regarding property

13   confiscated?

14   A.   Also, none.

15   Q.   Under No. 21, what is stated for judicial proceedings?

16   A.   That the investigation is continuing.

17   Q.   And under No. 22, what does EDMA [sic] mean?

18   A.   The acronym is actually EMDA.

19   Q.   I apologize.

20   A.   And it stands for "emergency medical and dietary

21   assistance."

22   Q.   And what is stated under EMDA?

23   A.   It states that Harcourt receives a monthly disabled veteran

24   check at the Embassy.  However, he indicates that he has no

25   cash at the present time.  Due to his diabetic condition, we

Tran - CROSS - By Mr. Adelstein                    54

 1    will institute EMDA to supplement his prison diet.

 2    Q.  Based upon your review of other cables related to

 3    Mr. Harcourt's arrest, what was the ultimate result of

 4    Mr. Harcourt's arrest?

 5    A.  He was acquitted of the charges.

 6          MS. KANE:  One moment, your Honor.

 7    BY MS. KANE:

 8    Q.  Mr. Tran, is the State Department required or not required

 9    by law to conduct visits of American citizens who are under

10    arrest in a foreign country?

11    A.  Yeah.  We are required.

12          MS. KANE:  The United States tenders this witness,

13    your Honor.

14          THE COURT:  Cross-examination.

15          MR. ADELSTEIN:  Just a few questions, if I might.

16                    CROSS-EXAMINATION

17    BY MR. ADELSTEIN:

18    Q.  This document is, what, 23 years old?  Is that correct?

19    A.  1990.  Yes.

20    Q.  Okay.  And you said it was made by someone who has

21    knowledge of the events, I think were your exact quotes.

22          Do you remember that?

23    A.  Yes.

24    Q.  Document 105.

25          Could you tell me, who was the person who made this

Tran - CROSS - By Mr. Adelstein                55

1     document?

2     A.   It would be the consular officer who visited Mr. Harcourt.

3     Q.   Do you know the name of that person?

4     A.   No, I do not.

5     Q.   And, finally, you said you reviewed other cables.  Correct?

6     A.   Yes.

7     Q.   And when you said he was acquitted, you're talking about on

8     No. 8, where it says charges:  Child molestation.  He was found

9     not guilty of that crime.  Correct?

10    A.   Yes.  Yes.

11    Q.   Okay.

12         MR. ADELSTEIN:  May I have one moment, your Honor?

13         THE COURT:  Yes.

14         MR. ADELSTEIN:  I have no further questions.

15         THE COURT:  Redirect?

16         MS. MEDETIS:  No.

17         MS. KANE:  Nothing further, your Honor.

18         THE COURT:  You may step down.

19         (Witness excused.)

20         THE COURT:  Call your next witness.

21         MS. MEDETIS:  Your Honor, the Government rests at this

22    time.

23         THE COURT:  All right, ladies and gentlemen.  That

24    concludes the presentation of evidence in this case.

25         There are a few matters that I need to review with the

```
 1    lawyers in preparation for both closing arguments and the case

 2    being turned over to you for deliberation.  So I'm going to

 3    dismiss you for the day at this time.

 4              Do not discuss this case either amongst yourselves or

 5    with anyone else.  Have no contact whatsoever with anyone

 6    associated with the trial.

 7              Do not read, listen or see anything touching on this

 8    matter in any way, including anything in the media, anything on

 9    the Internet or anything on any access device.

10              If anyone should try to talk to you about this case,

11    you should immediately instruct them to stop and report it to

12    my staff.

13              Remember, until such time as you have heard the

14    closing arguments of the lawyers and I have instructed you on

15    the law, you simply are not to talk about this case.

16              Thank you for your patience today.  If you would, give

17    your notebooks to the court security officer.  I'll see you

18    tomorrow morning, 9:00.

19              Let me give you some instructions as far as how

20    deliberations will occur once the case is turned over to you

21    for deliberations.

22              Monday is also a deliberation day.  So it would --

23    whenever the case concludes tomorrow and is turned over to you

24    for deliberations, it would continue Thursday, Friday and into

25    next week.
```

1          Have a nice evening.  Thanks for your patience today.

2          (Whereupon, the jury exited the courtroom at 2:27 p.m.

3    and the following proceedings were had:)

4          THE COURT:  You may be seated.

5          Yes.

6          MS. MEDETIS:  I was just stretching my back, your

7    Honor.

8          THE COURT:  You can stretch your back.  That's fine.

9          MR. HOROWITZ:  Not me.  I'll stretch mine pursuant to

10   Federal Rule of Criminal Procedure 29(b).

11         We'd move for a judgment of acquittal at the close of

12   all the evidence.  When the evidence is considered in the light

13   most favorable to the Government, no reasonable juror would

14   find Matthew Carter guilty of Counts 1 through 6 of the second

15   superseding indictment.

16         And we'd like to incorporate by reference all

17   objections, motions, both during the trial and pretrial that

18   were made.

19         THE COURT:  Yes.

20         MS. MEDETIS:  Your Honor, we would rely on our prior

21   arguments as to why the Defendant's Rule 29 motion should be

22   denied.

23         THE COURT:  Yes, Mr. Horowitz.

24         MR. HOROWITZ:  No additional argument than previously

25   made, Judge.

```
 1              THE COURT:  I'm going to deny the Rule 29 motions.

 2              I find that, at this stage of the proceedings, a

 3     reasonable jury could find the Defendant guilty of all crimes

 4     charged in the second superseding indictment; and, therefore,

 5     this case should be submitted to the jury.  The motion is

 6     denied.

 7              So we're moving on to charge conference.

 8              We'll take up the Government's packet first.  And the

 9     Defendant submitted a number of instructions from the pattern

10     jury instructions as well.  But we'll take up the Government's

11     first.

12              MS. MEDETIS:  Your Honor, I have no objection to the

13     Government's jury instructions.

14              THE COURT:  Okay.

15              MR. HOROWITZ:  Judge --

16              THE COURT:  We're going to go through one by one.

17              MR. HOROWITZ:  That's fine.

18              MS. MEDETIS:  May we sit, Judge?

19              THE COURT:  You may.  Of course.

20              Starting with Basic No. 1, Court's instructions to the

21     jury -- let me also inform the parties that each juror will

22     receive a packet of jury instructions without any title or

23     annotation or citation to authority.  It will only be the body

24     of the instruction.

25              MR. HOROWITZ:  Judge, also, the Government has
```

```
 1    submitted a clean copy of the indictment for submission to the

 2    jury.  We have no objection that.

 3              THE COURT:  Okay.

 4              MS. MEDETIS:  We'll be providing a copy that does not

 5    contain the forfeiture allegations.  We will not be proceeding

 6    with forfeiture.  No file stampings on it.  It's just a clean

 7    copy of the six counts.

 8              And we'll provide either an electronic copy or a hard

 9    copy to your Honor.

10              THE COURT:  So you're not seeking forfeiture?

11              MS. MEDETIS:  No.  Not at this time.

12              THE COURT:  Okay.  Starting with Basic No. 1,

13    beginning with members of the jury:  Any objection?

14              MR. HOROWITZ:  None from the defense, your Honor.

15              MS. MEDETIS:  None from the Government.

16              THE COURT:  It's granted.

17              Proposed Instruction No. 1, which is Basic 2.2, which

18    is where a defendant does not testify.

19              MR. HOROWITZ:  Judge, I have submitted Basic 2.1,

20    which, in light of Mr. Carter's testimony, is more applicable

21    to the situation.  So I would object to that instruction and

22    ask that 2.1 basic instruction be substituted.

23              THE COURT:  Any objection to that?

24              MS. MEDETIS:  No, your Honor.

25              In fact, our proposed jury instruction anticipates
```

Charge Conference                    60

```
 1    that modification.  So we have no objection to using Proposed

 2    Jury Instruction 2.1.  It would simply require the Court to

 3    delete the underlined contents in our instruction.

 4              THE COURT:  So I'll grant the Defendant's, which is

 5    the same as the Government's, without the underlined indication

 6    that the Defendant has chosen not to testify.  So it'll be 2.1,

 7    granted.

 8              Definition of reasonable doubt, Basic No. 3:  Any

 9    objection?

10              MR. HOROWITZ:  No objection, your Honor.

11              MS. MEDETIS:  No objection, your Honor.

12              THE COURT:  Granted.

13              Proposed No. 2, which is Basic Instruction No. 4,

14    consideration of direct and circumstantial evidence, argument

15    of counsel and comment by the Court:  Any objection?

16              MR. HOROWITZ:  No, your Honor.

17              MS. MEDETIS:  Nothing from the Government.

18              THE COURT:  It's granted.

19              Credibility of witnesses.

20              MR. HOROWITZ:  Pattern instruction.  No objection from

21    the defense.

22              MS. MEDETIS:  Nothing from the Government.

23              THE COURT:  Which is Basic No. 5.  It's granted.

24              Proposed No. 5.

25              MR. HOROWITZ:  Judge, what I have done in this case as
```

Charge Conference                                    61

 1   to No. 5 -- the Government has Basic Instruction 6.4.  I'm

 2   proposing 6.3, which is a more applicable situation, where the

 3   Defendant testifies with no felony conviction.

 4          MS. MEDETIS:  Your Honor, the Government doesn't have

 5   an objection to that.  In fact, our proposed instruction

 6   contemplates that possibility.  And we would then ask to strike

 7   the underlined language on Page 6 and add --

 8          THE COURT:  Which would make it 6.3.  Correct?

 9          MS. MEDETIS:  Correct, essentially.  And then add the

10   other language.

11          THE COURT:  6.3 is granted.

12          The note-taking instruction, which is Special No. 5.

13          MR. HOROWITZ:  No objection, your Honor.

14          THE COURT:  You also included that.  Correct?

15          MR. HOROWITZ:  I wasn't seeing very well this morning.

16          MS. MEDETIS:  No objection, your Honor.

17          THE COURT:  It's granted.

18          Proposed No. 7, which is a similar-acts evidence

19   instruction for Rule 413 and 414.

20          MR. HOROWITZ:  No objection from the defense.

21          MS. MEDETIS:  None from the Government.

22          THE COURT:  It's granted.

23          Proposed No. 8, which is the introduction to offense

24   conduct, which is Basic No. 8:  Any objection?

25          MR. HOROWITZ:  Judge, the objection that I have is as

Charge Conference                                    62

1    to the description of Count 1.

2          The language should be added "after 18 years of age,

3    if that sexual act occurred in the special maritime and

4    territorial jurisdiction of the United States."

5          That is how Count 1 is charged that differentiates

6    itself from the remaining counts, because the way it's written

7    right now, where it says Count 1 and then Counts 2 through 5

8    are practically identical, but there are different elements for

9    Count 1.

10         MS. MEDETIS:  There are not, your Honor.  As this has

11   been fully vetted on the previous Rule 29 motion, the reference

12   to 109 is not an element.  It's a definition.

13         The difference between the -- Count 1 and the other

14   counts is sexual act versus the use of illicit sexual conduct.

15   So we would object to that proposal.

16         THE COURT:  I'll deny the request by the Defendant and

17   adopt my prior ruling made at the initial Rule 29 motion.  So

18   Basic No. 8 is granted.

19         Count 1, which is Offense Instruction No. 93.3,

20   modified.  The pattern is actually for 2423(c), correct, and we

21   are traveling under 2423(b).

22         MS. MEDETIS:  Your Honor, if that's the case, I may

23   have miscited to 93.3.  I should be citing to 93.2 --

24   Pattern 93.2, modified.

25         THE COURT:  So is it just the citation that's

Charge Conference                        63

```
 1    incorrect?

 2              MS. MEDETIS:  Yes.  It's the citation that I erred on.

 3              THE COURT:  Okay.  Do you have the 2001 statute book?

 4              MS. MEDETIS:  Yes, I do, Judge.

 5              THE COURT:  May I see it?

 6              MS. MEDETIS:  (Tenders document to the Court.)

 7              THE COURT:  I don't see the language in the -- in 2423

 8    under Title 18 in the 2001 statute of age 16.  I only see 18.

 9              MS. MEDETIS:  Yes, your Honor.  The way that the

10    statute is constructed is to reference the Chapter 109A

11    offenses that would apply in this particular case, given the

12    evidence.

13              It is modeled after the Pattern 93.2, which instead of

14    referencing the definition of illicit sexual conduct, simply

15    spells it out -- spells out the 109A offenses.  And that's what

16    we've done here.

17              So in order to really make sense of, for lack of a

18    better phrase, Count 1, you'd have to read 2423(b) and the

19    various Chapter 109A offenses in Chapter 109A to make sense of

20    it.  And we can cite for the Court the Chapter 109A offenses

21    that we believe apply in this case.

22              THE COURT:  So that would be, then, the offense is the

23    sexual abuse of a minor under 2243?

24              MS. MEDETIS:  Yes, Judge.  2423.  Yes, Judge.

25              THE COURT:  Let me just ask you a question.
```

Charge Conference                               64

```
 1              That means, for an offense that occurred in 2001, if a
 2    person was 17, it's your position it wouldn't be a violation of
 3    this provision?
 4              MS. MEDETIS:  It would, if there was force --
 5              THE COURT:  If there was force or violence --
 6              MS. MEDETIS:  Correct.
 7              THE COURT:  -- or threat.
 8              MS. MEDETIS:  Correct.  And I can walk your Honor
 9    through the 109A offenses that are articulated in
10    Subparagraph 3 of the pattern jury instruction.
11              THE COURT:  It's just curious because the statute
12    itself says the US citizen who travels in foreign commerce for
13    the purpose of engaging in any sexual act as defined in
14    Section 2246, which is the explicit sexual acts that are
15    defined, with a person under 18 years of age, that would be a
16    violation of Chapter 109A.
17              So it's with a person who is under 18.  That would be
18    a violation of Chapter 109A, which then drops it down to 16 or
19    under 18 if it's by force or threat.  Correct?
20              MS. MEDETIS:  Essentially, in short, yes.
21              THE COURT:  Okay.  Where is the force and threat?
22              MS. MEDETIS:  Yes, your Honor.
23              2241(a) -- 18, USC, 2241(a).  That's the force.  And
24    then 2241(1) is threatening or placing that person in fear.
25              THE COURT:  (1) and (2)?  Force is (1).  Threatening
```

Charge Conference                        65

```
 1    or placing the other person in fear is (2).

 2             So it's under 18 by force -- by force or threat or

 3    placing the person in fear and under 16 for the act by itself,

 4    without force or threat?

 5             MS. MEDETIS:  Correct.  Correct.

 6             THE COURT:  Okay.  That only applies to Count 1,

 7    right, because statute was changed after that?

 8             MS. MEDETIS:  It continues through except that the

 9    statutory language became a little bit more sophisticated -- I

10    don't want to say sophisticated -- the statutory language

11    changed, but it is effectively the same thing.  And your Honor

12    will see that in the pattern for Counts 2 through 6.

13             THE COURT:  Any objection to Proposed Instruction

14    No. 9 for Count 1?

15             MR. HOROWITZ:  Judge, once again, we'll renew that --

16    first of all, let me start from the beginning.

17             At the top of the second line, where the word

18    "traveling" is there, it would start, "As I just explained,

19    Count 1 of the indictment charges the Defendant with traveling

20    in foreign commerce," we'd ask that the word "knowingly" be

21    added before the word "traveling."

22             THE COURT:  You know, it's interesting.  In the 2001

23    statutes, Title 18, United States Code, 2423(a), has

24    "knowingly" in the statute and 2423(b) does not.

25             So (a) reads "a person who knowingly transports an
```

 1    individual who has not attained the age of 18 years in

 2    interstate or foreign commerce."

 3            And (b) states "a person who travels in interstate

 4    commerce or conspires to do so or a United States citizen or an

 5    alien admitted for permanent residence in the United States who

 6    travels in foreign commerce or conspires to do so for the

 7    purpose of engaging in any sexual act," et cetera.

 8            They do have "knowingly" in the second paragraph.

 9            MS. MEDETIS:  Your Honor -- we do, your Honor.  That's

10    based on -- we've adopted the Pattern 93.2, which includes

11    "knowingly" for the current version of the statute, which also

12    does not have the word "knowingly" in it.

13            So the way that the instruction is modeled is to have

14    a brief explanation as to what the count is and then the second

15    paragraph starts with the pattern instruction:  "It is federal

16    crime for a United States citizen to knowingly travel..."

17            Again, it may not be in the statutory language.  We

18    adopted it from the pattern because it is in the Eleventh

19    Circuit Pattern 93.2.  We don't have an issue with keeping

20    "knowingly" in there.

21            THE COURT:  So you have no objection to inserting

22    "knowingly" in there?

23            MS. MEDETIS:  We don't need to insert it in the first

24    paragraph, your Honor, because it's in the second paragraph.

25            THE COURT:  Why do I even have the first paragraph?

```
 1            MS. MEDETIS:  Your Honor, we can strike the first

 2   paragraph.  That's generally how I've seen the pattern jury

 3   instructions go.

 4            But as to the substantive counts, it's redundant.  I

 5   agree with the Court.  And I don't have an issue with striking

 6   it.

 7            THE COURT:  Any objection to striking that first

 8   paragraph and starting out with -- it'll say "Count 1:  "It's a

 9   federal crime for a United States citizen...", starting off

10   with the second paragraph.

11            MR. HOROWITZ:  That's fine, Judge.

12            THE COURT:  All right.  So that first paragraph is

13   struck.

14            Any other objections?

15            MR. HOROWITZ:  Yes, your Honor.

16            We would ask, once again, that at the end of that --

17   what is now the first paragraph, that the -- "if the sexual act

18   occurred in the special maritime and territorial jurisdiction

19   of the United States" -- we'd ask that that be put in there,

20   but we understand the Court's prior ruling.

21            THE COURT:  I have found that it's not an element.

22            MR. HOROWITZ:  We would ask that it be the fourth

23   element as well, but we also understand the Court and respect

24   the Court's ruling.

25            Judge, as to where the elements are listed as 1, 2 and
```

1   3, the word "knowingly" should be inserted before No. 3;

2   and where it says "the Defendant knowingly traveled for

3   purposes of," "knowingly" should be added right there.

4          The Government has to prove that the Defendant acted

5   knowingly beyond a reasonable doubt, and that's the

6   introduction to the elements.  The word "knowingly" should be

7   in with the elements, as far as the travel is concerned.

8          MS. MEDETIS:  Your Honor, we would disagree with that

9   based on the pattern jury instruction of 93.2.  Also, there's

10  no indication in this case that the Defendant was coerced or

11  somehow forced to be on a plane to travel.  That's not the

12  issue here.  And, therefore, we think that that would be

13  redundant.

14         MR. HOROWITZ:   Judge, I would respectfully disagree.

15  I think the Government has to prove beyond a reasonable doubt

16  the Defendant's intent on traveling.

17         They've alleged that his intent on traveling was for

18  the purpose of the factors enumerated below, and they have to

19  prove that he acted with the specific intent to engage in the

20  sexual conduct that's outlined below.

21         And with that specific intent, they have to prove

22  that -- beyond a reasonable doubt that he acted knowingly and

23  with specific intent.

24         MS. MEDETIS:  Your Honor, we don't dispute that.  But

25  that's captured in the burden and the element that we have to

 1   prove beyond a reasonable doubt what his purpose was.

 2         MR. HOROWITZ:  It's only put in that first paragraph,

 3   which is more of an introductory paragraph, and that should be

 4   included within the elements.

 5         THE COURT:  It's not within the pattern in the -- I

 6   don't see "knowingly" in the statute.  I'm not even sure why

 7   it's in that first paragraph.

 8         MS. MEDETIS:  Your Honor, the Government would echo

 9   that bewilderment.

10         THE COURT:  I'm sorry?

11         MS. MEDETIS:  I said the Government would echo that

12   bewilderment.  But we've tried to adhere to the pattern.

13         THE COURT:  It's in 2423(a), the word "knowingly."

14   It's not in (b).  And (a) is knowingly transports.

15         MS. MEDETIS:  Agreed, Judge.

16         THE COURT:  (B) is travels.

17         I'm not going to put it in the elements.  If anything,

18   I would take out the "knowingly" in the paragraph.

19         MR. HOROWITZ:  Judge, we would object because it is a

20   specific-intent crime and we'd ask that the jury instruction be

21   written accordingly.

22         THE COURT:  Well, knowingly is not a specific intent.

23   It's not --

24         MR. HOROWITZ:  There's got to be some intent to

25   violate the law, and the word "knowingly," at a minimum, needs

 1    to be in there.

 2              I'm just going to make my record as to --

 3              THE COURT:  I'll leave it the way it is written, which

 4    is the way the pattern is.  It's the travel for the purpose.

 5    The intent is the purpose of engaging in the illicit sexual

 6    act.  It's not the knowingly traveled.

 7              But I don't even think that that's an issue here.  I

 8    mean, there's no issue that he didn't know he was traveling.

 9              MR. HOROWITZ:  But it's the purpose that he was

10    traveling for, which is the charged conduct.  If a -- without

11    that, if a person simply was a US citizen and traveled in

12    foreign commerce to Haiti, you know, there wouldn't be a

13    problem.  But the purpose -- he has to know what the purpose is

14    that he's traveling for.

15              MS. MEDETIS:  Your Honor, the United States would

16    disagree.  We think that the phrase "traveling with the

17    purpose" makes plain that we have to show what the Defendant's

18    purpose was.

19              If you have a purpose, then, by definition, it must be

20    a knowing purpose.  It couldn't be accidental purpose because

21    it wouldn't be a purpose, if I'm making sense.

