```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                    CASE NO. 11-20350-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,          Miami, Florida

 5                  Plaintiff,          July 30, 2013

 6          vs.                         10:15 a.m. to 3:45 p.m.

 7   MATTHEW ANDREW CARTER,

 8                  Defendant.          Pages 1 to 108

 9   _____

10                        SENTENCING HEARING
                 BEFORE THE HONORABLE JOAN A. LENARD,
11                  UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14

15   FOR THE GOVERNMENT:       MARIA K. MEDETIS, ESQ.
                               ASSISTANT UNITED STATES ATTORNEY
16                             99 Northeast Fourth Street
                               Miami, Florida 33132
17                                      -and-
                               BONNIE L. KANE, ESQ.
18                             UNITED STATES DEPARTMENT OF JUSTICE
                               1400 New York Avenue, NW
19                             Suite 600
                               Washington, DC 20530
20

21   FOR THE DEFENDANT:        STUART ADELSTEIN, ESQ.
                               ADELSTEIN & MATTERS
22                             2929 Southwest Third Avenue
                               Suite 410
23                             Miami, Florida 33129
                                        -and-
24                             PHILIP R. HOROWITZ, ESQ.
                               9130 South Dadeland Boulevard
25                             Suite 1910
                               Miami, Florida 33156
```

```
 1   FOR US PROBATION:          SHANNON CULBERTSON

 2
     REPORTED BY:               LISA EDWARDS, RDR, CRR
 3                              Official Court Reporter
                                400 North Miami Avenue
 4                              Twelfth Floor
                                Miami, Florida 33128
 5                              (305) 523-5499

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1            THE COURT:  Good morning.  You may be seated.

 2            United States of America versus Matthew Andrew Carter,

 3    Case No. 11-20350.

 4            Good morning, counsel and Probation.  State your

 5    appearances, please, for the record.

 6            MS. MEDETIS:  Good morning, your Honor.  Maria Medetis

 7    and Bonnie Kane on behalf of the United States.  With us at

 8    counsels' table, Special Agents Larko and Flores.

 9            I'd like to also note for the Court that there are four

10    former residents of the Morning Star Center that are here and

11    that would like to address the Court when the Court is inclined

12    to have them do so.

13            THE COURT:  Good morning.

14            MR. ADELSTEIN:  Good morning, your Honor.  Stuart

15    Adelstein, Phil Horowitz on behalf of Mr. Carter, who is

16    present at counsel table, along with our investigator, Reginald

17    Hope.

18            THE COURT:  Good morning.

19            MR. ADELSTEIN:  Good morning.

20            THE PROBATION OFFICER:  Good morning, your Honor.

21    Shannon Culbertson on behalf of the Probation Department.

22            THE COURT:  Good morning.

23            Mr. Carter is set for sentencing today.

24            Mr. Carter, have you read the revised advisory

25    presentence investigation report and its addendums?

1          THE DEFENDANT:  Ma'am, I have the report.  I was

2     presented with the report last Friday.  Unfortunately, I

3     haven't had time to go over the full report.  And --

4          THE COURT:  So we'll take a break now so you can review

5     the report and so you can discuss it with your lawyers.

6          We'll be in recess for 20 minutes.

7          (Thereupon a recess was taken from 10:19 a.m. to 10:48

8        a.m., after which the following proceedings were had:)

9          THE COURT:  You may be seated.

10          We're back on United States of America versus Matthew

11     Andrew Carter, Case No. 11-20350.

12          Counsel, state your appearances, please, for the

13     record, as well as Probation.

14          MS. MEDETIS:  Yes.  Good morning, your Honor.  Maria

15     Medetis and Bonnie Kane for the United States, with Special

16     Agents Larko and Flores with Homeland Security Investigations

17     with us at counsels' table today.

18          MR. HOROWITZ:  Good morning, your Honor.  Phil

19     Horowitz, Stu Adelstein on behalf of Matthew Carter, who is

20     present before the Court.  Seated at counsel table is Reginald

21     Hope.

22          THE PROBATION OFFICER:  Good morning, your Honor.

23     Shannon Culbertson on behalf of the Probation Department.

24          THE COURT:  Good morning to everyone again.

25          Mr. Carter, have you now read the revised advisory

5

```
1    presentence investigation report?

2           THE DEFENDANT:  I have gone through some of it with the

3    attorneys, yes, ma'am.

4           THE COURT:  Have you read it?

5           THE DEFENDANT:  I have not read it in full.  I went

6    over a few of the details with my attorneys.

7           THE COURT:  Did you read the original report?

8           THE DEFENDANT:  I'm sorry, ma'am?

9           THE COURT:  Did you read the original advisory

10   presentence investigation report?

11          THE DEFENDANT:  The original one?  Yes, ma'am.

12          THE COURT:  And you've now reviewed the revised

13   advisory presentence investigation report with your attorneys?

14          THE DEFENDANT:  Yes.  However, I do not want to waive

15   my right under Rule 32(g) that I was not given ample time to

16   consult with the lawyers on a --

17          THE COURT:  This is what we're going to do, Mr. Carter,

18   because we're going forward with sentencing.  We are going to

19   accomplish sentencing this week, I assure you.

20          So we are going to now take a break for an hour.

21          Mr. Adelstein --

22          MR. ADELSTEIN:  Yes, ma'am.

23          THE COURT:  -- you are ordered to make sure that your

24   client reads the advisory presentence investigation report in

25   its entirety.
```

6

1          Mr. Carter, you are ordered to read the advisory

2   presentence investigation report in its entirety.

3          And Mr. Adelstein, you and Mr. Horowitz are to discuss

4   the revised advisory presentence investigation report with

5   Mr. Carter.

6          MR. ADELSTEIN:  May I respond just briefly, your Honor?

7          THE COURT:  Yes.

8          MR. ADELSTEIN:  Just so the Court knows, we did in fact

9   go -- we received the original PSI on June 23rd.  We reviewed

10   the original PSI on June 26th with Mr. Carter.  On July 23rd,

11   we received the revised PSI.

12          And we received on July 25 the victim impact

13   statements.  We gave the revised PSI to Mr. Carter on July 26th

14   and met with him yesterday.

15          THE COURT:  Did you discuss in total with him the

16   revised advisory presentence investigation report?

17          MR. ADELSTEIN:  We discussed the revised PSI and went

18   over some of the victim impact statements, the 45 that we

19   received on July 25th.

20          I would because of this, your Honor, again renew our

21   unopposed motion to continue the sentencing.

22          THE COURT:  I'm not continuing the sentencing.

23          MR. ADELSTEIN:  I understand.

24          THE COURT:  Let me tell you what the schedule is going

25   to be, okay?

```
 1              MR. ADELSTEIN:  Yes, ma'am.

 2              THE COURT:  I am available today until approximately

 3    3:15.  If we don't finish today, we will continue tomorrow.

 4              MR. ADELSTEIN:  Yes, ma'am.

 5              THE COURT:  If we don't finish tomorrow, we will

 6    continue on Thursday.

 7              MR. ADELSTEIN:  Yes, ma'am.

 8              THE COURT:  So I want to make sure that everybody's

 9    schedules are clear, because this sentencing will be completed

10    this week.

11              MR. ADELSTEIN:  Yes, ma'am.

12              THE COURT:  We're in recess for an hour.

13              You have my instructions, Mr. Adelstein.

14              MR. ADELSTEIN:  Yes, your Honor.

15              Judge, may we have the courtroom?

16              THE COURT:  Yes.  You may absolutely have the courtroom

17    with the Defendant.

18              MR. ADELSTEIN:  And may we ask the other occupants to

19    leave the courtroom?

20              THE COURT:  Yes.  The courtroom will be cleared except

21    for Mr. Adelstein and Mr. Horowitz, Mr. Carter and security --

22              MR. ADELSTEIN:  We understand.

23              THE COURT:  -- the marshals.

24              MS. MEDETIS:  Yes, Judge.

25              THE COURT:  And all the microphones are off,
```

8

1    Mr. Adelstein.

2         MR. ADELSTEIN:  Thank you, your Honor.

3         MR. HOROWITZ:  Thank you, Judge.

4      (Thereupon a recess was taken from 10:53 a.m. to 12:07

5      p.m., after which the following proceedings were had:)

6         THE COURT:  You may be seated.

7         United States of America versus Matthew Andrew Carter,

8    Case No. 11-20350.

9         Good afternoon, counsel.  State your appearances,

10   please, for the record.

11        MS. MEDETIS:  Yes.  Good afternoon, your Honor.  Maria

12   Medetis and Bonnie Kane on behalf of the United States.  With

13   us at counsels' table, Special Agents Larko and Flores with

14   Homeland Security Investigations.

15        MR. ADELSTEIN:  And good afternoon again, your Honor.

16   Stuart Adelstein and Phil Horowitz on behalf of Mr. Carter, who

17   is presently in the courtroom, along with our investigator,

18   Reginald Hope.

19        Yes.  We have gone over the --

20        THE COURT:  I'm going to ask you some questions.  Just

21   let me have Probation state their appearance.

22        THE PROBATION OFFICER:  Good afternoon, your Honor.

23   Shannon Culbertson on behalf of the Probation Department.

24        THE COURT:  Mr. Adelstein --

25        MR. ADELSTEIN:  Yes, ma'am.

1          THE COURT:  -- have you read the revised advisory

2    presentence investigation report?

3          MR. ADELSTEIN:  Yes.

4          THE COURT:  And has Mr. Horowitz read the revised

5    advisory presentence investigation report?

6          MR. ADELSTEIN:  I have, your Honor.

7          THE COURT:  And has Mr. Carter read the revised

8    advisory presentence investigation report?

9          MR. ADELSTEIN:  Yes.

10         THE COURT:  And have you and Mr. Horowitz discussed

11   with Mr. Carter the revised advisory presentence investigation

12   report?

13         MR. ADELSTEIN:  Yes.  Pursuant to your Honor's

14   instructions, we went page by page, paragraph by paragraph,

15   again, with Mr. Carter.

16         THE COURT:  Pursuant to Rule 32(I)(1)(a), based upon

17   the representations made by Mr. Adelstein as well as the almost

18   hour and a half, a little less than an hour and a half, that

19   was specifically given to defense counsel and Mr. Carter, I

20   find that the Defendant has read the revised advisory

21   presentence investigation report.  His attorneys have read the

22   revised advisory presentence investigation report.  And

23   Mr. Carter and his attorneys have discussed the revised

24   advisory presentence investigation report.

25         And I cite as authority *United States versus*

1   *Gaona-Ibarrola*, G-A-O-N-A-I-B-A-R-R-O-L-A, 416 F.Appendix 14, a

2   2011 decision by the Eleventh Circuit; *United States versus*

3   *Phillips*, 936 F.2d 1252, a 1991 decision by the Eleventh

4   Circuit, at 1255 -- and *Gaona-Ibarrola* is at 17 -- and *United*

5   *States versus Martinez*, 322 F.Appendix 684, a 2009 decision by

6   the Eleventh Circuit, at 686-687.

7           So pursuant to the Federal Rule of Criminal Procedure

8   32, I have now verified that the Defendant has read the revised

9   advisory presentence investigation report, and we can now

10  continue with the sentencing hearing.

11          MS. MEDETIS:  Your Honor, if I may seek to clarify one

12  point to avoid any issues collaterally later:  That portion of

13  Rule 32 contemplates also that the Defendant has reviewed any

14  addendum to the PSI.  Does your Honor when you refer -- when

15  your Honor refers to the revised PSI include in that the

16  addendum or would your Honor be willing to inquire about that?

17          THE COURT:  Mr. Adelstein, have you read the addendum

18  to the revised advisory presentence investigation report?

19          MR. ADELSTEIN:  Yes.  Both I and Mr. Horowitz have read

20  it, and we have discussed it with our client.

21          THE COURT:  And did Mr. Carter read the addendum to the

22  revised advisory presentence investigation report?

23          MR. ADELSTEIN:  A copy was provided to him on the 26th.

24          THE COURT:  During the time period that I just gave

25  you, did he read the addendum to the revised advisory

```
1   presentence investigation report?

2          MR. ADELSTEIN:  We did not read it paragraph by

3   paragraph.  It's my understanding that he had reviewed that

4   portion and we had discussed the corrections that were made by

5   Probation on that.

6          THE COURT:  So based upon your discussions with him,

7   you determined that he had read the addendum to the revised

8   advisory presentence investigation report?

9          MR. ADELSTEIN:  Yes, ma'am.

10         THE COURT:  Anything further, Ms. Medetis?

11         MS. MEDETIS:  Not on this issue, your Honor.

12         THE COURT:  Based upon the representations by counsel,

13  I find pursuant to Rule 32 that the Defendant has also read the

14  addendum to the revised advisory presentence investigation

15  report.

16         So the Defendant filed objections to the original

17  report.  And some of those objections the Government agreed to,

18  some of the factual objections and the placement of some of the

19  information in the original report.

20         MS. MEDETIS:  Yes, Judge.

21         THE COURT:  Are there objections that have now survived

22  and you still wish to go forward with based upon the revised

23  advisory presentence investigation report?

24         MR. ADELSTEIN:  Yes.  There are some.

25         THE COURT:  You may be heard.
```

1          MR. ADELSTEIN:  Thank you, your Honor.

2          MR. HOROWITZ:  Judge, if I may, it may be easier if we

3    go through any objections specifically at Page 2, Docket Entry

4    291.  I have made notations as to which ones are resolved and

5    which ones are not resolved.

6          THE COURT:  Okay.

7          MR. HOROWITZ:  I have them listed alphabetically.

8    Letter A and Letter B have been resolved.

9          I think Letter C remains pending, in that we're

10   requesting that the word "orphanage" be removed, as Mr. Carter

11   only represented Morning Star as a center and never an

12   orphanage.  Obviously, that doesn't affect the guideline

13   calculations in this case.

14         If the Court is inclined to remove them, that would be

15   acceptable.  If not, if we could put the language in there that

16   Mr. Carter did never refer to the center as an orphanage, that

17   would be acceptable as well.

18         THE COURT:  What's the Government's position?

19         MS. MEDETIS:  Your Honor, we would reiterate our

20   position found on Page 6 of Docket Entry 292, which is the

21   Government's response to the Defendant's objections.

22         The PSI reads as follows:  that the -- essentially,

23   that the Morning Star Center was often referred to as an

24   orphanage, not that it was in fact an orphanage.  In our

25   response to the objections, we noted there was testimony during

13

1     the trial to support that part of the PSI as it reads.

2          And in fact, it's pretty clear in the PSI where it

3     states, "Although the center was commonly referred to as an

4     orphanage by those familiar with Carter and the center, many of

5     the children were not orphans."  And so we would continue to --

6          THE COURT:  That paragraph also states, "The center was

7     a residential facility that provided shelter, food, toys, money

8     and schooling to Haitian minors and young adults whose families

9     could not afford to care for them."

10         It seems to me that that's the definition of what the

11    Morning Star Center was.  And then it has -- that paragraph

12    then has the caveat that it was commonly referred to as an

13    orphanage by those familiar with Carter and the center.  Many

14    of the children were not orphans.

15         I don't believe that it refers to it as an orphanage.

16    It details what the center was.  It was a residential facility.

17         MR. HOROWITZ:  And I agree with the Court.  That first

18    portion of that paragraph describes to a T what Morning Star

19    Center was.  The references to orphanage is more along the

20    lines of surplusage than anything else, because it was never

21    held out to be nor represented to be an orphanage.

22         THE COURT:  I'm well aware of what the center was and

23    was not.  And I find that Paragraph 4 accurately reflects the

24    testimony at trial.  And the center was a residential facility;

25    it was not an orphanage.  Most of the children who were there

1   were not orphans.  There may have been some who were living

2   with aunts or uncles or were orphans, but many of them and the

3   majority of them were not.  So I find that this paragraph

4   correctly reflects the testimony at trial.  So the objection is

5   it denied.

6          MR. HOROWITZ:  Judge, in Paragraph D on Page 2, I

7   objected to Paragraphs 7, 8, 9 and 15, and request that they be

8   removed, as there was no testimony from those purported

9   victims.

10          Judge, I do understand the concept of, you know,

11   reasonable foreseeability as far as this case is concerned.

12   And I know that the PSI has in its revisions added additional

13   victims, which I think this is -- contains; and we're not

14   objecting to the additional victims portion of the PSI.

15          THE COURT:  What's the Government's position as to

16   this?

17          MS. MEDETIS:  Your Honor, the Government's position is

18   that this is all part of the offense conduct as well as the

19   history and characteristics of the Defendant.  We would state

20   that whatever occurred beginning in 1995 with the opening of

21   the center through 2001 was preparation for whatever crimes

22   were committed during the charging period.

23          And that is under the sentencing guidelines, the

24   section of which I will get in a second, the definition of

25   relevant conduct, which is what is to be included in the PSI.

1    So we would argue as to these individuals, Paragraphs

2  7, 8, 9 and 15 of the original PSI, which is referring to S.A.,

3  M.J.E., J.F. and J.J.D., those paragraph numbers are identical

4  in the revised PSI, that they should remain in there as part of

5  the relevant conduct of this offense.

6    MR. HOROWITZ:  Your Honor, briefly, in response, the

7  way the PSI was constructed -- I should say the revised PSI --

8  we have a section that says "additional victims who did not

9  testify."

10    And I think that they'd better belong within that

11  section as opposed to -- as opposed to the --

12    THE COURT:  Where is that in the revised report?

13    MR. HOROWITZ:  Paragraph 63, which is on Page 20.

14    THE COURT:  Does the Government have an objection to

15  moving these paragraphs of victims who did not testify to the

16  section of "additional victims who did not testify," which is

17  still relevant conduct for purposes of the report?

18    MS. MEDETIS:  We would object, your Honor, only because

19  among the victims contemplated in the paragraphs are victims

20  who did in fact testify, both J.F. and J.J.D.

21    THE COURT:  They both testified?

22    MS. MEDETIS:  You know what, your Honor?  I'm sorry.

23  I'm confusing the paragraphs between the revised and the

24  original.  I would like to go back.

25    Paragraph 7, 8, 9 and 15 of the original PSI --

16

```
 1            THE COURT:  I don't want to deal with the original PSI.
 2   We're dealing with the revised.  That's the report that we're
 3   dealing with.
 4            MS. MEDETIS:  The probation officer has told me that
 5   the original objections to Paragraphs 7, 8, 9 and 15 are now
 6   reflected in Paragraphs --
 7            THE PROBATION OFFICER:  7, 8, 26 and 119.
 8            MS. MEDETIS:  -- of the revised PSI.
 9            THE COURT:  7, 8, 26.  What was the last one?
10            THE PROBATION OFFICER:  119.
11            THE COURT:  And 119.
12            MS. MEDETIS:  And Paragraph 72, your Honor.
13            THE COURT:  So 119 is in uncharged conduct.  Correct?
14            MR. HOROWITZ:  The one that's in 119 is in its proper
15   place.
16            THE COURT:  Okay.
17            MS. MEDETIS:  As far as that is concerned, we would
18   object.
19            THE COURT:  Paragraphs 7 and 8:  These victims did not
20   testify.  Correct?
21            MS. MEDETIS:  That's correct.  However, we would ask
22   that there not be a distinction made, and that title above
23   Paragraph 63 in the PSI be deleted.  It's all in the
24   Government's view offense conduct relating to the Morning Star
25   Center and the abuse that occurred beginning in 1995, and that
```

```
 1    no distinction be made between testifying and nontestifying

 2    victims.  It's all part and parcel of the relevant conduct as

 3    defined in the sentencing guidelines, Section 1B1.3.

 4         THE COURT:  Are you contesting that this is relevant

 5    conduct?

 6         MR. HOROWITZ:  Judge, we're not contesting that it's

 7    relevant conduct.  We just would ask that it be left in the

 8    place where it is, where we have a number of victims where

 9    we're getting not just portions within the PSI, but we're

10    getting victim impact letters of ones that did not testify.

11    And I think I want to try to keep it where it is, separated

12    from those that did testify and those that did not testify.

13    That's the way the PSI has been structured.  And I think if we

14    have -- in offense conduct, if we have just a couple of

15    paragraphs of victims that did not testify, it should go into

16    the proper category.

17         MS. MEDETIS:  Judge, we agree there are certain people

18    in the beginning portion of the offense conduct included there

19    who did not testify.  But the solution in the Government's view

20    is to delete the heading above Paragraph 63 and not make that

21    distinction or division as to who testified and who didn't.

22    It's all relevant conduct, in the Government's view.

23         THE COURT:  Well, the Defendant agrees it's all

24    relevant conduct.  I think this is really an argument without

25    much purpose.  It doesn't affect the guideline range.  It's
```

1    relevant conduct pursuant to 1B1.3.

2         Many of these persons who are listed in -- additional

3    victims who did not testify were certainly mentioned at the

4    trial and discussed, and events concerning them were discussed.

5         So I'm going to strike on Page 20 "additional victims

6    who did not testify" and deny the Defendant's request that

7    those paragraphs be moved, as all of those identified victims

8    as the Defendant has stipulated are relevant conduct pursuant

9    to the advisory guidelines.

10        Go ahead, Mr. Horowitz.

11        MR. HOROWITZ:  Your Honor, in Paragraph E on Page 2, I

12   talk about Paragraphs 30 through 65.  In the revised PSI, they

13   have been renumbered Paragraphs 82 to 119 and they commence at

14   Page 24.  And they continue through and including the top of

15   Page 33.  It's under the heading of Uncharged Conduct.

16        And I have moved both individually and collectively to

17   strike that entire section.

18        What's contained in the uncharged conduct is the

19   404(b), 413 and 414-type evidence.  Judge, I have had many

20   trials and many cases where 404(b)-type of evidence was

21   included during the Government's submission.  It comes in not

22   for the truth of the matter asserted, and it comes in with a

23   limiting instruction.

24        In this case, this type -- this evidence, some of which

25   was heard and some of which was not heard, came in with a

1 cautionary instruction to the jury. And in my submission, I

2 repeated the cautionary instruction that this Court gave.

3     I don't think I've ever seen a case where there's been

4 404(b) evidence that came back out in a PSI that wasn't

5 relevant conduct. None of this is relevant conduct to the

6 charge at hand.

7     It talks about the British witnesses that we heard from

8 the 1970s, the events in Egypt, the events in Winter Haven.

9 Some of it is repeated within the criminal history, where

10 Mr. Carter was arrested and acquitted of the conduct. And it

11 is properly placed into that section of the presentence

12 investigation report. But uncharged conduct? Some of this

13 conduct was charged, and it's in the criminal history portion

14 of the PSI. Others were not charged, and it has no place

15 within a PSI because it couldn't have been charged.

16     So what we have here is events from the 1970s and 1980s

17 and the early even 1990s that has no place within the

18 presentence investigation report under this category, which I

19 have never seen in another PSI. Some of the conduct could

20 never have been charged and came in on a very limited basis to

21 the jury with a limiting instruction.

22     MS. KANE: Your Honor, may we be heard regarding this?

23     THE COURT: Yes.

24     MS. KANE: Pursuant to Rule 32 of the Rules of Criminal

25 Procedure, Subsection 2, the presentence investigation report

```
 1   must also contain the following information:  the Defendant's

 2   history and characteristics.

 3         This information is contained in the PSI as required by

 4   the Rules of Criminal Procedure.

 5         In addition, this information is included in the PSI to

 6   support the repeat and dangerous sex offender enhancement,

 7   which is at 4B1.5.  In addition, the United States would

 8   incorporate by reference all the arguments that we made in our

 9   response.

10         In short, this is information that is relevant to the

11   Defendant's history; and it supports a sentencing enhancement

12   that has been placed by Probation in this case.

13         MR. HOROWITZ:  Judge, I would object under 4B1.5

14   because under 4B1.5, the enhancement, if the Defendant engaged

15   in a pattern of activity involving prohibited sexual conduct on

16   at least two separate occasions, under 4B1.5, the Court can

17   find that five-level increase.

18         I have objected to it under double-counting issues

19   only, but not under the fact that it was factually applicable

20   to Mr. Carter's situation.

21         The guidelines say two separate occasions.  I think

22   without this section, the Court can find the two separate

23   occasions or more that are required under the guidelines.

24         But under that guise of going back to the 1970s and

25   1980s and 1990s for conduct that was acquitted, conduct that
```

1    couldn't be charged in this day and age, it's inappropriate to

2    include that type of activity in the advisory presentence

3    investigation report.

4         THE COURT:  I'm going to grant the objection by the

5    Defendant as to Paragraphs 82 to 118.  119 is relevant conduct

6    under 1B1.3 as to the center.

7         And the objection is granted as follows:  This

8    information as far as -- if it relates to the other criminal

9    conduct on Page 43 of the revised report, that section can be

10   supplemented.  And I believe there were charges in England for

11   which he was acquitted.  That should be included in "other

12   criminal conduct."  So it should be moved to "other criminal

13   conduct" for which there were arrests if in fact that is true.

14   It's at least true for Paragraphs 82 and 83 and any other

15   charges.  It should be moved to "other criminal conduct."

16        That is not to say and I am not ruling on whether the

17   Court can consider the testimony of the other conduct that was

18   presented pursuant to 413 and 414.  I'll hear from the parties

19   as to whether or not that can be considered under 3553(a),

20   history and characteristics of the Defendant, as the Court

21   actually heard that testimony at trial.

22        But it should not be included as part of the relevant

23   conduct of the offenses of conviction under 1B1.3.

24        Yes.

25        MR. HOROWITZ:  Your Honor, based on your Honor's

1    ruling, the paragraphs starting on Page 4 of my objections,

2    Paragraphs F, G, H, I, J and K have now been resolved.

3         THE COURT:  Okay.

4         MR. HOROWITZ:  Paragraph L has been resolved with the

5    probation officer in the revised advisory presentence

6    investigation report.

7         THE COURT:  What about I?

8         MR. HOROWITZ:  I think I is also taken care of.  I

9    think it's within the -- all those paragraphs were within the

10   uncharged conduct section.

11        THE COURT:  So I, J, K and L are all resolved?

12        MR. HOROWITZ:  Correct.  M is now pending on the bottom

13   of Page 5.  I just want to double-check to see if it's still

14   Paragraph 174.

15        THE COURT:  I don't know that I need to rule on that.

16   I don't find that it's anything that I would --

17        MR. HOROWITZ:  Judge --

18        THE COURT:  -- I would be concerned about in terms of

19   an appropriate sentence.

20        MR. HOROWITZ:  -- I'm concerned, because Mr. Carter's

21   obviously going to need medical treatment down the road.  And I

22   just don't want the PSI to reflect that he refused medical

23   treatment.

24        If we can supplement the PSI in that section and say,

25   "Mr. Carter denies that he refused medical treatment," that

```
 1    would be --
 2            THE COURT:  Any objection to that?
 3            MS. MEDETIS:  Your Honor, I'm sorry.  Could you repeat
 4    that?
 5            MR. HOROWITZ:  On Paragraph M of the objections
 6    regarding refusal of medical treatment, just if we can add a
 7    sentence that Mr. Carter denies refusing medical treatment.
 8            MS. MEDETIS:  Your Honor, we took no position on this.
 9    And --
10            THE COURT:  That's fine.  We can add that sentence.
11            MR. HOROWITZ:  Thank you, Judge.
12            And Paragraph N in the middle of Page 6 has been
13    resolved.
14            Judge, if I may, in our meeting with Mr. Carter earlier
15    this morning, I raised additional factual objections, if I may
16    go through them.
17            MS. MEDETIS:  Judge, before we move on, may the
18    Government clarify which of the Paragraphs 82 through 118 are
19    being stricken from the PSI?  It's the Government's
20    understanding that Paragraphs 82 and 83 are going to be moved
21    to "other criminal conduct" --
22            THE COURT:  Yes.
23            MS. MEDETIS:  -- and to supplement the other criminal
24    conduct; and that 84, Paragraphs 84 through 118, are now being
25    stricken from the PSI?
```

24

1          THE COURT:  There were no other charges from that

2    occurrence with the three brothers.  Correct?  Did charges

3    arise from that?

4          MS. MEDETIS:  No, your Honor.

5          THE COURT:  So they would not be included.  And what I

6    did indicate was that I haven't determined whether or not it

7    would preclude me from considering that testimony at trial

8    pursuant to 413 and 414 that was presented, as that was

9    testimony that was presented to the Court.  I'll allow the

10   parties to argue whether or not I should consider that as part

11   of history and characteristics of the Defendant.

12         MS. MEDETIS:  And then with respect to Paragraphs 115

13   through 118, because those relate to other criminal conduct

14   regarding the charges in Winter Haven, Florida, would those

15   therefore also be moved to "other criminal conduct"?

16         THE COURT:  Yes.  Winter Haven resulted in charges

17   brought against Mr. Carter.  And so those -- thank you for

18   clarifying that -- those paragraphs concerning Winter Haven and

19   Polk County in 118 would be removed.

20         So in essence, the three brothers in England who

21   testified at trial regarding the abuse that happened to them in

22   the project, who lived in the housing project and were

23   befriended by Mr. Carter, would be stricken from the report.

24         MR. HOROWITZ:  Just so the Court's aware, all those

25   incidences mentioned by the Court are already in other criminal

1    conduct.

2         THE COURT:  Right.

3         What I am allowing the probation officer to do is

4    supplement what's in the report with provisions in the -- those

5    paragraphs that relate to it in a modification of the report,

6    since she may have omitted some things in the other offense

7    conduct because it was contained in the uncharged conduct.  And

8    now that I am striking that, she may supplement information in

9    that report.

10         You're not contesting any of the facts that are

11    contained in the uncharged conduct; it's just the placement?

12         MR. HOROWITZ:  Yes, your Honor.

13         THE COURT:  Except for the three brothers.

14         MS. KANE:  I apologize, your Honor.  We're still

15    slightly confused.

16         So certain paragraphs are being struck from the PSI

17    entirely?

18         THE COURT:  Yes.  Paragraphs -- I believe that

19    Paragraphs 84, 85 and 86 and 87 and 88 were the subject of

20    charges in England at the Blackshaw home.

21         MR. HOROWITZ:  No.

22         THE COURT:  They were not?

23         MS. MEDETIS:  They were not, Judge.

24         THE COURT:  So those paragraphs would be struck.

25         And Paragraphs 90, 91, 92, 93 concerning the Crystal

1    Palace, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105,

2    106, 107.

3            108, 109, 110, 111 remain in the report, as that I find

4    is part of the relevant conduct concerning the Defendant's

5    activities in Haiti.

6            What was the starting date of the indictment?

7            MS. KANE:  2001, your Honor.

8            THE COURT:  So Paragraphs 108, 109, 110 would be

9    struck.  111 would be struck.  112 would be struck.  113 would

10   be struck.  114 would be struck.  115 is moved to other

11   criminal conduct.  116, 117 and 118 is moved to other criminal

12   conduct.  And 119 remains in offense conduct.

13           MS. KANE:  Your Honor, may I ask one question?

14           To the extent the Court determines that the conduct

15   involving the M's in some of the other paragraphs have been

16   struck, to the extent the Court determines that that

17   information is relevant to the Defendant's history and

18   characteristics pursuant to 3553, would these paragraphs then

19   be added back to the PSI pursuant to Rule 32?  Because I guess

20   we're a bit confused, because Rule 32 requires the PSI to

21   include the Defendant's history and characteristics; and if

22   this information is relevant to that....

23           Specifically, your Honor, I'm referring to Rule

24   32(1)(d)(2).  Excuse me, your Honor.  32(d)(2).

25           THE COURT:  What is the defense position?

