```
 1                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                        MIAMI DIVISION
                 CASE NO. 11-20350-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,          Miami, Florida

 5                 Plaintiff,           April 5, 2012

 6         vs.                          10:45 a.m. to 11:50 a.m.

 7   MATTHEW ANDREW CARTER,

 8                 Defendant.           Pages 1 to 35
     _____

 9

10                       STATUS CONFERENCE
                BEFORE THE HONORABLE JOAN A. LENARD,
11                 UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14

     FOR THE GOVERNMENT:      MARIA K. MEDETIS, ESQ.
15                            ASSISTANT UNITED STATES ATTORNEY
                              99 Northeast Fourth Street
16                            Miami, Florida 33132

17   FOR THE DEFENDANT:       STUART ADELSTEIN, ESQ.
                              ADELSTEIN & MATTERS
18                            2929 Southwest Third Avenue
                              Suite 410
19                            Miami, Florida 33129
                                     -and-
20                            PHILIP R. HOROWITZ, ESQ.
                              9130 South Dadeland Boulevard
21                            Suite 1910
                              Miami, Florida 33156
22
     REPORTED BY:             LISA EDWARDS, RDR, CRR
23                            Official Court Reporter
                              400 North Miami Avenue
24                            Twelfth Floor
                              Miami, Florida 33128
25                            (305) 523-5499
```

1           THE COURT:  United States of America versus Matthew

2     Andrew Carter, Case No. 11-20350.

3           Good morning, counsel.  State your appearances, please,

4     for the record.

5           MS. MEDETIS:  Good morning, your Honor.  Maria Medetis

6     on behalf of the United States.

7           THE COURT:  Good morning.

8           MR. ADELSTEIN:  Good morning, your Honor.  Stu

9     Adelstein and Phil Horowitz on behalf of Mr. Carter, who is

10    present in the courtroom.

11          THE COURT:  Good morning.

12          MR. HOROWITZ:  Good morning, your Honor.

13          THE COURT:  We're here today on a status conference;

14    and I want to take up the motions that have been filed by the

15    parties.

16          The Defendant has moved for a continuance and the

17    Government has moved to designate this case as being one of

18    special public importance pursuant to Title 18, United States

19    Code, Section 3509.

20          Let me hear the motion for continuance first, please.

21          MR. ADELSTEIN:  Yes, your Honor.  As I have put in my

22    submission, when I was appointed on this case --

23          THE COURT:  When were you appointed?

24          MR. ADELSTEIN:  I was appointed on this case January

25    24th.  Subsequent thereto, I met with the Federal Public

```
1    Defenders who were assigned the case, Mr. Patel and
2    Mr. Korchin.  I was advised that they had been working on the
3    case approximately eight months.
4         I was also apprised that not only were those two
5    individuals working on the case, but they had a full-time
6    intern and two investigators working on the case.  And they
7    were prior -- right at the time that they withdrew, they were
8    in the process of requesting additional time based upon the
9    amount of work that they needed to do to properly prepare this
10   case for trial.
11        Since that time, I have reviewed -- I put in my
12   submission 25 percent of the discovery.  I've actually -- since
13   I have filed that, I'm up to about 35 percent of the discovery.
14   But because of my previous trial commitments, I have put some
15   of that aside.
16        The Court did and was gracious enough to grant my
17   motion to bring in Mr. Horowitz to assist in the preparation of
18   this case; and Mr. Horowitz just came on board, I think, last
19   week.
20             MR. HOROWITZ:  Friday.
21             MR. ADELSTEIN:  Friday of last week.  We have met with
22   Mr. Carter since that time and we are in the process of going
23   through some of the discovery.  And as I've indicated, it's
24   four boxes of materials.
25             As the Court notes, there's been numerous *ex parte*
```

1    submissions by the Federal Public Defender's Office as to

2    things they were in the process of doing to apprise the Court

3    of that.

4         We have to do many of those things that they've

5    indicated in their *ex parte* submissions in order to properly

6    prepare this case for trial.

7         I believe this case in fact will go to trial, because

8    there is no resolution that either side can live with.  I've

9    had some preliminary discussions with the Government concerning

10   that; and any sentence -- or any recommendation of any sentence

11   would, in essence, because of Mr. Carter's age, even if he

12   would accept it, would be in essence a death sentence.  He

13   would die in prison.

14        I can't be ready by July 23rd, I think is the trial

15   date.  I'm sorry.  July 3rd, I think it's set.