22              MR. HOROWITZ:  Then, using that analysis, the word

23    "knowingly" should be there.

24              THE COURT:  Why isn't it in the statute?

25              MR. HOROWITZ:  I couldn't ask Congress a question.  If

Charge Conference                        71

 1    that would be one question I could ask, I would definitely ask
 2    it.  I wish I could answer the Court's question.
 3            THE COURT:  It's in (a).  It's not in (b).
 4            MS. MEDETIS:  Your Honor, frankly, the Government
 5    feels that the Eleventh Circuit pattern jury instruction may on
 6    this point and on another one be incorrect because they haven't
 7    even elicited the citizenship requirement, which the Government
 8    added back in its recommendation for Counts 2 through 5.  So
 9    there may be some infirmities with the pattern.
10            The Government doesn't dispute --
11            THE COURT:  Well, but it's interesting because
12    2423(b), as it's written, says:  A person who travels in
13    interstate commerce or conspires to do so or a United States
14    citizen or an alien admitted for permanent residence in the
15    United States who travels in foreign commerce.
16            So it's a person who travels in interstate commerce or
17    a United States citizen or alien who travels in foreign
18    commerce.  That's from the 2001 statute.
19            I agree.  I think the way it's written, if it's
20    traveled in foreign commerce, it has to be a United States
21    citizen, not just a person.
22            MS. MEDETIS:  Agreed, Judge.
23            THE COURT:  A person who travels in interstate
24    commerce or into the United States for the purpose of.
25            I am not going to insert "knowingly" into the

 1    elements.  If you want me to leave it -- the introductory,

 2    "It's a federal crime" paragraph, with "knowingly," I will do

 3    so.

 4              But I don't find that it's part of the elements, as

 5    it's not within the statute, in either 2001 or the later

 6    statute, though the Government must prove the purpose of the

 7    travel and the specific purpose to engage in the illicit sexual

 8    act with a minor as defined by the statute.

 9              Any other objections to this instruction?

10              MR. HOROWITZ:  Yes, your Honor.

11              On Page 13 of the instructions, where it says, "The

12    Government does not have to prove...", that paragraph, we don't

13    object to the first sentence.

14              However, the remainder of that paragraph we would

15    object to, where it starts off with, "Direct proof of a

16    person's intent is almost never available..."

17              In that instruction, the Government deviates from the

18    pattern.  That portion is not contained in the pattern at all.

19              THE COURT:  I saw that.

20              MR. HOROWITZ:  They attempt to take a portion of a

21    jury instruction from a 2004 case that was tried before Judge

22    Jordan.

23              We would object to the use of that language.  It's a

24    misstatement of the law and it is not part of the approved

25    pattern instructions for this circuit.

1           THE COURT:  Was there an appeal in the Jordan case?

2           MR. HOROWITZ:  Yes --

3           MS. MEDETIS:  Your Honor --

4           MR. HOROWITZ:  -- there was.

5           THE COURT:  What was the result of the appeal?

6           MR. HOROWITZ:  I am almost certain that it was

7    affirmed, but I cannot tell this Court what the reasons were

8    for the affirmation and whether this specific portion of the

9    jury instructions were challenged by the appellant.

10          Judge, the citation for the direct appeal is 599 F.3d

11   1221.

12          THE COURT:  Oh.  It's reported?

13          MR. HOROWITZ:  Yes, it is.

14          MS. MEDETIS:  Yes, Judge.

15          MR. HOROWITZ:  Judge, at Page 1237 of that opinion,

16   the Court of Appeals talks about the jury instructions as to

17   18, United States Code, Section 2423(b).  It's Headnotes No. 20

18   and 21.

19          But nowhere in that discussion is the portion that I'm

20   objecting to.  Apparently, it was a different issue with the

21   jury instructions.

22          THE COURT:  I've looked at the docket in the Jordan

23   case, *United States versus Frank*, Case No. 04-20778.  In the

24   proposed jury instructions that -- by the Government, this

25   language is not in there.

1          There's then some proposed jury instructions by the

2     Defendant, not in there.  This is the instructions that were

3     given by Judge Jordan, but I can't find how Judge Jordan got

4     there.

5          MS. MEDETIS:  Judge, I could probably try to pull the

6     transcript, if we want to move on to another instruction, but

7     it's up to the Court.

8          THE COURT:  You have the transcript?

9          MS. MEDETIS:  It's either going to be here or on the

10    drive at the office.  It was appealed; so, we automatically

11    order it.  So it'll be on file.

12         THE COURT:  Uh-huh.

13         I would strike, "Direct proof of a person's intent is

14    almost never available.  It would be a rare case where it could

15    be shown the person wrote or stated that, as of a given time,

16    he committed an act with a particular intent."  I would strike

17    those two sentences.

18         I would strike the word "such" and begin the next

19    sentence with, "Direct proof of intent is not required.  The

20    ultimate fact of intent, though subjective, may be established

21    by circumstantial evidence based upon the Defendant's outward

22    manifestations, his words, his conduct, his acts and all the

23    surrounding circumstances disclosed by the evidence and the

24    rational or logical inferences that may be drawn from them."

25         So that paragraph would read, in totality, "The

Charge Conference                    75

1    Government does not have to prove that the Defendant actually

2    engaged in a sexual act with a person under 18 years of age,

3    but must prove that he traveled with the intent to engage in

4    such conduct.

5         "Direct proof of intent is not required.  The ultimate

6    fact of intent, though subjective, may be established by

7    circumstantial evidence based upon the Defendant's outward

8    manifestations, his words, his conduct, his acts and all the

9    surrounding circumstances disclosed by the evidence and the

10   rational or logical inferences that may be drawn from them."

11        MR. HOROWITZ:  Judge, the defense would object to the

12   extent that it deviates from the pattern instruction and it

13   adds to the pattern instructions.

14        The definitions of "circumstantial evidence" as well

15   as "direct evidence," which that -- the rest of that sentence

16   goes to as it was already defined within the pattern jury

17   instructions.

18        So, with that, we would object.

19        And just so the Court's aware, that phraseology and

20   that portion of the instruction repeats itself in the next two

21   instructions.

22        THE COURT:  What's the Government's position?

23        MS. MEDETIS:  Your Honor, we do not object to the

24   Court's modification of that portion of the instruction.  We

25   don't think it is redundant to the definitions of

Charge Conference                                    76

 1    circumstantial or direct evidence.

 2              Rather, it is a necessary explanation of what is

 3    direct and circumstantial evidence in the specific context of

 4    this crime, which requires a showing of the Defendant's intent

 5    by way of showing what his purpose was.

 6              And so we would ask that the Defendant's objection be

 7    overruled on this portion of the instruction.

 8              THE COURT:  Let's take a break.  If you could find in

 9    the transcript how and where Judge Jordan and the parties

10    discussed this --

11              MS. MEDETIS:  I'm trying.

12              THE COURT:  -- and what the authority was.

13              MS. MEDETIS:  Certainly, Judge.  I'm working with the

14    office because I don't have access to that drive to pull the

15    transcript and look for that as we speak.

16              THE COURT:  So 20 minutes?  30 minutes?

17              MS. MEDETIS:  I certainly hope so, Judge.  Yes.

18              THE COURT:  So we'll be in recess.  Let's do

19    30 minutes.  4:00.

20              Thank you.

21              (Thereupon a recess was taken, after which the

22    following proceedings were had:)

23              THE COURT:  Good afternoon.  You may be seated.

24              United States of America versus Matthew Andrew Carter,

25    Case No. 11-20350.

1          Counsel, state your appearances, please.

2          MS. MEDETIS:  Good afternoon, your Honor.

3          Maria Medetis and Bonnie Kane on behalf of the United

4    States, with Special Agents Larko and Flores, at counsels'

5    table.

6          MR. HOROWITZ:  Good afternoon, your Honor.

7          Phil Horowitz, Stuart Adelstein on behalf of Matthew

8    Carter, who's present before the Court.

9          THE COURT:  Did you find it?

10          MS. MEDETIS:  Your Honor, we appreciate the Court

11    giving us time to do so.  We've scoured rather lengthy trial

12    transcripts in this case.

13          And I will tell you what the Government was able to

14    find and what we believe was the genesis of this instruction.

15          The Court in *Frank* does not really expound at all on

16    why the instruction was given at the time of the charging

17    conference.

18          However, in that case, during the charging conference,

19    there was discussion back and forth regarding the burden as to

20    the sexual act.

21          And I will read a portion of the transcript at

22    Page 4277 of that trial transcript in *US versus Frank* where the

23    Court says, "But there doesn't have to be" -- referring to a

24    sex act -- "there doesn't have to be -- for purposes of this

25    statute, there doesn't have to be that proof.  This is a travel

1      with intent to engage."

2              Defense counsel:  "Right."

3              The Court:  "And you can have that through

4      circumstantial evidence.  You don't have to have proof that

5      there was a sex act."

6              Your Honor, I think that what the Court was getting at

7      and what I think this instruction is getting at is that, read

8      alone, these jury instructions -- or the offense instructions

9      might suggest the need to prove a sex act.  That is not the

10     case here.

11             And this enhanced instruction from *Frank* merely

12     educates the jury as to what circumstantial evidence would be

13     in this particular intent crime.

14             I don't see where defense counsel says that this is a

15     misstatement of the law or that it is incorrect.  It is merely

16     examples of what direct or circumstantial evidence would be in

17     this case, where in this case there is no direct eyewitness

18     testimony to speak of.

19             There is proof -- at least from the Government's

20     standpoint, the proof of his purpose at the time of travel is

21     based on his conduct before and after he leaves the -- leaves

22     Haiti and returns to Haiti on each of the travel dates.

23             The issue of fact here is intent, not an event that is

24     a car accident or a narcotics transaction.  And so it's

25     important for the jury to understand -- and I think this is

Charge Conference                                    79

 1   what the *Frank* instruction is getting at -- How do you

 2   establish intent when there is not an event that's witnessed

 3   other than by the victim?

 4         And we think that the language about deeds and acts

 5   and words is appropriate to instruct the jury in that regard as

 6   to what constitutes circumstantial evidence in this type of

 7   case.

 8         THE COURT:  I'm going to strike the language that was

 9   given in the *Frank* case, beginning with "direct proof" and

10   ending with "them."

11         I will after the statement, "The Government does not

12   have to prove that the Defendant actually engaged in a sexual

13   act with a person under 18 years of age, but must prove that he

14   traveled with the intent to engage in such conduct" -- and the

15   additional language is as follows:  "Proof of the Defendant's

16   intent may be by direct or circumstantial evidence."

17         This would not preclude argument along the lines of

18   what's contained in the *Frank* instruction, but I find that I'm

19   just not comfortable without authority as to that language and

20   find that my proposed language makes me more comfortable.

21         MS. MEDETIS:  Certainly, Judge.

22         Could I ask for an additional word be added?  "May be

23   established by direct or circumstantial evidence"?

24         THE COURT:  That's fine.

25         This, of course, would be in conjunction with Proposed

Charge Conference                              80

```
 1    Jury Instruction No. 3, which is Basic No. 4 of the pattern,
 2    which defines direct and circumstantial evidence.
 3              MS. MEDETIS:  Understood, Judge.
 4              THE COURT:  So with that change, are there any other
 5    objections?
 6              MR. HOROWITZ:  Yes, your Honor.
 7              On Page 15.
 8              THE COURT:  Page 15?  No.  On this instruction.
 9              MR. HOROWITZ:  On this instruction, no, your Honor.
10              THE COURT:  So it is granted as modified.
11              And I take it you have no objection to the Court's
12    striking and the insertion of that one sentence, Mr. Horowitz.
13              MR. HOROWITZ:  No, your Honor.
14              THE COURT:  "No," you have no objection?
15              MR. HOROWITZ:  Yes.  We have no objection.
16              THE COURT:  Yes.  We have no bananas.
17              Yes.  You have no objection.  So it's granted as
18    modified.
19              MS. MEDETIS:  Your Honor, as to instructions for
20    Counts 2 through 5, the reference should be to Pattern
21    Instruction 93.2, not 93.3.
22              THE COURT:  Okay.  We're going to strike that first
23    paragraph to conform with the instruction on Count 1.  It'll
24    just be entitled "Counts 2 through 5" and begin with, "It's a
25    federal crime for a United States citizen..."
```

Charge Conference                          81

```
 1            MS. MEDETIS:  The Government does not object to that.

 2            MR. HOROWITZ:  Judge, on Page 17, the direct proof of

 3  a person's intent language is also in that instruction.

 4            THE COURT:  Yes.  It's struck.  And the same language

 5  will be inserted.  "Proof of the Defendant's intent may be

 6  established" -- and, actually, I'm going to further modify

 7  it -- "by either direct or circumstantial evidence."

 8            MR. HOROWITZ:  That's fine.

 9            THE COURT:  That'll be as to both instructions.

10            Other than those changes, any objection to this

11  proposed instruction?

12            MS. MEDETIS:  Not from the Government, your Honor.

13            MR. HOROWITZ:  Not from the defense, your Honor.

14            THE COURT:  Granted as modified.

15            Count 6, which is Proposed Instruction No. 11.

16            MS. MEDETIS:  Again, your Honor, the reference in the

17  Footnote 19 to 93.3 should be 93.2.

18            THE COURT:  Okay.  Any objection to Proposed No. 11,

19  which is Count 6?

20            MR. HOROWITZ:  No, your Honor.

21            MS. MEDETIS:  Not from the Government, your Honor.

22            THE COURT:  It's granted.

23            Proposed 12, on or about a particular date and

24  knowingly, which is Basic 9.2:  Any objection?

25            MR. HOROWITZ:  None from the defense, your Honor.
```

Charge Conference                              82

```
 1              MS. MEDETIS:  None from the Government, your Honor.

 2              THE COURT:  Granted.

 3              Proposed No. 11, punishment, single Defendant,

 4    multiple counts, Basic 10.2:  Any objection?

 5              MR. HOROWITZ:  None from the defense, your Honor.

 6              MS. MEDETIS:  Not from the Government.

 7              THE COURT:  Granted.

 8              Duty to deliberate, Proposed No. 12, Basic No. 11:

 9    Any objection?

10              MR. HOROWITZ:  None from the defense, your Honor.

11              MS. MEDETIS:  None from the Government, your Honor.

12              THE COURT:  Granted.

13              Verdict, Proposed No. 13, Basic No. 12:  Any

14    objection?

15              MR. HOROWITZ:  Basic No. -- no, your Honor.  None from

16    the defense.

17              MS. MEDETIS:  Not from the Government either, your

18    Honor.

19              THE COURT:  Granted.

20              Did you submit a verdict form?

21              MS. MEDETIS:  Yes, your Honor.  It was attached.  It's

22    Pages 27 and 28 of the jury instructions.  I can hand up my

23    copy.

24              THE COURT:  Please.

25              Did we cover all your proposed instructions,
```

```
 1        Mr. Horowitz?

 2                MR. HOROWITZ:  Yes, your Honor.

 3                THE COURT:  I just want to inform the parties that, in

 4        looking in the annotations for 93.2, it does state at Page 557

 5        of the 2010 Eleventh Circuit pattern jury instructions, "Note:

 6        To be convicted of this section for traveling in foreign

 7        commerce, the Defendant must be a US citizen or a permanent

 8        resident.  This additional element should be included if

 9        applicable."

10                MS. MEDETIS:  Yes, Judge.  Thank you.

11                And, your Honor, when I refer to Pages 27 and 28, I

12        mean the pages assigned by the CM/ECF --

13                THE COURT:  Yes.

14                MS. MEDETIS:  -- for the --

15                THE COURT:  Any objection to the proposed verdict

16        form, which is Docket Entry 175, Pages 27 and 28?

17                MR. HOROWITZ:  As to the verdict form, no, your Honor.

18                THE COURT:  I will add a line for the foreperson to

19        print his or her name.  I normally do that.  Sometimes you

20        can't read their writing.

21                Did you have any objections to it, Mr. Horowitz?

22                MR. HOROWITZ:  No, your Honor.

23                THE COURT:  So we're set with the verdict form.  That

24        is granted.

25                And is that it?  Is there anything else we need to
```

Charge Conference                              84

1    take up?

2                MS. MEDETIS:  No, your Honor.

3                Does the Court prefer that I e-mail a copy of the

4    clean indictment after the parties have proofed -- approved it

5    or would you just prefer a hard copy sent tomorrow?

6                THE COURT:  It doesn't matter.  You can e-mail it.

7    That's fine.  We'll print it out.

8                MS. MEDETIS:  Okay.

9                THE COURT:  Let's go over closing arguments now.

10               How long are the parties requesting?

11               MS. MEDETIS:  Judge, I think the Government would like

12   to request an hour in total, 60 minutes.

13               THE COURT:  For both your opening and closing?

14               MS. MEDETIS:  Correct, Judge.

15               Would your Honor like to know how we plan to allot

16   that time in advance?

17               THE COURT:  Yes.

18               MS. MEDETIS:  Your Honor, I suspect that the

19   opening -- the first close will be approximately 40 minutes and

20   that 20 minutes will be given for rebuttal closing.

21               THE COURT:  And how long is the Defendant requesting?

22               MR. ADELSTEIN:  That's sufficient.  One hour.

23               THE COURT:  An hour?

24               MR. ADELSTEIN:  Yes, ma'am.

25               THE COURT:  And do you want any warnings?  I'm the

Charge Conference                              85

1   timekeeper.

2               MR. ADELSTEIN:  When I have ten minutes left.

3               THE COURT:  Ten minutes.

4               MS. MEDETIS:  Your Honor, we would like a warning at

5   the 30-minute mark for an indication that we have ten minutes

6   as to our first opening.

7               THE COURT:  Ten minutes remaining for the opening.

8               And for the rebuttal?

9               MS. MEDETIS:  Five minutes, your Honor.

10              THE COURT:  Five minutes remaining.

11              MR. ADELSTEIN:  The only other thing I would request

12  is that all of the exhibits that have been admitted be

13  available somewhere on the table or somewhere around so I don't

14  have to ask for them.

15              MS. MEDETIS:  Your Honor, we can put the box in front

16  of counsels' table on the Government's side.  They will be in

17  numerical order --

18              MR. ADELSTEIN:  That's fine.

19              MS. MEDETIS:  -- and available to defense counsel.

20              MR. ADELSTEIN:  Thank you.

21              THE COURT:  So it looks like we're probably going to

22  go straight through --

23              MR. ADELSTEIN:  That's fine for me.

24              THE COURT:  -- with couple of breaks for Lisa.

25              Oh.  A couple things.

Charge Conference                         86

1       MR. ADELSTEIN:  Yes, ma'am.

2       THE COURT:  One of the jurors has a dental appointment

3   tomorrow.  I don't know if it's the same juror or not who had

4   dental issues last week.

5       But one of the jurors has a dental appointment and

6   needs to leave between 4:15 and 4:30 to make it to the dental

7   appointment.  But they're going to have the case and they

8   basically control the time at that point.

9       We also have -- I don't know whether it will be an

10  issue or not.  Probably not.  Tomorrow is March 1st.  Right?

11      MR. HOROWITZ:  Tomorrow is February 28th.

12      THE COURT:  Friday is the 1st.  Okay.

13      So we have Juror No. 4 who has a trip planned on the

14  6th.  Remember I had informed him -- I think it's a family

15  reunion, as I recall.  I could be wrong, but I think that's

16  what it was it.  And I did inform him that he would be able to

17  go.

18      I don't know that it's going to be an issue, since

19  they're going to get the case tomorrow and they have Thursday,

20  Friday, Monday, Tuesday.  It could be an issue.  I don't know.

21  But I did inform him that he would be able to go.

22      MS. MEDETIS:  Understood, Judge.

23      THE COURT:  And I intend to keep my word.

24      MR. ADELSTEIN:  I understand.  I don't think it will

25  be an issue.

Charge Conference                                87

```
 1            THE COURT:  It may not be an issue, but I just want to
 2   alert the parties that that is looming as far as next Wednesday
 3   is concerned and to remind you of what I informed him.
 4            MR. ADELSTEIN:  I can't sit next to Horowitz that long
 5   anyway, Judge.
 6            THE COURT:  You've done pretty well.
 7            MR. ADELSTEIN:  We've reached our wit's end, though.
 8   We've passed our limit.
 9            THE COURT:  I just wanted to remind you of that.  I
10   don't think it'll be an issue, but one never knows.
11            MR. ADELSTEIN:  Yes, ma'am.
12            THE COURT:  So I will see you tomorrow morning, 9:00.
13            Before we recess, we are going to prepare the packets
14   now and we'll e-mail them to you.  I think it won't take that
15   long to prepare them and we'll e-mail the packets.
16            And then you can just let me know first thing in the
17   morning if there are any -- I'll review it, but if there are
18   any -- hopefully, not additional issues, but any typos or
19   anything that you see or any objections that you have to the
20   packet.
21            We'll just quickly go over that before we start
22   closing arguments in the morning.
23            MR. ADELSTEIN:  Yes, ma'am.
24            MS. MEDETIS:  Your Honor, if I may ask, does the Court
25   instruct the jury before arguments or after?
```

```
 1              THE COURT:  I have instructed the jury both ways.  And

 2    the rules -- they do provide for instruction prior to closing

 3    argument.

 4              I would hear the positions of the parties.

 5              MS. MEDETIS:  The Government has no position on that.

 6    We were just curious about the Court's proceedings.  We

 7    don't -- we defer to the Court.

 8              THE COURT:  I think the culture is after.  I have

 9    instructed them before.

10              Sometimes the lawyers like it because they don't have

11    to spend that much time on their closing arguments and

12    reviewing the instructions because the jury has already heard

13    the instructions from the Court.

14              I've had lots of trials both ways.

15              MR. ADELSTEIN:  Since I'm an old man, I like it after.

16              THE COURT:  That's the way people -- that was the way

17    it's usually done.

18              MR. ADELSTEIN:  I have a rough time with change.

19              MS. MEDETIS:  Your Honor, the Government doesn't have

20    an issue with that.

21              THE COURT:  So it'll be after.  That's fine.

22              MR. ADELSTEIN:  Thank you.

23              THE COURT:  So we're in recess until 9:00.  Enjoy your

24    evening.

25              MR. ADELSTEIN:  Thank you.  You, too.
```

1        MS. MEDETIS:  Likewise, your Honor.

2        THE COURT:  And we're in recess for the day.

3        (Proceedings concluded.)