```
 1              MR. HOROWITZ:  Your Honor, the Government is lumping

 2    this into the Defendant's history and characteristics, when it

 3    was admitted and presented to this Court not for the truth of

 4    the matter asserted.  We had witnesses that testified about

 5    events 40 years ago, some of which were subject to

 6    cross-examination and some of which that are in the presentence

 7    investigation report are not.

 8              For example, some of the witnesses as to the early

 9    1980s were not subject to cross-examination.

10              THE COURT:  I'm sorry?

11              MR. HOROWITZ:  Some of the witnesses regarding events

12    in the early 1980s were not called by the Government.

13              The admission was on a very limited purpose.  The

14    history and characteristics of the Defendant are contained

15    within his personal history and his personal characteristics

16    that are within the -- that are in the PSI beginning at Page

17    46, Part C, offender characteristics.

18              THE COURT:  Well, 413 and 414 are much broader than

19    404(b).

20              MR. HOROWITZ:  Oh, absolutely, Judge.

21              THE COURT:  It's any matter which is relevant.

22              MR. HOROWITZ:  Yes, it is.

23              However, that has no place within the presentence

24    investigation report.  We'd object to it being considered as

25    part of the sentence being imposed by this Court.
```

1        I haven't done the research on it, and I wanted the

2    opportunity to do so.  But as far as its placement within the

3    presentence investigation report, the Defendant should be

4    punished for what he was convicted of.

5        THE COURT:  What is your response to the Government's

6    position that under Rule 32(d)(2) -- (d) is the presentence

7    report and (2) is additional information which states, "The

8    presentence report must also contain the following:  the

9    Defendant's history and characteristics, including, one, any

10   prior criminal record; two, the Defendant's financial

11   condition; and, three, any circumstances affecting the

12   Defendant's behavior that may be helpful in imposing sentence

13   or correctional treatment."

14       MR. HOROWITZ:  Judge, as far as his history and

15   characteristics, they're contained in the PSI beginning on

16   Paragraph 205.  His personal history and personal

17   characteristics.

18       As far as charged and uncharged criminal conduct, that

19   is also contained within the presentence investigation report.

20       THE COURT:  Well --

21       MR. HOROWITZ:  In the --

22       THE COURT:  -- other charged conduct is.

23       MR. HOROWITZ:  Charged conduct as well as -- yeah.

24   Pretty much, it is charged conduct that's contained.

25       The Government views this as uncharged conduct.  Some

```
 1   of these charges were never brought, never could have been
 2   brought and cannot be brought.  But the Government seeks to
 3   increase Mr. Carter's sentence or his exposure by arguing
 4   things that happened that were never charged that may or may
 5   not have happened, that we had witnesses testifying, that a
 6   jury did not make a finding of guilt or not guilt as to some of
 7   these events.
 8            THE COURT:  Well, none of this testimony affects the
 9   guideline calculation.  Correct?
10            MR. HOROWITZ:  Absolutely correct, Judge.  None of this
11   affects the guidelines.
12            And specifically, the Government is going to make a
13   sentencing presentation to this Court; and in their sentencing
14   memorandum, they've pretty much told this Court exactly what
15   they're going to ask for.  They're free to ask for what the
16   Government believes to be the appropriate sentence in this
17   case.
18            This presentence investigation report will follow
19   Mr. Carter to whatever institutions he goes to.  That portion
20   of the presentence investigation report has no relevance
21   towards that.
22            What Mr. Carter's being punished for is what he was
23   convicted of.  And I think we should keep it focused at that
24   and -- by taking this out.  The Government has a right to bring
25   up to this Court for sentencing what they believe to be
```

 1   appropriate.  This has no reason to be in the presentence

 2   investigation report.

 3           THE COURT:  I'm going to think about it.

 4           MS. MEDETIS:  Your Honor, may I supplement with case

 5   law that addresses this point?

 6           THE COURT:  Yes.  That would be helpful.  Both sides

 7   can supplement with case law.

 8           MS. MEDETIS:  I have that now, your Honor.  At Page 8

 9   of the Government's response to the Defendant's objection,

10   Docket Entry 292, I want to address a few things.

11           These paragraphs that are at issue right now are a full

12   and detailed account of the Defendant's history and

13   characteristics as a pedophile.  And that's why we're here

14   today, because that is the offense for which he is convicted.

15           The fact that Mr. Horowitz in his objections did not

16   produce case law in support of his position to excise these

17   paragraphs from the PSI is because the case law in the Eleventh

18   Circuit is to the contrary.

19           And so whatever representation that he did not have an

20   opportunity to research this when he filed this objection to

21   the PSI, perhaps that would have been the time.  But I want to

22   note that there is no case law to support this position of

23   excising --

24           THE COURT:  What's your case, please?

25           MS. MEDETIS:  In addition to Rule 32, which we cited,

31

1    your Honor, I want to cite to --

2          THE COURT:  What page is it in 292, please?

3          MS. MEDETIS:  At 8, Page 8.  There is a block quote and

4    it is from *United States versus Hall*, 456 F.Appendix 873, at

5    874-75.  It's an Eleventh Circuit opinion from 2012.  "The

6    chief purpose of the PSI is to help the district court meet the

7    sentencing objectives set forth in 3553."

8          And *Hall* quotes *United States versus Gomez*, 323 F.3d

9    1305 at 1309, Eleventh Circuit, 2003.

10         The point here, your Honor, is that there is no

11   limitation to what may be put into the PSI.  The PSI is not

12   solely for calculating the guidelines.  The PSI is to aid the

13   Court in fashioning a sentence both in calculating the

14   guidelines and under 3553.

15         And in that regard, I would also cite to what *Hall*

16   cites, 18 USC, Section 3661, which states, "No limitation shall

17   be placed on the information concerning the background,

18   character and conduct of a person convicted of events for the

19   purpose of imposing an appropriate sentence."

20         The authority on this issue is clear.  In conjunction

21   with Rule 32, which requires the history and characteristics of

22   the Defendant, as unflattering as they might be or as

23   flattering as they might be, they are required to be in the

24   PSI.  Moreover, the PSI is not limited to what may or may not

25   have been introduced at trial.  The PSI is not limited to

32

1    whether the Defendant had an opportunity to cross-examine

2    somebody, as the confrontation clause does not apply to

3    sentencing proceedings, nor do the Rules of Evidence apply to

4    sentencing proceedings.

5        And the important point here is that there is no

6    limitation on what can be put in the PSI.  There is no case law

7    to suggest there is any limitation, which is why the defense

8    has not presented such case law.

9        The overwhelming authority is clear on this point, that

10   those paragraphs should not be deleted from the PSI and should

11   be considered by the Court in fashioning the appropriate

12   sentence under 3553.  The Government agrees:  Those paragraphs

13   aren't there to help calculate the guidelines.

14        MR. HOROWITZ:  Judge, if I may, the *Hall* case involves

15   an issue for the first time on appeal, where the Defendant

16   objected on appeal and it was reviewed under a plain-error

17   standard to other criminal conduct in charges that were

18   dismissed or dropped in his presentence investigation report.

19   That has absolutely nothing to do with what is before your

20   Honor.

21        We do not contest what is in the "other criminal

22   conduct" portion of Mr. Carter's presentence report.  We do not

23   contest the additional victims that did not testify at trial

24   that is to be considered as relevant conduct within the

25   framework of the advisory sentencing guidelines.

33

1          What we are contesting is not encompassed by the case

2    law that the Government cites; specifically, the *Hall* case.

3    The *Hall* case says it was -- first of all, it was not objected

4    to in the district court.  It was reviewed on a plain-error

5    standard.  Additionally, it was conduct for which the Defendant

6    had been arrested and had either been *nolle pros'ed* or

7    acquitted.  We have that in this case.  We're not contesting

8    it.

9          So the Government's case law that they cite has nothing

10   to do with the situation before this Court.

11         THE COURT:  I'm going to review the case law and think

12   about it.  It may be that perhaps if, in fact, I find that

13   these paragraphs pursuant to Rule 32 may be included or must be

14   included pursuant to Rule 32 that they be moved to the

15   Defendant's characteristics.  But I want to read the case law

16   first.

17         Yes, Mr. Horowitz.

18         MR. HOROWITZ:  Judge, based on our conversation with

19   Mr. Carter both in the courtroom and at the marshals' lockup,

20   there are a couple of additional factual objections that he

21   wishes that we raise.

22         The first one is as to Paragraph 11 of the revised PSI,

23   which is at Page 8.

24         In the middle of this paragraph, it starts -- I think

25   it's four lines down towards the far right side.  It states,

1    "Shortly after Carter joined Lifeline, he was fired.  And then

2    in approximately 1995, Carter started the Morning Star Center."

3         Mr. Carter has requested that that paragraph be

4    supplemented to say that he denies being fired from the -- from

5    Lifeline.  So I'm requesting that to be added on his behalf.

6         Just so the Court's aware, none of these affect the

7    guideline range.  But when we went through this with

8    Mr. Carter, he requested these changes made.

9         THE COURT:  Any objection?

10        MS. MEDETIS:  Your Honor, we're prepared to present

11   testimony that he was in fact fired.  The agents that are

12   present can testify that they interviewed his former boss.

13        THE COURT:  This is not something I'm going to

14   consider.  So I don't find that I need to make a ruling on it

15   pursuant to the rules.

16        MR. HOROWITZ:  Yes, your Honor.

17        The last sentence in Paragraph 14 at the top of Page 9:

18   Mr. Carter would request that that paragraph be supplemented to

19   state that "The reason that J.D.J. was no longer selected to go

20   to the United States was for lack of funds."  He didn't have

21   the money to send him.  For no other reason.

22        THE COURT:  What's the Government's position?

23        MS. MEDETIS:  Your Honor, we would object to that.

24   There was testimony.  J.D.J. -- that is J.D.J. -- testified

25   regarding this point.  He was then cross-examined on that

1    point.

2         The testimony as the Government recalls is that other

3    boys did in fact get to go on that trip to the United States.

4    And we would defer to the Court's determination of J.D.J.'s

5    credibility on this point.  He was credible.  And the

6    conclusion is that the statement should remain in the PSI and

7    that that supplemental information not be included that the

8    Defendant is now requesting, because the trial testimony was to

9    the contrary.

10        We'd also note, your Honor, that information goes to

11   the heart of the Defendant's modus operandi when it came to

12   sexually abusing the children in his care.  He would treat them

13   poorly if they refused --

14        MR. HOROWITZ:  Judge, that has nothing to do with the

15   issue at hand.

16        MS. MEDETIS:  -- if they refused to engage in sexual

17   abuse and favor them when they did comply with his demands.

18   And we think that that's squarely at issue in this sentencing

19   and has been throughout the trial and throughout the

20   Defendant's history as a pedophile.

21        MR. HOROWITZ:  Judge, it has nothing to do with the

22   Defendant's history.  It has to do with whether this young man

23   traveled to the United States.  Mr. Carter says no.  He

24   couldn't afford it.

25        THE COURT:  I'm going to have to check the testimony

1   and my notes.

2        MR. HOROWITZ:  Yes, your Honor.

3        Judge, the next objection raised by Mr. Carter is as to

4   Paragraph 16 and 17 regarding statements that were purportedly

5   made to J.D.J. regarding whether Mr. Carter had abused minor

6   boys in Egypt, previously in Haiti and in Jamaica.

7        I do recall testimony in that regard.  However,

8   Mr. Carter vehemently denies making those statements to J.D.J.

9   And we had his passports over the past 40 years or so, and

10  there was no evidence he had ever been to Jamaica.

11       THE COURT:  Is Jamaica in this paragraph?

12       MR. HOROWITZ:  Yes, it is, your Honor.  It's in the

13  middle of Paragraph 17 about three lines up from the bottom.

14  Paragraph 17, Page 10.

15       THE COURT:  As I recall, there was testimony regarding

16  statements that the witness claimed that Carter made to him

17  concerning sexual abuse of children in Jamaica as -- I believe

18  it was the subject of a side-bar.

19       Any objection to adding that the passport does not

20  indicate travel to Jamaica?

21       MS. MEDETIS:  Well, your Honor, we cannot concede to

22  that, because the passports that we have are not all of

23  Mr. Carter's passports.  There's one passport missing; and that

24  is the one that he used to travel to Egypt the first time.

25       We would ask that the Court rely on the testimony at

1    trial and a credibility determination of D. on that particular

2    point and that it remain, that that testimony regarding Jamaica

3    remain in the PSI.

4            THE COURT:  What I would do is this:  I do remember the

5    testimony.  I do find that the witness was credible in the

6    statements that he made.  I will order that the revised

7    advisory presentence investigation report at Paragraph 17 state

8    that Carter's passports at trial did not indicate travel to

9    Jamaica, though they are not the complete history of his

10   passports.

11           Any objection to that, Mr. Horowitz?

12           MR. HOROWITZ:  No, your Honor.

13           MS. MEDETIS:  None by the Government on that point.

14           THE COURT:  So Paragraph 17 will be modified as I

15   stated.

16           Yes.

17           MR. HOROWITZ:  Judge, the next factual objection

18   requested by Mr. Carter is as to Paragraph 26 on the bottom of

19   Page 11.  And six lines down from the top in the middle of that

20   paragraph, where it reads, "Carter and another boy named F.

21   were watching adult pornography," Mr. Carter denies ever

22   watching adult pornography with any of the children.

23           Also in the same paragraph, about two lines down, where

24   it says that "I.F. further witnessed Carter anally penetrate

25   three boys with candles," Mr. Carter vehemently denies that

1   sentence.

2           At the last line on the bottom of Page 11, which

3   begins, "In 1997," and talks about "Through the door of

4   Carter's bedroom, I.F. witnessed Carter sexually abuse a 16- or

5   17-year-old girl named D.," Mr. Carter also denies that as

6   well.

7           THE COURT:  Was this -- was Paragraph 26, I.F., a

8   witness?

9           MR. HOROWITZ:  No, your Honor.

10          THE COURT:  What's the Government's position?

11          MS. MEDETIS:  Your Honor, as to the matter of

12   pornography, there was testimony by D. at trial that the

13   Defendant routinely allowed the boys to watch and did watch

14   with them the Playboy Channel, which included adult sex movies.

15          And so as to that point, there's testimony contrary to

16   the Defendant's objection.

17          And as to the incidents regarding the candlesticks and

18   the other objections, the Government is prepared to call a

19   witness to meet its burden on those points.

20          THE COURT:  Well, I don't find that this is something

21   that I need to consider in terms of the calculation of the

22   guidelines.

23          I will order, since this was not testimony before me,

24   that for Paragraph 26 that a sentence be added that "Carter

25   denies the viewing of adult pornography, the anal penetration

1    with candles and the sexual abuse of a 16- or 17-year-old

2    girl."  I don't find that it affects the guidelines, nor will

3    it affect my determination as to an appropriate sentence under

4    3553(a).

5            Is that it, Mr. Horowitz?

6            MR. HOROWITZ:  I may have one more, if I may have a

7    moment, your Honor.

8            THE COURT:  Okay.  Did you want to bring something up,

9    Ms. Medetis?

10           MS. MEDETIS:  Yes.  The Government has a few

11   objections.  They're mostly typographical errors that I

12   think --

13           THE COURT:  Let me just hear from Mr. Horowitz first

14   and then I'll move on to those.

15           MR. HOROWITZ:  Judge, Paragraph 27 on Page 12.  It's

16   six lines down from the top, towards the right-hand side and

17   starting with a sentence "When P.S.," talking about P.S.,

18   "moved into the center, he immediately began sharing a bed with

19   Carter."

20           Mr. Carter would like that sentence removed as he

21   believes it is untrue.

22           MS. MEDETIS:  Your Honor, that was P.S., who did

23   testify at trial as to those facts.

24           THE COURT:  I do recall the testimony.  I found him to

25   be credible, P.S.

40

1          Quite frankly, whether he was sharing a bed with Carter

2    or not is not something that is really going to make a

3    difference in regard to an appropriate sentence under 3553(a),

4    given the other information regarding the Defendant's

5    involvement with the victim.

6          The problem was not whether he was sharing a bed or

7    not.  The problem is what the Defendant -- the abuse that the

8    Defendant then foisted on the victim, whether it was sharing a

9    bed or otherwise.

10         MR. HOROWITZ:  The final objection that Mr. Carter

11   asked that I raise is as to the last sentence of Paragraph 34

12   on the bottom of Page 13, which reads, "Carter paid to have

13   J.B. circumcised so that Carter could better enjoy performing

14   oral sex" --

15         THE COURT:  I remember testimony about this at trial

16   specifically.  The witness testified as to this.  And he

17   testified that it was done for the Defendant's additional

18   pleasure.

19         So -- and I found the witness to be credible.  This

20   will not change.

21         MR. HOROWITZ:  With that, your Honor, there are no

22   other factual objections on behalf of Mr. Carter.

23         THE COURT:  Yes.

24         MS. MEDETIS:  Yes, your Honor.  We'd like to start with

25   Paragraph 7, the sentence that starts three lines up from the

1   bottom of Paragraph 7 regarding -- starting, "On one occasion,

2   there was contact between Carter's penis and S.A.'s anus."

3   We'd ask that that be stricken.

4           THE COURT:  Any objection by the Defendant?

5           MR. HOROWITZ:  No.

6           MR. ADELSTEIN:  No, your Honor.

7           THE COURT:  It's struck.  It's ordered to be stricken

8   from Paragraph 7.

9           MS. MEDETIS:  As to Paragraph 65, the second line from

10  the top, "and lived at the center until 2005," that's a

11  typographical error.  It should be that he lived at the center

12  until 2008.

13          THE COURT:  Any objection?

14          MR. HOROWITZ:  No, your Honor.

15          THE COURT:  It's ordered to be modified to 2008 in

16  Paragraph 65.

17          MS. MEDETIS:  Your Honor, the next objection is to

18  Paragraph 68.  We'd like to modify this in a couple of ways,

19  because we think it inaccurately suggests that Mr. Carter was

20  continuously abusing W.D. and it also, I think, is inaccurate

21  in that W.D. did not live at the center for as long as it

22  suggests.

23          Therefore, we'd ask for the following:  As to the

24  second sentence, where it says "W.D. moved," we'd ask that it

25  read, "W.D. visited the center beginning in 2008 and continued

```
1    to -- at the approximate age of 14 years and continued to visit
2    the center until 2011."
3              THE COURT:  Any objection?
4              MR. HOROWITZ:  No.
5              MR. ADELSTEIN:  No, your Honor.
6              THE COURT:  It's granted.
7         MS. MEDETIS:  We'd also ask that the next sentence,
8    which reads, "Carter began engaging in illicit sexual
9    conduct" -- we would like that to read, "Carter attempted to
10   engage in illicit sexual conduct."
11             THE COURT:  Any objection?
12             MR. ADELSTEIN:  Could we have one moment?
13        (Discussion had off the record between counsel and the
14   Defendant.)
15             MR. ADELSTEIN:  Our position is that Mr. Carter denies
16   making any attempt at all.  So we'd ask that that entire
17   sentence be struck.
18             THE COURT:  This was not a witness at the trial.
19   Correct?
20             MS. MEDETIS:  That's correct, Judge.
21             THE COURT:  So what I will do is this:  I will grant
22   the Government's request for the attempt and a statement by the
23   Defendant in Paragraph 68 that "Carter denies making any
24   attempt at all" for Paragraph 68, modified.
25             MR. HOROWITZ:  That's acceptable, your Honor.
```

1          MS. MEDETIS:  Yes, Judge.  We accept that.

2          THE COURT:  Is that it?

3          MS. MEDETIS:  No, your Honor.  There are a few more.

4          Back to Paragraph 63:  There's a typographical error

5   two lines up from the bottom.  It says, "If P.A. refused to

6   'summit.'"  We believe that should read "submit."

7          THE COURT:  It's a typo.  Yes.  That's granted.  I

8   don't think that's a word.  Not that I know of, anyhow.

9          MS. MEDETIS:  Your Honor, with respect to Paragraph 72

10  and 119, which your Honor addressed on a different point

11  regarding W.J.B., we'd ask that Paragraph 72 be stricken in

12  that Paragraph 119 more accurately describes the circumstances

13  with W.J.B.

14         THE COURT:  Any objection?

15         MR. HOROWITZ:  No, your Honor.

16         THE COURT:  Paragraph 72 is stricken.

17         MS. MEDETIS:  Your Honor, with respect to Paragraph 77,

18  three lines from the top, where the line starts "began engaging

19  in illicit sexual conduct with M.B. in 2003," that should read

20  1997, because 2003 is the move-out date.  Therefore, that

21  sentence wouldn't make sense.

22         THE COURT:  Any objection?

23         MR. HOROWITZ:  No, your Honor.

24         THE COURT:  It's granted.

25         MS. MEDETIS:  Paragraph 79, your Honor.  Three lines up

1 from the bottom, the sentence starting -- at the very end of

2 that line, "if M.V. refused to comply," that should read, "the

3 first time M.V. refused to comply."

4    We think that in its current state it gives the

5 impression that there was force each time; and we would ask

6 that it be limited to the first time.

7    THE COURT:  Any objection?

8    MR. ADELSTEIN:  Our position is Mr. Carter denies this

9 ever occurred at all.

10    THE COURT:  This was not a witness at the trial.

11 Correct?

12    MS. MEDETIS:  No, your Honor.

13    THE COURT:  So I will order that Paragraph 79, the last

14 sentence, be modified to "The first time M.V. refused -- the

15 first time M.V. refused to comply, Carter grabbed her by the

16 arm" to the end of the sentence.  The next sentence is, "M.V.

17 was afraid of Carter."  And the next sentence will read,

18 "Carter denies this conduct."

19    MS. MEDETIS:  Your Honor, as to Paragraph 80, the very

20 last line, where it says, "And when J.V. refused, Carter hit

21 him," that should read "And once, when J.V. refused."

22    THE COURT:  Any objection?

23    MR. ADELSTEIN:  Mr. Carter denies this ever occurred at

24 all.

25    THE COURT:  This was not a witness at trial.  Correct?

```
 1          MS. MEDETIS:  That's correct, Judge.

 2          MR. ADELSTEIN:  Right.

 3          THE COURT:  I will order that "once" be inserted before

 4    "when" and "Carter denies hitting J.V." be added to Paragraph

 5    80.

 6          Is that it?

 7          MS. MEDETIS:  There are two more, your Honor.

 8          Paragraph 120, victim impact.  I know this is a subject

 9    of a motion to strike regarding the victim impact statements.

10    But if and when your Honor rules on that, we'd ask that

11    reference be made to the victim impact statements that were

12    submitted -- something to state that approximately 46 or

13    however many the Court determines to admit were submitted and

14    that they be attached as part of the PSI, those victim impact

15    statements.

16          THE COURT:  Let me reserve on this until I rule on the

17    motion to strike.

18          MS. MEDETIS:  Finally, your Honor, as to Paragraph 127,

19    this goes towards how the guidelines were calculated.  Your

20    Honor may want to reserve ruling on this.

21          But I believe what Probation meant here was that --

22    there's a cross-reference at issue here.  2G1.3 is the starting

23    point.  The determination needs to be made as to whether 2G1.3

24    of the guidelines or 2A3.1 yields a higher guidelines sentence

25    to determine whether the cross-reference applies.
```

1           I believe what 127 is referring to is that when

2     Probation was making the determination as to which -- whether

3     2G1.3 applied or 2A1.3 applied, she used one representative

4     victim to calculate the 1.3 guideline.

5           But I would defer to Probation.  But as it reads now,

6     the Government's a bit confused as to what was intended.  And

7     we would ask that that be either clarified or struck.

8           THE COURT:  I thought that this paragraph related to

9     the fact that there was going to be separate calculations for

10    each count.  That's the way I read it.

11          THE PROBATION OFFICER:  Your Honor, the intention was

12    for it to read as Ms. Medetis indicated, that for each count

13    only one representative victim was used and the victim who

14    would have yielded the highest adjusted offense level was used

15    for each count.

16          MS. MEDETIS:  Under 2G1.3.

17          THE PROBATION OFFICER:  Sorry.  Yes.  Thank you.  Each

18    calculation began under 2G1.3.

19          THE COURT:  Right.

20          THE PROBATION OFFICER:  And then for each victim that

21    would have yielded the highest adjusted offense level, the

22    cross-reference was applicable, which then directed us to

23    2A3.1.

24          MS. MEDETIS:  Under 2A3.1, each victim is not

25    considered as an individual count.  And so that's why the

1    Government is confused.  It's only under 2G1.3.

2            THE COURT:  23.1 goes to the sexual abuse.  Correct?

3    The cross-reference is concerning the sexual abuse?

4            MS. MEDETIS:  That's correct.

5            THE COURT:  And the appropriate guideline to be

6    utilized when there is criminal sexual abuse or attempt to

7    commit criminal sexual abuse.

8            So rather than the 24, the 30 is used --

9            MS. MEDETIS:  Yes, Judge.

10           THE COURT:  -- as a base offense level.

11           MS. MEDETIS:  Yes, Judge.

12           Paragraph 127 refers to what Probation did to determine

13   the calculation under the starting point for each count, which

14   is 2G1.3.  The probation officer must first determine the

15   guideline calculation under 2G1.3 to determine if the

16   cross-reference to 2A3.1 applies.  In this case, it turns out

17   that 2A3.1, it's the Government's position, applies to every

18   count.

19           THE COURT:  So I'm still not following what your

20   problem is with Paragraph 127.

21           MS. MEDETIS:  The Government's confused by it.  It

22   talks about what the probation officer did with respect to

23   2G1.3.

24           And I just want to make it clear on the record that if

25   the guideline is to be calculated under 2A3.1, meaning if the

1   cross-reference applies, then the victims aren't treated as

2   individual counts under 2A3.1.  And that's really the only

3   clarification that we want.

4           THE COURT:  Yes.

5           THE PROBATION OFFICER:  Your Honor, I would like to

6   point out that then, if you reverted back to 2G1.3, then each

7   victim would be entitled to a separate count.  And these

8   calculations only represent the victim for each count that

9   resulted in the highest adjusted offense level for that

10  particular count.

11          THE COURT:  Do you have a suggestion, Ms. Medetis?

12          MS. MEDETIS:  I would suggest, your Honor, that that

13  paragraph perhaps be deleted, because it's clear in Paragraph

14  129 and each paragraph preceding 138 where it talks about what

15  guideline applies to each count that 2A3.1 is applied because

16  the resulting offense level is greater than if 2G1.3 is

17  applied.  I think it's clear what -- how the guideline is being

18  calculated.  And 127 just confuses the matter.

19          THE COURT:  What about 128, then?

20          MS. MEDETIS:  The matter of grouping is fine, your

21  Honor, because the grouping relates to the number of victims

22  applicable in this case.  And it would apply regardless of what

23  guideline is used.

24          THE COURT:  Isn't Paragraph 27 setting up the guidance

25  for the grouping and then the combined offense level is then

```
 1   determined in Paragraph 128?  It's separate and apart from any
 2   cross-reference to 2A3.1.  Correct?
 3          THE PROBATION OFFICER:  You're correct, your Honor.
 4   There are too many victims in this case that theoretically we
 5   could have done a separate calculation for every single victim
 6   pursuant to 2G.  So in lieu of all of that, I picked the
 7   representative victim for each count that would have resulted
 8   in the highest adjusted offense level.
 9          THE COURT:  So maybe that should be reflected in
10   Paragraph 127, to make it clear.
11          THE PROBATION OFFICER:  Yes, your Honor.
12          THE COURT:  You say each of these victims constitute a
13   separate harm and a separate count of conviction and therefore
14   a separate group.  But maybe 127 should reflect that you took
15   one representative victim and that victim was the highest
16   calculation level.
17          THE PROBATION OFFICER:  Your Honor, I believe that the
18   last sentence of that paragraph does explain that.  "As such,
19   only one example" --
20          THE COURT:  Right.
21          MS. KANE:  Your Honor, I would want to clarify that
22   this Paragraph 127 only relates to the initial calculation that
23   was done under 2G1.3 to determine what the offense level would
24   be under that guideline.  Once it was determined that 2A3.1
25   applied, then under 2A3.1, the victims are not treated
```

50

```
 1    individually under that guideline.
 2         THE COURT:  No, because there's the cross-reference to
 3    2A3.1 based upon the offense.
 4         MS. KANE:  Right.  Exactly.
 5         So under 2A3.1, they're not looking at the victim with
 6    the highest level.  It's calculated separately.  So the
 7    calculation she's talking about, 127, is actually not reflected
 8    here in this PSR.  I wanted to make it clear she's actually
 9    referring to a calculation that is not --
10         THE COURT:  But that's the provision for the separate
11    grouping for each count.  It's not just one calculation; it's a
12    calculation based on each count of conviction, because they're
13    separate harms based upon numerous victims.  Correct?
14         THE PROBATION OFFICER:  That is correct.  However, in
15    this type of offense, we would have used for Count 1, October
16    2nd, 2001, for example, we could have had multiple groups just
17    within Count 1 because of the number of victims for that
18    particular time period that were -- who were victimized for
19    that count.
20         So we --
21         THE COURT:  You chose one.
22         THE PROBATION OFFICER:  Correct; based on the one that
23    would have resulted in the highest adjusted offense level,
24    because in the end it has no effect on the overall total
25    offense level.  Once we get to the grouping, you can only add
```

```
 1    the five levels, and it wouldn't have affected the overall

 2    offense.

 3           So rather than go through --

 4           THE COURT:  It ultimately doesn't affect it because

 5    it's too high and it comes back down.

 6           THE PROBATION OFFICER:  Correct.

 7           MS. KANE:  It does, your Honor.  I want to make clear

 8    that is not referring to any calculation that's here in the

 9    guidelines.  That's all.  That's here in the PSI.  It's not

10    reflected in the --

11           THE COURT:  Does the Defendant have any objection to

12    this paragraph?

13           MR. HOROWITZ:  We understood it and we thought it was

14    well written.  Other than that, we have none.

15           THE COURT:  So they have no objection.  This seems

16    clear to me this is the basis for the grouping based upon

17    numerous victims; then Paragraph 128, that indicates how the

18    grouping is going to be handled; and then within each

19    individual calculation for each count, the cross-reference

20    under 2A3.1 applies, which is the cross-reference that's

21    contained in 2G1.3.  And therefore, each base offense level

22    goes from a 24 to a 30.