16        MS. MEDETIS:  Correct.

17        THE COURT:  Obviously, I'll do the best I can.  But as

18   I've indicated in my submission, I am presently ready for trial

19   in the State of Florida versus James Powell, which is a

20   first-degree murder that is five years old.  We were scheduled

21   to start that trial March 26th, but it was postponed because

22   the prosecutor was in another trial and it has been reset for

23   April 23rd.

24        In my other potential death penalty case in front of

25   Judge Graham, we do have now a trial date of September 4th

```
 1    subject to -- if the Government does not authorize death, it

 2    will definitely go September 4th, as Judge Graham has

 3    indicated.

 4              THE COURT:  If they don't certify it, it'll go the 4th?

 5              MR. ADELSTEIN:  Yes.  If they do authorize death, then

 6    that date will in fact, based upon our discussions with the

 7    Court, be pushed over.

 8              I also have a first-degree murder case set in June in

 9    state court, which is a five-year-old case which I have

10    announced ready on.

11              And presently, we are set before Judge Zloch in US

12    versus Toriano Johnson, which you have.  It rings a bell to you

13    because he has an indictment before you in a drug case.

14              THE COURT:  You're representing Mr. Johnson in that

15    case?

16              MR. ADELSTEIN:  Yes, Judge; as learned counsel, second

17    chair.

18              He presently has a July 23rd date; but I will tell the

19    Court that both the Government and the Defendant are moving for

20    a continuance.  He has denied that continuance as of right now,

21    but we are scheduled next week to be before him for a status

22    conference to get what I believe is a reasonable scheduling

23    order as to when we have to do our submissions for mitigation

24    and when the Government will truly indicate whether or not they

25    are going to seek death on Mr. Johnson's case.
```

1          THE COURT:  Now tell me how the appointment of

2    Mr. Horowitz is going to alleviate some of the time conflicts

3    and preparation conflicts that you have that you just detailed

4    to me.

5          MR. ADELSTEIN:  Well, while I'm busy working on those

6    cases, Mr. Horowitz and I are in the process of dividing up our

7    trial responsibilities and are -- concerning Mr. Carter.

8    Obviously, that will speed some things up.

9          In addition to that, there are numerous pretrial

10   motions that need to be filed.  And that will assist us -- or

11   assist me, certainly --

12         THE COURT:  Is there a motions deadline now?

13         MR. ADELSTEIN:  There was a motions deadline.  That's

14   why I filed a motion prior to the motions deadline concerning

15   that, asking that your Honor reset that.

16         MS. MEDETIS:  It was April 2nd, your Honor.

17         THE COURT:  Okay.

18         MR. ADELSTEIN:  I've asked in my motion for continuance

19   that the Court reschedule the motions deadline for 90 days

20   prior to trial, which was, I think, about the same period of

21   time we had if the trial actually kicked off on July 3rd, which

22   you set.  And that's how I got the 90-day period of time to cut

23   that -- or determine that particular date.

24         I will say that Mr. Horowitz and I have been working on

25   this since his appointment.  We are still -- I am still going

     1    through the discovery.  Mr. Horowitz is just commencing his

     2    discovery.

     3              Some of our investigations that we need to do that I

     4    know the Court is familiar with from previous counsel we cannot

     5    pick up until we get a good flavor of the case, to be quite

     6    candid with you, and go through all of the four boxes of

     7    materials.

     8              I will say that the Government has been very

     9    cooperative in trying to get me up to speed; but it's somewhat

    10    difficult, quite candidly, to sit down with the Government

    11    until I have a full working knowledge of the case.  And I have

    12    postponed sitting down with them until I get a full flavor of

    13    the case.

    14              I have approximately three more boxes of materials to

    15    go through.  Mr. Horowitz has four boxes of materials to go

    16    through.  And then we will commence filing our motions and

    17    commence the investigation that is necessary.

    18              We have spoken to Mr. Carter about this.  Although

    19    Mr. Carter is frustrated because he has been in custody all

    20    this period of time, but he understands that he is playing for

    21    his life and is -- while he's reluctant, he understands and

    22    agrees with this, and in fact has just signed a notice of

    23    waiver of speedy trial that I can either give to your deputy

    24    clerk or I can file it this afternoon, whichever the Court

    25    wants.

1          In my motion, because of the amount of work that has

2    been done and with my meetings with Mr. Patel and Korchin, who

3    indicated after eight months they needed approximately -- they

4    were going to be asking for a continuance on both the deadline

5    of the motions and for the trial, I've asked the Court to

6    consider continuing this case until the first of next year.

7          Is that a fair assessment, Mr. Horowitz?

8          MR. HOROWITZ:  That's a fair assessment, Judge.

9          Also, if I can add, my trial schedule is a little

10   lighter than Mr. Adelstein's.  I've got a trial starting on

11   Monday with Judge Dimitrouleas.  It's only going to last about

12   three days.  After that, I have a lengthy one beginning October

13   1st with Judge Dimitrouleas, a tax case that's going to take

14   about two months.

15         So that clears me up pretty much from May 1st to

16   October 1st, to, number one, go through the entire boxes, also

17   if Mr. Adelstein's in trial to start coordinating getting the

18   investigation done or picked up where it was left off.

19         So a fair assessment, based on what's here, trial

20   schedules and to represent Mr. Carter to the best of our

21   ability, January 1st is a good date.

22         THE COURT:  Two questions before I hear the response

23   from the Government.