4

5                    C E R T I F I C A T E

6

7        I hereby certify that the foregoing is an accurate

8   transcription of the proceedings in the above-entitled matter.

9

10

11  _____          /s/Lisa Edwards_____
         DATE                LISA EDWARDS, RDR, CRR
12                           Official United States Court Reporter
                             400 North Miami Avenue, Twelfth Floor
13                           Miami, Florida 33128
                             (305) 523-5499
14

15

16

17

18

19

20

21

22

23

24

25

## /

/s/Lisa [1] - 89:11

## 0

016W [1] - 32:14
04-20778 [1] - 73:23

## 1

1 [26] - 1:8, 22:19, 22:21, 31:14, 32:16, 32:20, 32:22, 48:6, 57:14, 58:20, 59:12, 59:17, 62:1, 62:5, 62:7, 62:9, 62:13, 62:19, 63:18, 64:25, 65:6, 65:14, 65:19, 67:8, 67:25, 80:23
1) [1] - 64:25
10 [2] - 23:5, 50:11
10.2 [1] - 82:4
105 [27] - 3:12, 7:10, 7:12, 7:14, 8:2, 10:9, 17:25, 24:4, 24:15, 27:16, 29:2, 29:6, 38:14, 38:16, 38:23, 45:14, 46:4, 46:11, 47:9, 47:13, 47:14, 47:20, 49:17, 49:20, 49:24, 50:18, 54:24
106 [20] - 7:12, 7:15, 8:2, 10:9, 18:1, 18:5, 24:4, 24:15, 27:9, 27:23, 29:8, 29:23, 30:22, 30:25, 31:14, 32:6, 38:13, 45:15, 45:17, 46:12
109 [1] - 62:12
109A [8] - 63:10, 63:15, 63:19, 63:20, 64:9, 64:16, 64:18
10:30 [2] - 13:12, 13:13
11 [6] - 23:6, 50:15, 81:15, 81:18, 82:3, 82:8
11-20350 [4] - 4:3, 13:18, 37:25, 76:25
11-20350-CRIMINAL-LENARD [1] - 1:2
12 [6] - 23:7, 50:4, 50:19, 81:23, 82:8, 82:13
1214 [1] - 18:13
1217 [1] - 22:13

1221 [1] - 73:11
1226 [2] - 19:10, 19:21
1227 [1] - 19:22
1229 [1] - 20:18
1237 [1] - 73:15
1260 [1] - 15:24
1278 [1] - 15:25
13 [4] - 23:8, 50:21, 72:11, 82:13
14 [3] - 22:8, 23:9, 50:23
1400 [1] - 1:18
15 [4] - 23:10, 51:21, 80:7, 80:8
16 [5] - 23:11, 52:1, 63:8, 64:18, 65:3
17 [4] - 23:12, 52:15, 64:2, 81:2
175 [1] - 83:16
18 [5] - 23:13, 52:24, 62:2, 63:8, 64:15, 64:17, 64:19, 64:23, 65:2, 65:23, 66:1, 73:17, 75:2, 79:13
18-D [1] - 48:22
19 [3] - 15:4, 23:14, 81:17
190 [1] - 15:2
1910 [1] - 1:24
1945 [2] - 22:23, 48:12
1983 [3] - 48:20, 49:5, 49:12
1990 [7] - 7:11, 46:2, 47:23, 50:3, 50:13, 50:17, 54:19
1993 [2] - 21:10, 49:12
1994 [1] - 22:9
1:30 [2] - 23:22, 37:21
1st [2] - 86:10, 86:12

## 2

2 [10] - 22:22, 50:18, 60:13, 62:7, 64:25, 65:12, 67:25, 71:8, 80:20, 80:24
2 [1] - 65:1
2.1 [4] - 59:19, 59:22, 60:2, 60:6
2.2 [1] - 59:17
20 [6] - 16:23, 23:15, 53:12, 73:17, 76:16, 84:20
2001 [2] - 63:3, 63:8,

64:1, 65:22, 71:18, 72:5
2004 [1] - 72:21
2006 [2] - 15:3, 15:4
2009 [2] - 14:16, 16:1
2010 [3] - 18:13, 40:6, 83:5
2012 [1] - 22:13
2013 [1] - 1:5
20530 [1] - 1:19
21 [3] - 23:16, 53:15, 73:18
22 [6] - 22:19, 23:17, 32:16, 32:20, 34:21, 53:17
2241(1 [1] - 64:24
2241(a [1] - 64:23
2241(a) [1] - 64:23
2243 [1] - 63:23
2246 [1] - 64:14
23 [3] - 10:19, 18:8, 54:18
23rd [2] - 50:3, 52:2
24 [1] - 3:5
2423 [2] - 63:7, 63:24
2423(a [2] - 65:23, 69:13
2423(b [3] - 63:18, 65:24, 71:12
2423(b) [2] - 62:21, 73:17
2423(c [1] - 62:20
25th [1] - 50:13, 50:17, 52:17
27 [5] - 1:5, 22:23, 82:22, 83:11, 83:16
27th [1] - 48:12
28 [3] - 82:22, 83:11, 83:16
28th [1] - 86:11
29 [3] - 3:5, 57:21, 58:1, 62:11, 62:17
29(b) [1] - 57:10
2929 [1] - 1:21
2:02 [1] - 39:8
2:27 [1] - 57:2

## 3

3 [7] - 22:23, 48:9, 60:8, 64:10, 68:1, 80:1
30 [2] - 76:16, 76:19
30-minute [1] - 85:5
302 [1] - 9:6
305 [2] - 2:3, 89:13
33128 [2] - 2:3, 89:13
33129 [1] - 1:22
33132 [1] - 1:16

33156 [1] - 1:25
36 [1] - 20:3
39 [1] - 3:8

## 4

4 [5] - 22:24, 48:15, 60:13, 80:1, 86:13
40 [1] - 84:19
400 [2] - 2:2, 89:12
410 [1] - 1:22
413 [1] - 61:19
414 [1] - 61:19
42 [1] - 22:8
4277 [1] - 77:22
47 [1] - 3:12
486 [3] - 14:15, 16:14, 21:7
497 [1] - 14:16
4:00 [1] - 76:19
4:15 [1] - 86:6
4:30 [1] - 86:6
4:43 [1] - 1:6
4th [1] - 49:12

## 5

5 [10] - 22:25, 49:23, 60:23, 60:24, 61:1, 61:12, 62:7, 71:8, 80:20, 80:24
523-5499 [2] - 2:3, 89:13
53 [1] - 20:3
54 [2] - 3:8, 20:4
541 [1] - 20:3
556 [1] - 15:24
557 [1] - 83:4
559 [3] - 14:15, 16:14, 21:6
58 [1] - 3:16
595 [1] - 18:13
599 [1] - 73:10
5th [3] - 48:20, 49:5, 49:12

## 6

6 [6] - 23:1, 57:14, 61:7, 65:12, 81:15, 81:19
6.3 [3] - 61:2, 61:8, 61:11
6.4 [1] - 61:1
60 [1] - 84:12
600 [1] - 1:18
667 [1] - 22:13
6th [1] - 86:14

## 7

7 [2] - 23:2, 50:5, 61:18
785 [1] - 15:2

## 8

8 [7] - 17:2, 23:3, 50:7, 55:8, 61:23, 61:24, 62:18
8) [1] - 35:18
803 [1] - 17:1
803(6 [2] - 35:17, 37:19
803(8) [1] - 37:20
803(8)(B [1] - 22:12
803(8)(B) [1] - 19:1
803(A)(2) [1] - 17:6
805 [1] - 11:11
89 [1] - 3:17
8:00 [1] - 4:16

## 9

9 [4] - 21:10, 23:4, 50:9, 65:14
9.2 [1] - 81:24
907 [1] - 21:10
911 [1] - 21:17
912 [1] - 21:18
9130 [1] - 1:24
93.2 [9] - 62:23, 62:24, 63:13, 66:10, 66:19, 68:9, 80:21, 81:17, 83:4
93.3 [4] - 62:19, 62:23, 80:21, 81:17
99 [1] - 1:15
9:00 [1] - 56:18, 87:12, 88:23
9:18 [1] - 1:6

## A

a) [1] - 71:3
a.m [1] - 1:6
able [4] - 36:21, 77:13, 86:16, 86:21
above-entitled [1] - 89:8
abroad [17] - 8:9, 8:22, 24:24, 26:9, 26:22, 27:11, 32:18, 35:20, 36:4, 37:19, 40:24, 41:13, 43:18, 45:8, 45:9

2

**abuse** [2] - 53:5, 63:23

**abused** [1] - 25:3

**access** [5] - 23:12, 41:22, 52:15, 56:9, 76:14

**accident** [1] - 78:24

**accidental** [1] - 70:20

**accordingly** [1] - 69:21

**accurate** [2] - 13:3, 89:7

**accused** [1] - 20:2

**acknowledging** [1] - 7:24

**acquittal** [1] - 57:11

**acquitted** [2] - 54:5, 55:7

**acronym** [4] - 32:12, 32:13, 34:23, 53:18

**act** [16] - 25:3, 62:3, 62:14, 64:13, 65:3, 66:7, 67:17, 70:6, 72:8, 74:16, 75:2, 77:20, 77:24, 78:5, 78:9, 79:13

**Act** [7] - 23:9, 25:12, 42:7, 50:23, 51:2, 51:3, 51:12

**acted** [3] - 68:4, 68:19, 68:22

**action** [2] - 32:11, 32:12

**actions** [3] - 25:12, 30:6, 30:8

**activity** [10] - 6:12, 11:23, 11:24, 21:8, 28:21, 28:24, 35:17, 46:22, 47:3, 47:6

**acts** [5] - 61:18, 64:14, 74:22, 75:8, 79:4

**add** [3] - 61:7, 61:9, 83:18

**added** [5] - 62:2, 65:21, 68:3, 71:8, 79:22

**addition** [2] - 17:1, 18:2

**additional** [10] - 16:10, 18:5, 18:7, 34:2, 38:17, 57:24, 79:15, 79:22, 83:8, 87:18

**additionally** [2] - 14:25, 21:9

**address** [7] - 10:16, 12:5, 12:10, 15:6, 19:15, 22:25, 49:25

**addressing** [1] - 12:1

**adds** [1] - 75:13

**Adelstein** [7] - 4:13, 14:2, 15:20, 33:18, 34:18, 38:9, 77:7

**ADELSTEIN** [48] - 1:20, 1:21, 4:12, 14:1, 29:5, 29:7, 29:16, 31:6, 31:8, 31:9, 31:11, 31:13, 31:22, 32:2, 32:4, 33:3, 33:16, 34:5, 34:15, 34:19, 34:20, 35:1, 35:10, 38:8, 43:21, 43:24, 44:8, 54:15, 54:17, 55:12, 55:14, 84:22, 84:24, 85:2, 85:11, 85:18, 85:20, 85:23, 86:1, 86:24, 87:4, 87:7, 87:11, 88:15, 88:18, 88:22, 88:25

**adhere** [1] - 69:12

**adjudicating** [2] - 26:3, 26:7

**adjudication** [1] - 40:13

**admissibility** [7] - 6:9, 6:14, 14:17, 14:20, 14:23, 15:7, 35:15

**admissible** [6] - 6:15, 9:24, 15:9, 15:13, 16:9, 37:19

**admission** [4] - 19:22, 21:11, 22:10, 22:15

**admit** [7] - 7:14, 18:5, 29:2, 34:13, 38:13, 47:9

**admitted** [12] - 16:4, 16:15, 16:18, 16:24, 38:23, 45:13, 46:3, 47:13, 48:22, 66:5, 71:14, 85:12

**admitting** [1] - 22:16

**adopt** [1] - 62:17

**adopted** [3] - 10:5, 66:10, 66:18

**advance** [1] - 84:16

**advanced** [1] - 40:17

**advised** [1] - 43:8

**affairs** [2] - 36:7, 37:15

**Affairs** [2] - 32:7, 32:13

**affidavit** [1] - 53:9

**affidavits** [1] - 20:13

**affirmation** [2] - 20:10, 73:8

**affirmed** [1] - 73:7

**afforded** [1] - 41:11

**afternoon** [8] - 38:3, 38:8, 39:10, 39:11, 39:21, 76:23, 77:2, 77:6

**age** [8] - 12:10, 32:22, 62:2, 63:8, 64:15, 66:1, 75:2, 79:13

**agency** [1] - 21:25

**agent** [1] - 11:19

**Agent** [1] - 4:19

**Agents** [3] - 13:24, 38:6, 77:4

**agents** [2] - 10:1, 19:19

**ago** [1] - 10:19

**agree** [4] - 9:23, 36:21, 67:5, 71:19

**agreed** [2] - 69:15, 71:22

**ahead** [1] - 16:12

**aid** [1] - 8:19

**alert** [1] - 87:2

**alien** [3] - 66:5, 71:14, 71:17

**allegations** [3] - 43:2, 53:5, 59:5

**alleged** [2] - 43:4, 68:17

**Allen** [2] - 15:2, 15:13

**ALLEN** [1] - 15:2

**allot** [1] - 84:15

**allow** [2] - 13:6, 36:19

**almost** [4] - 9:10, 72:16, 73:6, 74:14

**alone** [1] - 78:8

**alternative** [1] - 15:6

**alternatively** [1] - 21:6

**ambassador** [7] - 16:17, 28:14, 36:14, 36:15, 36:16

**Amendment** [2] - 18:18, 19:25

**America** [4] - 4:2, 13:17, 37:24, 76:24

**AMERICA** [1] - 1:4

**American** [24] - 8:3, 8:23, 10:10, 19:7, 19:8, 24:20, 25:1, 25:18, 26:5, 32:18, 40:3, 40:14, 40:25, 41:3, 41:4, 41:8, 41:13, 41:14, 42:15, 42:17, 43:10, 43:18, 52:10, 54:9

**Americans** [4] - 23:13, 41:7, 42:12, 52:25

**amount** [1] - 18:16

**analogize** [1] - 11:21

**analogized** [1] - 9:17

**analogizing** [1] - 12:6

**analysis** [1] - 70:22

**ANDREW** [1] - 1:7

**Andrew** [4] - 4:2, 13:17, 37:25, 76:24

**Ann** [1] - 4:19

**annotation** [1] - 58:23

**annotations** [1] - 83:4

**answer** [3] - 31:2, 45:1, 71:2

**anticipates** [1] - 59:25

**anticipation** [2] - 9:19, 10:1

**anyway** [1] - 87:5

**apologize** [4] - 5:21, 39:12, 46:25, 53:19

**appeal** [2] - 73:1, 73:5, 73:10

**appealed** [1] - 74:10

**Appeals** [1] - 73:16

**APPEARANCES** [1] - 1:13

**appearances** [4] - 4:5, 13:19, 38:1, 77:1

**appellant** [1] - 73:9

**applicable** [3] - 59:20, 61:2, 83:9

**application** [3] - 49:1, 49:2, 49:6

**applications** [4] - 26:8, 40:14, 40:22, 40:23

**applies** [1] - 65:6

**apply** [2] - 63:11, 63:21

**appointment** [3] - 86:2, 86:5, 86:7

**appreciate** [1] - 77:10

**approach** [7] - 6:6, 7:18, 14:7, 24:10, 29:7, 45:10, 47:17

**appropriate** [1] - 79:5

**approved** [4] - 35:5, 38:16, 72:24, 84:4

**approver** [2] - 29:19, 30:2

**approving** [4] - 29:25, 30:17, 30:18,

31:2

**April** [2] - 22:23, 48:12

**argue** [3] - 15:5, 15:8, 15:12

**argument** [8] - 14:4, 16:10, 35:8, 35:10, 57:24, 60:14, 79:17, 88:3

**arguments** [7] - 56:1, 56:14, 57:21, 84:9, 87:22, 87:25, 88:11

**arises** [1] - 44:20

**arrest** [34] - 7:23, 7:25, 8:12, 12:5, 12:7, 12:12, 12:14, 20:24, 21:1, 23:1, 23:2, 25:16, 25:22, 26:15, 28:13, 32:18, 32:23, 35:21, 36:13, 37:9, 37:13, 41:15, 43:9, 43:19, 48:4, 50:2, 50:3, 50:5, 52:13, 52:19, 54:3, 54:4, 54:10

**arrested** [24] - 8:3, 8:11, 10:11, 12:11, 12:12, 19:8, 19:9, 23:13, 24:24, 25:7, 25:18, 26:22, 27:5, 35:20, 36:4, 41:9, 41:13, 41:17, 43:8, 43:9, 43:18, 51:6, 52:11, 52:25

**arrestee** [2] - 41:18, 42:1

**arresting** [1] - 37:3

**arrests** [1] - 8:23

**articulated** [1] - 64:9

**ascertain** [7] - 25:2, 25:8, 25:17, 41:24, 42:24, 44:7, 44:10

**assaulted** [1] - 41:6

**asserted** [1] - 15:15

**assessment** [1] - 10:15

**assigned** [1] - 83:12

**assistance** [10] - 19:8, 21:1, 21:2, 26:12, 34:24, 41:4, 41:7, 44:13, 51:8, 53:21

**ASSISTANT** [1] - 1:15

**associated** [1] - 56:6

**assure** [1] - 8:12

**attached** [1] - 82:21

**attained** [1] - 66:1

**attempt** [1] - 72:20

**attention** [8] - 27:8, 27:16, 45:17, 46:3, 49:8, 49:23, 50:11, 52:24

**attest** [2] - 7:7, 7:8

**ATTORNEY** [1] - 1:15

**attorney** [6] - 10:11, 23:8, 25:11, 42:4, 43:13, 50:21

**au** [2] - 24:21, 40:4

**Augustino** [1] - 22:8

**authorities** [4] - 37:3, 41:21, 52:4

**authority** [7] - 13:11, 14:5, 18:9, 38:22, 58:23, 76:12, 79:19

**automatically** [1] - 74:10

**autopsy** [1] - 22:15

**available** [8] - 11:3, 11:4, 12:17, 13:2, 20:16, 74:14, 85:13, 85:19

**available..** [1] - 72:16

**Avenue** [4] - 1:18, 1:21, 2:2, 89:12

**aware** [7] - 5:7, 5:8, 7:22, 8:12, 42:22, 52:12, 75:19

## B

**b)** [2] - 69:14, 71:3

**bananas** [1] - 80:16

**based** [13] - 14:20, 19:3, 35:12, 37:7, 38:21, 46:10, 52:21, 54:2, 66:10, 68:9, 74:21, 75:7, 78:21

**basic** [2] - 59:22, 82:15

**Basic** [15] - 58:20, 59:12, 59:17, 59:19, 60:8, 60:13, 60:23, 61:1, 61:24, 62:18, 80:1, 81:24, 82:4, 82:8, 82:13

**basis** [5] - 14:19, 25:16, 43:8, 43:15, 53:10

**Beach** [1] - 50:1

**became** [2] - 52:12, 65:9

**become** [1] - 41:7

**BEFORE** [1] - 1:10

**begin** [3] - 4:15, 74:18, 80:24

**beginning** [3] -

59:13, 65:16, 79:9

**behalf** [13] - 4:8, 4:13, 12:24, 13:22, 14:2, 25:3, 25:12, 38:4, 38:9, 43:6, 51:7, 77:3, 77:7

**below** [2] - 68:18, 68:20

**better** [1] - 63:18

**between** [4] - 9:4, 21:19, 62:13, 86:6

**bewilderment** [2] - 69:9, 69:12

**beyond** [4] - 68:5, 68:15, 68:22, 69:1

**biographical** [3] - 19:13, 25:9, 44:3

**birth** [12] - 12:10, 19:14, 25:10, 26:8, 32:23, 37:13, 40:23, 44:4, 48:10, 48:11, 48:13

**bit** [1] - 65:9

**body** [3] - 32:16, 32:20, 58:23

**BONNIE** [1] - 1:17

**Bonnie** [9] - 4:8, 4:18, 4:19, 5:1, 5:9, 5:20, 13:22, 38:4, 77:3

**book** [1] - 63:3

**Border** [1] - 19:18

**bottom** [1] - 50:11

**Boulevard** [1] - 1:24

**bounds** [1] - 43:5

**box** [2] - 51:16, 85:15

**break** [1] - 76:8

**breaks** [1] - 85:24

**brief** [1] - 66:14

**briefly** [2] - 40:7, 51:1

**bring** [4] - 6:4, 23:24, 39:6, 51:12

**Brown** [1] - 21:9

**burden** [2] - 68:25, 77:19

**Bureau** [1] - 32:7

**business** [20] - 7:3, 7:5, 7:8, 8:5, 9:3, 10:21, 11:7, 11:16, 11:17, 11:18, 12:20, 12:21, 12:22, 13:4, 13:6, 13:7, 14:21, 16:5, 20:7, 24:1