23           MS. KANE:  Right.  I wanted to --

24           THE PROBATION OFFICER:  Correct.

25           MS. KANE:  I apologize.  Perhaps --
```

1        MR. ADELSTEIN:  If they were confused, all they had to

2  do was give us a call, and we would have talked to them.

3        MS. KANE:  I would want to clarify that what this is

4  saying regarding the grouping rules only applies to 2G1.3, not

5  actually how the grouping rules have been applied in this

6  calculation.

7        THE COURT:  It does not apply to the calculation of the

8  base offense level.

9        MS. KANE:  No.  The grouping rules that are

10  reflected -- the way the grouping rules are reflected and are

11  described in 127 is not actually how the grouping rules were

12  applied in this case in the calculation that is in this PSI.

13  That is because the guidelines were calculated under 2A3.1.

14        And when you use -- when you ultimately use 2A3.1, the

15  grouping rules are different.  They're treated as they're six

16  groups only.  That's it.  Because under 2A3.1, victims are not

17  given their own separate group.  2A3.1 does not require that

18  victims be treated separately individually.

19        THE COURT:  What I will do is this:  I'm going to order

20  that Probation enter a footnote in Paragraph 127 that will

21  indicate that this paragraph does not apply to 2A3.1 and the

22  cross-reference that is utilized in calculating the base

23  offense level pursuant to 2A3.1(a)(2).  Does that satisfy the

24  Government?

25        MS. MEDETIS:  Yes, your Honor.

1           And that concludes our objections to the PSI.

2           THE COURT:  Did the Defendant have an opportunity to

3      eat lunch?  Did he eat lunch?

4           MR. HOROWITZ:  Yes, your Honor.

5           THE COURT:  Oh, he did?  Okay.

6           So let's now move on to the next objection, which would

7      be the obstruction of justice enhancement.  Is that correct?

8           MR. HOROWITZ:  Yes, your Honor.

9           Judge, that would be beginning on Page 6 of Docket

10     Entry No. 291.

11          Judge, within that objection, I listed, I think, nine

12     separate instances on Page 8 as to whether certain testimony of

13     Mr. Carter --

14          THE COURT:  I believe the Government agrees with you,

15     that they are not the basis for obstruction of justice.

16          MR. HOROWITZ:  Judge, I think the Government --

17          THE COURT:  A through I?

18          MR. HOROWITZ:  Yes.  A through I.  I agree, your Honor.

19     So it goes to --

20          THE COURT:  The Government's not relying on A through I

21     for the obstruction of justice increase under 3C1.1.  Correct?

22          MS. KANE:  Yes, your Honor.

23          THE COURT:  Yes?  That's correct?

24          MS. KANE:  Yes.  That's correct.  Thank you.

25          THE COURT:  Is that the sum and substance of your

```
 1    objection?

 2            MR. HOROWITZ:  The only issue is the trial testimony of

 3    Mr. Carter, the sum and substance.  If the only thing left is

 4    the trial testimony of Mr. Carter, these would be as to

 5    Paragraphs 21 -- 121, 122 and 123, which is on Pages 33 and 34

 6    of the presentence investigation report.

 7            THE COURT:  Let's do this:  Let's take ten minutes and

 8    then we can proceed with this.

 9            MR. HOROWITZ:  Thank you.

10            MR. ADELSTEIN:  Thank you, Judge.

11        (Thereupon a recess was taken from 1:45 p.m. to 2:07

12        p.m., after which the following proceedings were had:)

13            THE COURT:  You may be seated.

14            We're back on United States of America versus Matthew

15    Andrew Carter, Case No. 11-20350.

16            Counsel and Probation, state your appearances, please,

17    for the record.

18            MS. MEDETIS:  Yes.  Good afternoon, your Honor.  Maria

19    Medetis and Bonnie Kane on behalf of the United States.  With

20    us at counsels' table are Special Agents Larko and Flores.

21            MR. HOROWITZ:  Good afternoon, your Honor.  Phil

22    Horowitz, Stu Adelstein on behalf of Matthew Carter, who's

23    present before the Court.  With us at counsels' table is

24    Reginald Hope.

25            THE PROBATION OFFICER:  Good afternoon, your Honor.
```

1    Shannon Culbertson on behalf of the Probation Department.

2          THE COURT:  Good afternoon to everyone.

3          So we are now proceeding with the continuation of the

4    Defendant's objection regarding the increase under 3C1.1 for

5    obstruction of justice.

6          Yes, Mr. Horowitz.  You were going to address the

7    Defendant's testimony?

8          MR. HOROWITZ:  Yes, your Honor.

9          First of all, the adjustment for obstruction of

10   justice, but for the first three lines of Paragraph 121, I

11   think the Government and I have agreed that the remainder of

12   those paragraphs be stricken but for the first three lines,

13   which deal with Mr. Carter's trial testimony.

14         THE COURT:  One moment, please.

15         MR. HOROWITZ:  It's Page 33.  I apologize, your Honor.

16         THE COURT:  I'm there now.

17         What is your position?

18         MR. HOROWITZ:  The first three lines of Paragraph 121

19   should remain.  The remainder of Paragraphs 121, 122 and 123 be

20   stricken.

21         THE COURT:  The Government agrees?

22         MS. KANE:  Yes, your Honor.  We have no objection to

23   that.

24         THE COURT:  So I will order that the first three lines

25   remain in Paragraph 121.  The remainder of 121 is stricken; 122

1    and 123 are also stricken.

2          Does that conclude your objection for obstruction of

3    justice?

4          MR. HOROWITZ:  Yes, your Honor, other than the argument

5    pertaining to the *Dunnigan* case and what the Court has to find.

6          Your Honor, as you're aware, Mr. Carter testified for

7    two full days on the stand.  And he denied the allegations

8    against him and he testified as to what happened and what

9    didn't happen during his time in Haiti.

10         The Defendant has a right to testify.  No defendant has

11   a right to commit perjury.  Mr. Carter denied the allegations

12   against him and stated the reasons why.

13         Based on Mr. Carter's testimony that he had no sexual

14   relations or any inappropriate contact with any of the children

15   at any time in his life, the jury did not believe him.  The

16   jury found him guilty of the six counts charged within the

17   indictment.  The jury found that beyond a reasonable doubt.

18         And Mr. Carter has an absolute right to defend himself.

19   Mr. Carter did just that.

20         We'd ask that the Court not find obstruction of

21   justice.

22         THE COURT:  Yes.

23         MS. KANE:  Your Honor, as stated in our response at

24   Docket Entry 292, the obstruction of justice enhancement is

25   supported fully by the record, including the citations that

1    were included in our response.

2          The case law is clearly that the denial of the activity

3    with which the Defendant is charged is sufficient to support

4    the enhancement.  There are a number of cases, including the

5    *Dunnigan* case cited by the Defendant, which shows that the

6    enhancement is appropriate in cases when a defendant takes the

7    stand under oath and denies the criminal charges against him,

8    which is what the Defendant in this case did willfully and

9    repeatedly throughout his testimony.

10         And therefore, we believe the enhancement is

11   appropriate in this case.

12         THE COURT:  Anything further, Mr. Horowitz?

13         MR. HOROWITZ:  Nothing, your Honor.  Just that the

14   Court's findings be consistent with the *Dunnigan* case.

15         THE COURT:  I'm going to deny the objection.  Pursuant

16   to the authority in *United States versus Dunnigan* at 507 US 87,

17   113, Supreme Court 1111, a 1993 decision, and *United States*

18   *versus Singh*, S-I-N G H, 291 F.3d 756, a 2002 decision by the

19   Eleventh Circuit, I find that the Defendant did provide false

20   testimony.  That testimony was given under oath.  It was about

21   material matters in the trial in this case specifically.

22         And I reviewed my extensive notes regarding the

23   Defendant's testimony regarding his contact or lack of sexual

24   contact that he stated with the victims who testified.  He

25   denied having sex or having sex while certain persons were

1    under the age of 18 for the victims who testified in this case

2    while they were residents of Morning Star.  That testimony

3    directly contradicted the testimony of the approximately -- how

4    many victims were there? --

5          MS. KANE:  16.

6          THE COURT:  -- 16 victims who were residents of the

7    Morning Star Center who detailed the sexual abuse that the

8    Defendant foisted upon them many times throughout their

9    residency in the Morning Star Center.  The Defendant denied

10   traveling to Haiti for that purpose.

11         I did not find the Defendant to be credible.

12         I find that the four-part test as detailed in *US versus*

13   *Dunnigan*, that this false testimony was material.  It was made

14   with willful intent to provide false testimony and it was not

15   due to confusion, mistake or faulty memory.

16         Specifically, the Defendant was untruthful at trial

17   with respect to material matters.  And "material" under 3C1.1

18   means "evidence, facts, statements or information, if believed,

19   would tend to influence or affect the issue under

20   determination."

21         The jury did not believe Mr. Carter, nor did I.  And

22   therefore, I find that the obstruction of justice enhancement

23   is properly given.

24         Yes.

25         MR. HOROWITZ:  Judge, the next objection appears at the

1    bottom of Page 10 of Docket Entry 291.  And that objection will

2    be withdrawn.

3            THE COURT:  Okay.  You're no longer contesting which

4    version of the guidelines is being applied.  Correct?

5            MR. HOROWITZ:  Correct, your Honor.

6            THE COURT:  Okay.  Next?

7            MR. HOROWITZ:  The next objection appears on Page 13,

8    which deals with vulnerable victims and large number of

9    vulnerable victims.

10           Judge, it's the Defendant's position that the

11   vulnerability is an item that is taken into account in other

12   areas of the guidelines, specifically the indictment, which

13   charges that the victims are persons under 18 years of age.

14           The original guidelines that are used takes into

15   account the vulnerability of the victims, because Mr. Carter's

16   guidelines are enhanced since the victims had not attained the

17   age of 12.  This factor alone increases Mr. Carter's guidelines

18   by eight levels.

19           Because the victims are considered to be in the care,

20   custody and control of Mr. Carter, that's another increase.

21           The Defendant unduly influenced a minor to engage in

22   prohibited sexual conduct.  On Page 14, I listed within the

23   paragraphs -- the paragraphs of the original PSR those

24   increases which encompassed more than ten levels.  On top of

25   that, the vulnerability is already factored in.

1        And in the presentence investigation report, the

2   probation officer seeks to increase Mr. Carter's offense level

3   by four, two for vulnerable victims and two for a large number

4   of vulnerable victims.

5        A lot of this has already been taken into account

6   within the guideline calculations.

7        In addition, on the large number, in the objections, I

8   wrote that -- "Do not apply the Subsection B if the factor

9   'makes the person a vulnerable victim' is incorporated into the

10  offense guidelines."

11       Clearly, the vulnerability is incorporated within the

12  offense guidelines.  And both the vulnerable victim and the

13  large victim of vulnerable victim enhancements under 3A1.1(b)

14  should not -- (b)(1) and (b)(2) should not be included.

15       THE COURT:  Yes.

16       MS. KANE:  Your Honor, it is the position of the United

17  States as stated in our response to the PSI objections, Docket

18  Entry No. 292, Page 14, that the vulnerable victim enhancement

19  is fully supported by the simple fact that these victims came

20  from a background of horrendous poverty, circumstances of

21  neglect in their family.  These were hungry victims, destitute

22  victims who essentially had nothing in their lives before they

23  moved into the center.

24       The Defendant specifically targeted these victims

25  because of their poor economic conditions, their family

1    circumstances.  And that basis alone supports a vulnerable

2    victim enhancement as set forth in our response, which cites a

3    number of cases where victims' financial conditions alone

4    supported the enhancement.

5         We are not relying on the age of the victims.  We are

6    not relying on the other circumstances, including the fact that

7    they were in his custody and care.  We agree that those factors

8    are already accounted for in the calculation of his guideline.

9    We are relying solely on the victims' financial conditions.

10        And we believe that, based upon the case law, including

11   cases interpreting the same offense with which the Defendant is

12   charged, 2423(b), that these cases support the application of

13   the enhancement in this case.

14        Since the application -- since this enhancement is

15   applicable and since there is no argument regarding the number

16   of victims at issue here, the large number of vulnerable

17   victims and victim enhancement should also apply.

18        THE COURT:  Where, Mr. Horowitz, is the large number of

19   victims in the calculation?

20        MR. HOROWITZ:  Your Honor, we would argue that it's in

21   the grouping rules.

22        What the probation officer has done through the

23   grouping rules is given a five-level increase.  Now, granted,

24   in paragraph -- in the paragraph cited right before we broke by

25   the Government, Probation indicated they used one victim for

1    each count.  Had they used multiple victims for each count, the

2    guidelines would have remained the same or would have been

3    pretty close and the maximum number of level increase for

4    grouping would have been five, which is what Mr. Carter

5    received.

6              THE COURT:  So does that go to the calculation for each

7    count or to the additional --

8              MR. HOROWITZ:  It goes to the additional five-level

9    increase under the grouping rules -- or non-grouping rules, I

10   should say.

11             MS. KANE:  Your Honor, this goes back to the issue.  I

12   unfortunately -- I don't want to bring it up again, but our

13   misunderstanding about the grouping rules and how it was used

14   in this case.

15             The large number of victims has not been accounted for

16   in how these counts have been grouped.  If this Court chooses

17   to calculate the Defendant's guidelines under 2A3.1, the large

18   number of victims is not accounted for.

19             THE COURT:  It was calculated under 2A3.1?

20             MS. KANE:  Yes, your Honor.  If the guidelines had been

21   calculated, his calculations had been done under 2G1.3, then

22   the large number of victims would have been a factor,

23   considering how that guideline treats the number of victims.

24   But 2A3.1 does not have the same rule.

25             THE COURT:  Anything further, Mr. Horowitz?

1           MR. HOROWITZ:  No, your Honor.

2           THE COURT:  In regard to the four-level increase, two

3     for vulnerable victim and two because the offense involved a

4     large number of vulnerable victims under 3A1.1(a)(1) and (2),

5     I'm going to deny the objection.

6           First of all, let me say clearly that this ruling is

7     not based on age, because that is calculated elsewhere in the

8     guideline calculation.

9           This ruling is based upon the otherwise particularly

10    susceptible provision as detailed in Application Note 2, which

11    reads as follows:  "For purposes of Subsection B, vulnerable

12    victim means a person, (a), who was a victim of the offense of

13    conviction and any conduct for which the Defendant is

14    accountable under 1B1.3 and, (b), who is unusually vulnerable

15    due to age, physical or mental condition or who is otherwise

16    particularly susceptible to the criminal conduct."

17          The victims in this matter were unusually vulnerable

18    for reasons that were unrelated to age.  The majority -- and I

19    find that the majority of the Defendant's victims in this case

20    were hungry.  They were destitute.  They testified at trial

21    that they often ate less than three meals per day, sometimes

22    one.  They were unable to pay for education, which was the only

23    way that one could receive education in Haiti, was to pay for

24    it.  And they were unable to properly clothe themselves or be

25    taken care of by their families or other persons who were

1     taking care of them because of economic hardship.

2          I find that the Defendant targeted these victims

3     because of their poor economic conditions.  I find that the

4     Defendant targeted Haitians living in Haiti because of the dire

5     economic conditions that existed and to this day exist, but

6     existed at the time of the indictment in Haiti.

7          The Defendant exploited this vulnerability.  He

8     threatened to have victims leave the center if they refused his

9     sexual advances.  And specifically, he threatened them with a

10    return to poverty, a return to no food, a return to no clothing

11    and a return to no school.  If the victims did not submit to

12    the sexual abuse by the Defendant, he made it very clear to

13    them that he would no longer entertain them in the center.  And

14    sometimes some of the victims were kicked out when they did

15    refuse.

16         The victims and their families in this case were

17    looking for a way out of the dire economic circumstances that

18    affect the population of families in Haiti.  Many relatives

19    entrusted the Defendant with their children and relatives

20    because he promised and could provide for them education,

21    clothing, food and shelter.

22         And I cite as authority *United States versus Wilcox*,

23    631 F.3d 740 at 756 and 57, a 2011 decision by the Fifth

24    Circuit; *United States versus Julian*, 427 F.3d 471, a 2005

25    decision by the Seventh Circuit; *United States versus Irving*,

1    554 F.3d 64, a Second Circuit decision in 2009; and *United*

2    *States versus Arguedas*, A-R-G-U-E-D-A-S, 86 F.3d 1054, a 1996

3    decision by the Eleventh Circuit.

4            And the Eleventh Circuit in *Arguedas* -- and I quote

5    from Page 1058:  "We have held that being in a precarious

6    financial situation is a vulnerability to fraudulent financial

7    solicitations such as advance-fee loan schemes.  A victim's

8    vulnerable financial situation may alone serve as the basis of

9    a Section 3A1.1 enhancement if the Defendant targeted the

10   victim for that reason."

11           And that's exactly what went on here:  Because of these

12   victims' dire economic circumstances, the Defendant targeted

13   them.  He knew that he could lure them to the center with the

14   promises of which they could not provide for themselves

15   economically:  food, clothing, shelter and school.  And many of

16   the victims even testified that they remained because they

17   wanted to be educated.  They wanted to be clothed and they

18   wanted to be fed, even though they suffered sexual abuse at the

19   hands of the Defendant.

20           I also find that the objection as to the large number

21   of vulnerable victims is supported by the over 40 victims -- I

22   believe it's 45 victims, perhaps over 50 -- that the Government

23   has identified as being victims of sexual abuse at the hands of

24   the Defendant.

25           Further, I find that pursuant to *United States versus*

1    *Von Loh*, V-O-N L-O-H, 417 F.3d 710, and *United States versus*

2    *Webb*, 665 F.3d 1380, a 2012 decision by the Eleventh Circuit --

3    and *Von Loh* is 2005 by the Seventh Circuit.   The *Von Loh* court

4    found that the five-level increase as it's detailed in the

5    sentencing guidelines under 4B1.5(b)(1), which specifically

6    states, (b), "In any case in which the Defendant's instant

7    offense of conviction is a covered sex crime, neither 4B1.1 nor

8    Subsection A of this guideline applies, and the Defendant

9    engaged in a pattern of activity involving prohibited sexual

10   conduct, one, the offense level shall be 5 plus the offense

11   level determined under Chapters 2 and 3."

12         And the Seventh Circuit stated in the *Von Loh* case,

13   quote, at Page 715:  "The word 'plus' indicates that the

14   sentencing commission intended that the repeat sex offender

15   enhancement be imposed in addition to calculations made

16   pursuant to Sections 2A3.2 and 3D1.4."  And the Court therefore

17   found no error.

18         The Eleventh Circuit in *United States versus Webb*,

19   stated at Page 1382 -- that's 665 F.3d 1380 at 1382 :

20   "Double-counting of factor during sentencing is permitted if

21   the sentencing commission intended that result and each

22   guidelines section in question concerns conceptually separate

23   notions relating to sentencing.

24         "Absent a specific direction to the contrary, we

25   presume that the sentencing commission intended to apply

1    separate sections cumulatively; and as a result, the Defendant

2    asserting a double-counting claim has a tough task."

3          The language of 4B1.5(b)(1) specifically references

4    that the offense level shall be 5 plus the offense level

5    determined under Chapters 2 and 3, which is exactly what the

6    revised advisory presentence investigation report applies.

7          I find that the 5 plus the offense level determined

8    under Chapters 2 and 3 was intended by the sentencing

9    commission, and therefore, as the Eleventh Circuit has stated

10   in the *Webb* case, it is not double-counting.

11         The application for vulnerable victim is in Chapter 3.

12         Yes, Mr. Horowitz.

13         MR. HOROWITZ:  I think the last portion of the Court's

14   ruling on 4B1.5 took care of my last objection regarding the

15   double-counting.

16         THE COURT:  Okay.

17         MR. HOROWITZ:  So with that, there are no further

18   objections to the presentence investigation report.

19         THE COURT:  Okay.

20         MR. HOROWITZ:  Judge, there was one left that's on Page

21   14 of 17, to keep the record complete, regarding criminal

22   history.  And that has been resolved.

23         THE COURT:  Okay.

24         MR. HOROWITZ:  With that, there are no further

25   objections.

```
 1              THE COURT:  Let me take a moment and look at my notes

 2    regarding the two issues that I reserved on; and then we'll

 3    move on to the victim impact statements, since that's contained

 4    in the report as well.

 5              I'm going to overrule the objection in Paragraph 14.  I

 6    find that J.D.J. testified credibly that the Defendant promised

 7    to take him to the United States, and that changed after the

 8    Defendant asked the witness to masturbate him and he refused.

 9    I will change the word "selected" to "promised."

10              So "Before this incident, Carter had promised J.D.J. to

11    travel to the United States with Carter.  After this incident,

12    he learned he was no longer selected to go to the United

13    States."

14              I believe that was the only factual issue.  And the

15    only remaining issue is the motion to strike the victim impact

16    statements and, of course, the issue as regards the uncharged

17    conduct.

18              What is this that was just handed up to me?

19              MS. MEDETIS:  Your Honor, I believe that Probation

20    wanted to supplement the Court with a monogram regarding the

21    guidelines that they're supposed to adhere to when preparing

22    their PSI.

23              MR. HOROWITZ:  May we see it, your Honor?

24              THE COURT:  Sure.

25              THE PROBATION OFFICER:  I have an extra copy.
```

```
 1              (Tenders document to counsel.)

 2         MS. MEDETIS:  That's monograph, not monogram, your

 3    Honor.

 4         THE COURT:  In regard to the uncharged conduct that is

 5    contained in the revised advisory presentence investigation

 6    report, specifically Paragraph 84, 85, 86, 87, 88, 89, 90, 91,

 7    92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105,

 8    106, 107, 108, 109, 110, 111, 113, 114, 115, 116, 117, I find

 9    that, pursuant to Title 18, United States Code, Section 3661,

10    which states that "No limitation shall be placed on the

11    information concerning the background, character and conduct of

12    a person convicted of an offense which a court of the United

13    States may receive and consider for purposes of imposing an

14    appropriate sentence" as well as Rule 32(d)(2), that the

15    presentence report must also contain the following:  (a), the

16    Defendant's history and characteristics, including (i), any

17    prior criminal record; (ii), the Defendant's financial

18    condition; and, (iii), any circumstances affecting the

19    Defendant's behavior that may be helpful in imposing sentence

20    or in correctional treatment, as well as the authority of

21    United States versus Hall, 456 F.Appendix 873, a 2012 decision

22    by the Eleventh Circuit, in which the Eleventh Circuit stated,

23    and I quote from Page 874 and 875:  "The task of the district

24    court in sentencing is to impose a sentence, quote, 'sufficient

25    but not greater than necessary to comply with the purposes"
```

1   listed in 18, United States Code, Section 3553(a)(2), including

2   the need to reflect the seriousness of the offense, to promote

3   respect for the law, to provide just punishment for the

4   offense, to deter criminal conduct and protect the public from

5   the Defendant's future criminal conduct.

6          To accomplish this task, the district court is

7   statutorily empowered to consider, quote, "the history and

8   characteristics of the Defendant" among other factors, citing

9   3553(a)(1).

10         In assessing the impact of 3553(a)(1), the district

11  court is, quote, "free to consider any information relevant to

12  the Defendant's background, character and conduct in imposing

13  an upward variance," citing *United States versus Tome*, T-O-M-E,

14  611 F.3d, 1371.

15         The Eleventh Circuit goes on to state, quote, "The

16  chief purpose of the PSI is to help the district court meet

17  these objectives," citing *United States versus Gomez*, 323 F.3d

18  1305, 1309, a 2003 decision by the Eleventh Circuit; *United

19  States versus Faust*, 456 F.3d. 1342, a 2006 decision, in which

20  the Eleventh Circuit found at Page 1347 that acquitted conduct

21  may be taken into account in sentencing for the offense of

22  conviction as long as the Government has proved it by a

23  preponderance of the evidence.

24         I find that the testimony provided at trial in regard

25  to the three brothers -- strike that.  S.T. testified at trial

1    about his contact with the Defendant at the Blackshaw home.

2    And I find that the Government has proved more than by a

3    preponderance of the evidence that that sexual abuse occurred.

4    I find it beyond a reasonable doubt that that sexual abuse

5    occurred by the Defendant.

6         I also find that the Government presented the testimony

7    of P.M., D.J.M and I.M., three brothers who detailed the sexual

8    abuse by the Defendant when they lived in public housing in

9    South London in the '70s, and that the Government proved that

10   sexual abuse by the Defendant more than by a preponderance of

11   the evidence, beyond a reasonable doubt, that those witnesses

12   were credible.

13        Therefore, I find that this conduct should be included

14   in the advisory presentence investigation report, though it

15   should be after other criminal conduct and pending charges and

16   other arrests.  So it will be after Paragraph 204, before

17   Part C, offender characteristics.

18        This would not relate to Paragraphs 104, 105, 106 and

19   107, as I did not hear that testimony.

20        MS. MEDETIS:  Your Honor, I believe there was in fact

21   testimony regarding 104.  That was when the Defendant confessed

22   to I.M. years after the abuse and asked -- that he in fact

23   abused him and asked for I.M. 's forgiveness.

24        THE COURT:  Let me check.

25        You are correct.  I do see it reflected in my notes

1    that I took in realtime as the testimony was going forward

2    regarding the fact that the Defendant contacted I.M. and spoke

3    with him at a McDonald's and asked him to forgive him in 1983,

4    I believe, was the testimony.

5          So therefore, 104 will be included.

6          MS. MEDETIS:  Your Honor, 103, there was not trial

7    testimony regarding those facts, if that's what is guiding the

8    Court.

9          THE COURT:  So then 103 would not be included also.

10         So what I am including is the testimony that was

11   presented to me at trial that the Government has met the

12   standard that I can find -- the standard for acquitted conduct

13   is preponderance of the evidence.  I can find beyond a

14   reasonable doubt that these witnesses were credible and that

15   this sexual abuse occurred with these witnesses, and therefore

16   it should be included as uncharged conduct.

17         However, I will say this:  that I do not intend to

18   sentence the Defendant solely on that testimony or primarily on

19   that testimony.  I intend to sentence the Defendant based upon

20   the underlying facts of the offenses of conviction, though it

21   may be something that the Court considers for 3553(a).

22         We now move to the victim impact statements, which I

23   believe is the last portion before the Court can adopt the

24   advisory presentence investigation report.

25         Mr. Horowitz, do you want to be heard on that?

1          MR. HOROWITZ:   Judge, I believe the victim impact

2     statements were collected by law enforcement.  We don't know

3     any instructions that were given to the victims on what to

4     include, what not to include in these letters.  Clearly, we

5     have a case here where there are 45 letters that were gathered

6     after the trial.

7          In those 45 letters, we have letters from 18 victims

8     that the Court heard at trial and 27 that the Court did not

9     hear from at trial.

10         Those that the Court did not hear from, the Defendant

11    would allege, as stated within the motion, a violation of his

12    confrontation clause rights and his right to confront the other

13    victims that have come forward.

14         Now, the Government made a decision as to which to call

15    and which not to call.  And they had 18 here and 27 they

16    didn't.  And, your Honor, each one of them was gathered after

17    the trial.

18         We wanted -- and we asked this Court for an opportunity

19    to go to Haiti to be able to get mitigating evidence that we

20    believe is there.  The Government had free access even after

21    the trial to all these victims.  The victim statements were not

22    gathered by the US Probation Office or anyone that is skilled

23    in these -- in taking these types of statements from these

24    types of victims.

25         Within the package of material that I was able to see,

74

1   I noticed that there were envelopes as well as many of the

2   letters were addressed to an RSO.  And I used it phonetically

3   in my objections.  In this motion, it's Vicky McCorkel,

4   M-C-C-O-R-K-E-L, and that is a phonetic spelling because I

5   think I saw 12 or 14 different ways that it was spelled within

6   these letters.  And she is basically a law enforcement officer.

7   She is an adviser to the ambassador.

8            And I went to the US Embassy in Port-au-Prince's

9   website to find out what the definition of an RSO was as it

10  pertains to the US Embassy in Haiti.  And I set that forth in

11  Page 4, that the RSO is an adviser to the ambassador on

12  criminal investigations, extraditions, counterterrorism cases

13  and Internal Affairs investigations, background investigations,

14  police training and other security and law enforcement-related

15  matters.

16           These letters were secured as if they were reports.

17  And they're very similar to what's in a law enforcement report

18  as opposed to a victim impact statement that is normally

19  gathered by the probation office.

20           With that, Judge, I'd adopt all the other arguments --

21           THE COURT:  Were you looking at the same letters that I

22  was looking at?

23           MR. HOROWITZ:  Yes, I was, Judge.

24           THE COURT:  They seemed to be letters written in the

25  person's hand.

```
1          MR. HOROWITZ:  They were handwritten.  Absolutely,
2    Judge.
3          THE COURT:  They seemed to be letters and statements.
4    I wouldn't typify them as reports.
5          MR. HOROWITZ:  Judge, what was contained also within
6    there is a lot of similar qualities as to some of the contents
7    of the letter not as to the actions of the Defendant, but
8    regarding what should be in that letter in order to get its
9    maximum impact.
10         We do not know whether they were advised by this RSO or
11   whatever law enforcement contacted the victims as to what to
12   place into the letter and what not to place into the letter.
13   That's the main concern, especially where we have 27 of the 45
14   who did not testify at trial for whatever the reason.
15         THE COURT:  I'm not sure I understand what your
16   position is, Mr. Horowitz.
17         MR. HOROWITZ:  Your Honor, also, they were not attested
18   to.  They were not sworn to.  The way the letters were crafted,
19   it is primarily to seek an increased punishment against
20   Mr. Carter and not have the actual impact to the victim.
21         I've read the letters, Judge.  I've gone through the
22   letters.  And there is --
23         THE COURT:  That's not the way that I read them.
24         MR. HOROWITZ:  Judge, we would just ask that the victim
25   impact statements not be considered by this Court in imposing
```

1    sentence.

2         THE COURT:  What's the Government's position?

3         MS. KANE:  18 USC 3771 ensures the rights of criminal

4    victims.

5         In this case, all the victims have the right to

6    reasonably be heard in any public proceeding, including

7    sentencings.  The victim impact statements are the means to

8    accomplish the statutory rights of the victims in this case.

9    It is a practice and a means that have been used, you know, in

10   criminal cases since long before 3771 existed.

11        Victim impact statements have been used in a number of

12   different cases, including child pornography cases, where the

13   victims are often individuals that the defendants have not even

14   met in person.  It's a very, very common means in which to

15   accomplish the statutory requirement that victims be given the

16   opportunity to be heard.

17        3771 also provides no requirements regarding what those

18   statements need to include or what they can't include.  It

19   merely states that the victims have a right to be reasonably

20   heard.  There are no limitations on the information that a

21   victim can provide to the Court.  It is their opportunity to

22   speak regarding the offense, how it's impacted them and

23   whatever else, whatever other information that the victim wants

24   to share with the Court regarding the Defendant, regarding the

25   offenses and how it has affected and impacted their life.

1          3771 also has no procedures or rules or requirements

2    regarding how these impact statements are collected or who can

3    collect them.

4          In a case like this, where we have foreign victims and

5    we have a large number of them, in this case the United States

6    relied on the law enforcement representative that is present in

7    Haiti, someone from the RSO's office, who merely collected

8    these letters from the victims and provided them to the

9    Government to be used here at sentencing.

10         I would also note to the extent that they are -- the

11   Defendant is making any argument under 3771, the CVRA, the

12   Defendant has no standing to assert any of the rights that --

13   or the supposed violations of 3771 that he's claiming.

14         Under 3771(d)(1), it's clear that, as stated in the

15   rule, a person accused of a crime may not obtain any form of

16   relief under this chapter.  To the extent that any of their

17   arguments are based upon 3771, their arguments should not be

18   considered.

19         The Defendant also made reference earlier to the issue

20   of wanting to have these victims either testify or be able to

21   confront them.

22         As is very clear in the Eleventh Circuit and every

23   other circuit as far as we are aware, the Defendant has no

24   rights to confrontation at sentencing.  Hearsay evidence is

25   admissible at sentencing.  The Defendant does not have a

1    confrontation clause right to confront these individuals

2    regarding their statement.

3          I would also add there is an argument to be made that

4    these statements are not evidence.  It's not evidence that's

5    being admitted against the Defendant; it's the means by which

6    these victims are being given the opportunity to be heard.

7    It's a means to effect the rights that they have under 3771.

8          And we believe that the statements are relevant, should

9    be considered by this Court.  And if these victim impact

10   statements are struck, the rights of these victims will be

11   affected; and that is something this Court needs to consider.

12         THE COURT:  Anything further, Mr. Horowitz?

13         MR. HOROWITZ:  Yes, your Honor.

14         Of course they're being offered as evidence against

15   Mr. Carter.  They're being used to increase Mr. Carter's

16   sentence to as much as the Government believes that they have a

17   right to ask against Mr. Carter.

18         The other thing that the Government is doing is

19   ignoring Subsection (d)(2), which says, "In a case where the

20   Court finds that the number of crime victims makes it

21   impractical to accord all the crime victims the rights

22   described, the Court shall fashion reasonable procedures to

23   give effect to this chapter and that does not unduly complicate

24   or prolong the proceedings."

25         The Government has not sought any type of Court

1   intervention.  They have literally gone and taken law

2   enforcement and sent law enforcement all over Haiti to get

3   these letters.

4           We were not afforded that opportunity to get the

5   mitigating evidence, but the Government has seen fit to use law

6   enforcement and embassy personnel in order to acquire this

7   evidence to increase Mr. Carter's sentence.  And we would

8   object to its use.

9           THE COURT:  I'm going to deny the motion to strike the

10  victim impact statements.

11          I find that pursuant to Title 18, United States Code,

12  Section 3771(a)(4), that victims have the right to be

13  reasonably heard at any public proceeding in the district court

14  involving relief, plea, sentencing or any parole proceeding;

15  that the Defendant does not have the right for relief pursuant

16  to 3771(d)(1).

17          I did review the letters.  They are letters written in

18  the hand and in the language and the verbiage of the victims.

19  I don't find that they were reports made by law enforcement

20  officers.  There's one or two -- maybe one or two of them are

21  from a parent or a relative.  But primarily, they are letters

22  from the victims of the abuse that this Defendant committed who

23  want to be heard.

24          Several of them requested that their letters be read in

25  open court, and I expect that the Government will comply with

80

```
 1   that request.  If you don't have it detailed, I do.  I tabbed
 2   those that indicate in the letter that they want to be heard.
 3   Victims have the right to be heard at sentencing.
 4        And I find specifically that the procedure that was
 5   utilized by the Government, where these victims are from a
 6   foreign country, most of whom are not able to travel here to be
 7   heard, that the procedure was fair and reasonable.
 8        And while it is not the only factor that the Court will
 9   consider at hearing, certainly victims' voices pursuant to the
10   Victims' Right Act is something that the Court should consider
11   at sentencing.
12        Nowhere in any of those letters was there a request for
13   an increase in sentence.  Certainly many of the victims spoke
14   to their desire for justice, their respect for the American
15   justice system and their desire to be heard.
16        And I will --
17        MR. ADELSTEIN:  May I ask --
18        THE COURT:  I will hear from the victims who wish to
19   speak.  I will hear the letters that the victims request be
20   read in open court.  And as I said, I have reviewed the victim
21   letters.  I find the procedure to be reasonable.  And
22   therefore, the motion is denied.
23        MR. ADELSTEIN:  May I ask a question about that?
24        THE COURT:  Yes.
25        MR. ADELSTEIN:  I'm not certain of the procedure that
```

```
 1      they -- the Government used to gather these letters.  I'm under

 2      the impression they asked law enforcement from Haiti to contact

 3      these victims and express their thoughts to the Court after the

 4      case was over.  Am I correct in that assumption?