24         The case is traveling under the superseding indictment,

25   correct, Docket Entry 22?

```
 1              MS. MEDETIS:  It's the second superseding indictment,

 2   your Honor.

 3              THE COURT:  The second superseding indictment.

 4              MR. ADELSTEIN:  I think it's Docket Entry 71.

 5              MS. MEDETIS:  That's correct.  It's Docket Entry 71,

 6   your Honor.

 7              THE COURT:  I've got more questions.

 8              What are the basic differences between the indictment

 9   that was filed on May 19th, the superseding indictment filed on

10   June 23rd, and the second superseding indictment filed on

11   January 12th, 2012?

12              MS. MEDETIS:  They are as follows, Judge:  The original

13   indictment filed in May of 2011 charged one count of traveling

14   on or about October -- the exact date eludes me for one

15   moment -- October 2nd, 2001, with the purpose of engaging in

16   sexual conduct with a minor.

17              The superseding indictment in June added an additional

18   three counts for a total of four counts of identical conduct.

19   You'll see that Count 1 reads differently from the remainder of

20   the counts because that statute was amended in 2003.

21              However, the conduct that is charged is identical.  The

22   wording is just a little different.

23              And then the second superseding indictment in January

24   added an additional two counts of the identical charge for two

25   new dates.  So you now have a total of six charges.  Counts 1
```

1    through 5 are traveling in foreign commerce with the purpose of

2    engaging in sexual acts with minor.  And Count 6 is an attempt

3    to do so, because Mr. Carter was arrested on May 8th on the jet

4    way as he was boarding the flight for Haiti.

5           So it is a six-count indictment.  However, the counts

6    charge identical conduct, identical types of conduct, on six

7    different travel dates.

8           THE COURT:  So there are different factual scenarios

9    for each of the six counts?

10          MS. MEDETIS:  There are --

11          THE COURT:  I don't mean the underlying elements; I

12   mean the facts of traveling somewhere, doing something.  The

13   allegations are allegations of wrongful conduct in a foreign

14   country involving minors.

15          MS. MEDETIS:  Correct.  The factual circumstances are

16   different in two ways.  There were different flights that he

17   traveled on on different dates and there are different victims

18   who will be testifying to the different sexual abuse that took

19   place during that time period covered in the indictment.

20          MR. ADELSTEIN:  Judge, in addition to that -- which

21   complicates things.  We have been given a notice of 404(b)

22   evidence or Rule 413 evidence that dates back to the '70s that

23   requires us to do some investigation, some -- what is that?

24   About 40 years ago?

25          THE COURT:  And when was the 404(b) filed?

1           MS. MEDETIS:  Your Honor, there are two notices of

2    404(b).  One was filed on November 2nd, 2011.  The supplemental

3    notice was filed in January -- if you give me a moment, I'll

4    have the exact date.  I'm sorry.  It was filed March 13th,

5    2012.

6           I would note that, of course, all of the information

7    that we have regarding those 404(b) witnesses has been

8    disclosed to defense counsel.

9           THE COURT:  My next question is, how long is the trial

10   expected to take?

11          MS. MEDETIS:  Judge, we expect it to take approximately

12   two weeks for the Government's case in chief.  That assumes the

13   majority of the 414, 413 witnesses.  Obviously, that's

14   something that the parties are going to be litigating.

15          My understanding from our previous status conference in

16   December with the Federal Public Defender's Office was that

17   defense counsel's case would take a week.  I don't know if

18   counsel wanted to comment on that at this point.

19          MR. ADELSTEIN:  I'm led to believe with my

20   conversations with previous counsel that it would be more like

21   two weeks.  But I'm not really --

22          THE COURT:  You're not married to it.

23          MR. ADELSTEIN:  I'm not comfortable in telling the

24   Court a realistic date.

25          THE COURT:  So we're talking about approximately at

 1    this point a four-week trial, approximately?

 2           MR. ADELSTEIN:  Yes, ma'am.  I would say that would be

 3    fair.

 4           THE COURT:  Let me hear the Government's response.  If

 5    you want to intertwine it with your motion, that's fine.  And

 6    if you want to do it separately, that's fine too.  It's up to

 7    you.

 8           MS. MEDETIS:  For the most part, the United States

 9    would like to rely on its pleadings with respect to both the

10    motion to designate this occasion as a matter of special public

11    importance under 3509.  I don't know if that motion is

12    unopposed.  Perhaps that might resolve the need to argue that.

13    But I would simply incorporate all of our arguments by

14    reference here in our 3509 motion.

15           The granting of the 3509 motion would provide an

16    additional basis for our opposition to the motion to continue

17    in that, once the case would be designated, if your Honor is

18    inclined to do so, as one of special public importance, it

19    would then impute the speedy trial rights for the minor

20    victims.

21           As we noted in both of our motions, that speedy trial

22    right is not one meant to trump the Defendant's due process

23    right to prepare adequately for trial, but the purpose of the

24    speedy trial right is articulated in our motions -- rather, our

25    pleadings -- and that is to prevent the victims from being

1    further victimized by the inherent delays that occur in the

2    criminal justice system, both the state and federal system.

3    And I think the point there and the legislative purpose behind

4    that speedy trial right is to prevent these victims from having

5    to live with this litigation dragging on and being unable to

6    find closure.

7            The longer the prospect of this trial hangs over all

8    the victims' head, including the minor victims, the more stress

9    they have to contend with:  the possibility of testifying,

10   traveling to the United States for the first time.

11           And so we would ask the Court to be mindful of that.

12           With respect to -- I won't go any further on the --

13           THE COURT:  Let me ask you a question in regard to

14   that.

15           MS. MEDETIS:  Yes.

16           THE COURT:  Is there an interpretation either in the

17   statute or any case law that supports or does not support what

18   this designation would mean as far as invoking the speedy trial

19   right for the victims?