**BY** [18] - 2:1, 24:13, 28:9, 29:16, 31:9, 31:13, 32:4, 33:3, 34:20, 39:20, 44:15, 45:12, 47:1, 47:19,

48:24, 49:22, 54:7, 54:17

## C

**CA** [1] - 32:12

**cable** [52] - 6:11, 7:11, 9:13, 9:14, 15:10, 15:14, 16:15, 18:11, 18:22, 20:24, 22:18, 26:24, 27:10, 27:12, 27:14, 27:20, 27:25, 28:3, 28:10, 28:20, 28:23, 30:7, 31:21, 32:17, 32:20, 33:8, 33:11, 33:14, 34:6, 34:9, 34:13, 35:13, 45:7, 45:21, 45:24, 46:1, 46:7, 46:8, 46:9, 46:11, 46:12, 46:14, 46:17, 46:21, 47:2, 47:5, 47:22, 47:24, 48:1, 48:3, 49:17

**cables** [18] - 7:4, 7:8, 7:9, 8:25, 14:18, 14:20, 14:23, 16:18, 28:12, 28:15, 34:2, 36:12, 45:8, 52:18, 52:21, 54:2, 55:5

**Cairo** [4] - 14:24, 47:25, 50:4, 50:24

**cannot** [1] - 73:7

**capable** [1] - 15:11

**captured** [1] - 68:25

**car** [1] - 78:24

**Caraballo** [2] - 18:12, 19:10

**CARABALLO** [1] - 18:13

**Caraballo's** [1] - 19:23

**Carranza** [4] - 14:15, 16:14, 16:21, 21:6

**CARRANZA** [1] - 14:15

**Carter** [11] - 4:2, 4:13, 10:5, 10:6, 13:17, 14:2, 37:25, 38:9, 57:14, 76:24, 77:8

**CARTER** [1] - 1:7

**Carter's** [1] - 59:20

**Case** [5] - 4:3, 13:18, 37:25, 73:23, 76:25

**CASE** [1] - 1:2

**case** [63] - 11:19, 11:23, 12:16, 13:7, 14:14, 14:19, 14:25,

15:21, 15:23, 16:1, 16:13, 16:20, 16:21, 16:25, 17:6, 17:9, 17:14, 17:21, 18:15, 19:10, 21:13, 21:23, 23:5, 25:11, 25:13, 26:24, 33:5, 33:6, 33:9, 33:12, 34:10, 42:3, 42:10, 50:12, 51:6, 51:9, 53:11, 55:24, 56:1, 56:4, 56:10, 56:15, 56:20, 56:23, 58:5, 60:25, 62:22, 63:11, 63:21, 68:10, 72:21, 73:1, 73:23, 74:14, 77:12, 77:18, 78:10, 78:17, 79:7, 79:9, 86:7, 86:19

**cases** [4] - 14:7, 14:11, 15:19, 18:25

**cash** [1] - 53:25

**certain** [4] - 27:20, 27:22, 42:1, 73:6

**certainly** [8] - 6:1, 6:24, 24:3, 34:14, 39:1, 76:13, 76:17, 79:21

**certify** [1] - 89:7

**cetera** [7] - 25:14, 26:9, 26:14, 41:6, 41:21, 51:16, 66:7

**challenged** [1] - 73:9

**chambers** [3] - 4:16, 5:8, 5:24

**change** [2] - 80:4, 88:18

**changed** [2] - 65:7, 65:11

**changes** [1] - 81:10

**channel** [2] - 26:24, 45:7

**Chapter** [6] - 63:10, 63:19, 63:20, 64:16, 64:18

**Charge** [1] - 3:16

**charge** [6] - 25:18, 28:14, 32:23, 36:16, 37:13, 58:7

**charged** [3] - 58:4, 62:5, 70:10

**charges** [9] - 8:18, 12:6, 15:17, 23:3, 42:22, 50:7, 54:5, 55:8, 65:19

**charging** [2] - 77:16, 77:18

**Charles** [1] - 49:3

**Chavez** [4] - 14:14, 16:14, 16:21, 21:6

**CHAVEZ** [1] - 14:14

**check** [4] - 25:1, 41:10, 51:16, 53:24

**checking** [1] - 41:3

**chief** [2] - 24:20, 40:2

**child** [3] - 15:17, 50:8, 55:8

**chock** [1] - 10:3

**chock-full** [1] - 10:3

**chosen** [1] - 60:6

**Circuit** [19] - 14:16, 15:1, 15:4, 15:23, 16:1, 18:14, 18:15, 19:11, 20:5, 20:18, 21:10, 21:17, 22:9, 22:10, 22:14, 66:19, 71:5, 83:5

**circuit** [1] - 72:25

**circumstances** [3] - 20:15, 74:23, 75:9

**circumstantial** [14] - 60:14, 74:21, 75:7, 75:14, 76:1, 76:3, 78:4, 78:12, 78:16, 79:6, 79:16, 79:23, 80:2, 81:7

**citation** [6] - 14:4, 15:3, 58:23, 62:25, 63:2, 73:10

**cite** [5] - 14:8, 14:13, 15:13, 15:21, 17:1, 18:9, 21:9, 63:20

**cited** [2] - 16:13, 38:22

**citing** [1] - 62:23

**citizen** [46] - 8:3, 8:10, 8:12, 8:17, 8:18, 8:19, 8:20, 8:23, 10:10, 19:7, 19:9, 20:25, 24:23, 25:1, 25:7, 25:18, 25:23, 26:5, 26:6, 26:11, 26:22, 26:25, 32:18, 35:20, 36:4, 37:18, 40:14, 41:2, 41:8, 41:13, 41:16, 41:19, 41:22, 42:22, 43:8, 43:10, 43:14, 64:12, 66:4, 66:16, 70:11, 71:14, 71:17, 71:21, 83:7

**citizen's** [1] - 36:5

**citizen..** [2] - 67:9, 80:25

**citizens** [14] - 24:20, 27:2, 27:4, 36:2, 36:3, 40:3, 40:25, 41:3, 41:4, 42:15, 42:17, 43:18, 51:4, 54:9

**Citizens** [1] - 32:8
**citizenship** [3] - 19:15, 41:17, 71:7
**claiming** [1] - 41:22
**class** [1] - 20:17
**clause** [6] - 17:23, 19:24, 19:25, 21:5, 22:16, 37:10
**clean** [3] - 59:1, 59:6, 84:4
**clearer** [1] - 29:19
**clearing** [4] - 29:24, 30:15, 30:16, 30:24
**clearly** [2] - 10:6, 10:17
**close** [2] - 57:11, 84:19
**closing** [8] - 56:1, 56:14, 84:9, 84:13, 84:20, 87:22, 88:2, 88:11
**cloud** [1] - 21:25
**CM/ECF** [1] - 83:12
**Code** [2] - 65:23, 73:17
**coerced** [1] - 68:10
**collect** [2] - 25:9, 25:21
**collected** [14] - 13:5, 25:6, 25:15, 26:21, 32:5, 32:17, 32:24, 35:21, 36:6, 36:7, 37:15, 43:19, 44:18, 44:22
**collecting** [2] - 31:17, 35:25
**collection** [1] - 31:25
**collects** [1] - 25:23
**combined** [1] - 11:13
**comfortable** [2] - 79:19, 79:20
**comment** [2] - 37:8, 60:15
**comments** [5] - 10:13, 18:7, 29:12, 35:14, 36:20
**commerce** [13] - 64:12, 65:20, 66:2, 66:4, 66:6, 70:12, 71:13, 71:15, 71:16, 71:18, 71:20, 71:24, 83:7
**Commission** [1] - 16:17
**committed** [1] - 74:16
**communicate** [2] - 25:13, 42:8
**communicated** [1] - 26:23

**compared** [2] - 9:17, 9:22
**compiled** [1] - 12:17
**completed** [1] - 19:18
**completeness** [3] - 34:5, 34:9, 34:12
**concerned** [2] - 68:7, 87:3
**concerning** [3] - 19:16, 33:11, 35:21
**concluded** [1] - 89:3
**concludes** [2] - 55:24, 56:23
**conclusion** [1] - 33:6
**condition** [5] - 12:5, 23:2, 37:14, 50:5, 53:25
**conduct** [1] - 54:9, 61:24, 62:14, 63:14, 68:20, 70:10, 74:22, 75:4, 75:8, 78:21, 79:14
**conducted** [5] - 21:8, 28:21, 35:16, 46:22, 47:3
**conducting** [1] - 12:24
**coned** [1] - 40:12
**conference** [3] - 58:7, 77:17, 77:18
**Conference** [1] - 3:16
**confessions** [1] - 20:14
**confiscated** [2] - 23:15, 53:13
**conform** [1] - 80:23
**conforms** [1] - 11:13
**confrontation** [7] - 17:22, 18:18, 19:23, 19:25, 21:5, 22:16, 37:10
**confronted** [1] - 20:3
**confusion** [1] - 5:22
**Congress** [7] - 25:14, 42:9, 45:2, 51:4, 51:11, 51:14, 70:25
**conjunction** [1] - 79:25
**consideration** [1] - 60:14
**considered** [2] - 11:17, 57:12
**conspires** [3] - 66:4, 66:6, 71:13
**constitute** [1] - 20:17
**constituted** [1] - 18:19

**constitutes** [1] - 79:6
**constructed** [1] - 63:10
**construe** [2] - 15:10, 15:11
**consular** [36] - 10:12, 24:19, 24:20, 24:22, 24:25, 25:7, 25:24, 26:1, 26:2, 26:3, 26:8, 26:9, 26:16, 26:20, 28:24, 33:4, 35:19, 36:3, 37:1, 40:2, 40:3, 40:12, 40:13, 40:16, 40:17, 40:23, 40:24, 41:14, 42:20, 43:17, 44:17, 47:6, 52:9, 52:16, 52:22, 55:2
**Consular** [2] - 32:7, 32:12
**consult** [1] - 9:11
**contact** [3] - 8:11, 25:10, 56:5
**contacted** [1] - 52:3
**contacting** [1] - 8:19
**contain** [2] - 12:16, 59:5
**contained** [7] - 8:1, 17:25, 19:13, 20:12, 49:9, 72:18, 79:18
**contains** [4] - 13:1, 19:3, 19:5
**contemplates** [1] - 61:6
**content** [1] - 10:25
**contents** [1] - 60:3
**context** [3] - 8:22, 23:18, 76:3
**continue** [1] - 56:24
**continues** [1] - 65:8
**continuing** [2] - 19:22, 53:16
**control** [1] - 86:8
**convicted** [1] - 83:6
**conviction** [1] - 61:3
**copies** [2] - 14:7, 14:11
**copy** [11] - 27:10, 27:20, 46:7, 59:1, 59:4, 59:7, 59:8, 59:9, 82:23, 84:3, 84:5
**core** [1] - 20:17
**corner** [1] - 49:8
**Corporation** [1] - 15:23
**correct** [20] - 7:17, 31:4, 36:23, 37:4, 37:5, 38:25, 52:14, 54:18, 55:5, 55:9, 61:8, 61:9, 61:14,

62:20, 64:6, 64:8, 64:19, 65:5, 84:14
**corroborated** [1] - 16:15
**corroborating** [1] - 16:20
**counsel** [12] - 4:5, 6:18, 13:19, 14:12, 38:1, 38:15, 38:18, 60:15, 77:1, 78:2, 78:14, 85:19
**counsel's** [1] - 15:6
**counsels** [5] - 4:10, 13:24, 38:6, 77:4, 85:16
**Count** [14] - 62:1, 62:5, 62:7, 62:9, 62:13, 62:19, 63:18, 65:6, 65:14, 65:19, 67:8, 80:23, 81:15, 81:19
**count** [1] - 66:14
**countries** [1] - 43:14
**country** [12] - 19:9, 19:15, 20:25, 25:4, 41:1, 41:9, 41:12, 43:14, 43:16, 44:5, 53:7, 54:10
**country's** [1] - 43:1
**Counts** [6] - 57:14, 62:7, 65:12, 71:8, 80:20, 80:24
**counts** [5] - 59:7, 62:6, 62:14, 67:4, 82:4
**couple** [2] - 85:24, 85:25
**course** [15] - 7:4, 7:7, 8:5, 11:18, 13:6, 19:19, 19:20, 21:18, 28:20, 36:7, 37:15, 46:21, 47:2, 58:19, 79:25
**COURT** [206] - 1:1, 4:1, 4:15, 4:23, 5:5, 5:7, 5:16, 5:18, 5:23, 6:2, 6:17, 6:23, 6:25, 7:16, 7:19, 8:1, 9:2, 9:14, 10:8, 10:21, 11:11, 11:25, 12:2, 12:4, 12:14, 12:22, 13:9, 13:16, 14:4, 14:9, 15:20, 16:12, 17:4, 17:7, 17:11, 17:16, 17:19, 18:4, 23:23, 23:24, 24:2, 24:6, 24:9, 24:11, 28:8, 29:3, 29:11, 29:14, 31:7, 31:19, 32:3, 32:16, 32:20,

32:22, 33:2, 33:19, 33:21, 33:24, 34:4, 34:12, 34:17, 35:2, 35:4, 35:8, 35:12, 37:2, 37:7, 37:24, 38:11, 38:21, 39:2, 39:6, 39:9, 39:12, 39:15, 39:17, 43:22, 43:25, 44:9, 45:11, 46:24, 47:12, 47:16, 47:18, 48:23, 49:21, 54:14, 55:13, 55:15, 55:18, 55:20, 55:23, 57:4, 57:8, 57:19, 57:23, 58:1, 58:14, 58:16, 58:19, 59:3, 59:10, 59:12, 59:16, 59:23, 60:4, 60:12, 60:18, 60:23, 61:8, 61:11, 61:14, 61:17, 61:22, 62:16, 62:25, 63:3, 63:5, 63:7, 63:22, 63:25, 64:5, 64:7, 64:11, 64:21, 64:25, 65:6, 65:13, 65:22, 66:21, 66:25, 67:7, 67:12, 67:21, 69:5, 69:10, 69:13, 69:16, 69:22, 70:3, 70:24, 71:3, 71:11, 71:23, 72:19, 73:1, 73:5, 73:12, 73:22, 74:8, 74:12, 75:22, 76:8, 76:12, 76:16, 76:18, 76:23, 77:9, 79:8, 79:24, 80:4, 80:8, 80:10, 80:14, 80:16, 80:22, 81:4, 81:9, 81:14, 81:18, 81:22, 82:2, 82:7, 82:12, 82:19, 82:24, 83:3, 83:13, 83:15, 83:18, 83:23, 84:6, 84:9, 84:13, 84:17, 84:21, 84:23, 84:25, 85:3, 85:7, 85:10, 85:21, 85:24, 86:2, 86:12, 86:23, 87:1, 87:6, 87:9, 87:12, 88:1, 88:8, 88:16, 88:21, 88:23, 89:2
**court** [2] - 19:13, 56:17
**Court** [39] - 2:1, 6:8, 6:14, 6:15, 7:20, 9:5, 14:10, 15:10, 15:22, 16:10, 16:23, 18:19, 19:21, 20:6, 20:19, 35:14, 37:11, 38:17, 38:22, 60:2, 60:15, 63:6, 63:20, 67:5,

5

67:23, 73:7, 73:16, 74:7, 77:8, 77:10, 77:15, 77:23, 78:3, 78:6, 84:3, 87:24, 88:7, 88:13, 89:12

**Court's** [9] - 15:18, 58:20, 67:20, 67:24, 71:2, 75:19, 75:24, 80:11, 88:6

**courtroom** [5] - 4:14, 5:10, 35:6, 39:7, 57:2

**courts** [1] - 21:19

**cover** [1] - 82:25

**Crawford** [3] - 18:18, 20:1, 21:5

**credibility** [1] - 60:19

**crime** [12] - 21:22, 22:2, 26:12, 41:5, 55:9, 66:16, 67:9, 69:20, 72:2, 76:4, 78:13, 80:25

**crimes** [1] - 58:3

**criminal** [5] - 17:6, 17:21, 18:25, 19:20, 20:1

**Criminal** [1] - 57:10

**cross** [4] - 11:4, 12:18, 34:14, 54:14

**CROSS** [2] - 29:15, 54:16

**Cross** [1] - 3:3

**cross-examination** [3] - 11:4, 12:18, 54:14

**CROSS-EXAMINATION** [2] - 29:15, 54:16

**CRR** [2] - 2:1, 89:11

**culture** [1] - 88:8

**curious** [2] - 64:11, 88:6

**current** [2] - 40:19, 66:11

**custody** [1] - 8:17

**customary** [1] - 21:15

**Customs** [1] - 19:18

**D**

**d'affaires** [2] - 28:14, 36:16

**Dadeland** [1] - 1:24

**DATE** [1] - 89:11

**date** [21] - 12:10, 19:14, 23:1, 23:6, 25:20, 32:22, 32:23, 37:13, 44:3, 47:21, 48:10, 48:11, 48:19, 49:4, 49:11, 49:12,

50:2, 50:3, 50:16, 81:23

**dated** [1] - 7:11

**dates** [2] - 25:10, 78:22

**DC** [7] - 1:19, 8:14, 9:1, 35:24, 37:17, 45:6, 48:2

**deal** [2] - 42:5

**dealing** [1] - 44:19

**death** [2] - 26:9, 40:24

**decision** [4] - 18:13, 21:10, 22:9, 22:13

**declaration** [1] - 20:10

**declined** [1] - 20:6

**deeds** [1] - 79:4

**Defendant** [21] - 6:12, 10:14, 16:25, 18:3, 37:1, 37:3, 58:3, 58:9, 60:6, 61:3, 62:16, 65:19, 68:2, 68:4, 68:10, 74:2, 75:1, 79:12, 82:3, 83:7, 84:21

**defendant** [2] - 1:8, 59:18

**DEFENDANT** [1] - 1:20

**Defendant's** [16] - 7:22, 9:7, 12:9, 15:16, 16:22, 18:17, 57:21, 60:4, 68:16, 70:17, 74:21, 75:7, 76:4, 76:6, 79:15, 81:5

**defense** [17] - 6:18, 6:21, 14:12, 15:6, 38:15, 59:14, 60:21, 61:20, 75:11, 78:2, 78:14, 81:13, 81:25, 82:5, 82:10, 82:16, 85:19

**defer** [1] - 88:7

**define** [1] - 20:6

**defined** [4] - 64:13, 64:15, 72:8, 75:16

**defines** [1] - 80:2

**definitely** [1] - 71:1

**definition** [4] - 60:8, 62:12, 63:14, 70:19

**definitions** [2] - 75:14, 75:25

**delay** [1] - 39:12

**delete** [1] - 60:3

**deliberate** [1] - 82:8

**deliberation** [2] - 56:2, 56:22

**deliberations** [3] - 56:20, 56:21, 56:24

**denied** [2] - 57:22, 58:6

**dental** [4] - 86:2, 86:4, 86:5, 86:6

**deny** [2] - 58:1, 62:16

**DEPARTMENT** [1] - 1:17

**Department** [43] - 7:4, 7:5, 7:11, 8:9, 8:14, 9:21, 10:19, 11:2, 11:3, 11:8, 11:20, 12:25, 17:17, 18:12, 19:7, 21:1, 24:18, 26:20, 26:21, 26:23, 27:2, 27:11, 28:18, 28:21, 28:24, 33:22, 35:24, 36:2, 36:18, 37:17, 40:1, 40:17, 42:12, 42:14, 42:21, 43:7, 44:16, 44:25, 45:6, 46:22, 47:3, 47:6, 54:8

**deportation** [1] - 22:11

**depositions** [1] - 20:13

**deprivation** [1] - 53:7

**deputy** [1] - 5:10

**describe** [2] - 40:7, 51:1

**described** [5] - 20:9, 28:1, 28:11, 36:8, 46:15

**description** [1] - 62:1

**details** [1] - 44:22

**detained** [2] - 42:24, 44:12

**detention** [5] - 23:4, 25:2, 41:23, 44:11, 50:9

**determine** [4] - 8:10, 41:17, 42:25, 52:4

**determined** [1] - 41:19

**determining** [1] - 20:20

**deviates** [2] - 72:17, 75:12

**device** [1] - 56:9

**diabetic** [2] - 50:6, 53:25

**diet** [1] - 54:1

**dietary** [1] - 34:23, 53:20

**difference** [2] - 9:4, 62:13

**different** [6] - 9:18,

29:22, 30:9, 46:8, 62:8, 73:20

**differentiates** [1] - 62:5

**diplomatic** [18] - 27:12, 27:14, 27:20, 27:25, 28:3, 28:10, 28:12, 28:15, 28:20, 36:12, 45:8, 45:21, 45:24, 46:14, 46:21, 47:2, 48:3, 49:17

**Diplomatic** [1] - 32:13

**direct** [22] - 4:18, 5:1, 5:11, 5:14, 5:15, 5:19, 60:14, 72:15, 73:10, 74:19, 75:5, 75:15, 76:1, 76:3, 78:16, 78:17, 79:9, 79:16, 79:23, 80:2, 81:2, 81:7