 5              MS. MEDETIS:  No, your Honor.

 6              If I may have an opportunity to explain what the

 7      procedure was, I'm happy to do that.

 8              THE COURT:  Okay.

 9              MR. ADELSTEIN:  Thank you.

10              MS. MEDETIS:  After the verdict was rendered in this

11      case, I along with Special Agent Larko and other special agents

12      with Homeland Security went to Port-au-Prince, Haiti.

13              In advance of our trip, the agents notified former

14      residents of the Morning Star Center that we would be there in

15      an effort to enforce their rights to know about the proceedings

16      in this case under the CVRA, the Crime Victims' Rights Act.

17              We advised them what had happened at trial and we

18      advised them the next phase of the proceeding was a sentencing

19      hearing.  At that time, it was scheduled for May of 2013.

20              We also further explained their rights under the CVRA,

21      that they had a right to be heard.  We explained they couldn't

22      be guaranteed that they would be able to be brought to the

23      sentencing hearing and that a victim impact statement letter

24      would possibly be their main opportunity to address the Court.

25              We then stated that the victim impact statement can
```

1    contain whatever they feel the Court needs to hear, whatever

2    they want the Court to hear with respect to their experiences

3    at the Morning Star Center, good, bad or otherwise.

4         And as your Honor may recall from your Honor's review

5    of the victim impact statements, several victims of the

6    Defendant's crimes expressed gratitude to the Defendant for

7    whatever positive impact he may or may not have had on them,

8    whether it was providing shelter or food or an education.

9         Once we explained that to them, we explained that it

10   might be helpful for the Court to know their name, when they

11   were born, what years they were with the Defendant, to put

12   their experiences into context.

13        Because we were not able to be there because the

14   victims wanted more time to contemplate what they were going to

15   write in their victim impact statements, because, again, we

16   reinforced that they could include whatever information they

17   wanted to, we stated that -- we asked them to submit their

18   victim impact statements in a sealed envelope and drop it off

19   with Vicky McCorkel, who is an agent and under the RSO's office

20   at the embassy -- the US Embassy in Port-au-Prince, Haiti.

21        On that specific date and time, whoever submitted a

22   victim impact statement letter dropped it off to the embassy,

23   Vicky McCorkel collected them.  She unsealed the envelopes,

24   made photocopies and then mailed the originals to us, after

25   which time they were distributed to your Honor, Probation and

83

1    made available to the Defendant as early as July 16th.

2         MR. ADELSTEIN:  The reason I asked that is because they

3    want to Haiti because they had the funds and the authority to

4    go there.

5         We in fact filed an *ex parte* motion with the Court

6    requesting permission also to go to Haiti after the trial so

7    that we could produce mitigation that we thought was available.

8    The Court denied that motion.

9         Based on what the Government has just said, that they

10   went there after the trial was over, we are renewing that

11   request we made in the *ex parte* motion, to give us an

12   opportunity to go to Haiti to present our mitigation, because

13   we need the Court's permission.

14        MS. MEDETIS:  Your Honor, to be clear, we didn't go

15   there because we wanted to beef up whatever the sentencing

16   considerations were.  We went there because the Government has

17   an obligation and a responsibility and is statutorily obligated

18   to express to the victims what their rights are, including the

19   right to file a victim impact statement.

20        The Court may or may not wish to consider these

21   statements as part of its sentence.  The Government understands

22   that.  But the Government is trying to meet at a bare minimum

23   its obligation under the Crime Victims' Rights Act to effect

24   the rights of these victims.

25        To the extent this has become an aggravating or

1    mitigating debate, that's not where the Government is coming

2    from.  And we want to make that clear to the Court, that this

3    is about effecting the victims' rights.

4         And it's the Government's position that there is plenty

5    of information aside from the victim impact statements for the

6    Court to consider in fashioning its sentencing.

7         MR. ADELSTEIN:  And I'm not denying they have that

8    obligation.  But we also have an obligation to represent

9    Mr. Carter.  And we should be afforded the same opportunities

10   that they had.

11        Unfortunately, because we're court appointed, we need

12   the Court's permission.  They don't need anybody's permission

13   to go to Haiti.  We do.  We filed the motion requesting it.  We

14   did it in a timely fashion.  And it was denied.

15        Based upon what they did, I think what's good for the

16   goose is good for the gander, for lack of a better term.

17        THE COURT:  It's not exactly a legal standard,

18   Mr. Adelstein.

19        MR. ADELSTEIN:  We would at this time renew our

20   *ex parte* request.

21        THE COURT:  The defense filed a sealed request to

22   travel to Haiti, which I denied.  And in their motion, which

23   they filed to travel to Haiti, Docket Entry 274 -- and I unseal

24   it for purposes of this hearing, as it was brought up by

25   Mr. Adelstein.

1       It's important to note that before the start of trial,

2   after the jury was chosen, the Court provided and authorized

3   the funds for Mr. Adelstein and Mr. Horowitz and their

4   investigator to travel to Haiti to collect information and

5   investigate potential defenses from witnesses in Haiti, which

6   they did.  And trial was delayed so they could accomplish that.

7       In their motion, Docket Entry 274, they stated as

8   follows:  "During the course of the trial, the Defendant filed

9   two requests to take depositions pursuant to Rule 15 of the

10  Federal Rules of Criminal Procedure in order to preserve their

11  testimony for presentation before the jury.

12      "While the Court denied both requests as it pertained

13  to presentation for trial, it noted that the Defendant motion

14  outlined that, quote, 'Each one of these witnesses will testify

15  how the Defendant was an asset to the neighborhood and how he

16  and other residents of the Morning Star Center helped the

17  neighborhood both before and after the earthquake with

18  donations of food, clothing and medical supplies.'

19      "In addition, they will testify that, due to the

20  actions of Mr. Carter, many lives were saved both in the

21  neighborhood and the nearby tent city after the earthquake.

22      "While the Court found this testimony not material for

23  presentation at trial, it is clearly material on the issue of

24  punishment.  The Defendant, who was potentially facing a

25  lengthy punishment that may be tantamount to life imprisonment,

 1   is clearly entitled to present all the mitigating evidence that

 2   he has that bears on the issue of punishment.

 3          "Aside from the witnesses that were identified in the

 4   Rule 15 motion, while in Haiti, the defense team spoke with

 5   additional witnesses that were not chosen to be included within

 6   the Rule 15 request that could and are definitely willing to

 7   provide mitigating evidence to the Defendant to be utilized at

 8   sentencing.

 9          "The Defendant is entitled to present character

10   evidence and from the Haitian witnesses both listed and not

11   listed within the Rule 15 motion."

12          And I found that travel to Haiti by defense counsel and

13   their investigator was not necessary for the Defendant to

14   present the proposed mitigating evidence to the Court during

15   sentencing, that they had -- both defense counsel and their

16   investigator had previously traveled to Haiti during the trial

17   and spoken with witnesses who told counsel and the investigator

18   about the Defendant's donations of food, clothing and medical

19   supplies to individuals in the community and the Defendant's

20   actions in Haiti after the earthquake.

21          And then I indicated that defense counsel can present

22   this proposed mitigating evidence through the testimony of

23   their investigator, since hearsay is admissible at sentencing.

24          In addition, or in the alternative, defense counsel can

25   present this proposed mitigating evidence through letters or

1    affidavits of the witnesses in Haiti.

2         Furthermore, defense counsel may present this proposed

3    mitigating evidence by referring to testimony presented on

4    these issues during trial.

5         At trial, three former residents of the Morning Star

6    Center testified that the clinic provided medical care to the

7    neighbors after the earthquake.

8         On February 14th, 2013, W.M. testified on

9    cross-examination that he was working in the center's clinic

10   for Defendant on the day of and immediately following the

11   earthquake.

12        W.M. admitted that the clinic provided services free

13   for the neighborhood after the quake, that W.M., Defendant and

14   the other residents of the Morning Star helped the neighbors

15   who were injured, that they stitched up legs and arms from the

16   individuals that were injured from the earthquake, that they

17   gave them medicine, whatever medicine they had at the clinic,

18   and that the supplies for the clinic were mostly donated from

19   other organizations, but that the Defendant sometimes purchased

20   supplies for the clinic.

21        It then goes on to detail the testimony at trial of

22   S.M.D.J. about the people who received services from the clinic

23   after the earthquake, from J.M. about the medical treatment

24   that the Morning Star Center provided to people in the

25   neighborhood in the clinic and the giving out of extra food and

1    from Janet Knox, who testified that she observed the medical

2    clinic at the center and admitted that the clinic had a lot of

3    medical supplies.

4         I therefore find that there is sufficient alternative

5    means of presenting the proposed mitigating evidence at

6    sentencing, through letter, through affidavit and through the

7    trial testimony.

8         And I do not find that the presentation of the victims'

9    statements or the obligation of the Government to provide

10   information about the victims' statements negates the

11   Defendant's availability of presenting his mitigating evidence

12   at sentencing.

13        Defense counsel and their investigator went to Haiti.

14   They interviewed them.  Certainly they can present testimony

15   through the investigator if they wish to.  Nothing precludes

16   them from presenting letters or affidavits or referring to the

17   trial testimony.

18        So the renewed motion is denied.

19        We're going to end here, I think.

20        MS. MEDETIS:  Your Honor, if I may, based on the

21   Court's ruling to deny the motion to strike the victim impact

22   statements, the Government would renew its request to have the

23   victim impact statements referred to in Paragraph 120 of the

24   revised PSI and that the letters be made -- be attached to the

25   PSI and be made part of it.

```
 1              THE COURT:  I will order that Paragraph 120 of the
 2    revised advisory presentence investigation report be modified
 3    to reflect the victim impact statements, that they be appended
 4    to the revised advisory presentence investigation report.
 5              And I will adopt the factual findings and guideline
 6    applications as contained in the revised advisory presentence
 7    investigation report as modified at this hearing.
 8              Before going further, I would ask counsel to review
 9    with me the major calculations in the revised advisory
10    presentence investigation report as modified.
11              The offense level is 43; the criminal history category
12    is Roman numeral I; the advisory guideline range is life
13    imprisonment, five years to life on supervised release, $25,000
14    to $250,000 fine, restitution to be determined and $600 in
15    special assessments.
16              Is that correct in its totality?
17              MS. MEDETIS:  Yes, your Honor, from the Government.
18              MR. HOROWITZ:  Based on the Court's ruling, yes, your
19    Honor.
20              THE COURT:  Mr. Carter, you are in court today to
21    receive your sentence.  Before that happens, I must ask you if
22    there's any legal cause as to why the sentence of the law
23    should not be pronounced upon you.
24              Is there any legal cause, Mr. Horowitz?
25              MR. HOROWITZ:  No, your Honor.
```

```
 1              THE COURT:  All right.  So we are going to recess here.
 2    And no legal cause having been shown, we'll proceed with
 3    allocution, statements by the Defendant, any victim statements
 4    and allocution by the Government.
 5              Tomorrow morning, 9:30.
 6              MR. ADELSTEIN:  May I just ask the Court, I was
 7    scheduled to be in Broward State Court.  I'm going to tell them
 8    that I'm ordered here tomorrow morning.
 9              THE COURT:  That's fine.  You can tell them that.  It's
10    true.
11              MR. ADELSTEIN:  Thank you.
12              MR. HOROWITZ:  Judge, one quick housekeeping matter.  I
13    know you unsealed Docket Entry 274, which is the motion
14    ex parte.  I'd move that the order that the Court cited from be
15    unsealed as well.
16              THE COURT:  I hadn't unsealed anything other than what
17    you stated and what I stated.
18              Do you want the motion and the order to be unsealed
19    now?
20              MR. HOROWITZ:  So the record would be complete, yes,
21    your Honor.
22              THE COURT:  Any objection?  I take it no?
23              MS. MEDETIS:  No, your Honor.
24              But one more item, your Honor.
25              THE COURT:  Let me just order that the order, which is
```

```
 1    Docket Entry 285, and the motion, which is Docket Entry 274,
 2    are hereby unsealed as requested by the Defendant.
 3           MS. MEDETIS:  Similarly, to clarify the record, I am
 4    scheduled to board a plane tomorrow, your Honor.  But it's my
 5    understanding that I'm ordered to be here, just so that I could
 6    relay to the office so they understand the circumstances.
 7           THE COURT:  You may.  You are.
 8           MS. MEDETIS:  Thank you.
 9           THE COURT:  You ordered to be here.  You may relay that
10    to your office.
11           MS. MEDETIS:  Thank you, Judge.
12           MR. ADELSTEIN:  Thank you, Judge.
13           THE COURT:  9:30, tomorrow morning.
14           Thank you.  We're in recess for the day.
15           MR. HOROWITZ:  Thank you.
16           (Proceedings adjourned.)
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

    I hereby certify that the foregoing is an
accurate transcription of the proceedings in the
above-entitled matter.


                    /s/Lisa Edwards
_____        LISA EDWARDS, RDR, CRR
   DATE             Official United States Court Reporter
                    400 North Miami Avenue, Twelfth Floor
                    Miami, Florida 33128
                    (305) 523-5499

**$**

**$25,000** [1] - 89:13
**$250,000** [1] - 89:14
**$600** [1] - 89:14

**'**

**'70s** [1] - 71:9
**'Each** [1] - 85:14
**'makes** [1] - 60:9
**'plus'** [1] - 66:13
**'sufficient** [1] - 69:24
**'summit** [1] - 43:6

**/**

**/s/Lisa** [1] - 92:7

**1**

**1** [3] - 1:8, 50:15, 50:17
**1.3** [1] - 46:4
**10** [2] - 36:14, 59:1
**100** [2] - 26:1, 69:7
**101** [2] - 26:1, 69:7
**102** [2] - 26:1, 69:7
**103** [4] - 26:1, 69:7, 72:6, 72:9
**104** [5] - 26:1, 69:7, 71:18, 71:21, 72:5
**105** [3] - 26:1, 69:7, 71:18
**1054** [1] - 65:2
**1058** [1] - 65:5
**106** [3] - 26:2, 69:8, 71:18
**107** [3] - 26:2, 69:8, 71:19
**108** [3] - 26:3, 26:8, 69:8
**109** [3] - 26:3, 26:8, 69:8
**10:15** [1] - 1:6
**10:19** [1] - 4:7
**10:48** [1] - 4:7
**10:53** [1] - 8:4
**11** [3] - 33:22, 37:19, 38:2
**11-20350** [4] - 3:3, 4:11, 8:8, 54:15
**11-20350-CRIMINAL-LENARD** [1] - 1:2
**110** [3] - 26:3, 26:8, 69:8

**111** [3] - 26:3, 26:9, 69:8
**1111** [1] - 57:17
**112** [1] - 26:9
**113** [3] - 26:9, 57:17, 69:8
**114** [2] - 26:10, 69:8
**115** [3] - 24:12, 26:10, 69:8
**116** [2] - 26:11, 69:8
**117** [2] - 26:11, 69:8
**118** [6] - 21:5, 23:18, 23:24, 24:13, 24:19, 26:11
**119** [10] - 16:7, 16:10, 16:11, 16:13, 16:14, 18:13, 21:5, 26:12, 43:10, 43:12
**12** [3] - 39:15, 59:17, 74:5
**120** [3] - 45:8, 88:23, 89:1
**121** [6] - 54:5, 55:10, 55:18, 55:19, 55:25
**122** [3] - 54:5, 55:19, 55:25
**123** [3] - 54:5, 55:19, 56:1
**1252** [1] - 10:3
**1255** [1] - 10:4
**127** [11] - 45:18, 46:1, 47:12, 47:20, 48:18, 49:10, 49:14, 49:22, 50:7, 52:11, 52:20
**128** [3] - 48:19, 49:1, 51:17
**129** [1] - 48:14
**12:07** [1] - 8:4
**13** [2] - 40:12, 59:7
**1305** [2] - 31:9, 70:18
**1309** [2] - 31:9, 70:18
**1342** [1] - 70:19
**1347** [1] - 70:20
**1371** [1] - 70:14
**138** [1] - 48:14
**1380** [2] - 66:2, 66:19
**1382** [2] - 66:19
**14** [8] - 10:1, 34:17, 42:1, 59:22, 60:18, 67:21, 68:5, 74:5
**1400** [1] - 1:18
**14th** [1] - 87:8
**15** [8] - 14:7, 15:2, 15:25, 16:5, 85:9, 86:4, 86:6, 86:11
**16** [5] - 36:4, 38:4, 39:1, 58:5, 58:6
**16th** [1] - 83:1
**17** [7] - 10:4, 36:4,

36:13, 36:14, 37:7, 37:14, 67:21
**17-year-old** [2] - 38:5, 39:1
**174** [1] - 22:14
**18** [9] - 31:16, 58:1, 59:13, 69:9, 70:1, 73:7, 73:15, 76:3, 79:11
**1910** [1] - 1:24
**1970s** [3] - 19:8, 19:16, 20:24
**1980s** [4] - 19:16, 20:25, 27:9, 27:12
**1983** [1] - 72:3
**1990s** [2] - 19:17, 20:25
**1991** [1] - 10:3
**1993** [1] - 57:17
**1995** [3] - 14:20, 16:25, 34:2
**1996** [1] - 65:2
**1997** [2] - 38:3, 43:20
**1:45** [1] - 54:11
**1B1.3** [5] - 17:3, 18:1, 21:6, 21:23, 63:14

**2**

**2** [10] - 12:3, 14:6, 18:11, 19:25, 28:7, 63:4, 63:10, 66:11, 67:5, 67:8
**20** [3] - 4:6, 15:13, 18:5
**2001** [3] - 14:21, 26:7, 50:16
**2002** [1] - 57:18
**2003** [4] - 31:9, 43:19, 43:20, 70:18
**2005** [3] - 41:10, 64:24, 66:3
**2006** [1] - 70:19
**2008** [3] - 41:12, 41:15, 41:25
**2009** [2] - 10:5, 65:1
**2011** [3] - 10:2, 42:2, 64:23
**2012** [3] - 31:5, 66:2, 69:21
**2013** [3] - 1:5, 81:19, 87:8
**204** [1] - 71:16
**205** [1] - 28:16
**20530** [1] - 1:19
**21** [1] - 54:5
**23.1** [1] - 47:2
**23rd** [2] - 6:9, 6:10

**24** [3] - 18:14, 47:8, 51:22
**2423(b** [1] - 61:12
**25** [1] - 6:12
**25th** [1] - 6:19
**26** [5] - 16:7, 16:9, 37:18, 38:7, 38:24
**26th** [3] - 6:10, 6:13, 10:23
**27** [5] - 39:15, 48:24, 73:8, 73:15, 75:13
**274** [4] - 84:23, 85:7, 90:13, 91:1
**285** [1] - 91:1
**291** [4] - 12:4, 53:10, 57:18, 59:1
**292** [5] - 12:20, 30:10, 31:2, 56:24, 60:18
**2929** [1] - 1:21
**2:07** [1] - 54:11
**2A1.3** [1] - 46:3
**2A3.1** [22] - 45:24, 46:23, 46:24, 47:16, 47:17, 47:25, 48:2, 48:15, 49:2, 49:24, 49:25, 50:3, 50:5, 51:20, 52:13, 52:14, 52:16, 52:17, 52:21, 62:17, 62:19, 62:24
**2A3.1(a)(2)** [1] - 52:23
**2A3.2** [1] - 66:16
**2G** [1] - 49:6
**2G1.3** [15] - 45:22, 45:23, 46:3, 46:16, 46:18, 47:1, 47:14, 47:15, 47:23, 48:6, 48:16, 49:23, 51:21, 52:4, 62:21
**2nd** [1] - 50:16

**3**

**3** [4] - 66:11, 67:5, 67:8, 67:11
**30** [4] - 1:5, 18:12, 47:8, 51:22
**305** [2] - 2:5, 92:10
**32** [10] - 10:8, 10:13, 11:13, 19:24, 26:19, 26:20, 30:25, 31:21, 33:13, 33:14
**32(1)(d)(2)** [1] - 26:24
**32(d)(2** [2] - 28:6, 69:14
**32(d)(2)** [1] - 26:24
**32(g** [1] - 5:15

**32(l)(1)(a** [1] - 9:16
**322** [1] - 10:5
**323** [2] - 31:8, 70:17
**33** [3] - 18:15, 54:5, 55:15
**33128** [2] - 2:4, 92:9
**33129** [1] - 1:22
**33132** [1] - 1:16
**33156** [1] - 1:25
**34** [2] - 40:11, 54:5
**3553** [4] - 26:18, 31:7, 31:14, 32:12
**3553(a** [2] - 21:19, 40:3
**3553(a)** [2] - 39:4, 72:21
**3553(a)(1** [1] - 70:10
**3553(a)(1)** [1] - 70:9
**3553(a)(2** [1] - 70:1
**3661** [2] - 31:16, 69:9
**3771** [8] - 76:3, 76:10, 76:17, 77:1, 77:11, 77:13, 77:17, 78:7
**3771(a)(4** [1] - 79:12
**3771(d)(1** [1] - 77:14
**3771(d)(1)** [1] - 79:16
**3:15** [1] - 7:3
**3:45** [1] - 1:6
**3A1.1** [1] - 65:9
**3A1.1(a)(1** [1] - 63:4
**3A1.1(b** [1] - 60:13
**3C1.1** [3] - 53:21, 55:4, 58:17
**3D1.4** [1] - 66:16

**4**

**4** [3] - 13:23, 22:1, 74:11
**40** [3] - 27:5, 36:9, 65:21
**400** [2] - 2:3, 92:9
**404(b** [2] - 18:19, 19:4
**404(b)** [1] - 27:19
**404(b)-type** [1] - 18:20
**410** [1] - 1:22
**413** [4] - 18:19, 21:18, 24:8, 27:18
**414** [3] - 21:18, 24:8, 27:18
**414-type** [1] - 18:19
**416** [1] - 10:1
**417** [1] - 66:1
**427** [1] - 64:24
**43** [2] - 21:9, 89:11
**45** [5] - 6:18, 65:22,

73:5, 73:7, 75:13
**456** [3] - 31:4, 69:21,
70:19
**46** [2] - 27:17, 45:12
**471** [1] - 64:24
**4B1.1** [1] - 66:7
**4B1.5** [5] - 20:7,
20:13, 20:14, 20:16,
67:14
**4B1.5(b)(1** [2] - 66:5,
67:3

**5**

**5** [4] - 22:13, 66:10,
67:4, 67:7
**50** [1] - 65:22
**507** [1] - 57:16
**523-5499** [2] - 2:5,
92:10
**554** [1] - 65:1
**57** [1] - 64:23

**6**

**6** [3] - 12:20, 23:12,
53:9
**600** [1] - 1:18
**611** [1] - 70:14
**63** [4] - 15:13, 16:23,
17:20, 43:4
**631** [1] - 64:23
**64** [1] - 65:1
**65** [3] - 18:12, 41:9,
41:16
**665** [2] - 66:2, 66:19
**68** [3] - 41:18, 42:23,
42:24
**684** [1] - 10:5
**686-687** [1] - 10:6

**7**

**7** [10] - 14:7, 15:2,
15:25, 16:5, 16:7,
16:9, 16:19, 40:25,
41:1, 41:8
**710** [1] - 66:1
**715** [1] - 66:13
**72** [4] - 16:12, 43:9,
43:11, 43:16
**740** [1] - 64:23
**756** [2] - 57:18, 64:23
**77** [1] - 43:17
**79** [2] - 43:25, 44:13

**8**

**8** [12] - 14:7, 15:2,
15:25, 16:5, 16:7,
16:9, 16:19, 30:8,
31:3, 33:23, 53:12
**80** [2] - 44:19, 45:5
**82** [5] - 18:13, 21:5,
21:14, 23:18, 23:20
**83** [2] - 21:14, 23:20
**84** [4] - 23:24, 25:19,
69:6
**85** [2] - 25:19, 69:6
**86** [3] - 25:19, 65:2,
69:6
**87** [3] - 25:19, 57:16,
69:6
**873** [2] - 31:4, 69:21
**874** [1] - 69:23
**874-75** [1] - 31:5
**875** [1] - 69:23
**88** [2] - 25:19, 69:6
**89** [1] - 69:6

**9**

**9** [5] - 14:7, 15:2,
15:25, 16:5, 34:17
**90** [2] - 25:25, 69:6
**91** [2] - 25:25, 69:6
**9130** [1] - 1:24
**92** [2] - 25:25, 69:7
**93** [2] - 25:25, 69:7
**936** [1] - 10:3
**94** [2] - 26:1, 69:7
**95** [2] - 26:1, 69:7
**96** [2] - 26:1, 69:7
**97** [2] - 26:1, 69:7
**98** [2] - 26:1, 69:7
**99** [3] - 1:15, 26:1,
69:7
**9:30** [2] - 90:5, 91:13

**A**

**a.m** [4] - 1:6, 4:7, 4:8,
8:4
**able** [6] - 73:19,
73:25, 77:20, 80:6,
81:22, 82:13
**above-entitled** [1] -
92:5
**absent** [1] - 66:24
**absolute** [1] - 56:18
**absolutely** [5] - 7:16,
27:20, 29:10, 32:19,
75:1

**abuse** [22] - 16:25,
24:21, 35:17, 36:17,
38:4, 39:1, 40:7, 47:2,
47:3, 47:6, 47:7, 58:7,
64:12, 65:18, 65:23,
71:3, 71:4, 71:8,
71:10, 71:22, 72:15,
79:22
**abused** [2] - 36:5,
71:23
**abusing** [1] - 35:12,
41:20
**accept** [1] - 43:1
**acceptable** [3] -
12:15, 12:17, 42:25
**access** [1] - 73:20
**accomplish** [5] -
5:19, 70:6, 76:8,
76:15, 85:6
**accord** [1] - 78:21
**account** [2] - 30:12,
59:11, 59:15, 60:5,
70:21
**accountable** [1] -
63:14
**accounted** [3] - 61:8,
62:15, 62:18
**accurate** [1] - 92:4
**accurately** [2] -
13:23, 43:12
**accused** [1] - 77:15
**acquire** [1] - 79:6
**acquitted** [6] - 19:10,
20:25, 21:11, 33:7,
70:20, 72:12
**Act** [3] - 80:10,
81:16, 83:23
**actions** [1] - 75:7,
85:20, 86:20
**activities** [1] - 26:5
**activity** [4] - 20:15,
21:2, 57:2, 66:9
**actual** [1] - 75:20
**add** [4] - 23:6, 23:10,
50:25, 78:3
**added** [5] - 14:12,
26:19, 34:5, 38:24,
45:4
**addendum** [7] -
10:14, 10:16, 10:17,
10:21, 10:25, 11:7,
11:14
**addendums** [1] -
3:25
**adding** [1] - 36:19
**addition** [2] - 20:5,
20:7, 30:25, 60:7,
66:15, 85:19, 86:24
**additional** [14] -
14:12, 14:14, 15:8,

15:16, 18:2, 18:5,
23:15, 28:7, 32:23,
33:20, 40:17, 62:7,
62:8, 86:5
**additionally** [1] -
33:5
**address** [4] - 3:11,
30:10, 55:6, 81:24
**addressed** [2] -
43:10, 74:2
**addresses** [1] - 30:5
**ADELSTEIN** [48] -
1:20, 1:21, 3:14, 3:19,
5:22, 6:6, 6:8, 6:17,
6:23, 7:1, 7:4, 7:7,
7:11, 7:14, 7:18, 7:22,
8:2, 8:15, 8:25, 9:3,
9:6, 9:9, 9:13, 10:19,
10:23, 11:2, 11:9,
11:24, 12:1, 41:6,
42:5, 42:12, 42:15,
44:8, 44:23, 45:2,
52:1, 54:10, 80:17,
80:23, 80:25, 81:9,
83:2, 84:7, 84:19,
90:6, 90:11, 91:12
**Adelstein** [15] - 3:15,
4:19, 5:21, 6:3, 7:13,
7:21, 8:1, 8:16, 8:24,
9:17, 10:17, 54:22,
84:18, 84:25, 85:3
**adhere** [1] - 68:21
**adjourned** [1] -
91:16
**adjusted** [5] - 46:14,
46:21, 48:9, 49:8,
50:23
**adjustment** [1] - 55:9
**admissible** [2] -
77:25, 86:23
**admission** [1] -
27:13
**admit** [1] - 45:13
**admitted** [4] - 27:3,
78:5, 87:12, 88:2
**adopt** [3] - 72:23,
74:20, 89:5
**adult** [4] - 37:21,
37:22, 38:14, 38:25
**adults** [1] - 13:8
**advance** [2] - 65:7,
81:13
**advance-fee** [1] -
65:7
**advances** [1] - 64:9
**advised** [3] - 75:10,
81:17, 81:18
**adviser** [2] - 74:7,
74:11
**advisory** [36] - 3:24,