20           MS. MEDETIS:  Your Honor, based on the legislative

21   history and just the few cases that have addressed the issue --

22   and there really is not much; it's mostly steeped in

23   legislative history -- the right sort of comes into the Court's

24   consideration when considering its own docket, the docket of

25   the parties in terms of scheduling and perhaps putting the case

1    of special public importance ahead of other cases.

2         THE COURT:  Okay.  So the Court as well as considering

3    speedy trial rights of the Defendant or the request of the

4    Defendant also has to consider the speedy trial rights and the

5    trauma to the victims, based upon the designation of special

6    importance.  Correct?

7         MS. MEDETIS:  Correct, Judge; and thinking about that

8    in the context of the attorneys' schedules as well as the

9    Court's docket.

10        THE COURT:  Okay.  And I take it you're objecting to --

11   you're objecting to the continuance?

12        MS. MEDETIS:  The Government's objecting to the

13   continuance, your Honor.  And again, we'd rely on our arguments

14   in Docket Entry 93, which is our response opposing it.

15        I would like to specifically address the matter of

16   discovery, which has been brought up a few times today and

17   seems to be a rather significant basis for the continuance.

18        I don't want the Court to have the impression that this

19   is a document-intensive case.  The discovery that's being

20   referred to is four boxes of discovery.

21        As I noted in the Government's pleading, it is in large

22   part the Defendant's own possessions that were seized from the

23   Morning Star Center, which is the residential facility he

24   operated and directed, the Defendant did, in Haiti.  So that's

25   one thing.  The point is, these are not sort of novel, new

 1    pieces of evidence; they're his own possessions.

 2            The second point to that is that this is not a

 3    document-intensive case in terms of the evidence that's going

 4    to be presented.  There's very little by way of evidence

 5    contained in that discovery.

 6            I understand the defense counsel has to go through it

 7    rather carefully; but I would also note in that regard that a

 8    lot of the discovery is one-page fliers marketing the Morning

 9    Star Center for fundraising purposes, old e-mails that the

10    defense -- Defendant collected that are not necessarily

11    relevant to this case at all.

12            So I don't want the Court to have the misconception

13    that there's four boxes of discovery and documents that are --

14            THE COURT:  I understand.

15            MS. MEDETIS:  -- directly related to the case.

16            Again, for the reasons we noted, we would ask that the

17    case not be continued for the lengthy six months, and again

18    noting the trial schedule that Mr. Adelstein adhered to, my

19    understanding is that as learned counsel for the purpose of

20    both of those federal cases before Judge Graham and Judge

21    Zloch, if the United States does not seek the death penalty --

22    and Mr. Adelstein can correct me if I'm wrong -- he's not

23    required to be counsel.

24            That said, even if he is required to stay on as second

25    chair in both of those cases, I would note that this case was

1    specially set before any of those trial schedules were either

2    finalized or would be finalized.  And Mr. Adelstein will have

3    the opportunity to advise the --

4         THE COURT:  But this case was specially set before he

5    became counsel.

6         MS. MEDETIS:  Your Honor, it was.

7         THE COURT:  Correct?

8         MS. MEDETIS:  Correct.

9         THE COURT:  He wasn't on the case.  It would be hard

10   for him to object to the date if he wasn't counsel in the case.

11        MS. MEDETIS:  Correct.  Nor was he on those cases at

12   the time.  I know that he became part of the cases -- those

13   cases before he was appointed here; but I guess the point that

14   I'm trying to make is, those cases haven't been specially set

15   yet.  Their schedules are sort of up in the air.

16        It's the United States' position that this Court's

17   scheduling shouldn't be tethered or dictated by those other

18   higher case numbers or cases that haven't yet set their case

19   and that it be really the reverse, that this matter be set for

20   trial and that Mr. Adelstein inform the other cases of this

21   particular trial commitment.

22        MR. ADELSTEIN:  If I may just correct the Government,

23   Judge Graham has made it perfectly clear that, whether the

24   Government seeks death or not, all of the lawyers will be in

25   the case and he will not release learned counsel or

1    second-chair counsel.

2        THE COURT:  So as I understand your schedule,

3    Mr. Adelstein, that -- was it a September date on the case

4    before Judge Graham?

5        MR. ADELSTEIN:  Yes.

6        THE COURT:  If there's no authorization of death by the

7    Department of Justice, it's going to trial and will last how

8    long?

9        MR. ADELSTEIN:  That case has been estimated to be

10   three to four weeks.  He's going to decide -- the Government

11   has indicated there is a *Bruton* problem.  And he has asked the

12   Government to submit reasons why those statements cannot be

13   redacted and then a decision will be made whether or not it

14   will be -- we will be severed.

15       THE COURT:  And when is the determination -- so there's

16   a severance issue?

17       MR. ADELSTEIN:  There's a severance issue.  But he

18   said, if push comes to shove, he will try them back to back

19   starting September 4th.

20       THE COURT:  When is the Government scheduled to

21   authorize or certify whether they're seeking the death penalty?

22       MR. ADELSTEIN:  May 15, I believe, is the next status

23   conference, if I can look on my calendar.  I think it's May

24   15th.  There will be an announcement by the Government

25   concerning that.  And we did address that issue, because I am

 1  learned counsel in that case, on whether or not he's going to

 2  keep us all in.  His answer was yes.