**Direct** [2] - 3:3, 74:13

**DIRECT** [2] - 24:12, 39:19

**directing** [8] - 27:8, 27:16, 45:17, 46:3, 49:8, 49:23, 50:11, 52:24

**disabled** [1] - 53:23

**disagree** [3] - 68:8, 68:14, 70:16

**disclose** [2] - 4:21, 5:13

**disclosed** [2] - 74:23, 75:9

**disclosing** [1] - 5:24

**discovery** [1] - 33:17

**discuss** [1] - 56:4

**discussed** [1] - 76:10

**discussion** [2] - 73:19, 77:19

**dismiss** [1] - 56:3

**disposition** [2] - 34:6, 34:10

**dispute** [3] - 34:11, 68:24, 71:10

**disseminating** [1] - 31:17

**dissemination** [1] - 32:1

**distinct** [1] - 10:8

**distinction** [1] - 21:19

**district** [1] - 19:12

**DISTRICT** [3] - 1:1, 1:1, 1:11

**DIVISION** [1] - 1:2

**divulge** [1] - 51:9

**divulging** [1] - 51:4

**docket** [1] - 73:22

**Docket** [1] - 83:16

**document** [14] - 6:10, 10:9, 13:3, 18:8, 29:17, 30:22, 30:25, 31:24, 32:2, 44:12, 54:18, 54:24, 55:1, 63:6

**documents** [6] - 6:10, 7:20, 10:18, 14:10, 21:23, 22:7

**Dokki** [1] - 50:4

**Dominican** [4] - 4:17

**done** [6] - 8:4, 43:4, 60:25, 63:16, 87:6, 88:17

**doubt** [5] - 60:8, 68:5, 68:15, 68:22, 69:1

**down** [2] - 55:18, 85:18

**DPOB** [2] - 22:23, 48:9

**Dr** [4] - 4:17, 4:23, 5:18, 5:19

**drafted** [1] - 35:23

**drafter** [1] - 29:19

**drafting** [4] - 29:24, 30:13, 30:14, 30:21

**drawn** [3] - 21:19, 74:24, 75:10

**drive** [2] - 74:10, 76:14

**drops** [1] - 64:18

**DS** [1] - 32:13

**Du** [4] - 3:5, 3:8, 7:6, 39:14

**due** [6] - 22:4, 41:11, 43:1, 43:5, 53:6, 53:25

**during** [4] - 42:20, 44:22, 57:17, 77:18

**duties** [4] - 19:19, 24:22, 26:2, 40:19

**duty** [5] - 16:5, 17:21, 18:23, 18:24, 82:8

**E**

**e-mail** [4] - 84:3, 84:6, 87:14, 87:15

**echo** [2] - 69:8, 69:11

**EDMA** [1] - 53:17

**educates** [1] - 78:12

**Edwards** [1] - 89:11

**EDWARDS** [2] - 2:1, 89:11

effectively [1] - 65:11

Egypt [5] - 6:13, 7:23, 37:16, 47:25, 50:4

Egyptian [3] - 11:24, 52:4

either [10] - 14:5, 27:2, 39:4, 53:5, 56:4, 59:8, 72:5, 74:9, 81:7, 82:17

electronic [1] - 59:8

element [5] - 62:12, 67:21, 67:23, 68:25, 83:8

elements [8] - 62:8, 67:25, 68:6, 68:7, 69:4, 69:17, 72:1, 72:4

Eleventh [18] - 15:1, 15:3, 15:22, 16:1, 18:14, 18:15, 19:10, 20:5, 20:18, 21:10, 21:17, 22:9, 22:14, 66:18, 71:5, 83:5

elicited [2] - 20:21, 71:7

emanating [1] - 28:15

embassy [1] - 52:3

Embassy [23] - 6:11, 8:5, 8:9, 8:22, 9:21, 10:7, 14:18, 14:20, 14:24, 15:10, 15:11, 18:11, 19:6, 24:21, 36:2, 37:16, 40:4, 41:15, 44:17, 47:25, 52:9, 52:12, 53:24

EMDA [5] - 23:17, 34:21, 53:18, 53:22, 54:1

emergency [2] - 34:23, 53:20

employed [1] - 39:25

employee [4] - 11:2, 11:3, 11:8, 11:20

enacted [1] - 51:3

end [5] - 18:8, 19:17, 19:21, 67:16, 87:7

ending [1] - 79:10

enforcement [33] - 9:6, 9:11, 9:17, 9:18, 9:22, 9:23, 9:25, 10:24, 11:17, 11:21, 11:22, 11:23, 12:6, 12:8, 15:7, 15:9, 15:12, 17:6, 17:8, 17:10, 17:12, 17:13, 17:16, 17:19, 17:20, 19:1, 20:20, 22:2,

25:25, 26:16, 26:18, 41:21

engage [5] - 68:19, 72:7, 75:3, 78:1, 79:14

engaged [3] - 22:1, 75:2, 79:12

engaging [3] - 64:13, 66:7, 70:5

England [2] - 49:10, 49:15

enhanced [1] - 78:11

enjoy [2] - 20:2, 88:23

ensure [2] - 42:21, 43:7

entered [2] - 39:7, 47:14

entire [1] - 9:14

entirely [1] - 9:20

entities [1] - 51:13

entitled [2] - 80:24, 89:8

entrant [1] - 19:16

entrant's [1] - 19:14

entries [1] - 16:3

Entry [1] - 83:16

enumerated [1] - 68:18

era [1] - 51:3

erred [1] - 63:2

error [1] - 22:16

ESQ [4] - 1:14, 1:17, 1:20, 1:23

essentially [2] - 61:9, 64:20

establish [2] - 20:23, 79:2

established [9] - 16:2, 21:7, 21:13, 35:15, 35:19, 74:20, 75:6, 79:23, 81:6

establishes [1] - 18:10

establishing [1] - 20:11

et [7] - 25:14, 26:9, 26:14, 41:6, 41:21, 51:16, 66:7

evaluation [1] - 21:21

evening [2] - 57:1, 88:24

event [3] - 27:5, 78:23, 79:2

events [8] - 28:1, 28:4, 28:11, 36:8, 46:15, 46:18, 46:19, 54:21

everyday [1] - 21:24

EVIDENCE [1] - 3:11

Evidence [1] - 17:1

evidence [31] - 6:9, 7:23, 15:15, 16:20, 19:12, 21:14, 21:16, 38:14, 47:15, 55:24, 57:12, 60:14, 61:18, 63:12, 74:21, 74:23, 75:7, 75:9, 75:14, 75:15, 76:1, 76:3, 78:4, 78:12, 78:16, 79:6, 79:16, 79:23, 80:2, 81:7

exact [1] - 54:21

exactly [1] - 30:5

exaggerated [1] - 15:8

examination [3] - 11:4, 12:18, 54:14

EXAMINATION [4] - 24:12, 29:15, 39:19, 54:16

examine [1] - 17:24

examples [1] - 78:16

except [1] - 65:8

exception [8] - 11:13, 14:21, 17:3, 18:20, 18:21, 24:1, 27:22, 35:15

excluded [5] - 11:12, 12:14, 12:15, 37:8, 37:11

excluding [1] - 18:24

excuse [1] - 44:16

excused [1] - 55:19

Exhibit [27] - 3:12, 7:10, 7:12, 18:5, 27:9, 27:16, 27:23, 29:2, 29:23, 38:13, 38:16, 38:23, 45:14, 45:15, 45:17, 46:4, 46:11, 46:12, 47:9, 47:13, 47:14, 47:20, 48:22, 49:17, 49:20, 49:24, 50:18

exhibit [7] - 6:16, 6:17, 6:22, 6:23, 16:24, 27:23

exhibits [4] - 7:21, 16:16, 27:8, 85:12

EXHIBITS [1] - 3:11

Exhibits [5] - 8:2, 10:9, 17:25, 24:4, 24:15

existing [1] - 29:13

exited [1] - 57:2

expiration [1] - 49:12

explained [1] - 65:18

explanation [2] - 66:14, 76:2

explicit [1] - 64:14

expound [2] - 15:18, 77:15

express [1] - 51:9

extended [1] - 51:16

extensively [1] - 40:12

extent [1] - 75:12

extrajudicial [1] - 20:12

eyewitness [2] - 12:16, 78:17

eyewitness-type [1] - 12:16

**F**

F.3d [9] - 14:15, 15:24, 16:14, 18:13, 21:6, 21:10, 22:8, 22:13, 73:10

F.Appendix [1] - 15:2

fact [9] - 15:16, 20:11, 37:9, 41:19, 59:25, 61:5, 74:20, 75:6, 78:23

factors [2] - 21:25, 68:18

factual [1] - 22:6

fair [1] - 34:25

fairly [1] - 41:11

fall [2] - 17:3, 18:22

family [9] - 8:19, 25:11, 25:13, 42:8, 45:2, 51:11, 51:15, 51:16, 86:14

far [5] - 8:1, 8:3, 56:19, 68:7, 87:2

favorable [1] - 57:13

FBI [2] - 10:24, 13:8

fear [3] - 64:24, 65:1, 65:3

February [1] - 1:5, 7:11, 46:2, 47:23, 50:3, 50:13, 50:17, 52:2, 52:17, 86:11

Federal [2] - 17:1, 57:10

federal [4] - 66:15, 67:9, 72:2, 80:25

fell [1] - 18:20

felony [1] - 61:3

few [2] - 54:15, 55:25

field [1] - 52:5

file [3] - 13:8, 59:6, 74:11

fill [1] - 21:15

filled [1] - 22:19

finally [1] - 55:5

financial [2] - 25:12, 44:13

fine [10] - 39:4, 57:8, 58:17, 67:11, 79:24, 81:8, 84:7, 85:18, 85:23, 88:21

first [29] - 10:16, 10:17, 12:1, 12:2, 12:4, 14:14, 25:8, 32:9, 39:13, 41:17, 41:24, 44:19, 50:13, 58:8, 58:11, 65:16, 66:23, 66:25, 67:1, 67:7, 67:12, 67:17, 69:2, 69:7, 72:13, 80:22, 84:19, 85:6, 87:16

five [2] - 85:9, 85:10

Floor [2] - 2:2, 89:12

Flores [3] - 13:25, 38:6, 77:4

FLORIDA [1] - 1:1

Florida [7] - 1:4, 1:16, 1:22, 1:25, 2:3, 50:1, 89:13

follow [1] - 33:6, 44:2

followed [2] - 24:23, 41:14

following [6] - 13:15, 35:7, 37:23, 39:8, 57:3, 76:22

follows [1] - 79:15

food [1] - 53:7

Footnote [2] - 16:23, 81:17

FOR [4] - 1:14, 1:20, 3:4, 3:7

force [9] - 64:4, 64:5, 64:19, 64:21, 64:23, 64:25, 65:2, 65:4

forced [1] - 68:11

foregoing [1] - 89:7

Foreign [1] - 40:9

foreign [18] - 19:9, 20:25, 24:19, 25:24, 40:1, 40:9, 40:10, 41:9, 54:10, 64:12, 65:20, 66:2, 66:6, 70:12, 71:15, 71:17, 71:20, 83:6

foremost [1] - 27:1

foreperson [1] - 83:18

forfeiture [3] - 59:5, 59:6, 59:10

form [17] - 12:7, 12:12, 19:11, 19:17, 19:18, 22:11, 23:18,

32:16, 37:9, 37:12, 43:21, 45:5, 51:12, 82:20, 83:16, 83:17, 83:23
   **forma** [1] - 37:12
   **formalized** [1] - 20:12
   **forms** [5] - 12:14, 18:16, 18:19, 19:23, 37:3
   **forth** [1] - 77:19
   **foundation** [1] - 24:1
   **four** [5] - 30:6, 30:8, 30:9, 30:11, 30:12
   **fourth** [1] - 67:22
   **Fourth** [1] - 1:15
   **Frank** [7] - 73:23, 77:15, 77:22, 78:11, 79:1, 79:9, 79:18
   **frankly** [1] - 71:4
   **Friday** [3] - 86:24, 86:12, 86:20
   **friend** [1] - 52:3
   **friends** [2] - 8:19, 50:24
   **front** [7] - 26:24, 27:8, 38:25, 39:2, 39:5, 45:7, 85:15
   **front-channel** [2] - 26:24, 45:7
   **full** [1] - 10:3
   **fully** [2] - 29:10, 62:11
   **function** [1] - 21:24
   **functions** [1] - 22:2

## G

   **general** [7] - 25:6, 26:2, 42:11, 43:19, 43:24, 51:14, 52:5
   **generally** [2] - 20:7, 67:2
   **genesis** [1] - 77:14
   **gentlemen** [3] - 39:10, 39:24, 55:23
   **given** [11] - 10:5, 10:6, 18:3, 19:4, 40:17, 63:11, 74:3, 74:15, 77:16, 79:9, 84:20
   **Giza** [1] - 50:10
   **Governate** [1] - 50:10
   **Government** [60] - 5:24, 11:7, 11:24, 14:13, 15:5, 16:8, 16:13, 18:6, 19:4, 19:12, 20:22, 20:23,

21:13, 25:24, 27:7, 34:2, 35:9, 35:14, 36:5, 36:20, 42:9, 42:18, 42:19, 43:3, 43:4, 51:7, 53:10, 55:21, 57:13, 58:25, 59:15, 60:17, 60:22, 61:1, 61:4, 61:21, 68:4, 68:15, 69:8, 69:11, 71:4, 71:7, 71:10, 72:6, 72:12, 72:17, 73:24, 75:1, 77:13, 79:11, 81:1, 81:12, 81:21, 82:1, 82:6, 82:11, 82:17, 84:11, 88:5, 88:19
   **GOVERNMENT** [3] - 1:14, 3:4, 3:7
   **Government's** [37] - 3:12, 7:10, 7:12, 8:2, 9:2, 10:9, 14:22, 17:25, 24:15, 27:16, 27:23, 29:2, 38:13, 38:16, 38:23, 45:14, 45:15, 45:17, 46:4, 46:11, 46:12, 47:9, 47:13, 47:14, 47:20, 48:22, 49:17, 49:20, 49:23, 50:18, 58:8, 58:10, 58:13, 60:5, 75:22, 78:19, 85:16
   **grant** [3] - 51:17, 51:18, 60:4
   **granted** [20] - 25:5, 50:24, 59:16, 60:7, 60:12, 60:18, 60:23, 61:11, 61:17, 61:22, 62:18, 80:10, 80:17, 81:14, 81:22, 82:2, 82:7, 82:12, 82:19, 83:24
   **grounds** [2] - 17:23, 43:23
   **guess** [3] - 25:17, 44:6, 47:9
   **guilty** [3] - 55:9, 57:14, 58:3
   **guise** [1] - 11:6

## H

   **Haiti** [8] - 24:21, 40:4, 40:5, 40:6, 41:9, 70:12, 78:22
   **hand** [1] - 82:22
   **handed** [1] - 15:1
   **handful** [1] - 29:18
   **handing** [1] - 14:11
   **happy** [1] - 15:18
   **Harcourt** [11] -

22:21, 27:15, 45:25, 48:4, 48:6, 49:3, 50:6, 52:16, 52:22, 53:23, 55:2
   **Harcourt's** [5] - 52:3, 52:12, 52:19, 54:3, 54:4
   **hard** [2] - 59:8, 84:5
   **harm's** [1] - 42:17
   **harmed** [1] - 41:25
   **head** [1] - 44:6
   **Headnotes** [1] - 73:17
   **hear** [4] - 8:10, 19:4, 23:20, 88:4
   **heard** [2] - 56:13, 88:12
   **hearing** [3] - 23:6, 50:13, 50:15
   **hearsay** [17] - 6:22, 6:25, 10:4, 11:1, 11:8, 11:11, 11:12, 12:15, 14:21, 16:7, 18:16, 18:17, 18:19, 18:20, 20:9, 35:16
   **height** [1] - 19:15
   **held** [3] - 7:7, 22:10, 50:13
   **hello** [1] - 39:22
   **help** [1] - 42:5
   **hereby** [1] - 89:7
   **Hernandez** [1] - 22:8
   **higher** [1] - 17:21
   **hire** [1] - 43:13
   **hold** [1] - 30:14
   **Homeland** [2] - 10:25, 13:25
   **Honor** [112] - 4:7, 4:12, 4:22, 6:6, 7:2, 7:10, 7:18, 8:6, 9:15, 9:16, 10:17, 12:19, 13:21, 14:1, 14:6, 14:11, 14:16, 14:25, 15:5, 15:8, 23:25, 24:4, 24:10, 29:1, 29:7, 32:19, 34:1, 34:8, 35:3, 35:9, 36:24, 37:6, 38:3, 38:8, 38:12, 39:4, 45:10, 47:8, 47:11, 47:17, 48:21, 49:19, 54:6, 54:13, 55:12, 55:17, 55:21, 57:7, 57:20, 58:12, 59:9, 59:14, 59:24, 60:10, 60:11, 60:16, 61:4, 61:13, 61:16, 62:10, 62:22, 63:9, 64:8, 64:22, 65:11, 66:9, 66:24, 67:1, 67:15,

68:8, 68:24, 69:8, 70:15, 71:4, 72:10, 73:3, 75:23, 77:2, 77:6, 77:10, 78:6, 80:6, 80:9, 80:13, 80:19, 81:12, 81:13, 81:16, 81:20, 81:21, 81:25, 82:1, 82:5, 82:10, 82:11, 82:15, 82:18, 82:21, 83:2, 83:11, 83:17, 83:22, 84:2, 84:15, 84:18, 85:4, 85:9, 85:15, 87:24, 88:19, 89:1
   **HONORABLE** [1] - 1:10
   **hope** [1] - 76:17
   **hopefully** [1] - 87:18
   **HOROWITZ** [75] - 1:23, 6:21, 9:4, 9:15, 10:3, 10:16, 10:23, 11:15, 12:1, 12:3, 12:8, 12:15, 12:21, 12:23, 15:21, 16:13, 17:5, 17:9, 17:13, 17:17, 17:20, 28:7, 38:19, 47:11, 57:9, 57:24, 58:15, 58:17, 58:25, 59:14, 59:19, 60:10, 60:16, 60:20, 60:25, 61:13, 61:15, 61:20, 61:25, 65:15, 67:11, 67:15, 67:22, 68:14, 69:2, 69:19, 69:24, 70:9, 70:22, 70:25, 72:10, 72:20, 73:2, 73:4, 73:6, 73:13, 73:15, 75:11, 77:6, 80:6, 80:9, 80:13, 80:15, 81:2, 81:8, 81:13, 81:20, 81:25, 82:5, 82:10, 82:15, 83:2, 83:17, 83:22, 86:11
   **Horowitz** [9] - 4:13, 14:2, 38:9, 57:23, 77:7, 80:12, 83:1, 83:21, 87:4
   **host** [10] - 25:4, 40:25, 41:12, 42:8, 43:1, 43:3, 43:4, 43:16, 53:7, 53:10
   **hour** [4] - 13:10, 84:12, 84:22, 84:23

## I

   **I-194** [1] - 22:11
   **I-213** [3] - 18:15, 19:11, 19:22

   **idea** [2] - 5:4, 32:15
   **identical** [4] - 14:22, 27:23, 46:11, 62:8
   **identification** [3] - 7:13, 24:15, 45:15
   **identifying** [1] - 12:13
   **Ignasiak** [1] - 22:13
   **IGNASIAK** [1] - 22:13
   **illicit** [4] - 62:14, 63:14, 70:5, 72:7
   **immediate** [1] - 51:15
   **immediately** [2] - 8:11, 56:11
   **immigration** [1] - 16:16
   **impeach** [1] - 7:22
   **impermissible** [1] - 18:16
   **imply** [1] - 34:9
   **important** [3] - 5:11, 43:10, 78:25
   **imposed** [1] - 18:23
   **impressions** [1] - 11:19
   **improperly** [1] - 16:24
   **IN** [1] - 3:11
   **inadmissible** [1] - 16:7
   **incarcerated** [3] - 41:8, 43:11, 45:3
   **incident** [1] - 8:13
   **inclined** [1] - 15:11
   **included** [4] - 34:7, 61:14, 69:4, 83:8
   **includes** [4] - 7:24, 12:4, 44:2, 66:10
   **including** [7] - 16:16, 29:19, 41:2, 41:5, 41:20, 51:10, 56:8
   **incorporate** [1] - 57:16
   **incorrect** [3] - 63:1, 71:6, 78:15
   **indeed** [1] - 19:11
   **indicated** [3] - 29:22, 51:23, 51:25
   **indicates** [1] - 53:24
   **indication** [3] - 60:5, 68:10, 85:5
   **indicative** [1] - 23:17
   **indictment** [5] - 57:15, 58:4, 59:1, 65:19, 84:4
   **individual** [4] - 42:7, 43:16, 48:5, 66:1
   **inferences** [2] -

**74:24, 75:10**

**infirmities** [1] - 71:9

**info** [1] - 32:12

**inform** [6] - 42:24, 43:12, 58:21, 83:3, 86:16, 86:21

**information** [46] - 8:1, 8:4, 12:13, 19:6, 19:13, 19:15, 20:21, 23:18, 25:6, 25:10, 25:11, 25:15, 25:21, 25:23, 26:21, 27:22, 28:6, 29:20, 30:23, 31:17, 32:1, 32:5, 32:17, 32:24, 33:21, 35:21, 35:22, 35:25, 36:1, 36:6, 36:22, 37:14, 42:1, 43:18, 44:3, 44:18, 45:1, 45:4, 45:5, 46:18, 49:9, 51:5, 51:9, 51:20