4:25, 5:9, 5:13, 5:24,
6:1, 6:4, 6:16, 9:1,
9:5, 9:8, 9:11, 9:20,
9:22, 9:24, 10:9,
10:18, 10:22, 10:25,
11:8, 11:14, 11:23,
18:9, 21:2, 22:5,
32:25, 37:7, 67:6,
69:5, 71:14, 72:24,
89:2, 89:4, 89:6, 89:9,
89:12
**Affairs** [1] - 74:13
**affect** [7] - 12:12,
17:25, 34:6, 39:3,
51:4, 58:19, 64:18
**affected** [3] - 51:1,
76:25, 78:11
**affecting** [2] - 28:11,
69:18
**affects** [3] - 29:8,
29:11, 39:2
**affidavit** [1] - 88:6
**affidavits** [2] - 87:1,
88:16
**afford** [2] - 13:9,
35:24
**afforded** [2] - 79:4,
84:9
**afraid** [1] - 44:17
**afternoon** [8] - 8:9,
8:11, 8:15, 8:22,
54:18, 54:21, 54:25,
55:2
**age** [9] - 21:1, 42:1,
58:1, 59:13, 59:17,
61:5, 63:7, 63:15,
63:18
**Agent** [1] - 81:11
**agent** [1] - 82:19
**Agents** [4] - 3:8,
4:16, 8:13, 54:20
**agents** [3] - 34:11,
81:11, 81:13
**aggravating** [1] -
83:25
**ago** [1] - 27:5
**agree** [4] - 13:17,
17:17, 53:18, 61:7
**agreed** [2] - 11:17,
55:11
**agrees** [4] - 17:23,
32:12, 53:14, 55:21
**ahead** [1] - 18:10
**aid** [1] - 31:12
**allegations** [2] -
56:7, 56:11
**allege** [1] - 73:11
**allocution** [2] - 90:3,
90:4
**allow** [1] - 24:9

3

**allowed** [1] - 38:13
**allowing** [1] - 25:3
**almost** [1] - 9:17
**alone** [4] - 59:17,
61:1, 61:3, 65:8
**alphabetically** [1] -
12:7
**alternative** [2] -
86:24, 88:4
**ambassador** [2] -
74:7, 74:11
**America** [4] - 3:2,
4:10, 8:7, 54:14
**AMERICA** [1] - 1:4
**American** [1] - 80:14
**ample** [1] - 5:15
**anal** [1] - 38:25
**anally** [1] - 37:24
**ANDREW** [1] - 1:7
**Andrew** [4] - 3:2,
4:11, 8:7, 54:15
**anus** [1] - 41:2
**anyhow** [1] - 43:8
**apart** [1] - 49:1
**apologize** [3] -
25:14, 51:25, 55:15
**appeal** [2] - 32:15,
32:16
**appearance** [1] -
8:21
**appearances** [4] -
3:5, 4:12, 8:9, 54:16
**APPEARANCES** [1] -
1:13
**appended** [1] - 89:3
**applicable** [4] -
20:19, 46:22, 48:22,
61:15
**Application** [1] -
63:10
**application** [3] -
61:12, 61:14, 67:11
**applications** [1] -
89:6
**applied** [8] - 46:3,
48:15, 48:17, 49:25,
52:5, 52:12, 59:4
**applies** [9] - 45:25,
47:16, 47:17, 48:1,
48:15, 51:20, 52:4,
66:8, 67:6
**apply** [8] - 32:2,
32:3, 48:22, 52:7,
52:21, 60:8, 61:17,
66:25
**appointed** [1] - 84:11
**appropriate** [11] -
22:19, 29:16, 30:1,
31:19, 32:11, 39:3,
40:3, 47:5, 57:6,

57:11, 69:14
**approximate** [1] -
42:1
**areas** [1] - 59:12
**argue** [3] - 15:1,
24:10, 61:20
**Arguedas** [2] - 65:2,
65:4
**ARGUEDAS** [1] -
65:2
**arguing** [1] - 29:3
**argument** [5] -
17:24, 56:4, 61:15,
77:11, 78:3
**arguments** [4] -
20:8, 74:20, 77:17
**arise** [1] - 24:3
**arm** [1] - 44:16
**arms** [1] - 87:15
**arrested** [2] - 19:10,
33:6
**arrests** [2] - 21:13,
71:16
**aside** [2] - 84:5, 86:3
**assert** [1] - 77:12
**asserted** [2] - 18:22,
27:4
**asserting** [1] - 67:2
**assessing** [1] -
70:10
**assessments** [1] -
89:15
**asset** [1] - 85:15
**ASSISTANT** [1] -
1:15
**assumption** [1] -
81:4
**assure** [1] - 5:19
**ate** [1] - 63:21
**attached** [2] - 45:14,
88:24
**attained** [1] - 59:16
**attempt** [4] - 42:16,
42:22, 42:24, 47:6
**attempted** [1] - 42:9
**attested** [1] - 75:17
**ATTORNEY** [1] -
1:15
**attorneys** [5] - 5:3,
5:6, 5:13, 9:21, 9:23
**au** [1] - 74:8, 81:12,
82:20
**aunts** [1] - 14:2
**authority** [7] - 9:25,
31:20, 32:9, 57:16,
64:22, 69:20, 83:3
**authorized** [1] - 85:2
**availability** [1] -
88:11
**available** [3] - 7:2,

83:1, 83:7
**Avenue** [4] - 1:18,
1:21, 2:3, 92:9
**avoid** [1] - 10:12
**aware** [5] - 13:22,
24:24, 34:6, 56:6,
77:23

**B**

**b)(1** [1] - 60:14
**b)(2** [1] - 60:14
**background** [5] -
31:17, 60:20, 69:11,
70:12, 74:13
**bad** [1] - 82:3
**bar** [1] - 36:18
**bare** [1] - 83:22
**base** [4] - 47:10,
51:21, 52:8, 52:22
**based** [21] - 9:16,
11:6, 11:12, 11:22,
21:25, 33:18, 50:3,
50:12, 50:13, 50:22,
51:16, 56:13, 61:10,
63:7, 63:9, 72:19,
77:17, 83:9, 84:15,
88:20, 89:18
**basis** [5] - 19:20,
51:16, 53:15, 61:1,
65:8
**bears** [1] - 86:2
**become** [1] - 83:25
**bed** [4] - 39:18, 40:1,
40:6, 40:9
**bedroom** [1] - 38:4
**beef** [1] - 83:15
**BEFORE** [1] - 1:10
**befriended** [1] -
24:23
**began** [4] - 39:18,
42:8, 43:18, 46:18
**beginning** [7] -
14:20, 16:25, 17:18,
27:16, 28:15, 41:25,
53:9
**begins** [1] - 38:3
**behalf** [13] - 3:7,
3:15, 3:21, 4:19, 4:23,
8:12, 8:16, 8:23, 34:5,
40:22, 54:19, 54:22,
55:1
**behavior** [2] - 28:12,
69:19
**believes** [2] - 29:16,
39:21, 78:16
**belong** [1] - 15:10
**better** [3] - 15:10,
40:13, 84:16

**between** [4] - 15:23,
17:1, 41:2, 42:13
**beyond** [4] - 56:17,
71:4, 71:11, 72:13
**bit** [2] - 26:20, 46:6
**Blackshaw** [2] -
25:20, 71:1
**block** [1] - 31:3
**board** [1] - 91:4
**Bonnie** [4] - 3:7,
4:15, 8:12, 54:19
**BONNIE** [1] - 1:17
**born** [1] - 82:11
**boss** [1] - 34:12
**bottom** [9] - 22:12,
36:13, 37:18, 38:2,
40:12, 41:1, 43:5,
44:1, 59:1
**Boulevard** [1] - 1:24
**boy** [1] - 37:20
**boys** [4] - 35:3, 36:6,
37:25, 38:13
**break** [2] - 4:4, 5:20
**briefly** [2] - 6:6, 15:6
**bring** [3] - 29:24,
39:8, 62:12
**British** [1] - 19:7
**broader** [1] - 27:18
**broke** [1] - 61:24
**brothers** [4] - 24:2,
24:20, 25:13, 70:25,
71:7
**brought** [6] - 24:17,
29:1, 29:2, 81:22,
84:24
**Broward** [1] - 90:7
**burden** [1] - 38:19
**BY** [1] - 2:2

**C**

**calculate** [3] - 32:13,
46:4, 62:17
**calculated** [8] -
45:19, 47:25, 48:18,
50:6, 52:13, 62:19,
62:21, 63:7
**calculating** [3] -
31:12, 31:13, 52:22
**calculation** [21] -
29:9, 38:21, 46:18,
47:13, 47:15, 49:5,
49:16, 49:22, 50:7,
50:9, 50:11, 50:12,
51:8, 51:19, 52:6,
52:7, 52:12, 61:8,
61:19, 62:6, 63:8
**calculations** [7] -
12:13, 46:9, 48:8,

60:6, 62:21, 66:15,
89:9
**candles** [2] - 37:25,
39:1
**candlesticks** [1] -
38:17
**cannot** [2] - 29:2,
36:21
**care** [9] - 13:9, 22:8,
35:12, 59:19, 61:7,
63:25, 64:1, 67:14,
87:6
**Carter** [90] - 3:2,
3:15, 3:23, 3:24, 4:11,
4:19, 4:25, 5:17, 6:1,
6:5, 6:10, 6:13, 7:21,
8:7, 8:16, 9:7, 9:11,
9:15, 9:19, 9:23,
10:21, 12:10, 12:16,
13:4, 13:13, 19:10,
22:25, 23:7, 23:14,
24:17, 24:23, 29:19,
33:19, 34:1, 34:2,
34:3, 34:8, 34:18,
35:23, 36:3, 36:5,
36:8, 36:16, 37:18,
37:20, 37:21, 37:24,
37:25, 38:4, 38:5,
38:24, 39:19, 39:20,
40:1, 40:10, 40:12,
40:13, 40:22, 41:19,
42:8, 42:9, 42:15,
42:23, 44:8, 44:15,
44:17, 44:18, 44:20,
44:23, 45:4, 53:13,
54:3, 54:4, 54:15,
54:22, 56:6, 56:11,
56:18, 56:19, 58:21,
59:20, 62:4, 68:10,
68:11, 75:20, 78:15,
78:17, 84:9, 85:20,
89:20
**CARTER** [1] - 1:7
**Carter's** [16] - 20:20,
22:20, 29:3, 29:22,
32:22, 36:23, 37:8,
38:4, 41:2, 55:13,
56:13, 59:15, 59:17,
60:2, 78:15, 79:7
**case** [51] - 12:13,
14:11, 18:24, 19:3,
20:12, 29:17, 30:4,
30:7, 30:16, 30:17,
30:22, 30:24, 32:6,
32:8, 32:14, 33:1,
33:2, 33:3, 33:7, 33:9,
33:11, 33:15, 47:16,
48:22, 49:4, 52:12,
56:5, 57:2, 57:5, 57:8,
57:11, 57:14, 57:21,

58:1, 61:10, 61:13, 62:14, 63:19, 64:16, 66:6, 66:12, 67:10, 73:5, 76:5, 76:8, 77:4, 77:5, 78:19, 81:4, 81:11, 81:16
**CASE** [1] - 1:2
**Case** [4] - 3:3, 4:11, 8:8, 54:15
**cases** [10] - 18:20, 57:4, 57:6, 61:3, 61:11, 61:12, 74:12, 76:10, 76:12
**category** [3] - 17:16, 19:18, 89:11
**cautionary** [2] - 19:1, 19:2
**caveat** [1] - 13:12
**Center** [13] - 3:10, 12:23, 13:11, 13:19, 16:25, 34:2, 58:7, 58:9, 81:14, 82:3, 85:16, 87:6, 87:24
**center** [22] - 12:11, 12:16, 13:3, 13:4, 13:6, 13:13, 13:16, 13:22, 13:24, 14:21, 21:6, 39:18, 41:10, 41:11, 41:21, 41:25, 42:2, 60:23, 64:8, 64:13, 65:13, 88:2
**center's** [1] - 87:9
**certain** [5] - 17:17, 25:16, 53:12, 57:25, 80:25
**certainly** [4] - 18:3, 80:9, 80:13, 88:14
**certify** [1] - 92:3
**change** [2] - 40:20, 68:9
**changed** [1] - 68:7
**changes** [1] - 34:8
**Channel** [1] - 38:14
**chapter** [2] - 77:16, 78:23
**Chapter** [1] - 67:11
**Chapters** [3] - 66:11, 67:5, 67:8
**character** [4] - 31:18, 69:11, 70:12, 86:9
**characteristics** [19] - 14:19, 20:2, 21:20, 24:11, 26:18, 26:21, 27:2, 27:14, 27:15, 27:17, 28:9, 28:15, 28:17, 30:13, 31:21, 33:15, 69:16, 70:8, 71:17
**charge** [1] - 19:6
**charged** [13] - 19:13,

19:14, 19:15, 19:20, 21:1, 28:18, 28:22, 28:23, 28:24, 29:4, 56:16, 57:3, 61:12
**charges** [12] - 21:10, 21:15, 24:1, 24:2, 24:14, 24:16, 25:20, 29:1, 32:17, 57:7, 59:13, 71:15
**charging** [1] - 14:22
**check** [3] - 22:13, 35:25, 71:24
**chief** [2] - 31:6, 70:16
**child** [1] - 76:12
**children** [8] - 13:5, 13:14, 13:25, 35:12, 36:17, 37:22, 56:14, 64:19
**chooses** [1] - 62:16
**chose** [1] - 50:21
**chosen** [2] - 85:2, 86:5
**Circuit** [23] - 10:2, 10:4, 10:6, 30:18, 31:5, 31:9, 57:19, 64:24, 64:25, 65:1, 65:3, 65:4, 66:2, 66:3, 66:12, 66:18, 67:9, 69:22, 70:15, 70:18, 70:20, 77:22
**circuit** [1] - 77:23
**circumcised** [1] - 40:13
**circumstances** [9] - 28:11, 43:12, 60:20, 61:1, 61:6, 64:17, 65:12, 69:18, 91:6
**citations** [1] - 56:25
**cite** [5] - 9:25, 31:1, 31:15, 33:9, 64:22
**cited** [4] - 30:25, 57:5, 61:24, 90:14
**cites** [3] - 31:16, 33:2, 61:2
**citing** [3] - 70:8, 70:13, 70:17
**city** [1] - 85:21
**claim** [1] - 67:2
**claimed** [1] - 36:16
**claiming** [1] - 77:13
**clarification** [1] - 48:3
**clarified** [1] - 46:7
**clarify** [5] - 10:11, 23:18, 49:21, 52:3, 91:3
**clarifying** [1] - 24:18
**clause** [3] - 32:2, 73:12, 78:1

**clear** [16] - 7:9, 13:2, 31:20, 32:9, 47:24, 48:13, 48:17, 49:10, 50:8, 51:7, 51:16, 64:12, 77:14, 77:22, 83:14, 84:2
**cleared** [1] - 7:20
**clearly** [6] - 57:2, 60:11, 63:6, 73:4, 85:23, 86:1
**client** [2] - 5:24, 20:20
**clinic** [10] - 87:6, 87:9, 87:12, 87:17, 87:18, 87:20, 87:22, 87:25, 88:2
**close** [1] - 62:3
**clothe** [1] - 63:24
**clothed** [1] - 65:17
**clothing** [5] - 64:10, 64:21, 65:15, 85:18, 86:18
**Code** [3] - 69:9, 70:1, 79:11
**collaterally** [1] - 10:12
**collect** [2] - 77:3, 85:4
**collected** [4] - 73:2, 77:2, 77:7, 82:23
**collectively** [1] - 18:16
**combined** [1] - 48:25
**coming** [1] - 84:1
**commence** [1] - 18:13
**commission** [4] - 66:14, 66:21, 66:25, 67:9
**commit** [2] - 47:7, 56:11
**committed** [2] - 14:22, 79:22
**common** [1] - 76:14
**commonly** [2] - 13:3, 13:12
**community** [1] - 86:19
**complete** [3] - 37:9, 67:21, 90:20
**completed** [1] - 7:9
**complicate** [1] - 78:23
**comply** [6] - 35:17, 44:2, 44:3, 44:15, 69:25, 79:25
**concede** [1] - 36:21
**concept** [1] - 14:10
**conceptually** [1] - 66:22

**concern** [1] - 75:13
**concerned** [4] - 14:11, 16:17, 22:18, 22:20
**concerning** [8] - 18:4, 24:18, 25:25, 26:4, 31:17, 36:17, 47:3, 69:11
**concerns** [1] - 66:22
**conclude** [1] - 56:2
**concludes** [1] - 53:1
**conclusion** [1] - 35:6
**condition** [3] - 28:11, 63:15, 69:18
**conditions** [5] - 60:25, 61:3, 61:9, 64:3, 64:5
**conduct** [75] - 14:18, 14:25, 15:5, 15:17, 16:13, 16:24, 17:2, 17:5, 17:7, 17:14, 17:18, 17:22, 17:24, 18:1, 18:8, 18:18, 19:5, 19:10, 19:12, 19:13, 19:19, 20:15, 20:25, 21:5, 21:9, 21:12, 21:13, 21:15, 21:17, 21:23, 22:10, 23:21, 23:24, 24:13, 24:15, 25:1, 25:7, 25:11, 26:4, 26:11, 26:12, 26:14, 26:18, 28:22, 28:23, 28:24, 28:25, 31:18, 32:17, 32:22, 32:24, 33:5, 42:9, 42:10, 43:19, 44:18, 59:22, 63:13, 63:16, 66:10, 68:17, 69:4, 69:11, 70:4, 70:5, 70:12, 70:20, 71:13, 71:15, 72:12, 72:16
**Conduct** [1] - 18:15
**confessed** [1] - 71:21
**confront** [3] - 73:12, 77:21, 78:1
**confrontation** [4] - 32:2, 73:12, 77:24, 78:1
**confused** [6] - 25:15, 26:20, 46:6, 47:1, 47:21, 52:1
**confuses** [1] - 48:18
**confusing** [1] - 15:23
**confusion** [1] - 58:15
**conjunction** [1] - 31:20
**consider** [12] - 21:17, 24:10, 34:14,

38:21, 69:13, 70:7, 70:11, 78:11, 80:9, 80:10, 83:20, 84:6
**considerations** [1] - 83:16
**considered** [9] - 21:19, 27:24, 32:11, 32:24, 46:25, 59:19, 75:25, 77:18, 78:9
**considering** [2] - 24:7, 62:23
**considers** [1] - 72:21
**consistent** [1] - 57:14
**constitute** [1] - 49:12
**constructed** [1] - 15:7
**consult** [1] - 5:16
**contact** [6] - 41:2, 56:14, 57:23, 57:24, 71:1, 81:2
**contacted** [2] - 72:2, 75:11
**contain** [4] - 20:1, 28:8, 69:15, 82:1
**contained** [12] - 18:18, 20:3, 25:7, 25:11, 27:14, 28:15, 28:19, 28:24, 51:21, 68:3, 69:5, 75:5, 89:6
**contains** [1] - 14:13
**contemplate** [1] - 82:14
**contemplated** [1] - 15:19
**contemplates** [1] - 10:13
**contents** [1] - 75:6
**contest** [2] - 32:21, 32:23
**contesting** [6] - 17:4, 17:6, 25:10, 33:1, 33:7, 59:3
**context** [1] - 82:12
**continuation** [1] - 55:3
**continue** [6] - 6:21, 7:3, 7:6, 10:10, 13:5, 18:14
**continued** [2] - 41:25, 42:1
**continuing** [1] - 6:22
**continuously** [1] - 41:20
**contradicted** [1] - 58:3
**contrary** [4] - 30:18, 35:9, 38:15, 66:24
**control** [1] - 59:20
**conversation** [1] -

33:18
**convicted** [5] - 28:4, 29:23, 30:14, 31:18, 69:12
**conviction** [7] - 21:23, 49:13, 50:12, 63:13, 66:7, 70:22, 72:20
**copy** [2] - 10:23, 68:25
**correct** [30] - 16:13, 16:20, 16:21, 22:12, 24:2, 29:9, 29:10, 42:19, 42:20, 44:11, 44:25, 45:1, 47:2, 47:4, 49:2, 49:3, 50:13, 50:14, 50:22, 51:6, 51:24, 53:7, 53:21, 53:23, 53:24, 59:4, 59:5, 71:25, 81:4, 89:16
**correctional** [2] - 28:13, 69:20
**corrections** [1] - 11:4
**correctly** [1] - 14:4
**counsel** [18] - 3:4, 3:16, 4:12, 4:20, 8:9, 9:19, 11:12, 42:13, 54:16, 69:1, 86:12, 86:15, 86:17, 86:21, 86:24, 87:2, 88:13, 89:8
**counsels'** [5] - 3:8, 4:17, 8:13, 54:20, 54:23
**count** [19] - 46:10, 46:12, 46:15, 46:25, 47:13, 47:18, 48:7, 48:8, 48:10, 48:15, 49:7, 49:13, 50:11, 50:12, 50:19, 51:19, 62:1, 62:7
**Count** [2] - 50:15, 50:17
**counterterrorism** [1] - 74:12
**counting** [5] - 20:18, 66:20, 67:2, 67:10, 67:15
**country** [1] - 80:6
**counts** [3] - 48:2, 56:16, 62:16
**County** [1] - 24:19
**couple** [2] - 17:14, 33:20, 41:18
**course** [3] - 68:16, 78:14, 85:8
**court** [13] - 31:6, 33:4, 66:3, 69:12,

69:24, 70:6, 70:11, 70:16, 79:13, 79:25, 80:20, 84:11, 89:20
**Court** [69] - 2:3, 3:9, 3:11, 4:20, 6:8, 12:14, 13:17, 19:2, 20:16, 20:22, 21:17, 21:20, 24:9, 24:25, 26:14, 26:16, 27:3, 27:25, 29:13, 29:14, 29:25, 31:13, 32:11, 33:10, 36:25, 45:13, 54:23, 56:5, 56:20, 57:17, 62:16, 66:16, 68:20, 72:8, 72:21, 72:23, 73:8, 73:10, 73:18, 75:25, 76:21, 76:24, 78:9, 78:11, 78:20, 78:22, 78:25, 80:8, 80:10, 81:3, 81:24, 82:1, 82:2, 82:10, 83:5, 83:8, 83:20, 84:2, 84:6, 85:2, 85:12, 85:22, 86:14, 90:6, 90:7, 90:14, 92:8
**COURT** [206] - 1:1, 3:1, 3:13, 3:18, 3:22, 4:4, 4:9, 4:24, 5:4, 5:7, 5:9, 5:12, 5:17, 5:23, 6:7, 6:15, 6:22, 6:24, 7:2, 7:5, 7:8, 7:12, 7:16, 7:20, 7:23, 7:25, 8:6, 8:20, 8:24, 9:1, 9:4, 9:7, 9:10, 9:16, 10:17, 10:21, 10:24, 11:6, 11:10, 11:12, 11:21, 11:25, 12:6, 12:18, 13:6, 13:22, 14:15, 15:12, 15:14, 15:21, 16:1, 16:9, 16:11, 16:13, 16:16, 16:19, 17:4, 17:23, 19:23, 21:4, 22:3, 22:7, 22:11, 22:15, 22:18, 23:2, 23:10, 23:22, 24:1, 24:5, 24:16, 25:2, 25:13, 25:18, 25:22, 25:24, 26:8, 26:25, 27:10, 27:18, 27:21, 28:5, 28:20, 28:22, 29:8, 30:3, 30:6, 30:24, 31:2, 33:11, 34:9, 34:13, 34:22, 35:25, 36:11, 36:15, 37:4, 37:14, 38:7, 38:10, 38:20, 39:8, 39:13, 39:24, 40:15, 40:23, 41:4, 41:7, 41:13, 41:15, 42:3,

42:6, 42:11, 42:18, 42:21, 43:2, 43:7, 43:14, 43:16, 43:22, 43:24, 44:7, 44:10, 44:13, 44:22, 44:25, 45:3, 45:16, 46:8, 46:19, 47:2, 47:5, 47:10, 47:19, 48:4, 48:11, 48:19, 48:24, 49:9, 49:12, 49:20, 50:2, 50:10, 50:21, 51:4, 51:11, 51:15, 52:7, 52:19, 53:2, 53:5, 53:14, 53:17, 53:20, 53:23, 53:25, 54:7, 54:13, 55:2, 55:14, 55:16, 55:21, 55:24, 56:22, 57:12, 57:15, 58:6, 59:3, 59:6, 60:15, 61:18, 62:6, 62:19, 62:25, 63:2, 67:16, 67:19, 67:23, 68:1, 68:24, 69:4, 71:24, 72:9, 74:21, 74:24, 75:3, 75:15, 75:23, 76:2, 78:12, 79:9, 80:18, 80:24, 81:8, 84:17, 84:21, 89:1, 89:20, 90:1, 90:9, 90:16, 90:22, 90:25, 91:7, 91:9, 91:13
**Court's** [9] - 24:24, 34:6, 35:4, 57:14, 67:13, 83:13, 84:12, 88:21, 89:18
**courtroom** [6] - 7:15, 7:16, 7:19, 7:20, 8:17, 33:19
**covered** [1] - 66:7
**crafted** [1] - 75:18
**credibility** [2] - 35:5, 37:1
**credible** [7] - 35:5, 37:5, 39:25, 40:19, 58:11, 71:12, 72:14
**credibly** [1] - 68:6
**Crime** [2] - 81:16, 83:23
**crime** [4] - 66:7, 77:15, 78:20, 78:21
**crimes** [2] - 14:21, 82:6
**Criminal** [4] - 10:7, 19:24, 20:4, 85:10
**criminal** [30] - 19:9, 19:13, 21:8, 21:12, 21:15, 23:21, 23:23, 24:13, 24:15, 24:25, 26:11, 28:10, 28:18,

32:17, 32:21, 47:6, 47:7, 57:7, 63:16, 67:21, 69:17, 70:4, 70:5, 71:15, 74:12, 76:3, 76:10, 89:11
**cross** [16] - 27:6, 27:9, 32:1, 34:25, 45:22, 45:25, 46:22, 47:3, 47:16, 48:1, 49:2, 50:2, 51:19, 51:20, 52:22, 87:9
**cross-examination** [3] - 27:6, 27:9, 87:9
**cross-examine** [1] - 32:1
**cross-examined** [1] - 34:25
**cross-reference** [11] - 45:22, 45:25, 46:22, 47:3, 47:16, 48:1, 49:2, 50:2, 51:19, 51:20, 52:22
**CRR** [2] - 2:2, 92:8
**Crystal** [1] - 25:25
**CULBERTSON** [1] - 2:1
**Culbertson** [4] - 3:21, 4:23, 8:23, 55:1
**cumulatively** [1] - 67:1
**current** [1] - 44:4
**custody** [2] - 59:20, 61:7
**CVRA** [3] - 77:11, 81:16, 81:20

# D

**d)(2** [1] - 78:19
**D.J.M** [1] - 71:7
**Dadeland** [1] - 1:24
**dangerous** [1] - 20:6
**date** [3] - 26:6, 43:20, 82:21
**DATE** [1] - 92:8
**days** [1] - 56:7
**DC** [1] - 1:19
**deal** [2] - 16:1, 55:13
**dealing** [2] - 16:2, 16:3
**deals** [1] - 59:8
**debate** [1] - 84:1
**decision** [14] - 10:2, 10:3, 10:5, 57:17, 57:18, 64:23, 64:25, 65:1, 65:3, 66:2, 69:21, 70:18, 70:19, 73:14
**defend** [1] - 56:18

**DEFENDANT** [7] - 1:20, 4:1, 5:2, 5:5, 5:8, 5:11, 5:14
**Defendant** [89] - 7:17, 9:20, 10:8, 10:13, 11:13, 11:16, 14:19, 17:23, 18:8, 20:14, 21:5, 21:20, 24:11, 27:14, 28:3, 31:22, 32:1, 32:15, 33:5, 35:8, 38:13, 40:7, 40:8, 41:4, 42:14, 42:23, 51:11, 53:2, 56:10, 57:3, 57:5, 57:8, 57:19, 58:8, 58:9, 58:11, 58:16, 59:21, 60:24, 61:11, 63:13, 64:2, 64:4, 64:7, 64:12, 64:19, 65:9, 65:12, 65:19, 65:24, 66:8, 67:1, 68:6, 68:8, 70:8, 71:1, 71:5, 71:8, 71:10, 71:21, 72:2, 72:18, 72:19, 73:10, 75:7, 76:24, 77:11, 77:12, 77:19, 77:23, 77:25, 78:5, 79:15, 79:22, 82:6, 82:11, 83:1, 85:8, 85:13, 85:15, 85:24, 86:7, 86:9, 86:13, 87:10, 87:13, 87:19, 90:3, 91:2
**defendant** [3] - 1:8, 56:10, 57:6
**Defendant's** [36] - 12:21, 18:6, 20:1, 20:11, 26:4, 26:17, 26:21, 27:2, 28:9, 28:10, 28:12, 30:9, 30:12, 33:15, 35:11, 35:20, 35:22, 38:16, 40:4, 40:17, 55:4, 55:7, 57:23, 59:10, 62:17, 63:19, 66:6, 69:16, 69:19, 70:5, 70:12, 82:6, 86:18, 86:19, 88:11
**defendants** [1] - 76:13
**defense** [11] - 9:19, 26:25, 32:7, 84:21, 86:4, 86:12, 86:15, 86:21, 86:24, 87:2, 88:13
**defenses** [1] - 85:5
**defer** [2] - 35:4, 46:5
**defined** [1] - 17:3
**definitely** [1] - 86:6

**definition** [3] - 13:10, 14:24, 74:9
**delayed** [1] - 85:6
**delete** [1] - 17:20
**deleted** [3] - 16:23, 32:10, 48:13
**demands** [1] - 35:17
**denial** [1] - 57:2
**denied** [11] - 14:5, 56:7, 56:11, 57:25, 58:9, 80:22, 83:8, 84:14, 84:22, 85:12, 88:18
**denies** [15] - 22:25, 23:7, 34:4, 36:8, 37:21, 37:25, 38:5, 38:25, 42:15, 42:23, 44:8, 44:18, 44:23, 45:4, 57:7
**deny** [5] - 18:6, 57:15, 63:5, 79:9, 88:21
**denying** [1] - 84:7
**Department** [4] - 3:21, 4:23, 8:23, 55:1
**DEPARTMENT** [1] - 1:17
**depositions** [1] - 85:9
**described** [2] - 52:11, 78:22
**describes** [2] - 13:18, 43:12
**desire** [2] - 80:14, 80:15
**destitute** [2] - 60:21, 63:20
**detail** [1] - 87:21
**detailed** [7] - 30:12, 58:7, 58:12, 63:10, 66:4, 71:7, 80:1
**details** [2] - 5:6, 13:16
**deter** [1] - 70:4
**determination** [6] - 35:4, 37:1, 39:3, 45:23, 46:2, 58:20
**determine** [5] - 45:25, 47:12, 47:14, 47:15, 49:23
**determined** [8] - 11:7, 24:6, 49:1, 49:24, 66:11, 67:5, 67:7, 89:14
**determines** [3] - 26:14, 26:16, 45:13
**difference** [1] - 40:3
**different** [4] - 43:10, 52:15, 74:5, 76:12
**dire** [3] - 64:4, 64:17,