 3          THE COURT:  Anything that you want to say in regard to

 4  the designation or the request for the designation by the

 5  Government pursuant to 3509?

 6          MR. HOROWITZ:  If I may note, I don't have a problem

 7  with the designation if the Government grants the continuance

 8  as requested.

 9          However, I want to point out Mr. Carter was arrested in

10  this case in May of 2011.  And it's now April 2012.  The

11  Government filed their request on March 20th, 2012.

12          If there were prior concerns as to --

13          THE COURT:  I think the Government would probably say

14  that their concern is the number of continuances.  They did ask

15  for a special set last time and I did -- before you came in the

16  case, Mr. Horowitz, and I did grant them a special set in July,

17  as I recall.

18          MS. MEDETIS:  That's correct, your Honor.

19          THE COURT:  I think there was in response to the

20  request for continuance.

21          MR. HOROWITZ:  If the Court wants to specially set it,

22  I think what the statute requires is that if the Court grants

23  the continuance, the Court makes written findings of fact and

24  conclusions of law as to why it's granting the continuance as

25  opposed to simply granting the continuance.  It's a more

 1    expansive order that grants the continuance.

 2              THE COURT:  Under 3509?

 3              MR. HOROWITZ:  3509(j).

 4              MS. MEDETIS:  That's correct, your Honor.  The

 5    requirements are set forth in detail in the Government's motion

 6    as to what would be required should the designation be made.

 7              MR. HOROWITZ:  It's the last sentence of Subsection

 8    (j).

 9              THE COURT:  How old are the victims?

10              MS. MEDETIS:  They span the age between 15 and 17, the

11    child victims.

12              However, I would also note that for purposes of the

13    adult victims, those who are 18 years or over, their right to

14    being treated with fairness and dignity under the Crime Victim

15    Rights Act, that is, 3771, and legislative history in that

16    regard with respect to their rights to be treated with fairness

17    and dignity has been interpreted by the legislation to also to

18    some extent acknowledge a right that the process -- the

19    criminal process where crime victims who are adults are

20    involved also not be dragged on.

21              And that is not a speedy trial right, per se, but the

22    legislative history under 3771 also acknowledges that the delay

23    in criminal trials involving crime victims is harmful for the

24    victims.  We'd ask the Court to take that into consideration as

25    well.

1          THE COURT:  Anything further you want to say,

2     Mr. Horowitz?

3          MR. HOROWITZ:  Yes, Judge.  3509(j) is specifically

4     designed for child victims and child witness rights.

5          The Government has notified us of potential witnesses

6     that go back, I think, as early as 1976.  So I think -- and

7     speedy trial rights are a lot different and concerned with

8     3509(j) and certifying the case as of great public importance.

9     The victims between 15 and 17 are covered within the statute.

10    The others are not.  And the others are not, I don't believe,

11    charged against Mr. Carter.  It may be 413 and 414 and

12    404(b)-type witnesses.

13         MS. MEDETIS:  Let me clarify, your Honor, and say that

14    the victims for the purpose of charged conduct include victims

15    who are minors, between 15 and 17 --

16         THE COURT:  How many?

17         MS. MEDETIS:  There's four minor victims and there's

18    over 15 non-minor victims, that is, adult victims, who relate

19    to the charged conduct.  And then there is the second group or

20    category of victims who are in fact adults.  They are the 413,

21    414 victims.

22         And the Government is not contending that any of the

23    adult victims, whether 414 or charged-conduct victims, are

24    covered under 3509, and we're certainly not contending that the

25    413, 414 adult victims are considered crime victims under the

1  Crime Victim Rights Act.

2        So whatever statutory arguments the Government is

3  making under 3509 and 3771 are as to the victims relating to

4  the charged conduct.

5        THE COURT:  Okay.  I'm going to grant the Government's

6  motion to designate the case as being of special public

7  importance pursuant to Title 18, United States Code, Section

8  3509(j).

9        I'm also going to grant the motion for continuance.

10  And I find that the ends of justice served by the granting of

11  such continuance outweigh the best interests of the public, the

12  four minor child victims in the second superseding indictment

13  and the Defendant in a speedy trial based on the following

14  facts:

15        First of all, this case was initially indicted with one

16  count on May 19th, 2011.

17        A superseding indictment was then filed on June 23rd,

18  2011, that added an additional three factual counts of

19  additional charges involving additional crimes with separate

20  and distinct underlying facts.

21        And then a second superseding indictment was filed on

22  June 12, 2012, that added separate and distinct additional two

23  counts of alleged conduct occurring on separate dates with

24  separate victims and separate conduct.

25        Mr. Carter had prior counsel.  The Federal Public

1   Defender was appointed in this case.  The Court is aware, as

2   I've indicated at prior hearings, that because of the *ex parte*

3   motion practice that was presented to me regarding the

4   investigation, I am aware more than I would normally be aware

5   of the amount of investigation going on in preparation for a

6   case, because the Court is normally not privy to that.

7   Sometimes, but not always.

8         But I was aware that the public defender was actively

9   and proactively investigating this case in an expeditious

10  manner, and it involved extensive investigation.

11        The public defender was discharged and the Court

12  appointed Mr. Adelstein as CJA counsel on January 24th, 2012,

13  which is actually 12 days after the second superseding

14  indictment was filed.