**informed** [3] - 50:20, 86:14, 87:3

**inherently** [1] - 22:7

**initial** [1] - 62:17

**inquiries** [1] - 45:1

**INS** [1] - 22:11

**insert** [2] - 66:23, 71:25

**inserted** [2] - 68:1, 81:5

**inserting** [1] - 66:21

**insertion** [1] - 80:12

**instance** [3] - 31:18, 37:16, 51:6

**instead** [1] - 63:13

**Institute** [1] - 40:10

**institute** [1] - 54:1

**instruct** [3] - 56:11, 79:5, 87:25

**instructed** [4] - 20:19, 56:14, 88:1, 88:9

**instruction** [35] - 58:24, 59:21, 59:22, 59:25, 60:3, 60:20, 61:5, 61:12, 61:19, 64:10, 66:13, 66:15, 68:9, 69:20, 71:5, 72:9, 72:17, 72:21, 74:6, 75:12, 75:20, 75:24, 76:7, 77:14, 77:16, 78:7, 78:11, 79:1, 79:18, 80:8, 80:9, 80:23, 81:3, 81:11, 88:2

**Instruction** [9] - 59:17, 60:2, 60:13, 61:1, 62:19, 65:13,

---

**80:1, 80:21, 81:15**

**instructions** [27] - 56:19, 58:9, 58:10, 58:13, 58:20, 58:22, 67:3, 72:11, 72:25, 73:9, 73:16, 73:21, 73:24, 74:1, 74:2, 75:13, 75:17, 75:21, 78:8, 80:19, 81:9, 82:22, 82:25, 83:5, 88:12, 88:13

**insufficient** [1] - 11:15

**intend** [2] - 7:3, 86:23

**intends** [1] - 14:13

**intent** [26] - 68:16, 68:17, 68:19, 68:21, 68:23, 69:20, 69:22, 69:24, 70:5, 72:16, 74:13, 74:16, 74:19, 74:20, 75:3, 75:5, 75:6, 76:4, 78:1, 78:13, 78:23, 79:2, 79:14, 79:16, 81:3, 81:5

**interagency** [1] - 13:3

**interested** [3] - 42:10, 44:24, 44:25

**interesting** [2] - 65:22, 71:11

**interests** [1] - 37:18

**Internet** [1] - 56:9

**interstate** [5] - 66:2, 66:3, 71:13, 71:16, 71:23

**interview** [4] - 44:2, 44:20, 44:22, 51:7

**introduce** [3] - 7:3, 11:7, 34:3

**introduced** [2] - 15:14, 22:18

**introducing** [2] - 7:13, 7:21

**introduction** [3] - 14:17, 61:23, 68:6

**introductory** [2] - 69:3, 72:1

**investigation** [8] - 9:6, 10:15, 10:17, 12:24, 21:21, 22:2, 50:13, 53:16

**Investigations** [2] - 10:25, 13:25

**involved** [1] - 31:16

**issuance** [1] - 49:11

**issuances** [1] - 26:7

**issue** [17] - 14:5, 14:23, 49:11, 66:19,

---

**67:5, 68:12, 70:7, 70:8, 73:20, 78:23, 86:10, 86:18, 86:20, 86:25, 87:1, 87:10, 88:20**

**issued** [4] - 48:17, 49:6, 49:10, 49:14

**issues** [4] - 42:5, 44:20, 86:4, 87:18

**issuing** [1] - 26:8

**it'll** [2] - 60:6, 67:8, 74:11, 80:23, 87:10, 88:21

**itself** [5] - 15:14, 62:6, 64:12, 65:3, 75:20**

---

**J**

**Jane** [4] - 4:17, 4:23, 5:18, 5:19

**JOAN** [1] - 1:10

**Jordan** [6] - 72:22, 73:1, 73:22, 74:3, 76:9

**judge** [24] - 6:21, 9:4, 10:3, 10:23, 11:15, 15:21, 16:10, 18:2, 38:19, 58:15, 58:25, 59:19, 60:25, 61:25, 65:15, 67:25, 68:14, 69:19, 73:10, 73:15, 74:5, 75:11, 81:2, 84:11

**Judge** [28] - 5:6, 5:21, 6:1, 6:24, 12:8, 12:21, 39:1, 57:25, 58:18, 63:4, 63:24, 67:11, 69:15, 71:22, 72:21, 73:14, 74:3, 76:9, 76:13, 76:17, 79:21, 80:3, 83:10, 84:14, 86:22, 87:5

**JUDGE** [1] - 1:11

**judgment** [1] - 57:11

**judicial** [4] - 23:16, 25:17, 42:2, 53:15

**July** [1] - 15:4

**jurisdiction** [2] - 62:4, 67:18

**Juror** [1] - 86:13

**juror** [3] - 57:13, 58:21, 86:3

**jurors** [6] - 6:4, 13:12, 23:21, 39:6, 86:2, 86:5

**Jury** [2] - 60:2, 80:1

**jury** [39] - 13:8, 19:5, 31:12, 38:25, 39:3,

---

**39:5, 39:7, 39:24, 57:2, 58:3, 58:5, 58:10, 58:13, 58:21, 58:22, 59:2, 59:13, 59:25, 64:10, 67:2, 68:9, 69:20, 71:5, 72:21, 73:9, 73:16, 73:21, 73:24, 74:1, 75:16, 78:8, 78:12, 78:25, 79:5, 82:22, 83:5, 87:25, 88:1, 88:12**

**JURY** [2] - 1:10, 39:11

**JUSTICE** [1] - 1:17

---

**K**

**Kane** [13] - 4:8, 4:18, 5:1, 5:3, 5:9, 5:15, 5:20, 8:7, 13:22, 35:2, 38:4, 39:17, 77:3

**KANE** [27] - 1:17, 24:10, 24:13, 28:9, 29:1, 29:9, 29:12, 35:3, 39:14, 39:18, 39:20, 44:15, 45:10, 45:12, 46:25, 47:1, 47:8, 47:17, 47:19, 48:21, 48:24, 49:19, 49:22, 54:6, 54:7, 54:12, 55:17

**Kane's** [2] - 4:19, 5:10

**keep** [1] - 86:23

**keeping** [1] - 66:19

**kept** [6] - 7:4, 11:18, 22:10, 28:20, 46:21, 47:2

**kidnapped** [1] - 41:6

**kidnapping** [1] - 26:13

**kin** [6] - 23:10, 51:10, 51:15, 51:21, 51:24, 51:25

**knowing** [1] - 70:20

**knowingly** [26] - 65:20, 65:24, 65:25, 66:8, 66:11, 66:12, 66:16, 66:20, 66:22, 68:1, 68:2, 68:3, 68:5, 68:6, 68:22, 69:6, 69:13, 69:14, 69:18, 69:22, 69:25, 70:6, 70:23, 71:25, 72:2, 81:24

**knowledge** [8] - 16:4, 28:3, 28:11, 36:9, 36:10, 46:17, 46:19, 54:21

---

**known** [4] - 12:5, 12:10, 22:25, 49:24

**knows** [1] - 87:10

---

**L**

**lack** [2] - 22:4, 63:17

**ladies** [3] - 39:10, 39:24, 55:23

**language** [16] - 61:7, 61:10, 62:2, 63:7, 65:9, 65:10, 66:17, 72:23, 73:25, 79:4, 79:8, 79:15, 79:19, 79:20, 81:3, 81:4

**Larko** [4] - 4:11, 13:24, 38:7, 77:4

**last** [5] - 12:5, 12:10, 22:25, 49:24, 86:4

**law** [43] - 9:6, 9:10, 9:17, 9:18, 9:22, 9:23, 9:25, 10:24, 11:16, 11:21, 11:22, 11:23, 12:6, 12:8, 15:7, 15:9, 15:11, 17:6, 17:7, 17:10, 17:12, 17:13, 17:16, 17:19, 17:20, 18:23, 19:1, 20:20, 22:1, 24:25, 25:25, 26:16, 26:18, 27:3, 33:24, 36:3, 41:21, 54:9, 56:15, 69:25, 72:24, 78:15

**laws** [4] - 25:5, 41:12, 43:1, 53:7

**lawyer** [2] - 42:6, 43:15

**lawyers** [3] - 56:1, 56:14, 88:10

**lay** [3] - 23:25, 28:8, 38:24

**lead** [1] - 20:15

**least** [4] - 29:24, 30:6, 30:8, 78:19

**leave** [4] - 8:8, 70:3, 72:1, 86:6

**leaves** [1] - 78:21

**left** [1] - 85:2

**legal** [2] - 43:15, 44:13

**LENARD** [1] - 1:10

**lengthy** [1] - 77:11

**less** [1] - 11:1

**leveled** [1] - 25:19

**lieu** [4] - 28:14, 36:14, 36:15, 36:16

**life** [1] - 27:5

**light** [2] - 57:12, 59:20

**likely** [1] - 21:25
**likewise** [1] - 89:1
**limit** [1] - 87:8
**line** [2] - 65:17, 83:18
**lines** [2] - 44:14, 79:17
**Lisa** [1] - 85:24
**LISA** [2] - 2:1, 89:11
**listed** [5] - 30:1, 48:7, 48:11, 51:13, 67:25
**listen** [1] - 56:7
**litigation** [2] - 9:19, 10:2
**local** [3] - 41:20, 42:6, 53:7
**logical** [2] - 74:24, 75:10
**London** [3] - 48:18, 49:10, 49:15
**look** [7] - 20:19, 24:16, 27:3, 36:3, 44:11, 45:16, 76:15
**looked** [3] - 10:19, 10:20, 73:22
**looking** [1] - 83:4
**looks** [1] - 85:21
**looming** [1] - 87:2
**luncheon** [1] - 37:22

**M**

**ma'am** [9] - 23:23, 24:8, 33:20, 34:15, 39:16, 84:24, 86:1, 87:11, 87:23
**mail** [4] - 84:3, 84:6, 87:14, 87:15
**main** [1] - 42:14
**major** [1] - 27:5
**male** [2] - 22:22, 48:8
**man** [1] - 88:15
**management** [1] - 29:20
**mandated** [4] - 24:25, 27:3, 33:24, 36:3
**manifestations** [2] - 74:22, 75:8
**March** [1] - 86:10
**Maria** [4] - 4:8, 13:22, 38:4, 77:3
**MARIA** [1] - 1:14
**maritime** [2] - 62:3, 67:18
**mark** [1] - 85:5
**marked** [2] - 24:14, 45:14
**materials** [1] - 20:13

**matter** [10] - 17:5, 17:7, 17:9, 17:11, 18:23, 22:6, 34:7, 56:8, 84:6, 89:8
**MATTERS** [1] - 1:21
**matters** [5] - 8:24, 15:15, 18:24, 18:25, 55:25
**MATTHEW** [1] - 1:7
**Matthew** [7] - 4:2, 4:10, 13:17, 37:25, 57:14, 76:24, 77:7
**Mazer** [1] - 15:23
**MAZER** [1] - 15:24
**mean** [9] - 26:7, 31:21, 44:24, 48:9, 51:23, 52:6, 53:17, 70:8, 83:12
**means** [3] - 48:10, 51:1, 64:1
**mechanically** [2] - 22:5, 22:10
**MEDETIS** [115] - 1:14, 4:7, 4:22, 5:3, 5:6, 5:14, 5:17, 5:21, 6:1, 6:6, 6:19, 6:24, 7:2, 7:17, 7:20, 8:6, 9:16, 12:19, 13:21, 14:6, 14:10, 23:25, 24:3, 29:6, 29:8, 33:17, 34:1, 34:8, 35:9, 36:24, 37:5, 38:3, 38:12, 39:1, 39:4, 55:16, 55:21, 57:6, 57:20, 58:12, 58:18, 59:4, 59:11, 59:15, 59:24, 60:11, 60:17, 60:22, 61:4, 61:9, 61:16, 61:21, 62:10, 62:22, 63:2, 63:4, 63:6, 63:9, 63:24, 64:4, 64:6, 64:8, 64:20, 64:22, 65:5, 65:8, 66:9, 66:23, 67:1, 68:8, 68:24, 69:8, 69:11, 69:15, 70:15, 71:4, 71:22, 73:3, 73:14, 74:5, 74:9, 75:23, 76:11, 76:13, 76:17, 77:2, 77:10, 79:21, 80:3, 80:19, 81:1, 81:12, 81:16, 81:21, 82:1, 82:6, 82:11, 82:17, 82:21, 83:10, 83:14, 84:2, 84:8, 84:11, 84:14, 84:18, 85:4, 85:9, 85:15, 85:19, 86:22, 87:24, 88:5, 88:19, 89:1

**Medetis** [4] - 4:8, 13:22, 38:4, 77:3
**media** [3] - 42:9, 51:14, 56:8
**medical** [3] - 34:23, 37:14, 53:20
**member** [1] - 51:10
**members** [10] - 8:19, 25:11, 25:14, 42:9, 45:2, 51:11, 51:14, 59:13
**mental** [1] - 53:6
**merely** [2] - 78:11, 78:15
**messaging** [1] - 45:7
**met** [2] - 10:12, 52:16
**MIAMI** [1] - 1:2
**Miami** [8] - 1:4, 1:16, 1:22, 1:25, 2:2, 2:3, 89:12, 89:13
**Michigan** [2] - 22:23, 48:14
**might** [2] - 54:15, 78:9
**mind** [1] - 15:16
**mine** [1] - 57:9
**minimum** [1] - 69:25
**minor** [2] - 63:23, 72:8
**minutes** [12] - 76:16, 76:19, 84:12, 84:19, 84:20, 85:2, 85:3, 85:5, 85:7, 85:9, 85:10
**miscited** [1] - 62:23
**Miss** [1] - 52:3
**missing** [1] - 34:9
**misstatement** [2] - 72:24, 78:15
**mistreated** [3] - 8:17, 25:3, 41:25
**mistreatment** [5] - 23:14, 43:2, 53:2, 53:9, 53:11
**modeled** [2] - 63:13, 66:13
**modification** [2] - 60:1, 75:24
**modified** [5] - 62:20, 62:24, 80:10, 80:18, 81:14
**modify** [1] - 81:6
**Mohamed** [1] - 50:4
**molestation** [3] - 15:17, 50:8, 55:8
**moment** [4] - 15:19, 34:16, 54:6, 55:12
**Monday** [2] - 56:22, 86:20

**month** [2] - 46:1, 46:2
**monthly** [1] - 53:23
**morning** [13] - 4:1, 4:4, 4:7, 4:12, 4:16, 13:21, 14:1, 39:12, 56:18, 61:15, 87:12, 87:17, 87:22
**most** [2] - 43:14, 57:13
**motion** [4] - 57:21, 58:5, 62:11, 62:17
**motions** [2] - 57:17, 58:1
**motivation** [1] - 22:4
**move** [6] - 29:1, 38:13, 39:2, 47:8, 57:11, 74:6
**moving** [1] - 58:7
**MR** [120] - 4:12, 6:21, 9:4, 9:15, 10:3, 10:16, 10:23, 11:15, 12:1, 12:3, 12:8, 12:15, 12:21, 12:23, 14:1, 15:21, 16:13, 17:5, 17:9, 17:13, 17:17, 17:20, 28:7, 29:5, 29:7, 29:16, 31:6, 31:8, 31:9, 31:11, 31:13, 31:22, 32:2, 32:4, 33:3, 33:16, 34:5, 34:15, 34:19, 34:20, 35:1, 35:10, 38:8, 38:19, 43:21, 43:24, 44:8, 47:11, 54:15, 54:17, 55:12, 55:14, 57:9, 57:24, 58:15, 58:17, 58:25, 59:14, 59:19, 60:10, 60:16, 60:20, 60:25, 61:13, 61:15, 61:20, 61:25, 65:15, 67:11, 67:15, 67:22, 68:14, 69:2, 69:19, 69:24, 70:9, 70:22, 70:25, 72:10, 72:20, 73:2, 73:4, 73:6, 73:13, 73:15, 75:11, 77:6, 80:6, 80:9, 80:13, 80:15, 81:2, 81:8, 81:13, 81:20, 81:25, 82:5, 82:10, 82:15, 83:2, 83:17, 83:22, 84:22, 84:24, 85:2, 85:11, 85:18, 85:20, 85:23, 86:1, 86:11, 86:24, 87:4, 87:7, 87:11, 87:23, 88:15, 88:18, 88:22, 88:25
**MS** [140] - 4:7, 4:22,

5:3, 5:6, 5:14, 5:17, 5:21, 6:1, 6:6, 6:19, 6:24, 7:2, 7:17, 7:20, 8:6, 9:16, 12:19, 13:21, 14:6, 14:10, 23:25, 24:3, 28:9, 29:1, 29:6, 29:8, 29:9, 29:12, 33:17, 34:1, 34:8, 35:3, 35:9, 36:24, 37:5, 38:3, 38:12, 39:1, 39:4, 39:14, 39:18, 39:20, 44:15, 45:10, 45:12, 46:25, 47:1, 47:8, 47:17, 47:19, 48:21, 48:24, 49:19, 49:22, 54:6, 54:7, 54:12, 55:16, 55:17, 55:21, 57:6, 57:20, 58:12, 58:18, 59:4, 59:11, 59:15, 59:24, 60:11, 60:17, 60:22, 61:4, 61:9, 61:16, 61:21, 62:10, 62:22, 63:2, 63:4, 63:6, 63:9, 63:24, 64:4, 64:6, 64:8, 64:20, 64:22, 65:5, 65:8, 66:9, 66:23, 67:1, 68:8, 68:24, 69:8, 69:11, 69:15, 70:15, 71:4, 71:22, 73:3, 73:14, 74:5, 74:9, 75:23, 76:11, 76:13, 76:17, 77:2, 77:10, 79:21, 80:3, 80:19, 81:1, 81:12, 81:16, 81:21, 82:1, 82:6, 82:11, 82:17, 82:21, 83:10, 83:14, 84:2, 84:8, 84:11, 84:14, 84:18, 85:4, 85:9, 85:15, 85:19, 86:22, 87:24, 88:5, 88:19, 89:1
**multiple** [1] - 82:4
**murdered** [1] - 41:6
**murders** [1] - 26:13
**must** [5] - 70:19, 72:6, 75:3, 79:13, 83:7

**N**

**name** [11] - 4:19, 12:9, 12:10, 19:14, 32:22, 37:13, 44:3, 48:5, 48:6, 55:3, 83:19
**Name** [1] - 22:21

**names** [2] - 19:14, 25:10
**narcotics** [1] - 78:24
**nationality** [1] - 41:17
**nature** [1] - 20:8
**near** [3] - 27:25, 36:8, 46:14
**necessarily** [3] - 9:24, 15:14, 30:10
**necessary** [1] - 76:2
**need** [9] - 8:20, 25:12, 30:7, 42:5, 51:8, 55:25, 66:23, 78:9, 83:25
**needed** [1] - 45:4
**needs** [2] - 69:25, 86:6
**never** [3] - 72:16, 74:14, 87:10
**new** [1] - 40:10
**New** [1] - 1:18
**next** [14] - 6:9, 23:10, 51:10, 51:15, 51:21, 51:23, 51:25, 55:20, 56:25, 74:18, 75:20, 87:2, 87:4
**nice** [1] - 57:1
**NO** [1] - 1:2
**nonadversarial** [2] - 19:19, 21:20
**none** [16] - 35:9, 50:22, 51:22, 51:23, 53:1, 53:3, 53:14, 59:14, 59:15, 61:21, 81:25, 82:1, 82:5, 82:10, 82:11, 82:15
**nonhearsay** [1] - 14:19
**normal** [3] - 8:5, 36:7, 37:15
**normally** [3] - 32:17, 32:24, 83:19
**North** [2] - 2:2, 89:12
**Northeast** [1] - 1:15
**notarial** [1] - 40:25
**notaries** [1] - 26:10
**note** [3] - 44:21, 61:12, 83:5
**note-taking** [1] - 61:12
**notebooks** [1] - 56:17
**noted** [3] - 50:3, 50:6, 53:11
**notes** [1] - 48:6
**nothing** [5] - 9:13, 35:1, 55:17, 60:17, 60:22
**notification** [5] -

23:11, 23:18, 52:1, 52:5, 52:8
**notified** [2] - 41:16, 52:2
**notify** [2] - 4:15, 41:20
**notifying** [1] - 21:1
**nowhere** [1] - 73:19
**number** [14] - 5:1, 5:10, 6:2, 6:7, 12:5, 22:19, 22:24, 31:21, 31:23, 48:15, 49:10, 49:16, 58:9
**numbers** [1] - 31:10, 31:14, 31:19
**numerical** [1] - 85:17
**NW** [1] - 1:18

# O

**oath** [3] - 10:7, 24:7, 39:15
**object** [12] - 17:22, 34:1, 59:21, 62:15, 69:19, 72:13, 72:15, 72:23, 75:11, 75:18, 75:23, 81:1
**objecting** [2] - 9:14, 73:20
**objection** [39] - 6:20, 6:22, 7:1, 28:7, 38:22, 43:21, 44:8, 47:12, 58:12, 59:2, 59:13, 59:23, 60:1, 60:9, 60:10, 60:11, 60:15, 60:20, 61:5, 61:13, 61:16, 61:20, 61:24, 61:25, 65:13, 66:21, 67:7, 76:6, 80:11, 80:14, 80:15, 80:17, 81:10, 81:18, 81:24, 82:4, 82:9, 82:14, 83:15
**objections** [8] - 38:20, 47:11, 57:17, 67:14, 72:9, 80:5, 83:21, 87:19
**objective** [2] - 20:15, 21:23
**observation** [2] - 16:4, 22:2
**observations** [1] - 21:24
**observe** [1] - 20:7
**observed** [6] - 17:5, 17:7, 17:10, 17:11, 18:23, 18:25
**observing** [1] - 17:13
**obtain** [1] - 42:4