65:12
**directed** [1] - 46:22
**direction** [1] - 66:24
**directly** [1] - 58:3
**discuss** [3] - 4:5, 6:3, 6:15
**discussed** [7] - 6:17, 9:10, 9:23, 10:20, 11:4, 18:4
**discussion** [1] - 42:13
**discussions** [1] - 11:6
**dismissed** [1] - 32:18
**distinction** [3] - 16:22, 17:1, 17:21
**distributed** [1] - 82:25
**DISTRICT** [3] - 1:1, 1:1, 1:11
**district** [7] - 31:6, 33:4, 69:23, 70:6, 70:10, 70:16, 79:13
**division** [1] - 17:21
**DIVISION** [1] - 1:2
**Docket** [12] - 12:3, 12:20, 30:10, 53:9, 56:24, 59:1, 60:17, 84:23, 85:7, 90:13, 91:1
**document** [1] - 69:1
**donated** [1] - 87:18
**donations** [2] - 85:18, 86:18
**done** [6] - 28:1, 40:17, 49:5, 49:23, 61:22, 62:21
**door** [1] - 38:3
**double** [6] - 20:18, 22:13, 66:20, 67:2, 67:10, 67:15
**double-check** [1] - 22:13
**double-counting** [5] - 20:18, 66:20, 67:2, 67:10, 67:15
**doubt** [4] - 56:17, 71:4, 71:11, 72:14
**down** [6] - 22:21, 33:25, 37:19, 37:23, 39:16, 51:5
**drop** [1] - 82:18
**dropped** [2] - 32:18, 82:22
**due** [3] - 58:15, 63:15, 85:19
**Dunnigan** [5] - 56:5, 57:5, 57:14, 57:16, 58:13

during [10] - 10:24, 12:25, 14:22, 18:21, 56:9, 66:20, 85:8, 86:14, 86:16, 87:4

## E

**early** [4] - 19:17, 27:8, 27:12, 83:1
**earthquake** [7] - 85:17, 85:21, 86:20, 87:7, 87:11, 87:16, 87:23
**easier** [1] - 12:2
**eat** [2] - 53:3
**economic** [6] - 60:25, 64:1, 64:3, 64:5, 64:17, 65:12
**economically** [1] - 65:15
**educated** [1] - 65:17
**education** [4] - 63:22, 63:23, 64:20, 82:8
**EDWARDS** [2] - 2:2, 92:8
**Edwards** [1] - 92:7
**effect** [4] - 50:24, 78:7, 78:23, 83:23
**effecting** [1] - 84:3
**effort** [1] - 81:15
**Egypt** [3] - 19:8, 36:6, 36:24
**eight** [1] - 59:18
**either** [3] - 33:6, 46:7, 77:20
**Eleventh** [18] - 10:2, 10:3, 10:6, 30:17, 31:5, 31:9, 31:9, 65:3, 65:4, 66:2, 66:18, 67:9, 69:22, 70:15, 70:18, 70:20, 77:22
**elsewhere** [1] - 63:7
**Embassy** [3] - 74:8, 74:10, 82:20
**embassy** [3] - 79:6, 82:20, 82:22
**empowered** [1] - 70:7
**encompassed** [2] - 33:1, 59:24
**end** [4] - 44:1, 44:16, 50:24, 88:19
**enforce** [1] - 81:15
**enforcement** [11] - 73:2, 74:6, 74:14, 74:17, 75:11, 77:6, 79:2, 79:6, 79:19,

81:2
**enforcement-related** [1] - 74:14
**engage** [3] - 35:16, 42:10, 59:21
**engaged** [2] - 20:14, 66:9
**engaging** [2] - 42:8, 43:18
**England** [3] - 21:10, 24:20, 25:20
**enhanced** [1] - 59:16
**enhancement** [17] - 20:6, 20:11, 20:14, 53:7, 56:24, 57:4, 57:6, 57:10, 58:22, 60:18, 61:2, 61:4, 61:13, 61:14, 61:17, 65:9, 66:15
**enhancements** [1] - 60:13
**enjoy** [1] - 40:13
**ensures** [1] - 76:3
**enter** [1] - 52:20
**entertain** [1] - 64:13
**entire** [2] - 18:17, 42:16
**entirely** [1] - 25:17
**entirety** [2] - 5:25, 6:2
**entitled** [4] - 48:7, 86:1, 86:9, 92:5
**entrusted** [1] - 64:19
**Entry** [12] - 12:3, 12:20, 30:10, 53:10, 56:24, 59:1, 60:18, 84:23, 85:7, 90:13, 91:1
**envelope** [1] - 82:18
**envelopes** [2] - 74:1, 82:23
**error** [5] - 32:16, 33:4, 41:11, 43:4, 66:17
**errors** [1] - 39:11
**especially** [1] - 75:13
**ESQ** [4] - 1:14, 1:17, 1:20, 1:23
**essence** [1] - 24:20
**essentially** [2] - 12:22, 60:22
**events** [8] - 18:4, 19:8, 19:16, 27:5, 27:11, 29:7, 31:18
**Evidence** [1] - 32:3
**evidence** [26] - 18:19, 18:20, 18:24, 19:4, 36:10, 58:18, 70:23, 71:3, 71:11, 72:13, 73:19, 77:24,

78:4, 78:14, 79:5, 79:7, 86:1, 86:7, 86:10, 86:14, 86:22, 86:25, 87:3, 88:5, 88:11
**ex** [4] - 83:5, 83:11, 84:20, 90:14
**exactly** [5] - 29:14, 50:4, 65:11, 67:5, 84:17
**examination** [3] - 27:6, 27:9, 87:9
**examine** [1] - 32:1
**examined** [1] - 34:25
**example** [3] - 27:8, 49:19, 50:16
**except** [2] - 7:20, 25:13
**excise** [1] - 30:16
**excising** [1] - 30:23
**excuse** [1] - 26:24
**exist** [1] - 64:5
**existed** [3] - 64:5, 64:6, 76:10
**expect** [1] - 79:25
**experiences** [2] - 82:2, 82:12
**explain** [2] - 49:18, 81:6
**explained** [4] - 81:20, 81:21, 82:9
**exploited** [1] - 64:7
**exposure** [1] - 29:3
**express** [2] - 81:3, 83:18
**expressed** [2] - 82:6
**extensive** [1] - 57:22
**extent** [5] - 26:14, 26:16, 77:10, 77:16, 83:25
**extra** [2] - 68:25, 87:25
**extraditions** [1] - 74:12

## F

**F.2d** [1] - 10:3
**F.3d** [12] - 31:8, 57:18, 64:23, 64:24, 65:1, 65:2, 66:1, 66:2, 66:19, 70:14, 70:17, 70:19
**F.Appendix** [4] - 10:1, 10:5, 31:4, 69:21
**facility** [3] - 13:7, 13:16, 13:24
**facing** [1] - 85:24

7

**fact** [17] - 6:8, 12:24, 13:2, 15:20, 20:19, 21:13, 30:15, 33:12, 34:11, 35:3, 46:9, 60:19, 61:6, 71:20, 71:22, 72:2, 83:5

**factor** [5] - 59:17, 60:8, 62:22, 66:20, 80:8

**factored** [1] - 59:25

**factors** [2] - 61:7, 70:8

**facts** [5] - 25:10, 39:23, 58:18, 72:7, 72:20

**factual** [7] - 11:18, 23:15, 33:20, 37:17, 40:22, 68:14, 89:5

**factually** [1] - 20:19

**fair** [1] - 80:7

**false** [2] - 57:19, 58:13, 58:14

**familiar** [2] - 13:4, 13:13

**families** [4] - 13:8, 63:25, 64:16, 64:18

**family** [2] - 60:21, 60:25

**far** [8] - 14:11, 16:17, 21:8, 28:2, 28:14, 28:18, 33:25, 77:23

**fashion** [2] - 78:22, 84:14

**fashioning** [3] - 31:13, 32:11, 84:6

**faulty** [1] - 58:15

**Faust** [1] - 70:19

**favor** [1] - 35:17

**February** [1] - 87:8

**fed** [1] - 65:18

**Federal** [2] - 10:7, 85:10

**fee** [1] - 65:7

**few** [4] - 5:6, 30:10, 39:10, 43:3

**Fifth** [1] - 64:23

**file** [1] - 83:19

**filed** [7] - 11:16, 30:20, 83:5, 84:13, 84:21, 84:23, 85:8

**final** [1] - 40:10

**finally** [1] - 45:18

**financial** [7] - 28:10, 61:3, 61:9, 65:6, 65:8, 69:17

**findings** [2] - 57:14, 89:5

**fine** [4] - 23:10, 48:20, 89:14, 90:9

**finish** [2] - 7:3, 7:5

**fired** [3] - 34:1, 34:4, 34:11

**first** [18] - 13:17, 32:15, 33:3, 33:16, 33:22, 36:24, 39:13, 44:3, 44:6, 44:14, 44:15, 47:14, 55:9, 55:10, 55:12, 55:18, 55:24, 63:6

**fit** [1] - 79:5

**five** [7] - 20:17, 51:1, 61:23, 62:4, 62:8, 66:4, 89:13

**five-level** [4] - 20:17, 61:23, 62:8, 66:4

**flattering** [1] - 31:23

**Floor** [2] - 2:4, 92:9

**Flores** [4] - 3:8, 4:16, 8:13, 54:20

**FLORIDA** [1] - 1:1

**Florida** [8] - 1:4, 1:16, 1:22, 1:25, 2:4, 24:14, 92:9

**focused** [1] - 29:23

**foisted** [2] - 40:8, 58:8

**follow** [1] - 29:18

**following** [9] - 4:8, 8:5, 20:1, 28:8, 41:23, 47:19, 54:12, 69:15, 87:10

**follows** [4] - 12:22, 21:7, 63:11, 85:8

**food** [2] - 13:7, 64:10, 64:21, 65:15, 82:8, 85:18, 86:18, 87:25

**footnote** [1] - 52:20

**FOR** [3] - 1:14, 1:20, 2:1

**force** [1] - 44:5

**foregoing** [1] - 92:3

**foreign** [2] - 77:4, 80:6

**foreseeability** [1] - 14:11

**forgive** [1] - 72:3

**forgiveness** [1] - 71:23

**form** [1] - 77:15

**former** [4] - 3:10, 34:12, 81:13, 87:5

**forth** [3] - 31:7, 61:2, 74:10

**forward** [4] - 5:18, 11:22, 72:1, 73:13

**four** [5] - 3:9, 33:25, 58:12, 60:3, 63:2

**four-level** [1] - 63:2

**four-part** [1] - 58:12

**Fourth** [1] - 1:15

**framework** [1] - 32:25

**frankly** [1] - 40:1

**fraudulent** [1] - 65:6

**free** [4] - 29:15, 70:11, 73:20, 87:12

**Friday** [1] - 4:2

**full** [4] - 4:3, 5:5, 30:11, 56:7

**fully** [2] - 56:25, 60:19

**funds** [3] - 34:20, 83:3, 85:3

**furthermore** [1] - 87:2

**future** [1] - 70:5

# G

**gander** [1] - 84:16

**Gaona** [2] - 10:1, 10:4

**Gaona-Ibarrola** [2] - 10:1, 10:4

**GAONAIBARROLA** [1] - 10:1

**gather** [1] - 81:1

**gathered** [4] - 73:5, 73:16, 73:22, 74:19

**girl** [2] - 38:5, 39:2

**given** [10] - 5:15, 9:19, 40:4, 52:17, 57:20, 58:23, 61:23, 73:3, 76:15, 78:6

**Gomez** [2] - 31:8, 70:17

**goose** [1] - 84:16

**Government** [48] - 11:17, 15:14, 23:18, 27:1, 27:12, 28:25, 29:2, 29:12, 29:16, 29:24, 32:12, 33:2, 35:2, 37:13, 38:18, 39:10, 47:1, 52:24, 53:14, 53:16, 55:11, 55:21, 61:25, 65:22, 70:22, 71:2, 71:6, 71:9, 72:11, 73:14, 73:20, 77:9, 78:16, 78:18, 78:25, 79:5, 79:25, 80:5, 81:1, 83:9, 83:16, 83:21, 83:22, 84:1, 88:9, 88:22, 89:17, 90:4

**GOVERNMENT** [1] - 1:14

**Government's** [21] - 12:18, 12:21, 14:15,

14:17, 16:24, 17:19, 17:22, 18:21, 23:19, 28:5, 30:9, 33:9, 34:22, 38:10, 42:22, 46:6, 47:17, 47:21, 53:20, 76:2, 84:4

**grabbed** [1] - 44:15

**grant** [2] - 21:4, 42:21

**granted** [5] - 21:7, 42:6, 43:7, 43:24, 61:23

**gratitude** [1] - 82:6

**greater** [2] - 48:16, 69:25

**group** [2] - 49:14, 52:17

**grouped** [1] - 62:16

**grouping** [19] - 48:20, 48:21, 48:25, 50:11, 50:25, 51:16, 51:18, 52:4, 52:5, 52:9, 52:10, 52:11, 52:15, 61:21, 61:23, 62:4, 62:9, 62:13

**groups** [2] - 50:16, 52:16

**guaranteed** [1] - 81:22

**guess** [1] - 26:19

**guidance** [1] - 48:24

**guideline** [20] - 12:12, 17:25, 29:9, 34:7, 46:4, 47:5, 47:15, 47:25, 48:15, 48:17, 48:23, 49:24, 50:1, 60:6, 61:8, 62:23, 63:8, 66:8, 89:5, 89:12

**guidelines** [30] - 14:23, 17:3, 18:9, 20:21, 20:23, 29:11, 31:12, 31:14, 32:13, 32:25, 38:22, 39:2, 45:19, 45:24, 51:9, 52:13, 59:4, 59:12, 59:14, 59:16, 59:17, 60:10, 60:12, 62:2, 62:17, 62:20, 66:5, 66:22, 68:21

**guiding** [1] - 72:7

**guilt** [2] - 29:6

**guilty** [1] - 56:16

**guise** [1] - 20:24

# H

**Haiti** [29] - 26:5, 36:6, 56:9, 58:10,

63:23, 64:4, 64:6, 64:18, 73:19, 74:10, 77:7, 79:2, 81:2, 81:12, 82:20, 83:3, 83:6, 83:12, 84:13, 84:22, 84:23, 85:4, 85:5, 86:4, 86:12, 86:16, 86:20, 87:1, 88:13

**Haitian** [2] - 13:8, 86:10

**Haitians** [1] - 64:4

**half** [2] - 9:18

**Hall** [7] - 31:4, 31:8, 31:15, 32:14, 33:2, 33:3, 69:21

**hand** [5] - 19:6, 35:15, 39:16, 74:25, 79:18

**handed** [1] - 68:18

**handled** [1] - 51:18

**hands** [2] - 65:19, 65:23

**handwritten** [1] - 75:1

**happy** [1] - 81:7

**hardship** [1] - 64:1

**harm** [1] - 49:13

**harms** [1] - 50:13

**Haven** [4] - 19:8, 24:14, 24:16, 24:18

**heading** [2] - 17:20, 18:15

**hear** [9] - 21:18, 39:13, 71:19, 73:9, 73:10, 80:18, 80:19, 82:1, 82:2

**heard** [19] - 11:25, 18:25, 19:7, 19:22, 21:21, 72:25, 73:8, 76:6, 76:16, 76:20, 78:6, 79:13, 79:23, 80:2, 80:3, 80:7, 80:15, 81:21

**HEARING** [1] - 1:10

**hearing** [6] - 10:10, 80:9, 81:19, 81:23, 84:24, 89:7

**hearsay** [2] - 77:24, 86:23

**heart** [1] - 35:11

**held** [2] - 13:21, 65:5

**help** [3] - 31:6, 32:13, 70:16

**helped** [2] - 85:16, 87:14

**helpful** [4] - 28:12, 30:6, 69:19, 82:10

**hereby** [1] - 91:2, 92:3

**high** [1] - 51:5
**higher** [1] - 45:24
**highest** [7] - 46:14, 46:21, 48:9, 49:8, 49:15, 50:6, 50:23
**himself** [1] - 56:18
**history** [24] - 14:19, 19:9, 19:13, 20:2, 20:11, 21:20, 24:11, 26:17, 26:21, 27:2, 27:14, 27:15, 28:9, 28:14, 28:16, 30:12, 31:21, 35:20, 35:22, 37:9, 67:22, 69:16, 70:7, 89:11
**hit** [1] - 44:20
**hitting** [1] - 45:4
**home** [2] - 25:20, 71:1
**Homeland** [3] - 4:16, 8:14, 81:12
**Honor** [126] - 3:6, 3:14, 3:20, 4:14, 4:18, 4:22, 6:6, 6:20, 7:14, 8:2, 8:11, 8:15, 8:22, 9:6, 10:11, 10:14, 10:15, 10:16, 11:11, 12:1, 12:19, 14:17, 15:6, 15:18, 15:22, 16:12, 18:11, 19:22, 21:25, 23:3, 23:8, 24:4, 25:12, 25:14, 26:7, 26:13, 26:23, 26:24, 27:1, 30:4, 30:8, 31:1, 31:10, 32:20, 34:10, 34:16, 34:23, 35:10, 36:2, 36:12, 36:21, 37:12, 38:9, 38:11, 39:7, 39:22, 40:21, 40:24, 41:6, 41:14, 41:17, 42:5, 42:25, 43:3, 43:9, 43:10, 43:15, 43:17, 43:23, 43:25, 44:12, 44:19, 45:7, 45:10, 45:18, 45:20, 46:11, 48:5, 48:12, 48:21, 49:3, 49:11, 49:17, 49:21, 51:7, 52:25, 53:4, 53:8, 53:18, 53:22, 54:18, 54:21, 54:25, 55:8, 55:15, 55:22, 56:4, 56:6, 56:23, 57:13, 59:5, 60:16, 61:20, 62:11, 62:20, 63:1, 68:19, 68:23, 69:3, 71:20, 72:6, 73:16, 75:17, 78:13, 81:5, 82:4, 82:25, 83:14,

88:20, 89:17, 89:19, 89:25, 90:21, 90:23, 90:24, 91:4
**Honor's** [3] - 9:13, 21:25, 82:4
**HONORABLE** [1] - 1:10
**Hope** [4] - 3:17, 4:21, 8:18, 54:24
**HOROWITZ** [88] - 1:23, 4:18, 8:3, 12:2, 12:7, 13:17, 14:6, 15:6, 15:13, 16:14, 17:6, 18:11, 20:13, 21:25, 22:4, 22:8, 22:12, 22:17, 22:20, 23:5, 23:11, 24:24, 25:12, 25:21, 27:1, 27:11, 27:20, 27:22, 28:14, 28:21, 28:23, 29:10, 32:14, 33:18, 34:16, 35:14, 35:21, 36:2, 36:12, 37:12, 37:17, 38:9, 39:6, 39:15, 40:10, 40:21, 41:5, 41:14, 42:4, 42:25, 43:15, 43:23, 51:13, 53:4, 53:8, 53:16, 53:18, 54:2, 54:9, 54:21, 55:8, 55:15, 55:18, 56:4, 57:13, 58:25, 59:5, 59:7, 61:20, 62:8, 63:1, 67:13, 67:17, 67:20, 67:24, 68:23, 73:1, 74:23, 75:1, 75:5, 75:17, 75:24, 78:13, 89:18, 89:25, 90:12, 90:20, 91:15
**Horowitz** [25] - 3:15, 4:19, 6:3, 7:21, 8:16, 9:4, 9:10, 10:19, 18:10, 30:15, 33:17, 37:11, 39:5, 39:13, 54:22, 55:6, 57:12, 61:18, 62:25, 67:12, 72:25, 75:16, 78:12, 85:3, 89:24
**horrendous** [1] - 60:20
**hour** [4] - 5:20, 7:12, 9:18
**housekeeping** [1] - 90:12
**housing** [2] - 24:22, 71:8
**hungry** [2] - 60:21, 63:20

**I**

**I.F** [3] - 37:24, 38:4, 38:7
**I.M** [4] - 71:7, 71:22, 71:23, 72:2
**Ibarrola** [2] - 10:1, 10:4
**identical** [1] - 15:3
**identified** [3] - 18:7, 65:23, 86:3
**ignoring** [1] - 78:19
**ii** [1] - 69:17
**iii** [1] - 69:18
**illicit** [3] - 42:8, 42:10, 43:19
**immediately** [2] - 39:18, 87:10
**impact** [33] - 6:12, 6:18, 17:10, 45:8, 45:9, 45:11, 45:14, 68:3, 68:15, 70:10, 72:22, 73:1, 74:18, 75:9, 75:20, 75:25, 76:7, 76:11, 77:2, 78:9, 79:10, 81:23, 81:25, 82:5, 82:7, 82:15, 82:18, 82:22, 83:19, 84:5, 88:21, 88:23, 89:3
**impacted** [2] - 76:22, 76:25
**important** [2] - 32:5, 85:1
**impose** [1] - 69:24
**imposed** [2] - 27:25, 66:15
**imposing** [6] - 28:12, 31:19, 69:13, 69:19, 70:12, 75:25
**impractical** [1] - 78:21
**impression** [2] - 44:5, 81:2
**imprisonment** [2] - 85:25, 89:13
**inaccurate** [1] - 41:20
**inaccurately** [1] - 41:19
**inappropriate** [2] - 21:1, 56:14
**incidences** [1] - 24:25
**incident** [2] - 68:10, 68:11
**incidents** [1] - 38:17
**inclined** [2] - 3:11, 12:14

**include** [8] - 10:15, 21:2, 26:21, 73:4, 76:18, 82:16
**included** [18] - 14:25, 17:18, 18:21, 20:5, 21:11, 21:22, 24:5, 33:13, 33:14, 35:7, 38:14, 57:1, 60:14, 71:13, 72:5, 72:9, 72:16, 86:5
**including** [12] - 18:14, 28:9, 56:25, 57:4, 61:6, 61:10, 69:16, 70:1, 72:10, 76:6, 76:12, 83:18
**incorporate** [1] - 20:8
**incorporated** [2] - 60:9, 60:11
**increase** [14] - 20:17, 29:3, 53:21, 55:4, 59:20, 60:2, 61:23, 62:3, 62:9, 63:2, 66:4, 78:15, 79:7, 80:13
**increased** [1] - 75:19
**increases** [2] - 59:17, 59:24
**indicate** [5] - 24:6, 36:20, 37:8, 52:21, 80:2
**indicated** [3] - 46:12, 61:25, 86:21
**indicates** [2] - 51:17, 66:13
**indictment** [4] - 26:6, 56:17, 59:12, 64:6
**individual** [3] - 46:25, 48:2, 51:19
**individually** [3] - 18:16, 50:1, 52:18
**individuals** [5] - 15:1, 76:13, 78:1, 86:19, 87:16
**influence** [1] - 58:19
**influenced** [1] - 59:21
**information** [23] - 11:19, 20:1, 20:3, 20:5, 20:10, 21:8, 25:8, 26:17, 26:22, 28:7, 31:17, 35:7, 35:10, 40:4, 58:18, 69:11, 70:11, 76:20, 76:23, 82:16, 84:5, 85:4, 88:10
**initial** [1] - 49:22
**injured** [2] - 87:15, 87:16
**inquire** [1] - 10:16
**inserted** [1] - 45:3

**instances** [1] - 53:12
**instant** [1] - 66:6
**institutions** [1] - 29:19
**instruction** [4] - 18:23, 19:1, 19:2, 19:21
**instructions** [3] - 7:13, 9:14, 73:3
**intend** [2] - 72:17, 72:19
**intended** [5] - 46:6, 66:14, 66:21, 66:25, 67:8
**intent** [1] - 58:14
**intention** [1] - 46:11
**Internal** [1] - 74:13
**interpreting** [1] - 61:11
**intervention** [1] - 79:1
**interviewed** [2] - 34:12, 88:14
**introduced** [1] - 31:25
**investigate** [1] - 85:5
**investigation** [47] - 3:25, 5:1, 5:10, 5:13, 5:24, 6:2, 6:4, 6:16, 9:2, 9:5, 9:8, 9:11, 9:21, 9:22, 9:24, 10:9, 10:18, 10:22, 11:1, 11:8, 11:14, 11:23, 19:12, 19:18, 19:25, 21:3, 22:6, 27:7, 27:24, 28:3, 28:19, 29:18, 29:20, 30:2, 32:18, 37:7, 54:6, 60:1, 67:6, 67:18, 69:5, 71:14, 72:24, 89:2, 89:4, 89:7, 89:10
**investigations** [3] - 74:12, 74:13
**Investigations** [2] - 4:16, 8:14
**investigator** [9] - 3:16, 8:17, 85:4, 86:13, 86:16, 86:17, 86:23, 88:13, 88:15
**involved** [1] - 63:3
**involvement** [1] - 40:5
**involves** [1] - 32:14
**involving** [4] - 20:15, 26:15, 66:9, 79:14
**Irving** [1] - 64:25
**issue** [17] - 11:11, 30:11, 31:20, 32:15, 35:15, 35:18, 45:22,

54:2, 58:19, 61:16, 62:11, 68:14, 68:15, 68:16, 77:19, 85:23, 86:2
**issues** [4] - 10:12, 20:18, 68:2, 87:4
**item** [2] - 59:11, 90:24

## J

**J.B** [1] - 40:13
**J.D.J** [7] - 34:19, 34:24, 36:5, 36:8, 68:6, 68:10
**J.D.J.'s** [1] - 35:4
**J.F** [2] - 15:3, 15:20
**J.J.D** [2] - 15:3, 15:20
**J.M** [1] - 87:23
**J.V** [3] - 44:20, 44:21, 45:4
**Jamaica** [7] - 36:6, 36:10, 36:11, 36:17, 36:20, 37:2, 37:9
**Janet** [1] - 88:1
**JOAN** [1] - 1:10
**joined** [1] - 34:1
**judge** [29] - 7:15, 12:2, 14:6, 14:10, 17:6, 17:17, 18:19, 20:13, 22:17, 23:14, 23:17, 28:14, 32:14, 33:18, 35:14, 35:21, 36:3, 37:17, 39:15, 53:9, 53:11, 53:16, 58:25, 59:10, 67:20, 73:1, 75:5, 75:24, 90:12
**JUDGE** [1] - 1:11
**Judge** [19] - 7:24, 8:3, 11:20, 23:11, 25:23, 27:20, 29:10, 42:20, 43:1, 45:1, 47:9, 47:11, 54:10, 74:20, 74:23, 75:2, 75:21, 91:11, 91:12
**Julian** [1] - 64:24
**July** [6] - 1:5, 6:10, 6:12, 6:13, 6:19, 83:1
**June** [2] - 6:9, 6:10
**jury** [9] - 19:1, 19:21, 29:6, 56:15, 56:16, 56:17, 58:21, 85:2, 85:11
**justice** [11] - 53:7, 53:15, 53:21, 55:5, 55:10, 56:3, 56:21, 56:24, 58:22, 80:14,

80:15
**JUSTICE** [1] - 1:17

## K

**Kane** [4] - 3:7, 4:15, 8:12, 54:19
**KANE** [22] - 1:17, 19:22, 19:24, 25:14, 26:7, 26:13, 49:21, 50:4, 51:7, 51:23, 51:25, 52:3, 52:9, 53:22, 53:24, 55:22, 56:23, 58:5, 60:16, 62:11, 62:20, 76:3
**keep** [3] - 17:11, 29:23, 67:21
**kicked** [1] - 64:14
**knows** [1] - 6:8
**Knox** [1] - 88:1

## L

**lack** [3] - 34:20, 57:23, 84:16
**language** [3] - 12:15, 67:3, 79:18
**large** [12] - 59:8, 60:3, 60:7, 60:13, 61:16, 61:18, 62:15, 62:17, 62:22, 63:4, 65:20, 77:5
**Larko** [5] - 3:8, 4:16, 8:13, 54:20, 81:11
**last** [11] - 4:2, 16:9, 34:17, 38:2, 40:11, 44:13, 44:20, 49:18, 67:13, 67:14, 72:23
**law** [26] - 30:5, 30:7, 30:16, 30:17, 30:22, 32:6, 32:8, 33:2, 33:9, 33:11, 33:15, 57:2, 61:10, 70:3, 73:2, 74:6, 74:14, 74:17, 75:11, 77:6, 79:1, 79:2, 79:5, 79:19, 81:2, 89:22
**lawyers** [2] - 4:5, 5:16
**learned** [1] - 68:12
**least** [2] - 20:16, 21:14
**leave** [2] - 7:19, 64:8
**left** [3] - 17:7, 54:3, 67:20
**legal** [4] - 84:17, 89:22, 89:24, 90:2
**legs** [1] - 87:15
**LENARD** [1] - 1:10

**lengthy** [1] - 85:25
**less** [2] - 9:18, 63:21
**letter** [9] - 12:8, 75:7, 75:8, 75:12, 80:2, 81:23, 82:22, 88:6
**Letter** [2] - 12:8, 12:9
**letters** [27] - 17:10, 73:4, 73:5, 73:7, 74:2, 74:6, 74:16, 74:21, 74:24, 75:3, 75:18, 75:21, 75:22, 77:8, 79:3, 79:17, 79:21, 79:24, 80:12, 80:19, 80:21, 81:1, 86:25, 88:16, 88:24
**level** [28] - 20:17, 46:14, 46:21, 47:10, 48:9, 48:16, 48:25, 49:8, 49:16, 49:23, 50:6, 50:23, 50:25, 51:21, 52:8, 52:23, 60:2, 61:23, 62:3, 62:8, 63:2, 66:4, 66:10, 66:11, 67:4, 67:7, 89:11
**levels** [3] - 51:1, 59:18, 59:24
**lieu** [1] - 49:6
**life** [5] - 56:15, 76:25, 85:25, 89:12, 89:13
**Lifeline** [2] - 34:1, 34:5
**limitation** [5] - 31:11, 31:16, 32:6, 32:7, 69:10
**limitations** [1] - 76:20
**limited** [5] - 19:20, 27:13, 31:24, 31:25, 44:6
**limiting** [2] - 18:23, 19:21
**line** [5] - 38:2, 41:9, 43:18, 44:2, 44:20
**lines** [14] - 13:20, 33:25, 36:13, 37:19, 37:23, 39:16, 40:25, 43:5, 43:18, 43:25, 55:10, 55:12, 55:18, 55:24
**LISA** [2] - 2:2, 92:8
**listed** [7] - 12:7, 18:2, 53:11, 59:22, 70:1, 86:10, 86:11
**literally** [1] - 79:1
**live** [1] - 41:21
**lived** [4] - 24:22, 41:10, 41:11, 71:8
**lives** [2] - 60:22, 85:20

**living** [2] - 14:1, 64:4
**loan** [1] - 65:7
**lockup** [1] - 33:19
**Loh** [4] - 66:1, 66:3, 66:12
**LOH** [1] - 66:1
**London** [1] - 71:9
**look** [1] - 68:1
**looking** [4] - 50:5, 64:17, 74:21, 74:22
**lumping** [1] - 27:1
**lunch** [2] - 53:3
**lure** [1] - 65:13