15        So in essence, Mr. Adelstein starts as new counsel for

16  the third charging document that added two additional counts

17  and contained four prior counts in the indictment, in the

18  superseding indictment.

19        Mr. Adelstein has to date -- we are now on the date of

20  April 5th, 2012.  So since his appointment in January, I find

21  that he has performed due diligence and adequate, knowledgeable

22  review of the materials provided to him for discovery.

23        And he has indicated that at this juncture, given some

24  other matters that he's involved in, but being able to both

25  meet with his client and start to review the materials in

1    preparation for trial, that he has been able to review 35

2    percent of the discovery.

3            And about maybe a week, two weeks ago, he filed a

4    motion requesting of the Court that the Court appoint second

5    chair, which after due consideration I granted that request,

6    and I found that his request that Phil Horowitz be appointed to

7    be co-counsel with him was well taken and that Mr. Horowitz was

8    the appropriate counsel for CJA appointment to be co-counsel

9    with Mr. Adelstein and represent Mr. Carter in this matter.

10           I find that the request at this time for additional

11   time for both preparation and the filing of motions is well

12   taken, given the history of the case, the fact that we are now

13   traveling under the second superseding indictment, which has

14   added additional factual charges on separate dates, though the

15   Court is very mindful, having designated this case as a case of

16   special public importance based on the fact that there are four

17   child victims ranging in age from 15 to 17, that those

18   interests also have to be considered by the Court.

19           And I find that the case contains novel questions of

20   fact and law; that it is unreasonable to expect adequate

21   preparation within the time periods previously set by the

22   Court, given the history of the case, the fact that new counsel

23   was appointed on January 24th, 2012, and that the Government

24   has determined that they should file and did file a second

25   superseding indictment on January 12th, 2012.

1          I also find that reasonable time is needed for counsel

2    to effectively prepare for trial with all due diligence.

3          Therefore, the time period from today up to and

4    including the date that trial commences is hereby declared to

5    be excludable time under the Speedy Trial Act both for the

6    Defendant and for the child victims.

7          Now, given the fact that there are minor victims

8    involved in this case, four victims ranging in age from 15 to

9    17, and given the amount of stress involved for the victims

10   concerning the charges, concerning the facts of their coming to

11   the United States, perhaps for the first time, and the amount

12   of stress that is normally involved for any victim to come and

13   testify in court and given the fact that both sides have

14   indicated that this will be a trial in this matter, I am not

15   going to grant the request for a trial in January.  I am going

16   to continue the trial until the two-week period beginning

17   October 22nd.  Calendar call is October 17th at 4:00.

18         This case will be specially set as a case designated as

19   a matter of special importance during that trial period, and I

20   fully expect that the case will be tried during that period.

21         And I am going to set a new date for motions.

22         MR. HOROWITZ:  Judge, if the Court may recall, I have a

23   case going before Judge Dimitrouleas on October 1st.  It's a

24   tax fraud case that I informed the Court of a little earlier.

25   That's set for about two months.  It's a seven-defendant tax

1    protester-type case, for lack of a better term.

2         THE COURT:   Is that case going to be a trial,

3    Mr. Horowitz, for your client?

4         MR. HOROWITZ:   I hope not.  I don't -- my client is

5    wavering and vacillating.  He is the last Defendant on the

6    indictment.  And I can't say for sure.  I know the Government

7    has offered -- is going to make me an offer that I supposedly

8    can't refuse, my client can't.

9         Maybe if the Court wishes, if you want to set it for a

10   status conference, maybe, in late August or early September to

11   see how we're doing, maybe how Mr. Adelstein's case is going

12   with Judge Graham.

13        THE COURT:  I'm concerned about you and your client at

14   this point.  When is that decision going to be made?

15        MR. HOROWITZ:  As far as the Judge Dimitrouleas case?

16        THE COURT:  Yes.

17        MR. HOROWITZ:  I would say probably by early September.

18        THE COURT:  A decision is not going to be made on plea

19   before early September?

20        MR. HOROWITZ:  I don't know, Judge.  I should -- I

21   misspoke.  I can't tell this Court when it's going to be made.

22   I hope to have a plea offer within the next month or so.

23        THE COURT:  You don't have it yet?

24        MR. HOROWITZ:  I don't have it yet, Judge.

25        THE COURT:  I see.  I thought I was doing so well.

1    That's a two-month trial?

2          MR. HOROWITZ:  Yes, your Honor.  The Government's given

3    us three terabytes of discovery in that case.

4          THE COURT:  Terabytes?

5          MR. HOROWITZ:  I had to look that up, too, Judge.  I

6    asked them to quantify that in terms of what paper means.

7    They've told me it's between one and a half to two and a half

8    million documents.

9          MS. MEDETIS:  Certainly more than four boxes.

10         MR. HOROWITZ:  Definitely more than four boxes, but

11   smaller, since it's on a hard drive.

12         MS. MEDETIS:  Judge, I would note that the tax case is

13   a higher case number.

14         THE COURT:  It doesn't matter.  It's set first.  It's

15   who sets it first.

16         MS. MEDETIS:  I thought I'd try, your Honor.

17         THE COURT:  I wish I could do that.

18         MS. MEDETIS:  So does the Government.

19         THE COURT:  Well, let me ask this of the parties.  I'll

20   let you weigh in on this before I make the decision.