**obviously** [1] - 17:22
**occur** [1] - 56:20
**occurred** [3] - 62:3, 64:1, 67:18
**OCS** [1] - 32:11
**OF** [3] - 1:1, 1:4, 1:17
**offense** [4] - 61:23, 63:22, 64:1, 78:8
**Offense** [1] - 62:19
**offenses** [5] - 63:11, 63:15, 63:19, 63:20, 64:9
**offered** [1] - 19:11
**office** [9] - 8:15, 8:25, 10:12, 32:5, 35:19, 36:3, 40:21, 74:10, 76:14
**Office** [2] - 31:18, 32:8
**OFFICER** [1] - 23:23
**officer** [25] - 9:11, 24:19, 24:22, 24:25, 25:7, 25:24, 25:25, 26:1, 26:2, 26:20, 28:12, 29:20, 33:4, 36:13, 40:1, 40:2, 40:9, 40:12, 41:14, 44:17, 52:16, 52:22, 55:2, 56:17
**officer's** [1] - 16:4
**officers** [5] - 18:25, 26:3, 26:16, 40:11
**officers'** [1] - 20:20
**offices** [2] - 31:16, 31:23
**Official** [1] - 89:12
**official** [6] - 2:1, 10:19, 17:18, 21:25, 22:1, 22:5
**officials** [3] - 25:17, 41:20, 42:2
**old** [2] - 54:18, 88:15
**once** [6] - 8:10, 35:20, 41:19, 56:20, 65:15, 67:16
**one** [25] - 6:10, 6:16, 10:10, 27:1, 29:5, 30:2, 30:10, 30:11, 31:6, 34:16, 34:19, 42:14, 44:19, 50:24, 54:6, 55:12, 58:16, 71:1, 71:6, 80:12, 84:22, 86:2, 86:5, 87:10
**opening** [4] - 84:13, 84:19, 85:6, 85:7
**opinion** [6] - 11:9, 13:1, 14:16, 15:1, 15:4, 73:15
**opportunity** [2] -

10:18, 17:24
**order** [8] - 15:6, 42:4, 42:8, 43:3, 51:7, 63:17, 74:11, 85:17
**ordinary** [3] - 7:4, 11:18, 13:5
**originate** [1] - 47:24
**otherwise** [1] - 16:7
**outcome** [3] - 33:5, 33:9, 33:11
**outlined** [1] - 68:20
**outside** [1] - 43:5
**outward** [2] - 74:21, 75:7
**overruled** [6] - 38:22, 43:22, 43:25, 44:9, 47:12, 76:7
**overseas** [4] - 27:3, 41:5, 41:8, 42:16
**Overseas** [1] - 32:8
**own** [1] - 16:4

# P

**p.m** [3] - 1:6, 39:8, 57:2
**packet** [3] - 58:8, 58:22, 87:20
**packets** [2] - 87:13, 87:15
**Page** [15] - 14:16, 15:25, 19:10, 19:21, 31:10, 31:14, 50:18, 61:7, 72:11, 73:15, 77:22, 80:7, 80:8, 81:2, 83:4
**PAGE** [2] - 3:11, 3:15
**Pages** [5] - 1:8, 21:17, 82:22, 83:11, 83:16
**pages** [3] - 14:13, 34:9, 83:12
**Palm** [1] - 50:1
**Paragraph** [2] - 18:8, 48:6
**paragraph** [19] - 66:8, 66:15, 66:24, 66:25, 67:2, 67:8, 67:10, 67:12, 67:17, 69:2, 69:3, 69:7, 69:18, 72:2, 72:12, 72:14, 74:25, 80:23
**parents'** [1] - 19:14
**part** [10] - 8:23, 9:20, 11:13, 20:17, 21:24, 22:4, 24:22, 43:17, 72:4, 72:24
**participated** [4] - 29:23, 30:21, 30:24,

31:24
**particular** [7] - 32:2, 33:5, 34:7, 63:11, 74:16, 78:13, 81:23
**particulars** [1] - 44:4
**parties** [11] - 4:16, 4:21, 5:13, 16:8, 58:21, 76:9, 83:3, 84:4, 84:10, 87:2, 88:4
**party** [2] - 51:10, 51:19
**passed** [1] - 87:8
**passport** [12] - 12:5, 22:24, 26:8, 48:15, 49:1, 49:2, 49:6, 49:9, 49:11, 49:14, 49:16
**passports** [2] - 26:7, 40:23
**patience** [2] - 56:16, 57:1
**Pattern** [5] - 62:24, 63:13, 66:10, 66:19, 80:20
**pattern** [22] - 58:9, 60:20, 62:20, 64:10, 65:12, 66:15, 66:18, 67:2, 68:9, 69:5, 69:12, 70:4, 71:5, 71:9, 72:18, 72:25, 75:12, 75:13, 75:16, 80:1, 83:5
**pending** [2] - 25:20, 42:22
**people** [6] - 29:18, 29:22, 30:1, 30:5, 30:9, 88:16
**perception** [1] - 22:1
**performing** [4] - 26:5, 26:10, 26:14, 26:15
**permanent** [3] - 66:5, 71:14, 83:7
**permission** [9] - 24:10, 45:10, 47:9, 47:17, 48:21, 49:19, 51:9, 51:17, 51:18
**person** [28] - 5:4, 5:18, 17:24, 21:2, 30:10, 36:15, 42:24, 43:9, 45:3, 52:2, 54:25, 55:3, 64:2, 64:15, 64:17, 64:24, 65:1, 65:3, 65:25, 66:3, 70:11, 71:12, 71:16, 71:21, 71:23, 74:15, 75:2, 79:13
**person's** [4] - 44:4, 72:16, 74:13, 81:3
**personal** [1] - 11:9

**personnel** [3] - 8:22, 9:21, 19:1
**persons** [1] - 16:5
**pertaining** [1] - 45:3
**Phil** [4] - 4:13, 14:2, 38:9, 77:7
**PHILIP** [1] - 1:23
**phone** [2] - 5:1, 6:2
**phrase** [2] - 63:18, 70:16
**phraseology** [1] - 75:19
**physical** [1] - 53:5
**place** [13] - 19:14, 23:1, 23:4, 25:2, 32:22, 41:23, 44:3, 44:10, 48:10, 48:13, 50:2, 50:3, 50:9
**places** [1] - 25:10
**placing** [4] - 16:7, 64:24, 65:1, 65:3
**plain** [1] - 70:17
**Plaintiff** [1] - 1:5
**plan** [1] - 84:15
**plane** [1] - 68:11
**planned** [1] - 86:13
**play** [1] - 30:10
**point** [3] - 41:24, 71:6, 86:8
**police** [8] - 11:24, 13:5, 13:6, 16:2, 16:3, 18:25, 21:18, 21:19
**policies** [4] - 8:1, 8:16, 8:21, 8:23
**policy** [3] - 8:9, 28:17, 36:17
**Port** [2] - 24:21, 40:4
**Port-au-Prince** [2] - 24:21, 40:4
**portion** [24] - 10:13, 10:16, 10:17, 12:1, 12:2, 12:3, 12:4, 18:5, 18:7, 19:2, 19:11, 22:18, 37:8, 37:12, 72:18, 72:20, 73:8, 73:19, 75:20, 75:24, 76:7, 77:21
**portions** [3] - 10:9, 11:25, 27:21
**position** [7] - 24:18, 40:5, 40:8, 40:20, 64:2, 75:22, 88:5
**positions** [1] - 88:4
**possibility** [1] - 61:6
**possible** [2] - 23:7, 50:19
**post** [3] - 27:10, 49:10, 49:14
**posts** [2] - 45:8, 45:9
**powers** [2] - 25:11,

42:4
**practically** [1] - 62:8
**practice** [7] - 28:15, 28:17, 28:23, 30:6, 36:10, 36:17, 47:5
**practices** [1] - 9:20
**preclude** [1] - 79:17
**predicate** [1] - 28:8
**prefer** [2] - 84:3, 84:5
**prejudice** [1] - 16:25
**preparation** [3] - 29:23, 31:24, 56:1
**prepare** [1] - 33:4, 87:13, 87:15
**prepared** [9] - 9:19, 9:20, 9:25, 10:1, 21:20, 29:17, 29:18, 29:22, 31:22
**preparing** [2] - 19:20, 21:25
**present** [8] - 4:14, 13:11, 14:3, 22:3, 38:10, 44:23, 53:25, 77:8
**presentation** [1] - 55:24
**presented** [2] - 19:5, 30:23
**press** [2] - 25:14, 51:11
**pretrial** [1] - 57:17
**pretty** [1] - 87:6
**previous** [1] - 62:11
**previously** [5] - 7:6, 38:19, 39:23, 45:13, 48:22, 57:24
**primary** [4] - 20:19, 20:23, 21:3, 35:25
**Prince** [2] - 24:21, 40:4
**print** [3] - 15:22, 83:19, 84:7
**priorities** [2] - 42:14, 44:19
**prison** [4] - 25:8, 41:20, 51:13, 54:1
**prisoner** [7] - 25:9, 42:4, 43:6, 43:10, 44:2, 44:21, 53:8
**prisoner's** [1] - 53:11
**Privacy** [7] - 23:9, 25:12, 42:7, 50:23, 51:2, 51:3, 51:12
**private** [1] - 51:5
**pro** [1] - 37:12
**problem** [1] - 70:13
**procedure** [4] - 21:15, 28:17, 36:11, 36:17
**Procedure** [1] -

57:10
**procedures** [8] - 7:9, 8:8, 8:16, 8:22, 8:24, 9:21, 24:23, 41:14
**proceed** [3] - 24:9, 38:11, 39:17
**proceeding** [1] - 59:5
**proceedings** [11] - 13:15, 23:16, 35:7, 37:23, 39:8, 53:15, 57:3, 58:2, 76:22, 88:6, 89:8
**Proceedings** [1] - 89:3
**process** [6] - 18:10, 41:12, 43:1, 43:5, 43:17, 53:6
**processes** [1] - 7:9
**processing** [3] - 29:24, 40:22, 40:23
**procuring** [1] - 44:13
**professor** [1] - 16:17
**proffer** [10] - 18:4, 18:9, 18:23, 19:3, 29:4, 35:2, 35:12, 36:19, 38:24
**proffered** [1] - 20:22
**proof** [13] - 13:2, 72:15, 74:13, 74:19, 75:5, 77:25, 78:4, 78:19, 78:20, 79:9, 79:15, 81:2, 81:5
**proofed** [1] - 84:4
**property** [5] - 21:11, 21:14, 21:15, 23:15, 53:12
**proposal** [1] - 62:15
**Proposed** [13] - 59:17, 60:1, 60:13, 60:24, 61:18, 61:23, 65:13, 79:25, 81:15, 81:18, 82:3, 82:8, 82:13
**proposed** [10] - 18:6, 59:25, 61:5, 73:24, 74:1, 79:20, 81:11, 81:23, 82:25, 83:15
**proposing** [1] - 61:2
**proposition** [4] - 14:17, 14:22, 15:6, 15:13
**prosecution** [1] - 19:20
**prosecutions** [1] - 20:2
**protect** [1] - 51:4
**protecting** [1] - 37:18
**Protection** [1] -

19:19
**protection** [3] - 42:15, 42:19, 51:8
**protest** [1] - 43:3, 43:5, 53:10
**protocols** [2] - 24:23, 41:14
**prove** [11] - 68:4, 68:15, 68:19, 68:21, 69:1, 72:6, 75:1, 75:3, 78:9, 79:12, 79:13
**prove..** [1] - 72:12
**provide** [8] - 41:2, 42:12, 42:18, 51:8, 51:19, 53:9, 59:8, 88:2
**provided** [3] - 14:12, 19:6, 53:6
**provides** [2] - 20:1, 40:21
**providing** [8] - 19:8, 20:25, 21:2, 26:12, 40:24, 41:4, 43:17, 59:4
**proving** [1] - 20:11
**provision** [2] - 40:14, 64:3
**public** [5] - 17:2, 17:3, 18:21, 22:6, 35:17, 45:2, 51:14
**publish** [4] - 47:10, 47:16, 48:21, 49:19
**pull** [2] - 74:5, 76:14
**punishment** [1] - 82:3
**pure** [1] - 6:22
**purpose** [32] - 7:21, 7:23, 18:10, 20:11, 20:19, 20:23, 20:25, 21:2, 21:3, 25:16, 35:25, 37:18, 64:13, 66:7, 68:18, 69:1, 70:4, 70:5, 70:9, 70:13, 70:17, 70:18, 70:19, 70:20, 70:21, 71:24, 72:6, 72:7, 76:5, 78:20
**purposes** [4] - 19:8, 23:19, 68:3, 77:24
**pursuant** [3] - 18:23, 21:5, 57:9
**put** [6] - 12:9, 12:12, 67:19, 69:2, 69:17, 85:15

**Q**

**questioning** [1] - 20:20

**questions** [3] - 29:3, 54:15, 55:14
**quickly** [1] - 87:21
**quote** [2] - 19:17, 20:10
**quotes** [1] - 54:21
**quoting** [1] - 20:1

**R**

**ranging** [3] - 26:11, 26:12, 40:13
**raped** [1] - 41:6
**rapes** [1] - 26:13
**rare** [1] - 74:14
**rather** [2] - 76:2, 77:11
**rational** [2] - 74:24, 75:10
**RDR** [2] - 2:1, 89:11
**reach** [1] - 5:20
**reached** [1] - 87:7
**read** [7] - 11:10, 56:7, 63:18, 74:25, 77:21, 78:7, 83:20
**reading** [1] - 17:14
**reads** [1] - 65:25
**ready** [3] - 6:5, 16:11, 38:11
**really** [3] - 6:10, 63:17, 77:15
**reason** [5] - 10:23, 12:11, 18:10, 37:11, 43:9
**reasonable** [7] - 57:13, 58:3, 60:8, 68:5, 68:15, 68:22, 69:1
**reasonably** [1] - 20:15
**reasons** [3] - 7:25, 44:11, 73:7
**rebuttal** [6] - 6:5, 84:20, 85:8
**REBUTTAL** [1] - 3:7
**receipt** [3] - 21:11, 21:14, 21:15
**receive** [2] - 26:18, 58:22
**received** [4] - 4:16, 5:23, 19:12, 21:14
**RECEIVED** [1] - 3:11
**receives** [1] - 53:23
**recess** [9] - 13:13, 13:14, 37:21, 37:22, 76:18, 76:21, 87:13, 88:23, 89:2
**recognize** [7] - 27:9, 27:17, 27:19, 45:18,

45:20, 46:4, 46:6
**recommendation** [1] - 71:8
**record** [24] - 4:6, 5:4, 5:24, 7:3, 9:3, 9:5, 10:22, 10:24, 11:1, 11:7, 11:16, 11:17, 12:21, 12:22, 13:4, 13:7, 13:20, 21:7, 21:18, 29:9, 35:16, 35:17, 38:2, 70:2
**recording** [2] - 21:23, 22:5
**records** [15] - 9:12, 12:20, 13:1, 14:21, 17:3, 17:14, 18:21, 20:7, 21:20, 22:6, 22:11, 24:1, 44:23
**Red** [1] - 3:3
**redacted** [11] - 6:10, 7:16, 18:5, 20:24, 27:21, 27:22, 29:9, 35:13, 38:14, 46:9
**redaction** [1] - 18:7
**redactions** [5] - 18:6, 38:15, 38:17, 38:18, 46:10
**redirect** [1] - 55:15
**redundant** [3] - 67:4, 68:13, 75:25
**refer** [3] - 14:16, 31:15, 83:11
**reference** [10] - 10:14, 18:2, 32:11, 32:15, 32:19, 57:16, 62:11, 63:10, 80:20, 81:16
**referenced** [2] - 4:25, 49:17
**references** [1] - 31:16
**referencing** [1] - 63:14
**referring** [8] - 7:10, 30:8, 30:22, 31:19, 52:6, 52:8, 53:4, 77:23
**refers** [1] - 31:23
**regard** [2] - 36:20, 79:5
**regarding** [27] - 6:12, 8:21, 14:17, 14:23, 15:7, 21:18, 25:15, 26:22, 41:15, 43:19, 48:5, 49:9, 49:24, 50:2, 50:5, 50:12, 50:15, 50:19, 50:21, 50:23, 51:21, 52:1, 52:15, 52:25, 53:2, 53:12, 77:19

**register** [1] - 22:5
**regular** [4] - 7:7, 21:15, 28:23, 47:5
**regularly** [5] - 21:8, 28:21, 35:16, 46:22, 47:3
**relate** [2] - 27:14, 45:24
**related** [2] - 52:18, 54:2
**relevance** [4] - 31:20, 34:2, 34:4, 43:24
**relevant** [1] - 14:13
**reliable** [1] - 22:7
**rely** [1] - 57:20
**remainder** [1] - 72:14
**remaining** [3] - 62:6, 85:7, 85:10
**remember** [3] - 54:22, 56:13, 86:14
**remind** [3] - 24:17, 87:3, 87:9
**reminder** [1] - 39:23
**renew** [3] - 38:19, 47:11, 65:15
**repeat** [2] - 46:24, 52:7
**repeats** [1] - 75:20
**report** [34] - 8:2, 8:13, 8:24, 9:5, 9:6, 9:11, 9:12, 9:17, 9:18, 9:22, 9:23, 10:10, 11:16, 11:21, 11:22, 11:25, 12:9, 12:18, 12:23, 13:3, 13:4, 13:7, 15:12, 16:3, 16:6, 16:8, 16:18, 18:24, 20:24, 22:15, 22:17, 33:7, 44:21, 56:11
**reported** [2] - 17:25, 73:12
**REPORTED** [1] - 2:1
**REPORTER** [1] - 46:24
**Reporter** [2] - 2:1, 89:12
**reporting** [1] - 8:4
**reports** [9] - 11:22, 13:5, 15:7, 15:9, 16:2, 26:8, 26:9, 40:23, 40:24
**represent** [2] - 43:2, 43:12, 43:15
**representation** [2] - 42:6, 44:13
**representatives** [2] - 27:6, 36:5

**representing** [1] - 5:3
**Republic** [1] - 4:18
**request** [4] - 42:7, 62:16, 84:12, 85:11
**requested** [2] - 8:20, 44:12
**requesting** [2] - 84:10, 84:21
**require** [2] - 17:21, 60:2
**required** [6] - 33:21, 54:8, 54:11, 74:19, 75:5
**requirement** [1] - 71:7
**requires** [2] - 34:13, 76:4
**requiring** [1] - 38:17
**research** [1] - 13:10
**residence** [2] - 66:5, 71:14
**resident** [1] - 83:8
**residing** [1] - 27:3
**respect** [1] - 67:23
**respectfully** [1] - 68:14
**response** [4] - 6:25, 9:2, 9:16, 49:6
**responsibilities** [2] - 27:1, 40:19
**responsibility** [2] - 36:15, 41:10
**rest** [2] - 37:12, 75:15
**rests** [1] - 55:21
**result** [3] - 16:3, 54:3, 73:5
**resulting** [1] - 21:21
**retired** [1] - 35:6
**returns** [1] - 78:22
**reunion** [1] - 86:15
**review** [6] - 15:19, 33:11, 46:10, 54:2, 55:25, 87:17
**reviewed** [5] - 35:22, 35:23, 45:22, 52:18, 55:5
**reviewing** [1] - 88:12
**revolved** [1] - 21:11
**rights** [3] - 18:18, 19:23, 25:4
**robbed** [1] - 41:6
**robbery** [1] - 26:13
**role** [2] - 8:16, 30:11
**rough** [1] - 88:18
**routine** [9] - 19:3, 19:6, 19:13, 21:20, 21:23, 26:5, 26:7, 40:15, 40:21

**routinely** [4] - 19:17, 19:18, 22:10, 51:12
**rubric** [1] - 26:4
**Rule** [10] - 11:11, 17:1, 22:12, 35:17, 57:10, 57:21, 58:1, 61:19, 62:11, 62:17
**rule** [9] - 6:9, 6:14, 11:12, 11:14, 18:21, 34:5, 34:8, 34:12, 35:16
**rules** [2] - 6:15, 88:2
**ruling** [4] - 38:21, 62:17, 67:20, 67:24

**S**

**S-e-i-f-e-r-t** [1] - 4:24
**safety** [2] - 27:2, 36:1
**saw** [2] - 11:10, 72:19
**scoured** [1] - 77:11
**seated** [5] - 4:1, 13:16, 39:9, 57:4, 76:23
**second** [12] - 4:20, 10:13, 12:3, 14:25, 34:10, 57:14, 58:4, 65:17, 66:8, 66:14, 66:24, 67:10
**secondly** [1] - 10:20
**Secretary** [7] - 6:12, 8:14, 8:25, 28:16, 33:8, 48:2
**section** [9] - 22:19, 24:21, 29:12, 35:14, 36:20, 37:1, 40:3, 52:10, 83:6
**Section** [2] - 64:14, 73:17
**Security** [3] - 10:25, 13:25, 32:13
**security** [4] - 27:2, 36:1, 50:10, 56:17
**SECURITY** [1] - 23:23
**see** [16] - 5:14, 5:17, 6:23, 10:18, 29:5, 31:6, 56:7, 56:17, 63:5, 63:7, 63:8, 65:12, 69:6, 78:14, 87:12, 87:19
**seeing** [1] - 61:15
**seeking** [5] - 7:14, 11:7, 34:3, 59:10
**Seifert** [4] - 4:17, 4:23, 5:19
**send** [2] - 33:8, 45:8
**sense** [3] - 63:17,