## M

**M's** [1] - 26:15
**M.B** [1] - 43:19
**M.J.E** [1] - 15:3
**M.V** [5] - 44:2, 44:3, 44:14, 44:15, 44:16
**ma'am** [11] - 4:1, 5:3, 5:8, 5:11, 5:22, 7:1, 7:4, 7:7, 7:11, 8:25, 11:9
**mailed** [1] - 82:24
**main** [2] - 75:13, 81:24
**major** [1] - 89:9
**majority** [2] - 14:3, 63:18, 63:19
**man** [1] - 35:22
**Maria** [4] - 3:6, 4:14, 8:11, 54:18
**MARIA** [1] - 1:14
**marshals** [1] - 7:23
**marshals'** [1] - 33:19
**Martinez** [1] - 10:5
**masturbate** [1] - 68:8
**material** [7] - 57:21, 58:13, 58:17, 73:25, 85:22, 85:23
**matter** [9] - 18:22, 27:4, 27:21, 38:11, 48:18, 48:20, 63:17, 90:12, 92:5
**matters** [3] - 57:21, 58:17, 74:15
**MATTERS** [1] - 1:21
**MATTHEW** [1] - 1:7
**Matthew** [6] - 3:2, 4:10, 4:19, 8:7, 54:14, 54:22
**maximum** [2] - 62:3, 75:9
**McCorkel** [3] - 74:3, 82:19, 82:23
**MCCORKEL** [1] -

74:4
**McDonald's** [1] - 72:3
**meals** [1] - 63:21
**meaning** [1] - 47:25
**means** [8] - 58:18, 63:12, 76:7, 76:9, 76:14, 78:5, 78:7, 88:5
**meant** [1] - 45:21
**MEDETIS** [75] - 1:14, 3:6, 4:14, 7:24, 8:11, 10:11, 11:11, 11:20, 12:19, 14:17, 15:18, 15:22, 16:4, 16:8, 16:12, 16:17, 16:21, 17:17, 23:3, 23:8, 23:17, 23:23, 24:4, 24:12, 25:23, 30:4, 30:8, 30:25, 31:3, 34:10, 34:23, 35:16, 36:21, 37:13, 38:11, 39:10, 39:22, 40:24, 41:9, 41:17, 42:7, 42:20, 43:1, 43:3, 43:9, 43:17, 43:25, 44:12, 44:19, 45:1, 45:7, 45:18, 46:16, 46:24, 47:4, 47:9, 47:11, 47:21, 48:12, 48:20, 52:25, 54:18, 68:19, 69:2, 71:20, 72:6, 81:5, 81:10, 83:14, 88:20, 89:17, 90:23, 91:3, 91:8, 91:11
**Medetis** [8] - 3:6, 4:15, 8:12, 11:10, 39:9, 46:12, 48:11, 54:19
**medical** [11] - 22:21, 22:22, 22:25, 23:6, 23:7, 85:18, 86:18, 87:6, 87:23, 88:1, 88:3
**medicine** [2] - 87:17
**meet** [4] - 31:6, 38:19, 70:16, 83:22
**meeting** [1] - 23:14
**memorandum** [1] - 29:14
**memory** [1] - 58:15
**mental** [1] - 63:15
**mentioned** [2] - 18:3, 24:25
**merely** [2] - 76:19, 77:7
**met** [3] - 6:14, 72:11, 76:14
**MIAMI** [1] - 1:2

**Miami** [8] - 1:4, 1:16, 1:22, 1:25, 2:3, 2:4, 92:9, 92:9

**microphones** [1] - 7:25

**middle** [4] - 23:12, 33:24, 36:13, 37:19

**might** [3] - 31:22, 31:23, 82:10

**minimum** [1] - 83:22

**minor** [2] - 36:5, 59:21

**minors** [1] - 13:8

**minutes** [2] - 4:6, 54:7

**missing** [1] - 36:23

**mistake** [1] - 58:15

**misunderstanding** [1] - 62:13

**mitigating** [11] - 73:19, 79:5, 84:1, 86:1, 86:7, 86:14, 86:22, 86:25, 87:3, 88:5, 88:11

**mitigation** [2] - 83:7, 83:12

**modification** [1] - 25:5

**modified** [7] - 37:14, 41:15, 42:24, 44:14, 89:2, 89:7, 89:10

**modify** [1] - 41:18

**modus** [1] - 35:11

**moment** [4] - 39:7, 42:12, 55:14, 68:1

**money** [2] - 13:7, 34:21

**monogram** [2] - 68:20, 69:2

**monograph** [1] - 69:2

**moreover** [1] - 31:24

**Morning** [16] - 3:10, 12:11, 12:23, 13:11, 13:18, 16:24, 34:2, 58:2, 58:7, 58:9, 81:14, 82:3, 85:16, 87:5, 87:14, 87:24

**morning** [17] - 3:1, 3:4, 3:6, 3:13, 3:14, 3:18, 3:19, 3:20, 3:22, 4:14, 4:18, 4:22, 4:24, 23:15, 90:5, 90:8, 91:13

**most** [2] - 13:25, 80:6

**mostly** [2] - 39:11, 87:18

**motion** [22] - 6:21, 45:9, 45:17, 68:15,

73:11, 74:3, 79:9, 80:22, 83:5, 83:8, 83:11, 84:13, 84:22, 85:7, 85:13, 86:4, 86:11, 88:18, 88:21, 90:13, 90:18, 91:1

**move** [7] - 23:17, 39:14, 43:20, 53:6, 68:3, 72:22, 90:14

**move-out** [1] - 43:20

**moved** [12] - 18:7, 18:16, 21:12, 21:15, 23:20, 24:15, 26:10, 26:11, 33:14, 39:18, 41:24, 60:23

**movies** [1] - 38:14

**moving** [1] - 15:15

**MR** [133] - 3:14, 3:19, 4:18, 5:22, 6:6, 6:8, 6:17, 6:23, 7:1, 7:4, 7:7, 7:11, 7:14, 7:18, 7:22, 8:2, 8:3, 8:15, 8:25, 9:3, 9:6, 9:9, 9:13, 10:19, 10:23, 11:2, 11:9, 11:24, 12:1, 12:2, 12:7, 13:17, 14:6, 15:6, 15:13, 16:14, 17:6, 18:11, 20:13, 21:25, 22:4, 22:8, 22:12, 22:17, 22:20, 23:5, 23:11, 24:24, 25:12, 25:21, 27:1, 27:11, 27:20, 27:22, 28:14, 28:21, 28:23, 29:10, 32:14, 33:18, 34:16, 35:14, 35:21, 36:2, 36:12, 37:12, 37:17, 38:9, 39:6, 39:15, 40:10, 40:21, 41:5, 41:6, 41:14, 42:4, 42:5, 42:12, 42:15, 42:25, 43:15, 43:23, 44:8, 44:23, 45:2, 51:13, 52:1, 53:4, 53:8, 53:16, 53:18, 54:2, 54:9, 54:10, 54:21, 55:8, 55:15, 55:18, 56:4, 57:13, 58:25, 59:5, 59:7, 61:20, 62:8, 63:1, 67:13, 67:17, 67:20, 67:24, 68:23, 73:1, 74:23, 75:1, 75:5, 75:17, 75:24, 78:13, 80:17, 80:23, 80:25, 81:9, 83:2, 84:7, 84:19, 89:18, 89:25, 90:6, 90:11, 90:12, 90:20, 91:12, 91:15

**MS** [95] - 3:6, 4:14, 7:24, 8:11, 10:11, 11:11, 11:20, 12:19, 14:17, 15:18, 15:22, 16:4, 16:8, 16:12, 16:17, 16:21, 17:17, 19:22, 19:24, 23:3, 23:8, 23:17, 23:23, 24:4, 24:12, 25:14, 25:23, 26:7, 26:13, 30:4, 30:8, 30:25, 31:3, 34:10, 34:23, 35:16, 36:21, 37:13, 38:11, 39:10, 39:22, 40:24, 41:9, 41:17, 42:7, 42:20, 43:1, 43:3, 43:9, 43:17, 43:25, 44:12, 44:19, 45:1, 45:7, 45:18, 46:16, 46:24, 47:4, 47:9, 47:11, 47:21, 48:12, 48:20, 49:21, 50:4, 51:7, 51:23, 51:25, 52:3, 52:9, 52:25, 53:22, 53:24, 54:18, 55:22, 56:23, 58:5, 60:16, 62:11, 62:20, 68:19, 69:2, 71:20, 72:6, 76:3, 81:5, 81:10, 83:14, 88:20, 89:17, 90:23, 91:3, 91:8, 91:11

**multiple** [2] - 50:16, 62:1

**must** [6] - 20:1, 28:8, 33:13, 47:14, 69:15, 89:21

## N

**name** [1] - 82:10

**named** [2] - 37:20, 38:5

**nearby** [1] - 85:21

**necessary** [2] - 69:25, 86:13

**need** [9] - 22:15, 22:21, 34:14, 38:21, 70:2, 76:18, 83:13, 84:11, 84:12

**needs** [2] - 45:23, 78:11, 82:1

**negates** [1] - 88:10

**neglect** [1] - 60:21

**neighborhood** [5] - 85:15, 85:17, 85:21, 87:13, 87:25

**neighbors** [2] - 87:7, 87:14

**never** [8] - 12:11,

12:16, 13:20, 19:19, 19:20, 29:1, 29:4

**New** [1] - 1:18

**next** [11] - 36:3, 37:17, 41:17, 42:7, 44:16, 44:17, 53:6, 58:25, 59:6, 59:7, 81:18

**nine** [1] - 53:11

**NO** [1] - 1:2

**nolle** [1] - 33:6

**non** [1] - 62:9

**non-grouping** [1] - 62:9

**none** [6] - 19:5, 29:8, 29:10, 34:6, 37:13, 51:14

**nontestifying** [1] - 17:1

**normally** [1] - 74:18

**North** [2] - 2:3, 92:9

**Northeast** [1] - 1:15

**notations** [1] - 12:4

**Note** [1] - 63:10

**note** [5] - 3:9, 30:22, 35:10, 77:10, 85:1

**noted** [2] - 12:25, 85:13

**notes** [4] - 36:1, 57:22, 68:1, 71:25

**nothing** [7] - 32:19, 33:9, 35:14, 35:21, 57:13, 60:22, 88:15

**noticed** [1] - 74:1

**notified** [1] - 81:13

**notions** [1] - 66:23

**nowhere** [1] - 80:12

**number** [17] - 17:8, 48:21, 50:17, 57:4, 59:8, 60:3, 60:7, 61:3, 61:15, 61:16, 61:18, 62:3, 62:15, 62:18, 62:22, 62:23, 63:4, 65:20, 76:11, 77:5, 78:20

**numbers** [1] - 15:3

**numeral** [1] - 89:12

**numerous** [2] - 50:13, 51:17

**NW** [1] - 1:18

## O

**oath** [2] - 57:7, 57:20

**object** [6] - 15:18, 16:18, 20:13, 27:24, 34:23, 79:8

**objected** [4] - 14:7, 20:18, 32:16, 33:3

**objecting** [1] - 14:14

**objection** [40] - 14:4, 14:14, 21:4, 21:7, 23:2, 30:9, 30:20, 34:9, 36:3, 36:19, 37:11, 37:17, 38:16, 40:10, 41:4, 41:13, 41:17, 42:3, 42:11, 43:14, 43:22, 44:7, 44:22, 51:11, 51:15, 53:6, 53:11, 54:1, 55:4, 55:22, 56:2, 57:15, 58:25, 59:1, 59:7, 63:5, 65:20, 67:14, 68:5, 90:22

**objections** [22] - 11:16, 11:17, 11:18, 11:21, 12:3, 12:21, 12:25, 16:5, 22:1, 23:5, 23:15, 30:15, 33:20, 38:18, 39:11, 40:22, 53:1, 60:7, 60:17, 67:18, 67:25, 74:3

**objectives** [2] - 31:7, 70:17

**obligated** [1] - 83:17

**obligation** [5] - 83:17, 83:23, 84:8, 88:9

**observed** [1] - 88:1

**obstruction** [9] - 53:7, 53:15, 53:21, 55:5, 55:9, 56:2, 56:20, 56:24, 58:22

**obtain** [1] - 77:15

**obviously** [2] - 12:12, 22:12

**occasion** [1] - 41:1

**occasions** [3] - 20:16, 20:21, 20:23

**occupants** [1] - 7:18

**occurred** [7] - 14:20, 16:25, 44:9, 44:23, 71:3, 71:5, 72:15

**occurrence** [1] - 24:2

**October** [1] - 50:15

**OF** [3] - 1:1, 1:4, 1:17

**offender** [4] - 20:6, 27:17, 66:14, 71:17

**offense** [42] - 14:18, 15:5, 16:24, 17:14, 17:18, 25:6, 26:12, 30:14, 46:14, 46:21, 47:10, 48:9, 48:16, 48:25, 49:8, 49:23, 50:3, 50:15, 50:23, 50:25, 51:2, 51:21, 52:8, 52:23, 60:2,

60:10, 60:12, 61:11, 63:3, 63:12, 66:7, 66:10, 67:4, 67:7, 69:12, 70:2, 70:4, 70:21, 76:22, 89:11
**offenses** [3] - 21:23, 72:20, 76:25
**offered** [1] - 78:14
**Office** [1] - 73:22
**office** [5] - 74:19, 77:7, 82:19, 91:6, 91:10
**officer** [8] - 16:4, 22:5, 25:3, 47:14, 47:22, 60:2, 61:22, 74:6
**OFFICER** [18] - 3:20, 4:22, 8:22, 16:7, 16:10, 46:11, 46:17, 46:20, 48:5, 49:3, 49:11, 49:17, 50:14, 50:22, 51:6, 51:24, 54:25, 68:25
**officers** [1] - 79:20
**official** [1] - 2:3
**Official** [1] - 92:8
**often** [3] - 12:23, 63:21, 76:13
**omitted** [1] - 25:6
**once** [5] - 44:21, 45:3, 49:24, 50:25, 82:9
**one** [31] - 5:11, 10:11, 16:9, 16:14, 26:13, 28:9, 33:22, 36:23, 36:24, 39:6, 41:1, 42:12, 46:3, 46:13, 49:15, 49:19, 50:11, 50:21, 50:22, 55:14, 61:25, 63:22, 63:23, 66:10, 67:20, 73:16, 79:20, 85:14, 90:12, 90:24
**ones** [3] - 12:4, 12:5, 17:10
**open** [2] - 79:25, 80:20
**opening** [1] - 14:20
**operandi** [1] - 35:11
**opinion** [1] - 31:5
**opportunities** [1] - 84:9
**opportunity** [12] - 28:2, 30:20, 32:1, 53:2, 73:18, 76:16, 76:21, 78:6, 79:4, 81:6, 81:24, 83:12
**opposed** [3] - 15:11, 74:18
**oral** [1] - 40:14

**order** [14] - 37:6, 38:23, 44:13, 45:3, 52:19, 55:24, 75:8, 79:6, 85:10, 89:1, 90:14, 90:18, 90:25
**ordered** [7] - 5:23, 6:1, 41:7, 41:15, 90:8, 91:5, 91:9
**organizations** [1] - 87:19
**original** [14] - 5:7, 5:9, 5:11, 6:9, 6:10, 11:16, 11:19, 15:2, 15:24, 15:25, 16:1, 16:5, 59:14, 59:23
**originals** [1] - 82:24
**orphanage** [11] - 12:10, 12:12, 12:16, 12:24, 13:4, 13:13, 13:15, 13:19, 13:21, 13:25
**orphans** [4] - 13:5, 13:14, 14:1, 14:2
**otherwise** [4] - 40:9, 63:9, 63:15, 82:3
**outlined** [1] - 85:14
**overall** [2] - 50:24, 51:1
**overrule** [1] - 68:5
**overwhelming** [1] - 32:9
**own** [1] - 52:17

## P

**P.A** [1] - 43:5
**P.M** [1] - 71:7
**p.m** [4] - 1:6, 8:5, 54:11, 54:12
**P.S** [4] - 39:17, 39:22, 39:25
**package** [1] - 73:25
**page** [3] - 9:14, 31:2
**Page** [36] - 12:3, 12:20, 14:6, 15:13, 18:5, 18:11, 18:14, 21:6, 21:9, 22:1, 22:13, 23:12, 27:16, 30:8, 31:3, 33:23, 34:17, 36:14, 37:19, 38:2, 39:15, 40:12, 53:9, 53:12, 55:15, 59:1, 59:7, 59:22, 60:18, 65:5, 66:13, 66:19, 67:20, 69:23, 70:20, 74:11
**Pages** [2] - 1:8, 54:5
**paid** [1] - 40:12
**Palace** [1] - 26:1

**paragraph** [24] - 9:14, 11:2, 11:3, 13:6, 13:11, 13:18, 14:3, 15:3, 22:4, 33:24, 34:3, 34:18, 36:11, 37:20, 37:23, 46:8, 48:13, 48:14, 49:18, 51:12, 52:21, 61:24
**Paragraph** [61] - 13:23, 14:6, 15:13, 15:25, 16:12, 16:23, 17:20, 18:11, 22:14, 23:5, 23:12, 28:16, 33:22, 34:17, 36:4, 36:13, 36:14, 37:7, 37:14, 37:18, 38:7, 38:24, 39:15, 40:11, 40:25, 41:1, 41:8, 41:9, 41:16, 41:18, 42:23, 42:24, 43:4, 43:9, 43:11, 43:12, 43:16, 43:17, 43:25, 44:13, 44:19, 45:4, 45:8, 45:18, 47:12, 47:20, 48:13, 48:24, 49:1, 49:10, 49:22, 51:17, 52:20, 55:10, 55:18, 55:25, 68:5, 69:6, 71:16, 88:23, 89:1
**paragraphs** [23] - 15:15, 15:19, 15:23, 16:19, 17:15, 18:7, 22:1, 22:9, 24:18, 25:5, 25:16, 25:18, 25:24, 26:15, 26:18, 30:11, 30:17, 32:10, 32:12, 33:13, 55:12, 59:23
**Paragraphs** [19] - 14:7, 15:1, 16:5, 16:6, 18:12, 18:13, 21:5, 21:14, 22:2, 23:18, 23:20, 23:24, 24:12, 25:19, 25:25, 26:8, 54:5, 55:19, 71:18
**parcel** [1] - 17:2
**parent** [1] - 79:21
**parole** [1] - 79:14
**part** [12] - 13:1, 14:18, 15:4, 17:2, 21:22, 24:10, 26:4, 27:25, 45:14, 58:12, 83:21, 88:25
**Part** [2] - 27:17, 71:17
**parte** [4] - 83:5, 83:11, 84:20, 90:14
**particular** [3] - 37:1, 48:10, 50:18

**particularly** [2] - 63:9, 63:16
**parties** [2] - 21:18, 24:10
**passport** [2] - 36:19, 36:23
**passports** [5] - 36:9, 36:22, 36:23, 37:8, 37:10
**past** [1] - 36:9
**pattern** [2] - 20:15, 66:9
**pay** [2] - 63:22, 63:23
**pedophile** [2] - 30:13, 35:20
**pending** [3] - 12:9, 22:12, 71:15
**penetrate** [1] - 37:24
**penetration** [1] - 38:25
**penis** [1] - 41:2
**people** [3] - 17:17, 87:22, 87:24
**per** [1] - 63:21
**performing** [1] - 40:13
**perhaps** [5] - 30:21, 33:12, 48:13, 51:25, 65:22
**period** [3] - 10:24, 14:22, 50:18
**perjury** [1] - 56:11
**permission** [4] - 83:6, 83:13, 84:12
**permitted** [1] - 66:20
**person** [6] - 31:18, 60:9, 63:12, 69:12, 76:14, 77:15
**person's** [1] - 74:25
**personal** [4] - 27:15, 28:16
**personnel** [1] - 79:6
**persons** [4] - 18:2, 57:25, 59:13, 63:25
**pertained** [1] - 85:12
**pertaining** [1] - 56:5
**pertains** [1] - 74:10
**phase** [1] - 81:18
**Phil** [4] - 3:15, 4:18, 8:16, 54:21
**PHILIP** [1] - 1:23
**Phillips** [1] - 10:3
**phonetic** [1] - 74:4
**phonetically** [1] - 74:2
**photocopies** [1] - 82:24
**physical** [1] - 63:15
**picked** [1] - 49:6
**place** [7] - 16:15,

17:8, 19:14, 19:17, 27:23, 75:12
**placed** [4] - 19:11, 20:12, 31:17, 69:10
**placement** [3] - 11:18, 25:11, 28:2
**plain** [2] - 32:16, 33:4
**plain-error** [2] - 32:16, 33:4
**Plaintiff** [1] - 1:5
**plane** [1] - 91:4
**Playboy** [1] - 38:14
**plea** [1] - 79:14
**pleasure** [1] - 40:18
**plenty** [1] - 84:4
**plus** [3] - 66:10, 67:4, 67:7
**point** [15] - 10:12, 30:5, 31:10, 32:5, 32:9, 34:25, 35:1, 35:5, 37:2, 37:13, 38:15, 43:10, 45:23, 47:13, 48:6
**points** [1] - 38:19
**police** [1] - 74:14
**Polk** [1] - 24:19
**poor** [2] - 60:25, 64:3
**poorly** [1] - 35:13
**population** [1] - 64:18
**pornography** [5] - 37:21, 37:22, 38:12, 38:25, 76:12
**Port** [3] - 74:8, 81:12, 82:20
**Port-au-Prince** [2] - 81:12, 82:20
**Port-au-Prince's** [1] - 74:8
**portion** [10] - 10:12, 11:4, 13:18, 14:14, 17:18, 19:13, 29:19, 32:22, 67:13, 72:23
**portions** [1] - 17:9
**position** [20] - 12:18, 12:20, 14:15, 14:17, 23:8, 26:25, 28:6, 30:16, 30:22, 34:22, 38:10, 42:15, 44:8, 47:17, 55:17, 59:10, 60:16, 75:16, 76:2, 84:4
**positive** [1] - 82:7
**possibly** [1] - 81:24
**potential** [1] - 85:5
**potentially** [1] - 85:24
**poverty** [2] - 60:20, 64:10

**practice** [1] - 76:9
**precarious** [1] - 65:5
**preceding** [1] - 48:14
**preclude** [1] - 24:7
**precludes** [1] - 88:15
**preparation** [1] - 14:21
**prepared** [2] - 34:10, 38:18
**preparing** [1] - 68:21
**preponderance** [4] - 70:23, 71:3, 71:10, 72:13
**present** [14] - 3:16, 4:20, 34:10, 34:12, 54:23, 77:6, 83:12, 86:1, 86:9, 86:14, 86:21, 86:25, 87:2, 88:14
**presentation** [5] - 29:13, 85:11, 85:13, 85:23, 88:8
**presented** [9] - 4:2, 21:18, 24:8, 24:9, 27:3, 32:8, 71:6, 72:11, 87:3
**presentence** [51] - 3:25, 5:1, 5:10, 5:13, 5:24, 6:2, 6:4, 6:16, 9:2, 9:5, 9:8, 9:11, 9:21, 9:22, 9:24, 10:9, 10:18, 10:22, 11:1, 11:8, 11:14, 11:23, 19:11, 19:18, 19:25, 21:2, 22:5, 27:6, 27:23, 28:3, 28:6, 28:8, 28:19, 29:18, 29:20, 30:1, 32:18, 32:22, 37:7, 54:6, 60:1, 67:6, 67:18, 69:5, 69:15, 71:14, 72:24, 89:2, 89:4, 89:6, 89:10
**presenting** [3] - 88:5, 88:11, 88:16
**presently** [1] - 8:17
**preserve** [1] - 85:10
**presume** [1] - 66:25
**pretty** [4] - 13:2, 28:24, 29:14, 62:3
**previously** [2] - 36:6, 86:16
**primarily** [3] - 72:18, 75:19, 79:21
**Prince** [2] - 81:12, 82:20
**Prince's** [1] - 74:8
**probation** [8] - 16:4, 22:5, 25:3, 47:14, 47:22, 60:2, 61:22,

74:19
**PROBATION** [19] - 2:1, 3:20, 4:22, 8:22, 16:7, 16:10, 46:11, 46:17, 46:20, 48:5, 49:3, 49:11, 49:17, 50:14, 50:22, 51:6, 51:24, 54:25, 68:25
**Probation** [19] - 3:4, 3:21, 4:13, 4:23, 8:21, 8:23, 11:5, 20:12, 45:21, 46:2, 46:5, 47:12, 52:20, 54:16, 55:1, 61:25, 68:19, 73:22, 82:25
**problem** [3] - 40:6, 40:7, 47:20
**procedure** [5] - 80:4, 80:7, 80:21, 80:25, 81:7
**Procedure** [4] - 10:7, 19:25, 20:4, 85:10
**procedures** [2] - 77:1, 78:22
**proceed** [2] - 54:8, 90:2
**proceeding** [5] - 55:3, 76:6, 79:13, 79:14, 81:18
**proceedings** [8] - 4:8, 8:5, 32:3, 32:4, 54:12, 78:24, 81:15, 92:4
**Proceedings** [1] - 91:16
**produce** [2] - 30:16, 83:7
**prohibited** [3] - 20:15, 59:22, 66:9
**project** [2] - 24:22
**prolong** [1] - 78:24
**promised** [4] - 64:20, 68:6, 68:9, 68:10
**promises** [1] - 65:14
**promote** [1] - 70:2
**pronounced** [1] - 89:23
**proper** [2] - 16:14, 17:16
**properly** [3] - 19:11, 58:23, 63:24
**proposed** [5] - 86:14, 86:22, 86:25, 87:2, 88:5
**pros'ed** [1] - 33:6
**protect** [1] - 70:4
**proved** [3] - 70:22, 71:2, 71:9
**provide** [8] - 57:19, 58:14, 64:20, 65:14,

70:3, 76:21, 86:7, 88:9
**provided** [8] - 10:23, 13:7, 70:24, 77:8, 85:2, 87:6, 87:12, 87:24
**provides** [1] - 76:17
**providing** [1] - 82:8
**provision** [2] - 50:10, 63:10
**provisions** [1] - 25:4
**PSI** [62] - 6:9, 6:10, 6:11, 6:13, 6:17, 10:14, 10:15, 12:22, 13:1, 13:2, 14:12, 14:14, 14:25, 15:2, 15:4, 15:7, 15:25, 16:1, 16:8, 16:23, 17:9, 17:13, 18:12, 19:4, 19:14, 19:15, 19:19, 20:3, 20:5, 22:22, 22:24, 23:19, 23:25, 25:16, 26:19, 26:20, 27:16, 28:15, 30:17, 30:21, 31:6, 31:11, 31:12, 31:24, 31:25, 32:6, 32:10, 33:22, 35:6, 37:3, 45:14, 51:9, 52:12, 53:1, 60:17, 68:22, 70:16, 88:24, 88:25
**PSR** [2] - 50:8, 59:23
**public** [4] - 70:4, 71:8, 76:6, 79:13
**punished** [2] - 28:4, 29:22
**punishment** [5] - 70:3, 75:19, 85:24, 85:25, 86:2
**purchased** [1] - 87:19
**purported** [1] - 14:8
**purportedly** [1] - 36:4
**purpose** [6] - 17:25, 27:13, 31:6, 31:19, 58:10, 70:16
**purposes** [5] - 15:17, 63:11, 69:13, 69:25, 84:24
**pursuant** [24] - 9:13, 9:16, 10:7, 11:13, 11:18, 18:8, 19:24, 21:18, 24:8, 26:18, 26:19, 33:13, 33:14, 34:15, 49:6, 52:23, 57:15, 65:25, 66:16, 69:9, 79:11, 79:15, 80:9, 85:9
**put** [4] - 12:15,

31:11, 32:6, 82:11

# Q

**quake** [1] - 87:13
**qualities** [1] - 75:6
**questions** [1] - 8:20
**quick** [1] - 90:12
**Quite** [1] - 40:1
**quote** [9] - 31:3, 65:4, 66:13, 69:23, 69:24, 70:7, 70:11, 70:15, 85:14
**quotes** [1] - 31:8

# R

**raise** [2] - 33:21, 40:11
**raised** [2] - 23:15, 36:3
**range** [3] - 17:25, 34:7, 89:12
**rather** [2] - 47:8, 51:3
**RDR** [2] - 2:2, 92:8
**read** [34] - 3:24, 4:25, 5:4, 5:5, 5:7, 5:9, 6:1, 9:1, 9:4, 9:7, 9:20, 9:21, 10:8, 10:17, 10:19, 10:21, 10:25, 11:2, 11:7, 11:13, 33:15, 41:25, 42:9, 43:6, 43:19, 44:2, 44:17, 44:21, 46:10, 46:12, 75:21, 75:23, 79:24, 80:20
**reads** [8] - 5:24, 12:22, 13:1, 37:20, 40:12, 42:8, 46:5, 63:11
**really** [3] - 17:24, 40:2, 48:2
**realtime** [1] - 72:1
**reason** [6] - 30:1, 34:19, 34:21, 65:10, 75:14, 83:2
**reasonable** [8] - 14:11, 56:17, 71:4, 71:11, 72:14, 78:22, 80:7, 80:21
**reasonably** [3] - 76:6, 76:19, 79:13
**reasons** [2] - 56:12, 63:18
**receive** [3] - 63:23, 69:13, 89:21
**received** [6] - 6:9, 6:11, 6:12, 6:19, 62:5, 87:22

31:11, 32:6, 82:11

**recess** [7] - 4:6, 4:7, 7:12, 8:4, 54:11, 90:1, 91:14
**record** [12] - 3:5, 4:13, 8:10, 28:10, 42:13, 47:24, 54:17, 56:25, 67:21, 69:17, 90:20, 91:3
**refer** [2] - 10:14, 12:16
**reference** [14] - 20:8, 45:11, 45:22, 45:25, 46:22, 47:3, 47:16, 48:1, 49:2, 50:2, 51:19, 51:20, 52:22, 77:19
**references** [2] - 13:19, 67:3
**referred** [4] - 12:23, 13:3, 13:12, 88:23
**referring** [7] - 15:2, 26:23, 46:1, 50:9, 51:8, 87:3, 88:16
**refers** [3] - 10:15, 13:15, 47:12
**reflect** [4] - 22:22, 49:14, 70:2, 89:3
**reflected** [7] - 16:6, 49:9, 50:7, 51:10, 52:10, 71:25
**reflects** [2] - 13:23, 14:4
**refusal** [1] - 23:6
**refuse** [1] - 64:15
**refused** [13] - 22:22, 22:25, 35:13, 35:16, 43:5, 44:2, 44:3, 44:14, 44:15, 44:20, 44:21, 64:8, 68:8
**refusing** [1] - 23:7
**regard** [6] - 31:15, 36:7, 40:3, 63:2, 69:4, 70:24
**regarding** [34] - 19:22, 23:6, 24:14, 24:21, 27:11, 34:25, 36:4, 36:5, 36:15, 37:2, 38:17, 40:4, 41:1, 43:11, 45:9, 52:4, 55:4, 57:22, 57:23, 61:15, 67:14, 67:21, 68:2, 68:20, 71:21, 72:2, 72:7, 75:8, 76:17, 76:22, 76:24, 77:2, 78:2
**regardless** [1] - 48:22
**regards** [1] - 68:16
**Reginald** [4] - 3:16, 4:20, 8:18, 54:24

**reinforced** [1] - 82:16

**reiterate** [1] - 12:19

**relate** [3] - 24:13, 25:5, 71:18

**related** [2] - 46:8, 74:14

**relates** [3] - 21:8, 48:21, 49:22

**relating** [2] - 16:24, 66:23

**relations** [1] - 56:14

**relative** [1] - 79:21

**relatives** [2] - 64:18, 64:19

**relay** [2] - 91:6, 91:9

**release** [1] - 89:13

**relevance** [1] - 29:20

**relevant** [22] - 14:25, 15:5, 15:17, 17:2, 17:4, 17:7, 17:22, 17:24, 18:1, 18:8, 19:5, 20:10, 21:5, 21:22, 26:4, 26:17, 26:22, 27:21, 32:24, 70:11, 78:8