21         I could either set it at the beginning of December,

22   which would probably take us through the month of December, and

23   then my experience is that, number one, it's more difficult to

24   obtain a jury when you start getting around the holidays; and,

25   number two, I have found, having had trials through the month

1  of December before, that something that I would consider is a

2  hiatus in the trial during a holiday period so that right from

3  the get-go I can tell jurors who come in on voir dire, We will

4  not be sitting this date to this date so we don't then have to

5  deal with holiday travel and holiday issues and family issues.

6  It gets very onerous in my experience, or it can be onerous;

7  not always, but it can be onerous.

8         Or the other options -- one option is the beginning of

9  December.  The other option is right after the first of the

10 year in January.

11        I'll hear from --

12        MR. ADELSTEIN:  May I confer with the Government real

13 quick?

14        THE COURT:  Sure.

15        (Discussion had off the record amongst counsel.)

16        MR. ADELSTEIN:  Judge --

17        MS. MEDETIS:  Your Honor --

18        MR. ADELSTEIN:  Go right ahead.

19        MS. MEDETIS:  Your Honor, I would note that I think

20 that the Government -- well, let me strike that and start over.

21        The victims in this case are devout Christians.  I know

22 they take the Christmas holiday season very seriously.  It's a

23 special time for them.  I wouldn't want to have them dealing

24 with trial preparation and trial during the month of December.

25        It seems like it's unfeasible to do any earlier.  And

1    so in order to completely bypass the holiday issues, the

2    Government would be inclined to ask for a court date in

3    February.  And I don't think --

4         THE COURT:  February?

5         MS. MEDETIS:  Yes.  If we can't do it, you know, within

6    the next few months, which is the Government's desire, then I

7    don't want to put another layer of unhappiness and stress on

8    the victims by dragging them here during the holiday season and

9    having to be focused on this.

10        That said -- and I think defense counsel agrees with a

11   February trial date -- I would ask if the Court would colloquy

12   the Defendant as to his waiver of the speedy trial, even though

13   he's done so in writing, so as to cover all the bases in the

14   event of any collateral attack on the speedy trial issue.

15        THE COURT:  How about January 28th?  It's the last few

16   days of -- I don't hear trials on Monday.  That would be the

17   28th.  So it would start on the 29th, the 30th and 31st.  You

18   had asked for February.  These are the last few days of

19   January.  Is that okay?

20        MS. MEDETIS:  Your Honor, we don't have a problem with

21   that.

22        The other possible recommendation that the Government

23   would make is to keep the October 22nd setting in the event

24   that Mr. Horowitz's case settles; so that way, at least we have

25   an October date.  And if we know by the beginning of September,

1    the Government will be able to make the necessary travel

2    arrangements.

3           That would be the other possibility that the Government

4    would advance to the Court, only because we do -- we do want

5    this case to go forward sooner rather than later and are

6    reluctant to a January date, if the Court's inclined to

7    consider that as an option.

8           THE COURT:  Given Mr. Horowitz's conflict and then

9    Mr. Adelstein's conflict, I'm concerned about the filing of

10   motions date and being able to process them.

11          MS. MEDETIS:  I understand.

12          THE COURT:  I had thought about leaving open the option

13   of moving it up.  But I just don't know that that's going to

14   work.  I'd rather specially -- since it's special designated,

15   specially set it and say, That's it.  Set in stone.  Don't want

16   to hear it.  Will not consider it.  It's enough time.

17   Everybody's agreed to this date and it's going forward.

18          MS. MEDETIS:  Certainly, your Honor.

19          Then the late January dates would work for the

20   Government in that case.

21          THE COURT:  So it would be January 28th, the two-week

22   period beginning January 28th.  Calendar call is January 23rd

23   at 4:00.

24          You are specially set for that date, number one, and

25   specially designated for that date.

 1              Now October 10th for the filing of motions.

 2              Any objection to a colloquy with the Defendant

 3    regarding a speedy trial?

 4              MR. ADELSTEIN:  No.

 5              THE COURT:  Place him under oath, please.

 6              (Whereupon, the Defendant was duly sworn.)

 7              THE COURT:  Do you have the written -- you can be

 8    seated, sir.

 9              Do you have the written waiver of speedy trial,

10    Mr. Adelstein?

11              MR. ADELSTEIN:  I do.

12              May I approach?

13              THE COURT:  Yes.

14              MR. ADELSTEIN:  (Tenders document to the Court.)

15              MS. MEDETIS:  Judge, in this regard, I'd like to

16    highlight Docket Entry 74 and 82, where the Defendant was very

17    vehement about a speedy trial, just to clarify the record

18    regarding his decision now.

19              THE COURT:  Would you state your full name for the

20    record, Mr. Carter.

21              THE DEFENDANT:  Yes, ma'am.

22              THE COURT:  Your full name for the record.

23              THE DEFENDANT:  Matthew Andrew Carter.

24              THE COURT:  And do you understand that, under federal

25    law, specifically Title 18, United States Code, Section 3161,

1    you have a right to a speedy trial, which means that trial

2    shall commence within 70 days from the filing of an indictment?