63:19, 70:21
**sent** [6] - 18:11, 28:13, 33:21, 36:13, 48:1, 84:5
**sentence** [6] - 23:7, 50:19, 72:13, 74:19, 75:15, 80:12
**sentences** [1] - 74:17
**separate** [1] - 10:8
**serve** [1] - 43:15
**service** [4] - 24:19, 40:1, 40:9, 40:10
**Service** [1] - 40:10
**Services** [1] - 32:8
**services** [11] - 24:20, 26:5, 26:6, 26:11, 40:3, 40:14, 40:22, 40:25, 41:2, 42:12, 43:17
**serving** [1] - 24:19
**set** [2] - 25:20, 83:23
**setting** [1] - 21:20
**several** [3] - 16:15, 16:18, 50:24
**Sex** [1] - 22:22
**sex** [4] - 48:7, 77:24, 78:5, 78:9
**sexual** [15] - 62:3, 62:14, 63:14, 63:23, 64:13, 64:14, 66:7, 67:17, 68:20, 70:5, 72:7, 75:2, 77:20, 79:12
**shall** [1] - 20:2
**short** [1] - 64:20
**show** [2] - 17:2, 70:17
**showing** [6] - 24:14, 45:13, 47:20, 50:18, 76:4, 76:5
**shown** [3] - 6:17, 38:17, 74:15
**shows** [1] - 7:23
**sic** [1] - 53:17
**side** [2] - 14:5, 85:16
**sides** [2] - 5:25, 3:10
**sign** [1] - 53:8
**signature** [2] - 28:13, 36:14
**signed** [1] - 28:16
**similar** [3] - 9:10, 33:8, 61:18
**similar-acts** [1] - 61:18
**simply** [5] - 22:3, 56:15, 60:2, 63:14, 70:11
**single** [3] - 13:6,

13:7, 82:3
**sit** [2] - 58:18, 87:4
**situation** [4] - 42:13, 44:5, 59:21, 61:2
**six** [1] - 59:7
**Sixth** [3] - 14:15, 18:17, 19:25
**solemn** [1] - 20:10
**someone** [12] - 12:24, 27:5, 28:3, 28:11, 36:9, 36:10, 36:14, 43:15, 46:17, 46:18, 52:9, 54:20
**sometimes** [4] - 33:6, 45:1, 83:19, 88:10
**somewhere** [2] - 85:13
**sophisticated** [2] - 65:9, 65:10
**sorry** [8] - 29:8, 29:21, 31:8, 31:11, 38:14, 49:13, 52:7, 69:10
**sort** [3] - 10:1, 26:15, 53:8
**South** [1] - 1:24
**SOUTHERN** [1] - 1:1
**Southwest** [1] - 1:21
**Special** [5] - 4:10, 13:24, 38:6, 61:12, 77:4
**special** [4] - 26:6, 26:11, 62:3, 67:18
**specialized** [2] - 40:15, 41:2
**specific** [8] - 68:19, 68:21, 68:23, 69:20, 69:22, 72:7, 73:8, 76:3
**specific-intent** [1] - 69:20
**specifically** [4] - 4:25, 15:24, 32:7, 51:19
**speculate** [1] - 30:5
**speculation** [1] - 28:7
**spells** [2] - 63:15
**spend** [1] - 88:11
**squarely** [2] - 7:24, 18:20
**staff** [1] - 56:12
**stage** [1] - 58:2
**stampings** [1] - 59:6
**stand** [1] - 34:21
**standpoint** [1] - 78:20
**stands** [1] - 53:20
**start** [3] - 65:16,

65:18, 87:21
**starting** [4] - 58:20, 59:12, 67:8, 67:9
**starts** [2] - 66:15, 72:15
**state** [11] - 4:5, 13:19, 15:16, 19:21, 20:5, 38:1, 50:10, 52:24, 53:12, 77:1, 83:4
**State** [48] - 6:12, 7:4, 7:5, 7:11, 8:9, 8:13, 8:14, 9:21, 10:19, 11:2, 11:8, 11:19, 12:25, 17:17, 18:12, 19:7, 21:1, 24:18, 26:20, 26:21, 26:23, 27:1, 27:11, 28:16, 28:17, 28:21, 28:24, 33:9, 33:22, 35:24, 36:2, 36:17, 37:17, 40:2, 40:17, 42:12, 42:15, 42:21, 43:7, 44:16, 44:25, 45:6, 46:22, 47:3, 47:6, 48:2, 54:8
**State's** [2] - 8:15, 8:25
**statement** [10] - 9:3, 9:8, 9:9, 10:4, 10:6, 11:13, 18:3, 20:6, 20:16, 79:11
**statements** [9] - 7:24, 10:14, 16:5, 16:8, 16:9, 20:8, 20:12, 20:14, 36:22
**states** [3] - 16:2, 53:23, 66:3
**States** [43] - 4:2, 4:9, 8:10, 13:17, 13:23, 15:2, 18:12, 19:7, 20:24, 21:9, 22:8, 22:12, 27:10, 35:24, 37:24, 38:5, 39:14, 42:11, 42:14, 42:21, 42:22, 47:25, 54:12, 62:4, 65:23, 66:4, 66:5, 66:16, 67:9, 67:19, 70:15, 71:13, 71:15, 71:17, 71:20, 71:24, 73:17, 73:23, 76:24, 77:4, 80:25, 89:12
**STATES** [5] - 1:1, 1:4, 1:11, 1:15, 1:17
**status** [3] - 10:11, 23:5, 50:12
**statute** [14] - 63:3, 63:8, 63:10, 64:11, 65:7, 65:24, 66:11,

69:6, 70:24, 71:18, 72:5, 72:6, 72:8, 77:25
**statutes** [1] - 65:23
**statutory** [3] - 65:9, 65:10, 66:17
**stay** [1] - 31:11
**step** [4] - 8:24, 35:5, 55:18
**steps** [3] - 30:11, 30:12, 42:20
**still** [5] - 10:3, 15:12, 24:7, 29:12, 39:15
**stop** [1] - 56:11
**story** [1] - 11:5
**straight** [1] - 85:22
**Street** [2] - 1:15, 50:4
**stretch** [2] - 57:8, 57:9
**stretching** [1] - 57:6
**strike** [7] - 61:6, 67:1, 74:13, 74:16, 74:18, 79:8, 80:22
**striking** [2] - 67:5, 67:7, 80:12
**struck** [2] - 67:13, 81:4
**Stu** [4] - 4:13, 14:2, 33:17, 38:9
**STUART** [1] - 1:20
**Stuart** [1] - 77:7
**subject** [7] - 18:4, 18:9, 18:22, 19:2, 48:3, 48:4, 51:25
**subject's** [1] - 12:9
**subjective** [3] - 21:21, 74:20, 75:6
**submission** [1] - 59:1
**submit** [1] - 82:20
**submitted** [5] - 49:2, 58:5, 58:9, 59:1, 59:19
**Subparagraph** [1] - 64:10
**Subsection** [1] - 17:2
**substantive** [1] - 67:4
**substituted** [1] - 59:22
**sufficient** [1] - 84:22
**suggest** [2] - 15:8, 78:9
**Suite** [3] - 1:18, 1:22, 1:24
**summarize** [1] - 9:12
**summary** [1] - 9:10
**superseding** [2] - 57:15, 58:4

**supervise** [1] - 40:21
**supplement** [2] - 8:7, 54:1
**supplied** [1] - 23:18
**supposedly** [1] - 11:23
**Supreme** [2] - 20:6, 20:18
**surrounding** [2] - 74:23, 75:9
**suspect** [1] - 84:18
**sworn** [1] - 10:6
**system** [1] - 45:8

## T

**tabbed** [1] - 14:12
**table** [6] - 4:10, 13:24, 38:6, 77:5, 85:13, 85:16
**talks** [2] - 16:1, 73:16
**tasked** [2] - 26:3, 26:5
**Technologies** [1] - 15:23
**telegram** [1] - 29:20
**template** [4] - 25:21, 32:25, 36:7, 44:1
**ten** [4] - 85:2, 85:3, 85:5, 85:7
**tenders** [4] - 7:20, 14:10, 54:12, 63:6
**terms** [5] - 8:16, 25:4, 29:24, 42:6, 51:14
**territorial** [2] - 62:4, 67:18
**testified** [2] - 7:7, 39:23
**testifies** [1] - 61:3
**testify** [5] - 9:8, 11:3, 36:21, 59:18, 60:6
**testimonial** [6] - 18:17, 20:6, 20:8, 20:9, 20:12, 20:21
**testimony** [13] - 7:22, 8:3, 8:7, 8:21, 12:16, 16:16, 16:22, 20:13, 20:17, 34:13, 36:25, 59:20, 78:18
**that'll** [1] - 81:9
**THE** [222] - 1:10, 1:14, 1:20, 3:4, 3:7, 4:1, 4:15, 4:23, 5:5, 5:7, 5:16, 5:18, 5:23, 6:2, 6:17, 6:23, 6:25, 7:16, 7:19, 8:1, 9:2, 9:14, 10:8, 10:21, 11:11, 11:25, 12:2,

12:4, 12:14, 12:22, 13:9, 13:16, 14:4, 14:9, 15:20, 16:12, 17:4, 17:7, 17:11, 17:16, 17:19, 18:4, 23:23, 23:24, 24:2, 24:6, 24:8, 24:9, 24:11, 28:8, 29:3, 29:11, 29:14, 31:7, 31:19, 31:25, 32:3, 32:16, 32:19, 32:20, 32:21, 32:22, 32:25, 33:2, 33:19, 33:20, 33:21, 33:23, 33:24, 33:25, 34:4, 34:12, 34:17, 35:2, 35:4, 35:8, 35:12, 37:2, 37:7, 37:24, 38:11, 38:21, 39:2, 39:6, 39:9, 39:11, 39:12, 39:15, 39:16, 39:17, 43:22, 43:25, 44:1, 44:9, 44:10, 45:11, 46:24, 47:12, 47:16, 47:18, 48:23, 49:21, 54:14, 55:13, 55:15, 55:18, 55:20, 55:23, 57:4, 57:8, 57:19, 57:23, 58:1, 58:14, 58:16, 58:19, 59:3, 59:10, 59:12, 59:16, 59:23, 60:4, 60:12, 60:18, 60:23, 61:8, 61:11, 61:14, 61:17, 61:22, 62:16, 62:25, 63:3, 63:5, 63:7, 63:22, 63:25, 64:5, 64:7, 64:11, 64:21, 64:25, 65:6, 65:13, 65:22, 66:21, 66:25, 67:7, 67:12, 67:21, 69:5, 69:10, 69:13, 69:16, 69:22, 70:3, 70:24, 71:3, 71:11, 71:23, 72:19, 73:1, 73:5, 73:12, 73:22, 74:8, 74:12, 75:22, 76:8, 76:12, 76:16, 76:18, 76:23, 77:9, 79:8, 79:24, 80:4, 80:8, 80:10, 80:14, 80:16, 80:22, 81:4, 81:9, 81:14, 81:18, 81:22, 82:2, 82:7, 82:12, 82:19, 82:24, 83:3, 83:13, 83:15, 83:18, 83:23, 84:6, 84:9, 84:13, 84:17, 84:21, 84:23, 84:25, 85:3, 85:7, 85:10, 85:21, 85:24, 86:2,

86:12, 86:23, 87:1, 87:6, 87:9, 87:12, 88:1, 88:8, 88:16, 88:21, 88:23, 89:2
**themselves** [1] - 43:12
**theory** [1] - 15:13
**therefore** [4] - 36:19, 37:19, 58:4, 68:12
**therein** [3] - 15:15, 28:1, 46:15
**Thereupon** [4] - 13:14, 35:6, 37:22, 76:21
**they've** [4] - 25:3, 41:24, 42:25, 68:17
**third** [4] - 16:5, 16:8, 51:10, 51:19
**Third** [1] - 1:21
**threat** [5] - 64:7, 64:19, 64:21, 65:2, 65:4
**threatening** [2] - 64:24, 64:25
**three** [2] - 29:22, 30:1
**Thursday** [2] - 56:24, 86:19
**timekeeper** [1] - 85:1
**title** [2] - 24:18, 58:22
**Title** [2] - 63:8, 65:23
**today** [2] - 56:16, 57:1
**Todd** [1] - 52:3
**tomorrow** [8] - 56:18, 56:23, 84:5, 86:3, 86:10, 86:11, 86:19, 87:12
**Toni** [1] - 4:19
**took** [1] - 9:8
**top** [4] - 31:10, 44:6, 47:21, 65:17
**total** [1] - 84:12
**totality** [1] - 74:25
**touching** [1] - 56:7
**track** [1] - 26:24
**Tracy** [1] - 52:3
**traditional** [1] - 22:1
**trained** [1] - 40:13
**training** [5] - 26:18, 40:7, 40:10, 40:16, 40:18
**Tran** [13] - 3:5, 3:8, 7:6, 24:14, 24:17, 26:16, 28:10, 39:14, 39:21, 47:20, 48:25, 52:18, 54:8
**tran** [1] - 45:13
**transaction** [1] -

78:24
**transcript** [7] - 9:7, 74:6, 74:8, 76:9, 76:15, 77:21, 77:22
**transcription** [1] - 89:8
**transcripts** [1] - 77:12
**transmission** [1] - 33:5
**transmitted** [9] - 28:6, 29:20, 30:7, 35:22, 35:23, 37:17, 45:5, 46:18
**transmitting** [5] - 29:25, 30:19, 30:20, 31:3, 36:1
**transports** [2] - 65:25, 69:14
**travel** [7] - 68:7, 68:11, 70:4, 72:7, 77:25, 78:20, 78:22
**travel..** [1] - 66:16
**traveled** [6] - 68:2, 70:6, 70:11, 71:20, 75:3, 79:14
**traveling** [11] - 62:21, 65:18, 65:19, 65:21, 68:16, 68:17, 70:8, 70:10, 70:14, 70:16, 83:6
**travels** [9] - 64:12, 66:3, 66:6, 69:16, 71:12, 71:15, 71:16, 71:17, 71:23
**treated** [3] - 41:11, 41:25, 42:25
**treatment** [2] - 43:3, 53:8
**TRIAL** [1] - 1:10
**trial** [17] - 4:19, 4:22, 4:23, 4:25, 5:7, 5:12, 5:20, 16:16, 16:19, 20:17, 21:3, 25:19, 25:20, 56:6, 57:17, 77:11, 77:22
**trials** [1] - 88:14
**tried** [2] - 69:12, 72:21
**trip** [1] - 86:13
**Truth** [1] - 16:17
**try** [3] - 42:1, 56:10, 74:5
**trying** [1] - 76:11
**Tuesday** [1] - 86:20
**turned** [1] - 56:2, 56:20, 56:23
**Twelfth** [2] - 2:2, 89:12
**two** [7] - 6:10, 10:8,

14:11, 27:8, 30:4, 74:17, 75:20
**type** [5] - 9:6, 12:16, 18:11, 21:16, 79:6
**types** [2] - 7:8, 26:4
**typically** [1] - 20:10
**typos** [1] - 87:18

# U

**ultimate** [3] - 54:3, 74:20, 75:5
**unable** [2] - 15:22, 51:19
**unambiguous** [1] - 22:6
**uncommon** [1] - 12:12
**uncounseled** [1] - 18:3
**under** [45] - 10:7, 11:6, 11:11, 15:13, 16:5, 17:6, 17:22, 18:22, 19:1, 19:23, 20:14, 21:6, 24:7, 25:4, 26:4, 26:11, 28:13, 34:5, 36:13, 37:19, 39:15, 41:12, 43:1, 48:9, 48:15, 50:15, 51:21, 52:1, 52:15, 53:6, 53:12, 53:15, 53:17, 53:22, 54:9, 62:21, 63:8, 63:23, 64:15, 64:17, 64:19, 65:2, 65:3, 75:2, 79:13
**underlined** [3] - 60:3, 60:5, 61:7
**underlying** [1] - 10:18
**understood** [3] - 5:21, 80:3, 86:22
**undertaken** [1] - 50:14
**unfairly** [2] - 16:25, 41:25
**unit** [2] - 24:20, 40:3
**United** [44] - 4:2, 4:8, 8:10, 13:17, 13:22, 15:2, 15:23, 18:12, 19:7, 20:24, 21:9, 22:8, 22:12, 27:10, 35:24, 37:24, 38:4, 39:14, 42:11, 42:14, 42:21, 47:25, 54:12, 62:4, 65:23, 66:4, 66:5, 66:16, 67:9, 67:19, 70:15, 71:13, 71:15, 71:17, 71:20,

71:24, 73:17, 73:23, 76:24, 77:3, 80:25, 89:12
**UNITED** [5] - 1:1, 1:4, 1:11, 1:15, 1:17
**unlawful** [1] - 51:4
**unpublished** [1] - 15:1
**unredacted** [4] - 6:11, 7:12, 19:2, 29:5
**unsubstantiated** [1] - 11:8
**up** [8] - 14:11, 15:11, 31:14, 58:8, 58:10, 74:7, 82:22, 84:1
**upper** [1] - 49:8
**US** [47] - 6:11, 8:11, 8:12, 8:17, 8:18, 8:19, 8:20, 8:22, 14:24, 20:3, 22:25, 24:21, 24:23, 24:25, 25:7, 26:22, 27:2, 27:4, 28:17, 28:21, 28:24, 35:20, 36:1, 36:3, 36:4, 36:17, 37:16, 37:18, 40:1, 40:4, 40:22, 41:19, 42:19, 43:7, 44:25, 45:5, 45:21, 46:22, 47:3, 47:6, 49:24, 51:4, 51:7, 64:12, 70:11, 77:22, 83:7
**USC** [1] - 64:23

# V

**various** [3] - 26:4, 31:16, 63:19
**verbatim** [1] - 9:7
**verdict** [2] - 82:13, 82:20, 83:15, 83:17, 83:23
**version** [7] - 6:11, 7:12, 7:16, 38:15, 46:8, 46:9, 66:11
**versus** [17] - 4:2, 13:17, 14:14, 15:2, 15:23, 16:14, 16:21, 18:12, 21:6, 21:9, 22:8, 22:12, 37:25, 62:14, 73:23, 76:24, 77:22
**veteran** [1] - 53:23
**vetted** [1] - 62:11
**via** [1] - 26:23
**victim** [1] - 79:3
**victims** [2] - 26:12, 41:5
**viewed** [2] - 11:9,

11:10
**violate** [4] - 19:23, 22:12, 22:15, 69:25
**violation** [7] - 18:17, 21:4, 37:10, 64:2, 64:16, 64:18
**violence** [1] - 64:5
**visa** [2] - 19:16, 40:13
**visas** [1] - 26:4
**visit** [7] - 25:1, 25:8, 28:13, 36:13, 41:23, 44:20, 52:21
**visited** [2] - 37:1, 55:2
**visiting** [1] - 27:3
**visits** [5] - 26:14, 26:15, 42:20, 51:13, 54:9
**vs** [1] - 1:6

# W

**waiver** [5] - 23:9, 42:7, 50:23, 51:2, 51:12
**waivers** [1] - 25:13
**walk** [1] - 64:8
**warning** [1] - 85:4
**warnings** [1] - 84:25
**warrants** [1] - 22:11
**Washington** [14] - 1:19, 9:1, 27:11, 28:16, 35:24, 37:17, 44:21, 44:23, 44:24, 45:6, 45:9, 48:2
**water** [1] - 53:7
**Watergate** [1] - 51:3
**ways** [2] - 88:1, 88:14
**weapon** [1] - 21:12
**Wednesday** [1] - 87:2
**week** [2] - 56:25, 86:4
**weight** [1] - 19:15
**welfare** [5] - 25:1, 26:14, 41:3, 41:10, 42:15
**well-being** [1] - 25:9
**West** [1] - 50:1
**Westlaw** [1] - 15:3
**whatsoever** [1] - 56:5
**whereabouts** [3] - 26:14, 41:3, 52:4
**William** [6] - 22:21, 27:15, 45:25, 48:4, 48:6, 49:3

**willing** [1] - 6:8
**wish** [3] - 43:12,
43:13, 71:2
**wit's** [1] - 87:7
**witness** [27] - 4:18,
5:1, 5:11, 5:14, 5:15,
5:19, 6:5, 6:9, 6:16,
7:6, 9:8, 10:4, 12:17,
18:4, 18:10, 19:4,
20:15, 23:20, 35:6,
35:19, 36:10, 36:21,
38:24, 39:13, 54:12,
55:19, 55:20
**WITNESS** [11] - 24:8,
31:25, 32:19, 32:21,
32:25, 33:20, 33:23,
33:25, 39:16, 44:1,
44:10
**witnessed** [1] - 79:2
**WITNESSES** [2] -
3:4, 3:7
**witnesses** [3] -
16:16, 20:3, 60:19
**WL2011762** [1] -
15:3
**word** [12] - 65:17,
65:20, 65:21, 66:12,
68:1, 68:6, 69:13,
69:25, 70:22, 74:18,
79:22, 86:23
**words** [4] - 16:7,
74:22, 75:8, 79:5
**writing** [3] - 28:23,
47:5, 83:20
**written** [13] - 27:25,
28:3, 28:11, 28:12,
36:9, 36:12, 46:14,
46:17, 62:6, 69:21,
70:3, 71:12, 71:19
**wrote** [1] - 74:15

# Y

**year** [2] - 46:1, 46:2
**years** [8] - 10:19,
40:16, 54:18, 62:2,
64:15, 66:1, 75:2,
79:13
**York** [1] - 1:18
**yourselves** [1] - 56:4
**Youssef** [1] - 50:4

# Z

**Z4418829** [2] - 48:16,
49:11