**relied** [1] - 77:6

**relief** [3] - 77:16, 79:14, 79:15

**rely** [1] - 36:25

**relying** [4] - 53:20, 61:5, 61:6, 61:9

**remain** [7] - 15:4, 26:3, 35:6, 37:2, 37:3, 55:19, 55:25

**remainder** [3] - 55:11, 55:19, 55:25

**remained** [2] - 62:2, 65:16

**remaining** [1] - 68:15

**remains** [2] - 12:9, 26:12

**remember** [2] - 37:4, 40:15

**remove** [1] - 12:14

**removed** [4] - 12:10, 14:8, 24:19, 39:20

**rendered** [1] - 81:10

**renew** [3] - 6:20, 84:19, 88:22

**renewed** [1] - 88:18

**renewing** [1] - 83:10

**renumbered** [1] - 18:13

**repeat** [3] - 20:6, 23:3, 66:14

**repeated** [2] - 19:2, 19:9

**repeatedly** [1] - 57:9

**report** [69] - 3:25,

4:1, 4:2, 4:3, 4:5, 5:1, 5:7, 5:10, 5:13, 5:24, 6:2, 6:4, 6:16, 9:2, 9:5, 9:8, 9:12, 9:21, 9:22, 9:24, 10:9, 10:18, 10:22, 11:1, 11:8, 11:15, 11:17, 11:19, 11:23, 15:12, 15:17, 16:2, 19:12, 19:18, 19:25, 21:3, 21:9, 22:6, 24:23, 25:4, 25:5, 25:9, 26:3, 27:7, 27:24, 28:3, 28:7, 28:8, 28:19, 29:18, 29:20, 30:2, 32:18, 32:22, 37:7, 54:6, 60:1, 67:6, 67:18, 68:4, 69:6, 69:15, 71:14, 72:24, 74:17, 89:2, 89:4, 89:7, 89:10

**REPORTED** [1] - 2:2

**Reporter** [2] - 2:3, 92:8

**reports** [3] - 74:16, 75:4, 79:19

**represent** [2] - 48:8, 84:8

**representation** [1] - 30:19

**representations** [2] - 9:17, 11:12

**representative** [5] - 46:3, 46:13, 49:7, 49:15, 77:6

**represented** [2] - 12:11, 13:21

**request** [12] - 14:7, 18:6, 34:18, 42:22, 80:1, 80:12, 80:19, 83:11, 84:20, 84:21, 86:6, 88:22

**requested** [5] - 34:3, 34:8, 37:18, 79:24, 91:2

**requesting** [5] - 12:10, 34:5, 35:8, 83:6, 84:13

**requests** [2] - 85:9, 85:12

**require** [1] - 52:17

**required** [3] - 20:3, 20:23, 31:23

**requirement** [1] - 76:15

**requirements** [2] - 76:17, 77:1

**requires** [2] - 26:20, 31:21

**research** [2] - 28:1,

30:20

**reserve** [2] - 45:16, 45:20

**reserved** [1] - 68:2

**residency** [1] - 58:9

**residential** [3] - 13:7, 13:16, 13:24

**residents** [7] - 3:10, 58:2, 58:6, 81:14, 85:16, 87:5, 87:14

**resolved** [8] - 4:24, 12:5, 12:8, 22:2, 22:4, 22:11, 23:13, 67:22

**respect** [8] - 24:12, 43:9, 43:17, 47:22, 58:17, 70:3, 80:14, 82:2

**respond** [1] - 6:6

**response** [10] - 12:21, 12:25, 15:6, 20:9, 28:5, 30:9, 56:23, 57:1, 60:17, 61:2

**responsibility** [1] - 83:17

**restitution** [1] - 89:14

**result** [2] - 66:21, 67:1

**resulted** [4] - 24:16, 48:9, 49:7, 50:23

**resulting** [1] - 48:16

**return** [4] - 64:10, 64:11

**reverted** [1] - 48:6

**review** [5] - 4:4, 33:11, 79:17, 82:4, 89:8

**reviewed** [8] - 5:12, 6:9, 10:13, 11:3, 32:16, 33:4, 57:22, 80:20

**revised** [41] - 3:24, 4:25, 5:12, 6:4, 6:11, 6:13, 6:16, 6:17, 9:1, 9:4, 9:7, 9:11, 9:20, 9:22, 9:23, 10:8, 10:15, 10:18, 10:22, 10:25, 11:7, 11:14, 11:22, 15:4, 15:7, 15:12, 15:23, 16:2, 16:8, 18:12, 21:9, 22:5, 33:22, 37:6, 67:6, 69:5, 88:24, 89:2, 89:4, 89:6, 89:9

**revisions** [1] - 14:12

**right-hand** [1] - 39:16

**Rights** [2] - 81:16, 83:23

**rights** [13] - 73:12, 76:3, 76:8, 77:12, 77:24, 78:7, 78:10, 78:21, 81:15, 81:20, 83:18, 83:24, 84:3

**road** [1] - 22:21

**Roman** [1] - 89:12

**routinely** [1] - 38:13

**RSO** [4] - 74:2, 74:9, 74:11, 75:10

**RSO's** [2] - 77:7, 82:19

**rule** [4] - 22:15, 45:16, 62:24, 77:15

**Rule** [19] - 5:15, 9:16, 10:7, 10:13, 11:13, 19:24, 26:19, 26:20, 26:23, 28:6, 30:25, 31:21, 33:13, 33:14, 69:14, 85:9, 86:4, 86:6, 86:11

**Rules** [4] - 19:24, 20:4, 32:3, 85:10

**rules** [14] - 34:15, 45:10, 52:4, 52:5, 52:9, 52:10, 52:11, 52:15, 61:21, 61:23, 62:9, 62:13, 77:1

**ruling** [9] - 21:16, 22:1, 34:14, 45:20, 63:6, 63:9, 67:14, 88:21, 89:18

**S**

**S.A** [1] - 15:2

**S.A.'s** [1] - 41:2

**S.M.D.J** [1] - 87:22

**S.T** [1] - 70:25

**satisfy** [1] - 52:23

**saved** [1] - 85:20

**saw** [1] - 74:5

**schedule** [1] - 6:24

**scheduled** [3] - 81:19, 90:7, 91:4

**schedules** [1] - 7:9

**schemes** [1] - 65:7

**school** [2] - 64:11, 65:15

**schooling** [1] - 13:8

**sealed** [2] - 82:18, 84:21

**seated** [5] - 3:1, 4:9, 4:20, 8:6, 54:13

**Second** [1] - 65:1

**second** [3] - 14:24, 41:9, 41:24

**section** [11] - 14:24, 15:8, 15:11, 15:16,

18:17, 19:11, 20:22, 21:9, 22:10, 22:24, 66:22

**Section** [6] - 17:3, 31:16, 65:9, 69:9, 70:1, 79:12

**Sections** [1] - 66:16

**sections** [1] - 67:1

**secured** [1] - 74:16

**security** [2] - 7:21, 74:14

**Security** [3] - 4:16, 8:14, 81:12

**see** [4] - 22:13, 68:23, 71:25, 73:25

**seek** [2] - 10:11, 75:19

**seeks** [2] - 29:2, 60:2

**selected** [3] - 34:19, 68:9, 68:12

**send** [1] - 34:21

**sense** [1] - 43:21

**sent** [1] - 79:2

**sentence** [42] - 22:19, 23:7, 23:10, 27:25, 28:12, 29:3, 29:16, 31:13, 31:19, 32:12, 34:17, 38:1, 38:24, 39:3, 39:17, 39:20, 40:3, 40:11, 40:25, 41:24, 42:7, 42:17, 43:21, 44:1, 44:14, 44:16, 44:17, 45:24, 49:18, 69:14, 69:19, 69:24, 72:18, 72:19, 76:1, 78:16, 79:7, 80:13, 83:21, 89:21, 89:22

**SENTENCING** [1] - 1:10

**sentencing** [42] - 3:23, 5:18, 5:19, 6:21, 6:22, 7:9, 10:10, 14:23, 17:3, 20:11, 29:13, 29:25, 31:7, 32:3, 32:4, 32:25, 35:18, 66:5, 66:14, 66:20, 66:21, 66:23, 66:25, 67:8, 69:24, 70:21, 77:9, 77:24, 77:25, 79:14, 80:3, 80:11, 81:18, 81:23, 83:15, 84:6, 86:8, 86:15, 86:23, 88:6, 88:12

**sentencings** [1] - 76:7

**separate** [16] - 20:16, 20:21, 20:22, 46:9, 48:7, 49:1, 49:5,

49:13, 49:14, 50:10, 50:13, 52:17, 53:12, 66:22, 67:1

**separated** [1] - 17:11
**separately** [2] - 50:6, 52:18
**seriousness** [1] - 70:2
**serve** [1] - 65:8
**services** [2] - 87:12, 87:22
**set** [4] - 3:23, 31:7, 61:2, 74:10
**setting** [1] - 48:24
**Seventh** [3] - 64:25, 66:3, 66:12
**several** [2] - 79:24, 82:5
**sex** [7] - 20:6, 38:14, 40:14, 57:25, 66:7, 66:14
**sexual** [25] - 20:15, 35:16, 36:17, 39:1, 42:8, 42:10, 43:19, 47:2, 47:3, 47:6, 47:7, 56:13, 57:23, 58:7, 59:22, 64:9, 64:12, 65:18, 65:23, 66:9, 71:3, 71:4, 71:7, 71:10, 72:15
**sexually** [2] - 35:12, 38:4
**shall** [4] - 31:16, 66:10, 67:4, 69:10, 78:22
**Shannon** [4] - 3:21, 4:23, 8:23, 55:1
**SHANNON** [1] - 2:1
**share** [1] - 76:24
**sharing** [4] - 39:18, 40:1, 40:6, 40:8
**shelter** [4] - 13:7, 64:21, 65:15, 82:8
**short** [1] - 20:10
**shortly** [1] - 34:1
**shown** [1] - 90:2
**shows** [1] - 57:5
**side** [3] - 33:25, 36:18, 39:16
**side-bar** [1] - 36:18
**sides** [1] - 30:6
**similar** [2] - 74:17, 75:6
**similarly** [1] - 91:3
**simple** [1] - 60:19
**SIN** [1] - 57:18
**Singh** [1] - 57:18
**single** [1] - 49:5
**situation** [4] - 20:20, 33:10, 65:6, 65:8

**six** [4] - 37:19, 39:16, 52:15, 56:16
**skilled** [1] - 73:22
**slightly** [1] - 25:15
**solely** [3] - 31:12, 61:9, 72:18
**solicitations** [1] - 65:7
**solution** [1] - 17:19
**someone** [1] - 77:7
**sometimes** [3] - 63:21, 64:14, 87:19
**sorry** [5] - 5:8, 15:22, 23:3, 27:10, 46:17
**sought** [1] - 78:25
**South** [2] - 1:24, 71:9
**SOUTHERN** [1] - 1:1
**Southwest** [1] - 1:21
**special** [2] - 81:11, 89:15
**Special** [5] - 3:8, 4:15, 8:13, 54:20, 81:11
**specific** [2] - 66:24, 82:21
**specifically** [15] - 9:19, 12:3, 26:23, 29:12, 33:2, 40:16, 57:21, 58:16, 59:12, 60:24, 64:9, 66:5, 67:3, 69:6, 80:4
**spelled** [1] - 74:5
**spelling** [1] - 74:4
**spoken** [1] - 86:17
**squarely** [1] - 35:18
**stand** [2] - 56:7, 57:7
**standard** [5] - 32:17, 33:5, 72:12, 84:17
**standing** [1] - 77:12
**Star** [16] - 3:10, 12:11, 12:23, 13:11, 13:18, 16:24, 34:2, 58:2, 58:7, 58:9, 81:14, 82:3, 85:16, 87:5, 87:14, 87:24
**start** [2] - 40:24, 85:1
**started** [1] - 34:2
**starting** [7] - 22:1, 26:6, 39:17, 41:1, 44:1, 45:22, 47:13
**starts** [3] - 33:24, 40:25, 43:18
**state** [11] - 3:4, 4:12, 8:9, 8:21, 14:19, 34:19, 37:7, 44:4, 45:12, 54:16, 70:15
**State** [1] - 90:7
**statement** [8] - 35:6, 42:22, 74:18, 78:2, 81:23, 81:25, 82:22,

83:19
**statements** [38] - 6:13, 6:18, 36:4, 36:8, 36:16, 37:6, 45:9, 45:11, 45:15, 58:18, 68:3, 68:16, 72:22, 73:2, 73:21, 73:23, 75:3, 75:25, 76:7, 76:11, 76:18, 77:2, 78:4, 78:8, 78:10, 79:10, 82:5, 82:15, 82:18, 83:21, 84:5, 88:9, 88:10, 88:22, 88:23, 89:3, 90:3
**States** [40] - 3:2, 3:7, 4:10, 4:15, 8:7, 8:12, 9:25, 10:2, 10:5, 20:7, 31:4, 31:8, 34:20, 35:3, 35:23, 54:14, 54:19, 57:16, 57:17, 60:17, 64:22, 64:24, 64:25, 65:2, 65:25, 66:1, 66:18, 68:7, 68:11, 68:13, 69:9, 69:13, 69:21, 70:1, 70:13, 70:17, 70:19, 77:5, 79:11, 92:8
**STATES** [5] - 1:1, 1:4, 1:11, 1:15, 1:17
**states** [8] - 13:3, 13:6, 28:7, 31:16, 33:25, 66:6, 69:10, 76:19
**statutorily** [2] - 70:7, 83:17
**statutory** [2] - 76:8, 76:15
**still** [5] - 11:22, 15:17, 22:13, 25:14, 47:19
**stipulated** [1] - 18:8
**stitched** [1] - 87:15
**Street** [1] - 1:15
**stricken** [11] - 23:19, 23:25, 24:23, 41:3, 41:7, 43:11, 43:16, 55:12, 55:20, 55:25, 56:1
**strike** [8] - 18:5, 18:17, 45:9, 45:17, 68:15, 70:25, 79:9, 88:21
**striking** [1] - 25:8
**struck** [12] - 25:16, 25:24, 26:9, 26:10, 26:16, 41:7, 42:17, 46:7, 78:10
**structured** [1] - 17:13
**Stu** [2] - 4:19, 54:22

**STUART** [1] - 1:20
**Stuart** [2] - 3:14, 8:16
**subject** [5] - 25:19, 27:5, 27:9, 36:18, 45:8
**submission** [2] - 18:21, 19:1
**submit** [3] - 43:6, 64:11, 82:17
**submitted** [3] - 45:12, 45:13, 82:21
**Subsection** [5] - 19:25, 60:8, 63:11, 66:8, 78:19
**substance** [2] - 53:25, 54:3
**suffered** [1] - 65:18
**sufficient** [2] - 57:3, 88:4
**suggest** [2] - 32:7, 48:12
**suggestion** [1] - 48:11
**suggests** [2] - 41:19, 41:22
**Suite** [3] - 1:18, 1:22, 1:24
**sum** [2] - 53:25, 54:3
**supervised** [1] - 89:13
**supplement** [7] - 22:24, 23:23, 25:4, 25:8, 30:4, 30:7, 68:20
**supplemental** [1] - 35:7
**supplemented** [3] - 21:10, 34:4, 34:18
**supplies** [5] - 85:18, 86:19, 87:18, 87:20, 88:3
**support** [6] - 13:1, 20:6, 30:16, 30:22, 57:3, 61:12
**supported** [4] - 56:25, 60:19, 61:4, 65:21
**supports** [2] - 20:11, 61:1
**supposed** [2] - 68:21, 77:13
**Supreme** [1] - 57:17
**surplusage** [1] - 13:20
**survived** [1] - 11:21
**susceptible** [2] - 63:10, 63:16
**sworn** [1] - 75:18
**system** [1] - 80:15

**T**

**tabbed** [1] - 80:1
**table** [7] - 3:8, 3:16, 4:17, 4:20, 8:13, 54:20, 54:23
**talks** [4] - 19:7, 38:3, 47:22, 48:14
**tantamount** [1] - 85:25
**targeted** [5] - 60:24, 64:2, 64:4, 65:9, 65:12
**task** [3] - 67:2, 69:23, 70:6
**team** [1] - 86:4
**ten** [2] - 54:7, 59:24
**tend** [1] - 58:19
**Tenders** [1] - 69:1
**tent** [1] - 85:21
**term** [1] - 84:16
**terms** [2] - 22:18, 38:21
**test** [1] - 58:12
**testified** [18] - 15:21, 17:21, 24:21, 27:4, 34:24, 40:16, 40:17, 56:6, 56:8, 57:24, 58:1, 63:20, 65:16, 68:6, 70:25, 87:6, 87:8, 88:1
**testify** [20] - 15:9, 15:15, 15:16, 15:20, 16:20, 17:10, 17:12, 17:15, 17:19, 18:3, 18:6, 32:23, 34:12, 39:23, 56:10, 75:14, 77:20, 85:14, 85:19
**testifying** [2] - 17:1, 29:5
**testimony** [56] - 12:25, 13:24, 14:4, 14:8, 21:17, 21:21, 24:7, 24:9, 29:8, 34:11, 34:24, 35:2, 35:8, 35:25, 36:7, 36:15, 36:25, 37:2, 37:5, 38:12, 38:15, 38:23, 39:24, 40:15, 53:12, 54:2, 54:4, 55:7, 55:13, 56:13, 57:9, 57:20, 57:23, 58:2, 58:3, 58:13, 58:14, 70:24, 71:6, 71:19, 71:21, 72:1, 72:4, 72:7, 72:10, 72:18, 72:19, 85:11, 85:22, 86:22, 87:3, 87:21, 88:7, 88:14,

88:17
   that... [1] - 26:22
   THE [232] - 1:10,
1:14, 1:20, 3:1, 3:13,
3:18, 3:20, 3:22, 4:1,
4:4, 4:9, 4:22, 4:24,
5:2, 5:4, 5:5, 5:7, 5:8,
5:9, 5:11, 5:12, 5:14,
5:17, 5:23, 6:7, 6:15,
6:22, 6:24, 7:2, 7:5,
7:8, 7:12, 7:16, 7:20,
7:23, 7:25, 8:6, 8:20,
8:22, 8:24, 9:1, 9:4,
9:7, 9:10, 9:16, 10:17,
10:21, 10:24, 11:6,
11:10, 11:12, 11:21,
11:25, 12:6, 12:18,
13:6, 13:22, 14:15,
15:12, 15:14, 15:21,
16:1, 16:7, 16:9,
16:10, 16:11, 16:13,
16:16, 16:19, 17:4,
17:23, 19:23, 21:4,
22:3, 22:7, 22:11,
22:15, 22:18, 23:2,
23:10, 23:22, 24:1,
24:5, 24:16, 25:2,
25:13, 25:18, 25:22,
25:24, 26:8, 26:25,
27:10, 27:18, 27:21,
28:5, 28:20, 28:22,
29:8, 30:3, 30:6,
30:24, 31:2, 33:11,
34:9, 34:13, 34:22,
35:25, 36:11, 36:15,
37:4, 37:14, 38:7,
38:10, 38:20, 39:8,
39:13, 39:24, 40:15,
40:23, 41:4, 41:7,
41:13, 41:15, 42:3,
42:6, 42:11, 42:18,
42:21, 43:2, 43:7,
43:14, 43:16, 43:22,
43:24, 44:7, 44:10,
44:13, 44:22, 44:25,
45:3, 45:16, 46:8,
46:11, 46:17, 46:19,
46:20, 47:2, 47:5,
47:10, 47:19, 48:4,
48:5, 48:11, 48:19,
48:24, 49:3, 49:9,
49:11, 49:12, 49:17,
49:20, 50:2, 50:10,
50:14, 50:21, 50:22,
51:4, 51:6, 51:11,
51:15, 51:24, 52:7,
52:19, 53:2, 53:5,
53:14, 53:17, 53:20,
53:23, 53:25, 54:7,
54:13, 54:25, 55:2,
55:14, 55:16, 55:21,

55:24, 56:22, 57:12,
57:15, 58:6, 59:3,
59:6, 60:15, 61:18,
62:6, 62:19, 62:25,
63:2, 67:16, 67:19,
67:23, 68:1, 68:24,
68:25, 69:4, 71:24,
72:9, 74:21, 74:24,
75:3, 75:15, 75:23,
76:2, 78:12, 79:9,
80:18, 80:24, 81:8,
84:17, 84:21, 89:1,
89:20, 90:1, 90:9,
90:16, 90:22, 90:25,
91:7, 91:9, 91:13
   themselves [2] -
63:24, 65:14
   theoretically [1] -
49:4
   therefore [14] -
24:15, 41:23, 43:20,
49:13, 51:21, 57:10,
58:22, 66:16, 67:9,
71:13, 72:5, 72:15,
80:22, 88:4
   Thereupon [3] - 4:7,
8:4, 54:11
   they've [1] - 29:14
   Third [1] - 1:21
   thoughts [1] - 81:3
   threatened [2] -
64:8, 64:9
   three [17] - 24:2,
24:20, 25:13, 28:11,
36:13, 37:25, 40:25,
43:18, 43:25, 55:10,
55:12, 55:18, 55:24,
63:21, 70:25, 71:7,
87:5
   throughout [4] -
35:19, 57:9, 58:8
   Thursday [1] - 7:6
   timely [1] - 84:14
   title [1] - 16:22
   Title [2] - 69:9, 79:11
   today [6] - 3:23,
4:17, 7:2, 7:3, 30:14,
89:20
   Tome [1] - 70:13
   TOME [1] - 70:13
   tomorrow [6] - 7:3,
7:5, 90:5, 90:8, 91:4,
91:13
   took [4] - 23:8,
49:14, 67:14, 72:1
   top [7] - 18:14,
34:17, 37:19, 39:16,
41:10, 43:18, 59:24
   total [2] - 6:15, 50:24
   totality [1] - 89:16

   tough [1] - 67:2
   towards [4] - 29:21,
33:25, 39:16, 45:19
   toys [1] - 13:7
   training [1] - 74:14
   transcription [1] -
92:4
   travel [9] - 36:20,
36:24, 37:8, 68:11,
80:6, 84:22, 84:23,
85:4, 86:12
   traveled [2] - 35:23,
86:16
   traveling [1] - 58:10
   treat [1] - 35:12
   treated [4] - 48:1,
49:25, 52:15, 52:18
   treatment [8] -
22:21, 22:23, 22:25,
23:6, 23:7, 28:13,
69:20, 87:23
   treats [1] - 62:23
   trial [49] - 13:1,
13:24, 14:4, 18:4,
21:21, 24:7, 24:21,
31:25, 32:23, 35:8,
35:19, 37:1, 37:8,
38:12, 39:23, 40:15,
42:18, 44:10, 44:25,
54:2, 54:4, 55:13,
57:21, 58:16, 63:20,
70:24, 70:25, 72:6,
72:11, 73:6, 73:8,
73:9, 73:17, 73:21,
75:14, 81:17, 83:6,
83:10, 85:1, 85:6,
85:8, 85:13, 85:23,
86:16, 87:4, 87:5,
87:21, 88:7, 88:17
   trials [1] - 38:20
   trip [2] - 35:3, 81:13
   true [3] - 21:13,
21:14, 90:10
   truth [2] - 18:22, 27:3
   try [1] - 17:11
   trying [1] - 83:22
   turns [1] - 47:16
   Twelfth [2] - 2:4,
92:9
   two [16] - 20:16,
20:21, 20:22, 28:10,
37:23, 43:5, 45:7,
56:7, 60:3, 63:2, 63:3,
68:2, 79:20, 85:9
   type [4] - 18:24,
21:2, 50:15, 78:25
   types [2] - 73:23,
73:24
   typify [1] - 75:4
   typo [1] - 43:7

   typographical [3] -
39:11, 41:11, 43:4

## U

   ultimately [2] - 51:4,
52:14
   unable [2] - 63:22,
63:24
   uncharged [11] -
16:13, 18:18, 19:12,
22:10, 25:7, 25:11,
28:18, 28:25, 68:16,
69:4, 72:16
   Uncharged [1] -
18:15
   uncles [1] - 14:2
   under [64] - 5:15,
14:23, 18:15, 19:18,
20:13, 20:14, 20:16,
20:18, 20:19, 20:23,
20:24, 21:6, 21:19,
21:23, 28:6, 31:14,
32:12, 32:16, 39:3,
40:3, 46:16, 46:18,
46:24, 47:1, 47:13,
47:15, 47:25, 48:2,
49:23, 49:24, 49:25,
50:1, 50:5, 51:20,
52:13, 52:16, 53:21,
55:4, 57:7, 57:20,
58:1, 58:17, 58:19,
59:13, 60:13, 62:9,
62:17, 62:19, 62:21,
63:4, 63:14, 66:5,
66:11, 67:5, 67:8,
77:11, 77:14, 77:16,
78:7, 81:1, 81:16,
81:20, 82:19, 83:23
   underlying [1] -
72:20
   understood [1] -
51:13
   unduly [2] - 59:21,
78:23
   unflattering [1] -
31:22
   unfortunately [3] -
4:2, 62:12, 84:11
   UNITED [5] - 1:1,
1:4, 1:11, 1:15, 1:17
   United [40] - 3:2, 3:7,
4:10, 4:15, 8:7, 8:12,
9:25, 10:2, 10:4, 20:7,
31:4, 31:8, 34:20,
35:3, 35:23, 54:14,
54:19, 57:16, 57:17,
60:16, 64:22, 64:24,
64:25, 65:1, 65:25,
66:1, 66:18, 68:7,

68:11, 68:12, 69:9,
69:12, 69:21, 70:1,
70:13, 70:17, 70:18,
77:5, 79:11, 92:8
   unopposed [1] -
6:21
   unrelated [1] - 63:18
   unseal [1] - 84:23
   unsealed [6] - 82:23,
90:13, 90:15, 90:16,
90:18, 91:2
   untrue [1] - 39:21
   untruthful [1] - 58:16
   unusually [2] -
63:14, 63:17
   up [12] - 29:25,
36:13, 39:8, 40:25,
43:5, 43:25, 48:24,
62:12, 68:18, 83:15,
84:24, 87:15
   upward [1] - 70:13
   US [7] - 2:1, 57:16,
58:12, 73:22, 74:8,
74:10, 82:20
   USC [2] - 31:16, 76:3
   utilized [4] - 47:6,
52:22, 80:5, 86:7

## V

   variance [1] - 70:13
   vehemently [2] -
36:8, 37:25
   verbiage [1] - 79:18
   verdict [1] - 81:10
   verified [1] - 10:8
   version [1] - 59:4
   versus [23] - 3:2,
4:10, 8:7, 9:25, 10:2,
10:5, 31:4, 31:8,
54:14, 57:16, 57:18,
58:12, 64:22, 64:24,
64:25, 65:2, 65:25,
66:1, 66:18, 69:21,
70:13, 70:17, 70:19
   Vicky [3] - 74:3,
82:19, 82:23
   victim [60] - 6:12,
6:18, 17:10, 40:5,
40:8, 45:8, 45:9,
45:11, 45:14, 46:4,
46:13, 46:20, 46:24,
48:7, 48:8, 49:5, 49:7,
49:15, 50:5, 60:12,
60:13, 60:18, 61:2,
61:17, 61:25, 63:3,
63:12, 65:10, 67:11,
68:3, 68:15, 72:22,
73:1, 73:21, 74:18,

75:20, 75:24, 76:7, 76:11, 76:21, 76:23, 78:9, 79:10, 80:20, 81:23, 81:25, 82:5, 82:15, 82:18, 82:22, 83:19, 84:5, 88:21, 88:23, 89:3, 90:3
**victim'** [1] - 60:9
**victim's** [1] - 65:7
**victimized** [1] - 50:18
**victims** [96] - 14:9, 14:13, 14:14, 15:8, 15:15, 15:16, 15:19, 16:19, 17:2, 17:8, 17:15, 18:3, 18:5, 18:7, 32:23, 48:1, 48:21, 49:4, 49:12, 49:25, 50:13, 50:17, 51:17, 52:16, 52:18, 57:24, 58:1, 58:4, 58:6, 59:8, 59:9, 59:13, 59:15, 59:16, 59:19, 60:3, 60:4, 60:19, 60:21, 60:22, 60:24, 61:5, 61:16, 61:17, 61:19, 62:1, 62:15, 62:18, 62:22, 62:23, 63:4, 63:17, 63:19, 64:2, 64:8, 64:11, 64:14, 64:16, 65:16, 65:21, 65:22, 65:23, 73:3, 73:7, 73:13, 73:21, 73:24, 75:11, 76:4, 76:5, 76:8, 76:13, 76:15, 76:19, 77:4, 77:8, 77:20, 78:6, 78:10, 78:20, 78:21, 79:12, 79:18, 79:22, 80:3, 80:5, 80:13, 80:18, 80:19, 81:3, 82:5, 82:14, 83:18, 83:24
**Victims'** [3] - 80:10, 81:16, 83:23
**victims'** [7] - 61:3, 61:9, 65:12, 80:9, 84:3, 88:8, 88:10
**view** [3] - 16:24, 17:19, 17:22
**viewing** [1] - 38:25
**views** [1] - 28:25
**violation** [1] - 73:11
**violations** [1] - 77:13
**visit** [1] - 42:1
**visited** [1] - 41:25
**voices** [1] - 80:9
**Von** [4] - 66:1, 66:3, 66:12
**VON** [1] - 66:1

**vs** [1] - 1:6
**vulnerability** [6] - 59:11, 59:15, 59:25, 60:11, 64:7, 65:6
**vulnerable** [18] - 59:8, 59:9, 60:3, 60:4, 60:9, 60:12, 60:13, 60:18, 61:1, 61:16, 63:3, 63:4, 63:11, 63:14, 63:17, 65:8, 65:21, 67:11

## W

**W.D** [4] - 41:20, 41:21, 41:24, 41:25
**W.J.B** [2] - 43:11, 43:13
**W.M** [3] - 87:8, 87:12, 87:13
**waive** [1] - 5:14
**wants** [1] - 76:23
**Washington** [1] - 1:19
**watch** [2] - 38:13
**watching** [2] - 37:21, 37:22
**ways** [2] - 41:18, 74:5
**Webb** [3] - 66:2, 66:18, 67:10
**website** [1] - 74:9
**week** [2] - 5:19, 7:10
**Wilcox** [1] - 64:22
**willful** [1] - 58:14
**willfully** [1] - 57:8
**willing** [2] - 10:16, 86:6
**Winter** [4] - 19:8, 24:14, 24:16, 24:18
**wish** [4] - 11:22, 80:18, 83:20, 88:15
**wishes** [1] - 33:21
**withdrawn** [1] - 59:2
**witness** [10] - 36:16, 37:5, 38:8, 38:19, 40:16, 40:19, 42:18, 44:10, 44:25, 68:8
**witnessed** [2] - 37:24, 38:4
**witnesses** [15] - 19:7, 27:4, 27:8, 27:11, 29:5, 71:11, 72:14, 72:15, 85:5, 85:14, 86:3, 86:5, 86:10, 86:17, 87:1
**word** [4] - 12:10, 43:8, 66:13, 68:9
**write** [1] - 82:15

**written** [3] - 51:14, 74:24, 79:17
**wrote** [1] - 60:8

## Y

**years** [7] - 27:5, 36:9, 42:1, 59:13, 71:22, 82:11, 89:13
**yesterday** [1] - 6:14
**yielded** [2] - 46:14, 46:21
**yields** [1] - 45:24
**York** [1] - 1:18
**young** [2] - 13:8, 35:22