3            THE DEFENDANT:  Yes, ma'am.  I understand that.

4            THE COURT:  And do you understand that under certain

5    circumstances, including the filing of motions or matters that

6    may go on in the case, that the calculation of that 70-day

7    period may change?  It is not always a straightforward 70 days

8    from the filing of the document; but under the law, it takes

9    into account what happens in the case, the motions that are

10   filed and the activities that go on in the case by the lawyers.

11   Do you understand?

12           THE DEFENDANT:  Yes, ma'am.  I understand that.

13           THE COURT:  Have you fully discussed your speedy trial

14   rights with your lawyers?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  And are you satisfied with their services?

17           THE DEFENDANT:  At this time, I'm very satisfied with

18   their services, yes.

19           THE COURT:  And do you wish to waive or not waive your

20   right to a speedy trial in this matter?

21           THE DEFENDANT:  With reservations, but I wish to waive

22   my right to the speedy trial.

23           THE COURT:  What does "with reservations" mean?

24           THE DEFENDANT:  Reservation means just the frustration

25   of sitting in jail 11 months already and not been able to get

1    this into a court process.

2           THE COURT:  You understand that at this juncture the

3    case has been set at the end of January of 2013?

4           THE DEFENDANT:  Yes, ma'am.  I understand.

5           THE COURT:  And you understand that you will remain

6    incarcerated until that time?

7           THE DEFENDANT:  Of course.  Yes.  Yeah.

8           THE COURT:  Have you fully discussed the implication of

9    waiving your speedy trial right with your lawyers?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  And is this your signature on the written

12   waiver of speedy trial?

13          THE DEFENDANT:  That is my signature, yes, ma'am.

14          THE COURT:  Did you read the written waiver of speedy

15   trial before you signed it?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Did you fully discuss the written waiver of

18   speedy trial with your lawyers before you signed it?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Did you understand the written waiver of

21   speedy trial before you signed it?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Did you sign the written waiver of speedy

24   trial freely and voluntarily?

25          THE DEFENDANT:  Yes, ma'am.

33

```
 1              THE COURT:  Did anyone force you or threaten you or

 2    coerce you to sign the written waiver of speedy trial?

 3              THE DEFENDANT:  Not at all, ma'am.

 4              THE COURT:  Has anyone made any promises to you to --

 5    that influenced your decision to sign the written waiver of

 6    speedy trial?

 7              THE DEFENDANT:  No, ma'am.

 8              THE COURT:  Any questions by the Government?

 9              MS. MEDETIS:  Your Honor, only as to state of mind.  I

10    know Mr. Carter takes medications for certain health ailments.

11    We would ask that he's not taken any drugs or alcohol today or

12    yesterday.

13              THE COURT:  Are you under the influence of any drug or

14    medication or alcoholic beverage, sir?

15              THE DEFENDANT:  No, ma'am.

16              THE COURT:  Within the last 24 hours, have you used any

17    drug, medication or alcoholic beverage?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  What is that?

20              THE DEFENDANT:  Insulin.

21              MR. ADELSTEIN:  He's diabetic, your Honor.

22              THE DEFENDANT:  And medicines for blood pressure.

23              THE COURT:  When was the last time that you took

24    insulin?

25              THE DEFENDANT:  This morning.
```

1        THE COURT:  When was the last time that you took your

2   blood pressure medication?

3        THE DEFENDANT:  This morning as well.

4        THE COURT:  The ability to understand your speedy trial

5   rights:  Has that ability been affected at any time by the use

6   of any drug, medication or alcoholic beverage, including the

7   medication that you told me that you take for diabetes and high

8   blood pressure?

9        THE DEFENDANT:  No, ma'am.

10       THE COURT:  The ability to understand the explanations

11   and advice given to you by your lawyers:  Has that ability been

12   affected at any time by the use of any drug, medication or

13   alcoholic beverage, including the medication that you told me

14   that you take for diabetes and blood pressure?

15       THE DEFENDANT:  Not at all, ma'am.

16       THE COURT:  Anything further?

17       MS. MEDETIS:  Nothing from the Government, your Honor.

18       THE COURT:  Anything from the Defendant?

19       MR. ADELSTEIN:  No, your Honor.

20       THE COURT:  So anything else we need to take up at this

21   hearing?

22       MS. MEDETIS:  Only that the finding of the waiver of

23   speedy trial was knowing and voluntary, but nothing else, your

24   Honor.

25       MR. ADELSTEIN:  Nothing else, your Honor.

```
1              THE COURT:  I find at this time that the Defendant's

2    both written waiver of speedy trial and his oral recitation

3    that the hearing both support the fact and I at this time find

4    that he has waived his speedy trial rights knowingly, freely

5    and voluntarily after full consultation with his attorneys and

6    without coercion or duress.

7              Anything further?

8              MR. ADELSTEIN:  Thank you, your Honor.

9              MS. MEDETIS:  Thank you.

10             THE COURT:  Thank you.

11             We're in recess in this matter.

12             (Proceedings concluded.)

13                      C E R T I F I C A T E

14

15             I hereby certify that the foregoing is an

16   accurate transcription of the proceedings in the

17   above-entitled matter.

18

19
                           /s/Lisa Edwards
20   _____           LISA EDWARDS, RDR, CRR
         DATE               Official United States Court Reporter
21                          400 North Miami Avenue, Twelfth Floor
                            Miami, Florida 33128
22                          (305) 523-5499

23

24

25
```